**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN FULTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 20-cv-3118 |
| v. | ) | |
| | ) | Judge Lefkow |
| ROBERT BARTIK, et al., | ) | |
| | ) | Jury Trial Demanded |
| Defendants. | ) | |
| | ) | |
| ANTHONY MITCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 20-cv-3119 |
| v. | ) | |
| | ) | Judge Lefkow |
| ROBERT BARTIK, et al., | ) | |
| | ) | Jury Trial Demanded |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF
CITY DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. iii

BACKGROUND ............................................................................................................. 2

ARGUMENT .................................................................................................................. 8

I.     Plaintiffs' Complaints Fail To Give The Individual City Defendants Fair Notice Of The Allegations Against Them.......................................... 9

II.    Plaintiffs' *Monell* Claims Cannot Survive. ........................................... 13

III.   Plaintiffs' Due Process Claims (Count II) Fail As A Matter Of Law. .................. 14

IV.   Plaintiffs' Fourth Amendment Claims (Count III) Should Be Dismissed As Untimely. ............................................................................ 19

V.    The Court Should Dismiss Plaintiffs' "Wrongful Conviction" Due Process Claims (Count IV) As A Matter Of Law. ...................................... 22

VI.   The Court Should Dismiss Plaintiffs' "Involuntary Servitude" Claims Brought Pursuant To The Thirteenth Amendment. .......................... 23

VII.   Plaintiffs' Failure To Intervene Claims (Count VII) Cannot Survive. ............ 25

VIII.   The Court Should Dismiss Plaintiffs' Conspiracy Claims (Counts VII And XI). ......................................................................................... 26

      A.      Plaintiffs' Federal Law Conspiracy Claims Fail. ......................... 26

      B.      Plaintiffs' State Law Conspiracy Claims Fail. .............................. 28

IX.   The State Law Claims Of Malicious Prosecution, IIED, And Conspiracy Should Be Dismissed Under The *Hudson* Doctrine. .............. 30

X.    Plaintiffs' Lack Of Innocence Bars Their State Law Malicious Prosecution Claims. ............................................................................... 33

      A.      The Complaints' Allegations Regarding the Necessary Element of Commencement and Continuation Are Legally Deficient. ................................................................................ 33

i

B.    The Dismissal of Charges via Nolle Is Not Indicative of Innocence. ........................................................................................................ 34

XI.   Plaintiffs' Claims For Intentional Infliction Of Emotional Distress ("IIED") Are Time Barred ................................................................................ 35

XII.   Plaintiffs' Respondeat Superior And Indemnification Claims Should Be Dismissed. ........................................................................................ 36

CONCLUSION ........................................................................................................ 36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alam v. Miller Brewing Co.,*
   709 F.3d 662 (7th Cir. 2013) ...................................................................................... 9

*Alejo v. Heller,*
   328 F.3d 930 (7th Cir. 2003) .................................................................................... 10

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .................................................................................................... 8

*Atkins v. Hasan,*
   2015 U.S. Dist. LEXIS 80176 (N.D. Ill. June 22, 2015) ................................... 9, 11

*Avery v. City of Milwaukee,*
   847 F.3d 433 (7th Cir. 2017) .................................................................................... 16

*Hutchinson ex rel. Baker v. Spink,*
   126 F.3d 895 (7th Cir. 1997) .................................................................................... 24

*Bank of Am., N.A. v. Knight,*
   725 F.3d 815 (7th Cir. 2013) .................................................................................... 10

*Batchelor v. City of Chi.,*
   2020 U.S. Dist. LEXIS (N.D. Ill. Jan. 31, 2020) ................................................... 36

*Beaman v. Freesmeyer,*
   2019 IL 122654, 131 N.E.3d 488 ............................................................................ 33

*Beaman v. Souk,*
   2011 U.S. Dist. LEXIS 21194 (C.D. Ill. Mar. 2, 2011) ......................................... 25

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................. 8, 16, 23, 28

*Bridewell v. Eberle,*
   730 F.3d. 672 (7th Cir. 2013) .................................................................................. 35

*Brooks v. Ross,*
   578 F.3d 574 (7th Cir. 2009) ............................................................................. 10, 11

iii

*Brown v. City of Chi.*,
    2019 U.S. Dist. LEXIS 174760 (N.D. Ill. Oct. 8, 2019) .......................................................... 21

*Brown v. City of Chi.*
    771 F.3d 413 (7th Cir. 2014) ............................................................................................. 32

*Buckley v. Fitzsimmons*,
    20 F.3d 789 (7th Cir. 1994) ............................................................................................... 14

*Carter v. Dolan*,
    2009 U.S. Dist. LEXIS 53735 (N.D. Ill. June 25, 2009) ........................................................ 11

*Cenco Inc. v. Seidman & Seidman*,
    686 F.2d 449 (7th Cir. 1982) ............................................................................................. 29

*Chartwell Studio, Inc. v. Team Impressions, Inc.*,
    2020 U.S. Dist. LEXIS 126748 (N.D. Ill. July 20, 2020) ....................................................... 30

*Choyce v. Friar*,
    2008 U.S. Dist. LEXIS 48343 (N.D. Ill. June 24, 2008) .......................................................... 9

*City of Los Angeles v. Heller*,
    475 U.S. 796 (1986) .......................................................................................................... 13

*Clark & Leland Condo., L.L.C. v. Northside Cmty. Bank*,
    110 F. Supp. 3d 866, 868 (N.D. Ill. 2015) ............................................................................ 6

*Colbert v. City of Chi.*,
    851 F.3d 649 (7th Cir. 2017) ............................................................................................. 10

*Coleman v. City of Peoria*,
    925 F.3d 336 (7th Cir. 2019) ............................................................................................. 14

*Dickman v. Cook Cty. State's Attorney*,
    2018 U.S. Dist. LEXIS 43043 (N.D. Ill. Mar. 16, 2018) ........................................................ 28

*Durkin v. City of Chi.*,
    341 F.3d 606 (7th Cir. 2003) ............................................................................................. 14

*Evans ex rel. Evans v. Lederle Labs.*,
    167 F.3d 1106 (7th Cir. 1999) ............................................................................................ 33

*Facebook, Inc. v. Teachbook.com LLC*,
    819 F. Supp. 2d 764 (N.D. Ill. 2011) .................................................................................... 3

iv

*Fields v. Wharrie*,
    740 F.3d 1107 (7th Cir. 2014) ................................................................................. 15

*Gauger v. Hendle*,
    349 F.3d 354 (7th Cir. 2003), *overruled in part on other grounds*, *Wallace v.*
    *City of Chi.*, 440 F.3d 421 (7th Cir. 2006) ............................................................. 17

*Gibbs v. Vill. of Flossmoor*,
    2014 U.S. Dist. LEXIS 49414 (N.D. Ill. Apr. 10, 2014) ....................................... 36

*Green v. Florez*,
    2018 U.S. Dist. LEXIS 195412 (N.D. Ill. Nov. 16, 2018) ..................................... 17

*Haliw v. City of South Elgin*,
    2020 U.S. Dist. LEXIS 47329 (N.D. Ill. Mar. 18, 2020) .................................. 26, 27

*Harper v. Albert*,
    400 F.3d 1052 (7th Cir. 2005) ................................................................................. 25

*Harris v. Kuba*,
    486 F.3d 1010 (7th Cir. 2007) ................................................................................. 17

*Heidelberg v. Manias*,
    2019 U.S. Dist. LEXIS 173695 (C.D. Ill. Mar. 26, 2019) ..................................... 24

*Hildebrandt v. Ill. Dep't of Natural Res.*,
    347 F.3d 1014 (7th Cir. 2003) ................................................................................. 10

*Hudson v. City of Chi.*,
    228 Ill. 2d 462 (2008) ................................................................................. 30, 31, 32

*King v. East St. Louis Sch. Dist. 189*,
    496 F.3d 812 (7th Cir. 2007) ................................................................................... 13

*Knox v. Curtis*,
    771 F. App'x 656 (7th Cir. 2019) ....................................................................... 20, 21

*Kuhn v. Goodlow*,
    678 F.3d 552 (7th Cir. 2012) ................................................................................... 10

*Lattimore v. Vill. of Streamwood*,
    2018 U.S. Dist. LEXIS 79706 (N.D. Ill. May 11, 2018) ........................................ 11

*Lewis v. City of Chicago*
    914 F.3d 472 (7th Cir. 2019) ................................................................................... 20

*Liera v. City of Chi.,*
2014 U.S. Dist. LEXIS 190571 (N.D. Ill. Aug. 5, 2014)...................................................11, 18

*Linkepic Inc. v. Vyasil, LLC,*
370 F. Supp. 3d 906, 926 (N.D. Ill. 2019)...........................................................................30

*Logan v. Caterpillar, Inc.,*
246 F.3d 912 (7th Cir. 2001)..............................................................................................33

*Lund v. City of Rockford,*
956 F.3d 938 (7th Cir. 2020)..............................................................................................34

*Manuel v. City of Joliet,*
137 S. Ct. 911 (2017) (*Manuel I*)..................................................................................19, 20

*Manuel v. City of Joliet,*
903 F.3d 667 (7th Cir. 2018) (*Manuell II*).........................................................................21

*Miles v. McNamara,*
2014 U.S. Dist. LEXIS 31398 (N.D. Ill. Mar. 11, 2014).........................................................23

*Mission Measurement Corp. v. Blackbaud, Inc.,*
287 F. Supp. 3d 691, 725-26 (N.D. Ill. 2017) ................................................................29, 30

*Monell v. Dep't of Soc. Servs.,*
436 U.S. 658 (1978)...............................................................................................7, 13, 14

*Moore v. City of Chi.,*
2020 U.S. Dist. LEXIS 101340 (N.D. Ill. June 10, 2020) .......................................................30

*Murphy v. City of Chi.,*
2015 U.S. Dist. LEXIS 49357 (N.D. Ill. Apr. 15, 2015) .........................................................30

*Patrick v. City of Chi.,*
__ F.3d __, 2020 U.S. App. LEXIS 28320 (7th Cir. Sept. 8 2020) ......................................17

*Patterson v. Dorrough,*
2012 U.S. Dist. LEXIS 155642 (N.D. Ill. Oct. 31, 2012) .......................................................29

*People of the State of Illinois v. John Fulton and Anthony Mitchell,*
Nos. 03-CR-08607-01 and 03-CR-08607-02 (Cook County Cir. Ct.) ........................ *passim*

*Perrault v. Wisconsin,*
2016 U.S. Dist. LEXIS 2838 (E.D. Wis. Jan. 11, 2016) ........................................................24

*Petty v. City of Chi.,*
    754 F.3d 416 (7th Cir. 2014) ........................................................................................15, 16

*Rascon v. Hardiman,*
    803 F.2d 269 (7th Cir. 1986) ..............................................................................................10

*Richards v. Mitcheff,*
    696 F.3d 635 (7th Cir. 2012) ................................................................................................8

*Sanders v. St. Joseph, Indiana,*
    806 F. App'x 481 (7th Cir. 2020) ......................................................................................21

*Serino v. Hensley,*
    735 F.3d 588 (7th Cir. 2013) ..............................................................................................36

*Smith v. Vill. of Dolton,*
    2010 U.S. Dist. LEXIS 17458 (N.D. Ill. Feb. 25, 2010) ....................................................9

*Sornberger v. City of Knoxville,*
    434 F.3d 1006 (7th Cir. 2006) ............................................................................................17

*Spencer v. Vill. of Arlington Heights,*
    2020 U.S. Dist. LEXIS 134895 (N.D. Ill. July 30, 2020) ..................................................21

*Swick v. Liautaud,*
    169 Ill.2d 504, 662 N.E.2d 1238 (1996) ......................................................................33, 34

*Taylor v. City of Chi.,*
    80 F. Supp. 3d 817, 826 (N.D. Ill. 2015) ..........................................................................16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007) ..............................................................................................................6

*Twin City Fire Ins. Co. v. Law Office of John S. Xydakis, P.C.,*
    407 F. Supp. 3d 771, 775-776 (N.D. Ill. 2019) ..................................................................6

*United States v. Earnest,*
    129 F.3d 906 (7th Cir. 1997) ..............................................................................................18

*United States v. Hook,*
    471 F.3d 766 (7th Cir. 2006) ..............................................................................................24

*United States v. Kozminski,*
    487 U.S. 931 (1988) ............................................................................................................23

*Wallace v. Kato*,
    549 U.S. 384 (2007) ........................................................................................19, 21

*Washington v. Dart*,
    2013 U.S. Dist. LEXIS 80019 (N.D. Ill. June 6, 2013) ........................................23

*Whitlock v. Brueggemann*,
    682 F.3d 567 (7th Cir. 2012) ................................................................................15

*Williams v. Rodriguez*,
    509 F.3d 392 (7th Cir. 2007) ................................................................................36

*WolfLillie v. Sonquist*,
    699 F.2d 864 (7th Cir. 1983) ................................................................................10

**Statutes**

735 ILCS 5/13–217 ...........................................................................................................32

735 ILCS 5/13-202 ...........................................................................................................19

735 ILCS 5/13-217 ...........................................................................................................31

745 ILCS 10/2-109 (2010) ...............................................................................................36

Local Governmental & Governmental Employees Tort Immunity Act. 745
    ILCS 10/8-101 (West 2014) ................................................................................35

**Other Authorities**

U.S. Const. amend. IV .................................................................................7, 19, 20, 21, 22

U.S. Const. amend. V .........................................................................................................7

U.S. Const. amend. VI .....................................................................................................35

U.S. Const. amend. XIII ........................................................................................7, 23, 24

U.S. Const. amend. XIV ......................................................................................7, 14, 19, 20

Fed. R. Civ. P. 8 ................................................................................................................

Fed. R. Civ. P. 8(a)(2) ...................................................................................................8, 13

Fed. R. Civ. P. 12 ..........................................................................................................6, 16

Fed. R. Civ. P. 12(b)(6) .............................................................................................. *passim*

42 U.S.C. § 1983 ........................................................................................................... *passim*

42 U.S.C. § 1985 .................................................................................................................... 27

This Court should dismiss under Rule 12(b)(6) the federal civil rights and state law claims brought by Plaintiffs John Fulton and Anthony Mitchell against the City of Chicago and individual current and former members of the Chicago Police Department. This case arises from the March 2003 murder of Christopher Collazo, whose body was discovered bound with duct tape and partially burned in an alley. Chicago police officers investigating the homicide interviewed Johnitta Griffin, a friend of Fulton who told police that Fulton murdered Collazo in an act of revenge because Collazo robbed him at gunpoint a month earlier. Police arrested Fulton, who then confessed to committing the murder and implicated Mitchell as an accomplice. Police then arrested Mitchell, who likewise confessed to participating in the crime.

In 2006, Plaintiffs were tried and convicted for murder, and sentenced to 31 years in prison.

In February 2019, a Cook County Circuit Court Judge vacated the convictions on the ground the jury did not hear evidence regarding a camera and functioning swipe key-fob at the rear door of Fulton's residence that may have supported an alibi defense. But despite Plaintiffs repeated declarations of innocence, their convictions were vacated without any "conclusions regarding the[ir] guilt or innocence." And although prosecutors chose not to re-try Plaintiffs, the state court *denied* their petitions for a certificate of innocence.

Plaintiffs have now filed this suit for damages to compensate them for alleged constitutional and state law violations arising from their arrests and incarceration,

1

claims arising from (i) a crime to which Plaintiffs confessed; (ii) a crime in which Plaintiffs had an undisputed motive; (iii) an investigation supported by probable cause for the arrests, as determined by the Illinois Appellate Court; and (iv) Plaintiffs' failed efforts to garner certifications of innocence. As demonstrated below, their complaint is rife with fatal defects that warrant dismissal at the pleading stage pursuant to Fed. R. Civ. P. 12(b)(6).[1]

## BACKGROUND[2]

Around 3:00 a.m. on March 10, 2003, a man called 911 to report an alley fire in the 5200 block of South Peoria Street. (Fulton/Mitchell Compls. ¶¶ 18, 20.)[3] Police officers arrived at the scene and found the burned body of Christopher Collazo. (*Id.* ¶ 18). The officers interviewed the 911-caller, a neighborhood resident named Sid Taylor, who explained that he looked out his window and saw a fire in the alley with two men near the fire. (*Id.* ¶¶ 20-21.)

---

[1] This motion is brought on behalf of the City and Defendants Robert Bartik, John Zalatoris, James Breen, Edward Winstead, Joseph Struck, Michael Kennedy, Michael Schmitz, Brian Skora, Detective Aguirre, Leonard Rolston, Stephen Franco, and Robert Girardi ("Individual City Defendants") (collectively "City Defendants"). Defendant Richard Cervenka (deceased) has not been served nor waived service and therefore is not a movant. Nevertheless, the arguments raised in this motion apply to all Individual City Defendants, including Cervenka.

[2] For the purposes of this motion only, City Defendants take as true Plaintiffs' well-pleaded allegations in the Complaints. The alleged "facts" are not admitted.

[3] This motion will refer to Fulton's and Mitchell's Complaints as "Compls." for purposes of brevity and because their facts and allegations are mirrored.

Later on March 10th, the officers interviewed Collazo's friend, Marcus Marinelli. (*Id.* ¶ 22.) Collazo and Marinelli were both active in the Maniac Latin Disciples street gang. (*Id.* ¶ 24.) Marinelli last saw Collazo at 9:00 p.m. on March 9th, a few hours prior to the discovery of his body. (*Id.* ¶ 25.) Marinelli told the officers that he and Collazo robbed a black teenager at gunpoint a month earlier, after Johnitta Griffin referred the black teenager to Collazo to purchase a gun. (*Id.*).

The officers proceeded to interview Griffin, who admitted that she introduced Fulton to Collazo to purchase a gun but denied any knowledge of Collazo's killing. (*Id.* ¶¶ 26-27.) During her next interview with the officers, Griffin confirmed that Fulton demanded that she help him get revenge on Collazo for the gun robbery. (*Id.* ¶ 35.) Griffin gave a handwritten statement to this effect to Assistant State's Attorney Jake Rubenstein, and then provided a substantially similar sworn statement to ASA Sandra Navaro before a grand jury. (*See* Ex. A, 9/23/10 Order of the Illinois Court of Appeals in *State of Illinois v. John Fulton*, at 8-9.)[4]

----

[4] The Court may take judicial notice of this appellate court order and other prior court proceedings. Indeed, in the context of a motion to dismiss, a court may properly take judicial notice of a prior court record if its application to the current proceeding is beyond reasonable dispute and is either generally known within the territorial jurisdiction of the trial court, or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *Facebook, Inc. v. Teachbook.com LLC*, 819 F. Supp. 2d 764, 771 (N.D. Ill. 2011). "Matters of public record, such as the contents of court records, can fall within this narrow category of judicially noticeable facts," if the "application of [t]he previous finding to [the] latter proceeding [is] beyond a reasonable dispute." *Id.* at 771-72 (quoting *Gen. Elec. Capital Corp. v. Lease Resolution eCorp.*, 128 F.3d 1074, 1083 (7th Cir. 1997)).

At trial, Griffin testified she orchestrated a gun deal between Fulton and Collazo but "either recanted, or testified she did not recall those portions of her statements to both ASA Jake Rubinstein and the grand jury, in which . . . she told [Fulton] what buses [Collazo] would be taking there, what [Collazo] might be wearing, and that he had a graphic cut in his hair." (*Id.* at 20.) The Illinois Court of Appeals ruled that the accounts of Marinelli and Griffin about Fulton being robbed by Collazo in connection with a gun deal gone wrong was sufficient to establish probable cause for Fulton's arrest. (*Id.* at 26.)

On March 18, 2003, officers arrested Fulton at his home. (Compls. ¶ 36.) Fulton admitted to police that Griffin put him in touch with Collazo to purchase a gun. (*Id.* ¶ 39.) Fulton admitted further that he, along with Mitchell and another friend named Antonio Shaw, went to meet Collazo and Marinelli to purchase a gun, and that he was robbed at gunpoint during this meeting. (*Id.*)

Fulton initially denied killing Collazo, and contends today that he took his girlfriend to the hospital and then went home at the time of the murder. (*Id.* ¶ 41.) During his interrogation, however, Fulton confessed to the killing and implicated Mitchell and Shaw as individuals who assisted. (*Id.* ¶¶ 41, 46.) Fulton stated that he, Mitchell, and Shaw had severely beaten Collazo and placed him in the trunk of Fulton's car. (*Id.* ¶ 50.) Fulton's confession was memorialized by prosecutors Judge and Rubenstein. (*Id.* ¶ 46.) The Complaints allege that "Defendants knew the confession was false" because "they did not seek to have [Fulton's] car tested for Collazo's blood or DNA." (*Id.*) They allege further that Defendant Bartik fabricated a similar statement and attributed this statement to Fulton. (*Id.* ¶¶ 51-52.)

4

On March 19, 2003, officers arrested Mitchell. (*Id.* ¶ 60.) Mitchell ultimately provided a confession that was consistent with Fulton's. (*Id.* ¶ 66.) The Complaints acknowledge this confession was provided to a prosecutor (*id.* ¶ 63), but characterize the confession as "false" and attributable to "psychological coercion" (*id.* ¶¶ 60-66). Officers proceeded to arrest and interrogate Shaw. (*Id.* ¶ 69). Shaw's confession was consistent with those of Fulton and Mitchell by admitting his involvement in Collazo's murder. (*Id.* ¶ 71.)

In 2006, Plaintiffs were tried for the Collazo murder. (*Id.* ¶ 88.) The jury heard evidence of their confessions and the testimony of Griffin, but not Shaw's confession, which was suppressed. (*Id.* ¶¶ 91-92.) Fulton presented alibi evidence suggesting he was in his apartment at the time of the murder, which Mitchell relied upon by extension in light of the prosecution's theory that they committed the murder together. (*Id.* ¶ 78.) The prosecution rebutted Fulton's alibi by arguing that Fulton evaded the cameras in his building by sneaking out the back door. (*Id.* ¶ 81.) The prosecution relied on allegedly fabricated photographs taken by Defendant Cook County State's Attorney Investigator Shepard, which purported to show there was no video camera on the back door of Fulton's building. (*Id.* ¶¶ 83-84.) Upon reviewing the evidence at trial, the jury found both Plaintiffs guilty of Collazo's murder, and they were each sentenced to 31 years in prison. (*Id.* ¶¶ 96-97.)

In February 2019, Cook County Circuit Court Judge Lawrence Flood vacated Plaintiffs' convictions and ordered a new trial. (*Id.* ¶ 100.) Plaintiffs allege that Judge Flood vacated the convictions based on new evidence of their innocence and in

recognition that constitutional violation had tainted their trials. (*Id.*) But the actual order says otherwise:

> What is clear after reviewing the pleadings, exhibits, and testimony is that the jury did not receive evidence regarding whether or not there was a functioning camera in the rear entrance of John Fulton's building, nor did the jury hear about the swipe fob near the rear door. . . Whether you want to title this lack of disclosure as a Brady violation or ineffective assistance of counsel, the end result is the same as far as the petitioners are concerned. The information provided by the testimony during the course of the hearing and the exhibits entered into evidence should have been tendered for discovery by defense counsel through pretrial investigation or disclosure. It was relevant information that the jury should have been presented and considered in determining the outcome of the case. The State was correct in their summation when they stated that the Court was not the 13th juror in this case. In my ruling, ***I draw no conclusions regarding the guilt or innocence of the petitioners***. What I do find, is that because the evidence surrounding the camera and the fob was not heard by the jury, the petitioners were prejudiced and did not receive a fair trial. Therefore, I'm vacating the petitioners' convictions and ordering a new trial for both petitioners.

(Ex. B, 2/19/19 Tr. at 2-3 (emphasis added).[5]

---

[5] The Court may take judicial notice of this ruling without converting this Rule 12 motion into one for summary judgment because it is referenced in the Complaints. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (documents that a defendant attaches to a motion to dismiss may be considered if such documents are incorporated into the complaint by reference or are matters of which a court may take judicial notice and are central to the plaintiff's claim); *Twin City Fire Ins. Co. v. Law Office of John S. Xydakis, P.C.*, 407 F. Supp. 3d 771, 775-776 (N.D. Ill. 2019) (court takes judicial notice of documents filed with the state court in cases that formed the basis for the claims) (citing *Collins v. Vill. of Palatine*, 875 F.3d 839, 842 (7th Cir. 2017) ("judicial notice of public court documents is appropriate when ruling on a Rule 12(b)(6) motion to dismiss")). Moreover, the Court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Clark & Leland Condo., L.L.C. v. Northside Cmty. Bank*, 110 F. Supp. 3d 866, 868 (N.D. Ill. 2015).

After this ruling, the State agreed to *nolle prosequi* the case and the charges against Plaintiffs were not retried. (Ex. C, Excerpts of Docket Sheets, *People of the State of Illinois v. John Fulton and Anthony Mitchell*, Nos. 03-CR-08607-01 and 03-CR-08607-02 (Cook County Cir. Ct. Jun. 10 & 11, 2020).)

Subsequently, Plaintiffs filed petitions for certificates of innocence, and on February 21, 2020, Chief Judge Leroy K. Martin, Jr. denied the petitions, ruling as follows:

> In large part, that rests upon my belief that Mr. Mitchell gave a credible statement. I looked at the -- I looked at that statement, I looked at Mr. Mitchell give that statement, and while we can argue about some of the details of that statement, it appears to me, through his demeanor; his coolness; his -- the way he -- he spoke and the way he was able to fill in certain details, it convinced me of the truthfulness of at least what I consider to be very important parts of that statement.

(*See* Ex. D, 2/21/20 Tr. at 6-7.)

Plaintiffs filed civil Complaints on May 27, 2020, against the City, various current, former, and deceased members of the Chicago Police Department, various Cook County State's Attorneys, and Cook County. The Complaints allege the same fact pattern, and include the same thirteen counts: (I) § 1983 – False Confession (Fifth and Fourteenth Amendments); (II) § 1983 – Fabrication of False Witness Statements (Fourteenth Amendment); (III) § 1983 –Deprivation of Liberty without Probable Cause (Fourth and Fourteenth Amendments); (IV) § 1983 – Due Process, Wrongful Conviction & Illegal Confinement (Fourteenth Amendment); (V) § 1983 – Involuntary Servitude (Thirteenth Amendment); (VI) § 1983 – Failure to Intervene; (VII) § 1983 – Conspiracy to Deprive Constitutional Rights; (VIII) § 1983 – *Monell* claim; (IX) State Law Claim –

Malicious Prosecution; (X) State Law Claim – Intentional Infliction of Emotional Distress; (XI) State Law Claim – Civil Conspiracy; (XII) State Law Claim – *Respondeat Superior*; and (XIII) State Law Claim – Indemnification.

For the reasons described below, the Complaints should be dismissed.

## ARGUMENT

"A motion under Federal Rule of Civil Procedure 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by

8

mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

## I.    Plaintiffs' Complaints Fail To Give The Individual City Defendants Fair Notice Of The Allegations Against Them.

Plaintiffs' Complaints repeatedly and inappropriately group various Individual City Defendants together without differentiation or explanation as to what each person did or did not do, how they were involved in the purported actions giving rise to civil liability, or what they are being thrust into this suit to defend against. This leaves the Individual City Defendants in the dark as to what allegations they are actually facing.

Group pleading of this nature is insufficient to state a plausible claim for relief because it does not establish that a specific defendant engaged in conduct that violated the plaintiff's rights. *See Atkins v. Hasan*, 2015 U.S. Dist. LEXIS 80176, at *9 (N.D. Ill. June 22, 2015) (citing *Brooks*, 578 F.3d at 580 (noting complaints stating "one or more of the Defendants" has engaged in certain conduct "does not adequately connect specific defendants to illegal acts")); *Smith v. Vill. of Dolton*, 2010 U.S. Dist. LEXIS 17458, at *6-7 (N.D. Ill. Feb. 25, 2010) (dismissing action for failing to intervene, concluding allegation that "one or more of the Defendant Officers" failed to intervene failed to put any of the defendants on notice as to whether they are the target of plaintiff's allegations); *Choyce v. Friar*,  2008 U.S. Dist. LEXIS 48343, at *10 (N.D. Ill. June 24, 2008) ("the identities of the actual officers that were plausibly involved in [plaintiff's] claims is a necessary fact that must be pled in order to properly put these individual Defendants on notice of the claims brought against them").

Group pleading fails not only because of the Supreme Court's pleading standard, but also because Plaintiffs' federal claims are brought pursuant to Section 1983. It is well-established that liability under Section 1983 does not attach unless an *individual defendant* caused or participated in a constitutional deprivation. *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012); *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003). In other words, a defendant is only liable under Section 1983 if he or she was personally involved in the alleged constitutional violation. *Colbert v. City of Chi.*, 851 F.3d 649, 657 (7th Cir. 2017) (individual liability under 42 U.S.C. § 1983 "requires personal involvement in the alleged constitutional deprivation."); *Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003) ("A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions"); *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986) ("an *individual* cannot be held liable in a Section 1983 action unless he caused or participated in an alleged constitutional deprivation") (emphasis in original) (internal quotation marks omitted); *WolfLillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based upon personal liability and predicated upon fault."). "Liability is personal" and "each defendant is entitled to know what he or she did that is asserted to be wrongful." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). A complaint based on a theory of collective responsibility must be dismissed." *Id.*

In *Brooks v. Rossi*, 578 F.3d 574, 580 (7th Cir. 2009), the Seventh Circuit affirmed the district court's dismissal of a Section 1983 claim where plaintiff alleged that "one or more of the defendants" engaged in conduct that deprived him of his constitutional

rights. The court reasoned that the complaint did not adequately connect specific defendants to the alleged illegal acts set forth in the complaint. *Id*. That reasoning has been applied to pleadings similar to Plaintiffs' Complaints here. *See Lattimore v. Vill. of Streamwood*, 2018 U.S. Dist. LEXIS 79706, at *9 (N.D. Ill. May 11, 2018) (plaintiffs repeated allegations against five individuals identified as "Responding Officers" and eight individual "Defendant Officers" falls short of stating a plausible claim for relief); *Atkins*, 2015 U.S. Dist. LEXIS 80176, at *7-10 (dismissing claims for direct and supervisory liability where "plaintiffs merely refer to 'the defendants,' collectively— which does not provide to each defendant sufficient notice of what he or she purportedly did wrong."); *Liera v. City of Chi.*, 2014 U.S. Dist. LEXIS 190571, at *8 (N.D. Ill. Aug. 5, 2014) (granting motion to dismiss claims made against group of officers "without alleging which officers were at which location or which officers participated in the alleged wrongful conduct"); *Carter v. Dolan*, 2009 U.S. Dist. LEXIS 53735, at *9-10 (N.D. Ill. June 25, 2009) ("A complaint that refers to multiple police officer defendants collectively as 'officer defendants' in each of the factual allegations does not provide each defendant officer with sufficient notice of the wrongdoing alleged").

Throughout the Complaints, Plaintiffs level allegations against "the Police Officer Defendants" but provide little or no differentiation or explanation as to the personal involvement of each individual sued. Plaintiffs' vague group pleadings are illustrative throughout the Complaints. (*See, e.g.,* Compls. ¶ 32 ("[t]o frame Plaintiff, Mitchell, and Shaw, Police Officer Defendants re-interviewed Griffin. Through threats and intimidation, and by feeding her a false narrative that they had concocted,

11

Defendants coerced Griffin into falsely implicating Plaintiff in Collazo's murder."); *id.* ¶ 33 ("Police Officer Defendants arranged for and conspired with Defendant Assistant State's Attorney Rubenstein to record a false statement from Griffin."); *id.* ¶ 34 ("Police Officer Defendants concealed their fabrication of Griffin's statement from the Prosecutor Defendants"); *id.* ¶ 46 ("Police Officer Defendants arranged for and conspired with Defendants Assistant State's Attorney Judge and Rubinstein to coerce Plaintiff's false confession and false statements").) Indeed, the Complaints repeatedly reference "Police Officer Defendants" and "Defendants" without any explanation or clarity regarding which particular individual is being accused or the conduct about which any specific individual is accused.

As a result, the Individual City Defendants are left to speculate as to whether they are all alleged to have been involved with every aspect of the events Plaintiffs complain of, only a portion, or none of it. These deficiencies are compounded considering Plaintiffs include "unknown law enforcement officers" in their definition of "Police Officer Defendants." This deficiency is particularly egregious with respect to Defendants Girardi, Aguirre and S. Franco, who are not referenced ***anywhere*** in the Complaints other than the case caption, the wherefore clause, and a reference to the mere fact that they were police officers. (*See* Compls. ¶ 11.) Similarly, the only reference to Defendants Cervenka (who is now deceased) and Kennedy outside of the caption and wherefore clause is the fact that they happened to be police supervisors. (*Id.* ¶¶ 11-12.)

12

The allegations within the Complaints simply fail to adequately connect specific acts to specific Individual City Defendants. While that may be sufficient pleading when based upon specific facts in a discrete incident, that is not the case here. This is especially problematic as to Plaintiffs' failure to intervene claims, where it is impossible for Individual City Defendants to discern what unspecified actions others are alleged to have taken and how each defendant allegedly had an opportunity to intervene.

Thus, in the end, the Complaints should be dismissed under Rules 8(a) and 12(b)(6), and under the personal involvement requirement of Section 1983 because the pleadings fail to adequately identify a plausible prospect of relief as to each Individual City Defendant.

## II. Plaintiffs' *Monell* Claims Cannot Survive.

A municipality may be held liable only for its own constitutional violations, as distinguished from the misconduct of its employees. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). In order for Plaintiffs to establish a *Monell* claim, they must prove that (1) they suffered a deprivation of their civil rights; (2) the municipality has an unconstitutional policy; and (3) the municipality's unconstitutional policy caused the plaintiffs' constitutional injuries. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

Therefore, to the extent this Court dismisses Plaintiffs' underlying federal claims against the Individual City Defendants, such a determination would necessarily dispose of Plaintiffs' *Monell* claims. *Id.*; *King v. East St. Louis Sch. Dist. 189*, 496 F.3d 812, 817 (7th Cir. 2007) ("It is well established that there can be no municipal liability based on an

official policy under *Monell* if the policy did not result in a violation of [a plaintiff's] constitutional rights"); *Durkin v. City of Chi.*, 341 F.3d 606, 615 (7th Cir. 2003).

### III.  Plaintiffs' Due Process Claims (Count II) Fail As A Matter Of Law.

The Court should dismiss with prejudice Plaintiffs' "Fabrication of Evidence" claims brought pursuant to the Fourteenth Amendment as Count II of the Complaints. According to the Complaints, Defendants deprived them of their "constitutional right to a fair trial and due process by fabricating witness statements implicating Plaintiff[s] in crimes [they] did not commit, which Defendants knew to be false, and by suppressing their own misconduct and the circumstances in which these witness statements were obtained." (Compls. ¶ 146.) Each plaintiff alleges "specifically" that "Defendants used physical violence and psychological abuse to obtain false witness statements" from the other plaintiff, Griffin, and Shaw to implicate him in Colazzo's murder. (*Id.* ¶ 147.) Thus, the Complaints make clear that the alleged fabrication of evidence claims arise from alleged coercion.

These claims are not legally cognizable. Indeed, it is well-settled that the use of coercive interrogation techniques on a witness is insufficient to support a claim for fabrication of evidence. *Coleman v. City of Peoria*, 925 F.3d 336, 346 (7th Cir. 2019) (citing *Avery v. City of Milwaukee*, 847 F.3d 433, 439 (7th Cir. 2017) ("[A] claim that an officer coerced a witness to give incriminating evidence does not, at least standing alone, violate the wrongly convicted person's due-process rights.")). This is because the person aggrieved when a witness is coerced to speak is the witness, not the criminal defendant. *See Buckley v. Fitzsimmons*, 20 F.3d 789, 794 (7th Cir. 1994). As explained by

14

the Seventh Circuit, "[c]oercively interrogating witnesses . . . may be deplorable, and

these tactics may contribute to wrongful convictions, but they do not necessarily add up

to a constitutional violation even when their fruits are introduced at trial," because

"[e]vidence collected with these kind of suspect techniques, unlike falsified evidence

and perjured testimony, may turn out to be true." *Whitlock v. Brueggemann*, 682 F.3d 567,

584 (7th Cir. 2012). Thus, coerced testimony "may be true or false" while fabricated

testimony is "made up" and therefore "invariably false." *Fields v. Wharrie*, 740 F.3d 1107,

1110 (7th Cir. 2014).

Here, the express allegations in the Complaints make clear that Plaintiffs' due

process claims are about witness ***coercion***, not fabrication of evidence, and thus cannot

form the basis of a cognizable due process claim. Again, the Complaints allege that

"Defendants used physical violence and psychological abuse to obtain false witness

statements," which is plainly a claim arising from coercion and not fabrication. (*Id.*

¶ 147.) Moreover, when read as a whole, the Complaints allege that defendants coerced

witnesses who, in response, allegedly falsely implicated each Plaintiff.  Thus, the Court

should dismiss these claims with prejudice.

The fact that Plaintiffs style these claims as "fabrication of evidence" is of no

consequence. *See Petty v. City of Chi.*, 754 F.3d 416, 422-23 (7th Cir. 2014). In *Petty*, the

plaintiff lodged a due process claim for fabrication of evidence, alleging that police

offers coerced a witness to identify him as one of the assailants through threats of jail

time, withholding food and water, badgering, and pressuring. *Id.* at 423. In affirming

entry of summary judgment in favor of the defendants, the court observed that even

though the plaintiff alleged fabrication of evidence and used terms such as

"manufactured false evidence" and "false identification . . . it is clear that his case is a

coercion case." *Id.*; *see also Avery*, 847 F.3d at 439 ("What's relevant is not the label on the

claim, but whether 'the officers created evidence that they knew to be false'") (quoting

*Petty*, 754 F.3d at 423). Thus, even though Plaintiffs here style their due process claim as

one for "fabrication of evidence," the claim is expressly and substantively tied to

coercion, not fabrication, and therefore fails to state a plausible claim under Rule

12(b)(6). *See Taylor v. City of Chi.*, 80 F. Supp. 3d 817, 826 (N.D. Ill. 2015) (dismissing

under Rule 12 due process fabrication of evidence claim premised on coercion).

Notwithstanding the Complaints' express linkage of the due process claim to

coercion, Plaintiffs may argue that the Court should permit their fabrication claim to

proceed because the Complaints use of the terms "fabricating witnesses statements . . .

which Defendants knew to be false." (Compls. ¶ 146.) But this is not magic language

and the allegation is entirely conclusory, with no factual predicate that would provide

facial plausibility as required by Fed. R. Civ. P. 8(a). *See Twombly*, 550 U.S. at 555-57

(complaint must be based on more than labels and conclusions; instead, a plaintiff's

factual allegations must plausibly suggest entitlement to relief). Likely in order to avoid

the holding of *Petty*, the Complaints assert that "Defendants knew the confession was

false" because "they did not seek to have Plaintiff's car tested for Collazo's blood or

DNA." (*Id.*) But this allegation does not save the fabrication claim from dismissal

because the absence of DNA results in no way demonstrates that the Individual City

Defendants manufactured or fed the confessions and knew they were false. And the

16

Complaints do not otherwise allege facts to render plausible that the Individual City Defendants falsified the statements or otherwise fabricated evidence with respect to any of the witness statements that were used to convict each Plaintiff.

Finally, to the extent Plaintiffs rely on a *Brady* theory of "suppression" of misconduct surrounding these witness statements, such claims also fail as a matter of law. (Compls. ¶ 146.) As a threshold matter, Plaintiffs cannot complain about any alleged suppression of misconduct arising from their own statements because they necessarily knew about them. *See Gauger v. Hendle*, 349 F.3d 354, 360 (7th Cir. 2003), *overruled in part on other grounds*, *Wallace v. City of Chi.*, 440 F.3d 421 (7th Cir. 2006). In *Gauger*, the court held that a detective's allegedly false account of an arrestee's interrogation was not a *Brady* violation, reasoning "the duty to disclose falls out, because [plaintiff[ knew what he had said at the interrogation." *Id.*; *see also Harris v. Kuba*, 486 F.3d 1010, 1015 (7th Cir. 2007) ("Harris' own alibi was not concealed from him and is therefore not properly a claim under *Brady*."); *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029 (7th Cir. 2006) (there is no *Brady* obligation to inform accused that her own confession was coerced).

Moreover, Plaintiffs cannot base any due process fabrication or suppression claim on the other two witnesses either. Shaw's allegedly false statement was thrown out before trial and never introduced. *See Patrick v. City of Chi.*, __ F.3d __, 2020 U.S. App. LEXIS 28320, at *24 (7th Cir. Sept. 8 2020) ("if the fabricated evidence was immaterial, it cannot be said to have caused an unconstitutional conviction and deprivation of liberty"); *Green v. Florez*, 2018 U.S. Dist. LEXIS 195412, at *6 (N.D. Ill.

Nov. 16, 2018) (in dismissing due process claim, court concluded plaintiff failed to allege facts sufficient to show that "any allegedly fabricated evidence was actually used at trial or otherwise played any role in his conviction at trial.").

And as for Griffin, Plaintiffs do not contest the portion of her statements where she told police officers, ASA Rubenstein, and the grand jury that she coordinated a gun deal between Fulton and Collazo which ended in Fulton being robbed. (Compls. ¶¶ 26-27.) Instead, the Complaints allege that Griffin actually "denied knowing of any connection between that robbery and Collazo's murder a month later." (*Id*. ¶ 28.) Even if this is assumed to be true, however, it cannot form the basis of a due process claim because these same issues surrounding Griffin's statement were fully disclosed and vetted in the context of Plaintiffs' trials. (Ex. A at 20). At trial, Griffin "either recanted, or testified she did not recall those portions of her statements to both ASA Jake Rubinstein and the grand jury, in which . . . she told [Fulton] what buses [Collazo] would be taking there, what [Collazo] might be wearing, and that he had a graphic cut in his hair." *(Id.)*

Moreover, Plaintiffs argued at their joint trial that Griffin's statement was false and coerced (Ex. E, Trial Tr. at 52-72; Ex. F, Trial Tr. at 332-33), thus there is no actionable suppression that denied them a fair trial. "When a criminal defendant has access to the information that is allegedly suppressed, his *Brady* claim fails because the defendant was able to use the information as part of his defense." *Liera v. City of Chi.*, 2014 U.S. Dist. LEXIS 190571, at *14-15 (N.D. Ill. Aug. 5, 2014) (citing *Harris v. Kuba*, 486 F.3d 1010, 1015 (7th Cir. 2007) (plaintiff failed to establish suppression where evidence at issue was not concealed from him before trial)); *United States v. Earnest*, 129 F.3d 906,

910 (7th Cir. 1997) ("Evidence is not regarded as suppressed by the government when the defendant has access to the evidence before trial by the exercise of reasonable diligence")). Here, Plaintiffs not only had access to the information that portions of Griffin's handwritten statement and grand jury testimony was allegedly untrue—they in fact used the information at trial as part of their defense. Therefore, Plaintiffs' due process claims fail as a matter of law.

## IV.    Plaintiffs' Fourth Amendment Claims (Count III) Should Be Dismissed As Untimely.

Plaintiffs allege in Count III that "Defendants caused [them] to be deprived of [their] liberty without probable cause and subjected improperly to judicial proceedings for which there was no probable cause, in violation of his rights secured by the Fourth and Fourteenth Amendments." (Compls. ¶ 153.) Because Section 1983 has no independent statute of limitations, federal courts apply the personal-injury statute of limitations for the state in which it sits. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Illinois, the statute of limitations is two years. *Id.*; 735 ILCS 5/13-202. The issue of when the cause of action accrues, however, is a matter of federal common law, law without reference to state law. *Wallace*, 549 U.S. at 388. Because a federal claim accrues when a plaintiff has a complete and present cause of action, in the context of a Fourth Amendment false arrest claim, the claim accrues when the accused is brought before a judge for judicial finding of probable cause. *Id*.

Plaintiffs' deprivation of liberty claims are based upon *Manuel v. City of Joliet*, 137 S. Ct. 911, 917 (2017) (*Manuel I*), which held that the Fourth Amendment governs claims

19

for unlawful pretrial detention even beyond the start of legal process. In *Manuel I*, the Court permitted plaintiffs to bring civil claims against police officers seeking redress for their pretrial detentions under the Fourth Amendment even after the plaintiff received a *Gerstein* hearing finding probable cause for the detention. *Id.* The Court, however, remanded the case to the Seventh Circuit to determine when such a claim accrues.

On remand, the Seventh Circuit held that a Fourth Amendment claim challenging a plaintiff's allegedly wrongful pretrial detention accrues when the detention ends. *Manuel v. City of Joliet*, 903 F.3d 667 (7th Cir. 2018) (*Manuell II*). The court rejected an accrual rule that starts from the time of a judicial determination of probable cause and likewise rejected an accrual rule based upon the disposition of criminal charges. *Id.* Instead, the court explained that "because the wrong is the detention rather than the existence of criminal charges, the period of limitations also should depend on the dates of the detention. The wrong of detention without probable cause continues for the duration of the detention." *Id.* at 670.

In *Lewis v. City of Chicago*, the Seventh Circuit clarified that a pre-trial detention in the absence of a conviction must be challenged under the Fourth Amendment, whereas the Fourteenth Amendment comes into play upon conviction. 914 F.3d 472, 479 (7th Cir. 2019) (citations omitted). These cases establish that the Fourth Amendment prohibits unreasonable pre-trial detention based on false evidence, *Knox v. Curtis*, 771 F. App'x 656, 658 (7th Cir. 2019), while the Fourteenth Amendment prohibits a conviction based on fabricated evidence.

20

In other words, an individual's Fourth Amendment claim premised on fabricated evidence accrues when the person was released from custody or **when he was convicted**. *Id.* at 658; *see also Brown v. City of Chi.*, 2019 U.S. Dist. LEXIS 174760, at *10 (N.D. Ill. Oct. 8, 2019) ("While the Seventh Circuit in [*Manuel II*] held that a claim for pretrial detention without probable cause begins to accrue when the pretrial detention ends, [*Knox*] clarified that pretrial detention can be considered as ending upon conviction.").[6]

Plaintiffs were arrested in March 2003 (Compls. ¶¶36, 60), and were convicted in 2006 (*id.* ¶¶ 96-97). To the extent they are asserting a false arrest claim, it is barred under *Wallace*. Similarly, to the extent they are asserting a Fourth Amendment claim under *Manuel* based on their pretrial confinement after a judicial determination of probable cause, any such claim accrued upon their convictions. But Plaintiffs did not file their Complaints until May 2020, well after the statute of limitations on their Fourth

_____

[6] In the last few months, courts in this district have cited *Sanders v. St. Joseph, Indiana*, 806 F. App'x 481, 484 (7th Cir. 2020), for the proposition that a Fourth Amendment unlawful detention claim accrues upon the favorable termination of a plaintiff's criminal proceedings where the claim would necessarily impugn the validity of the plaintiff's conviction, rather than upon the end of the plaintiff's pretrial detention. *See, e.g.*, *Spencer v. Vill. of Arlington Heights*, 2020 U.S. Dist. LEXIS 134895, at *5-6 (N.D. Ill. July 30, 2020). In *Sanders*, the Seventh Circuit held that the plaintiff's Fourth Amendment unlawful pretrial detention claim accrued when he was released from custody, but stated in dicta in a footnote that *Heck* would have continued to bar his Fourth Amendment unlawful pretrial detention claim until his conviction was vacated, **if** the unconstitutional detention would necessarily "imply the invalidity" of his conviction. 806 F. App'x at 484 n.2. It should be noted that *Sanders'* analysis of *Heck* was dicta, recited in a footnote. In any event, Plaintiffs' Fourth Amendment claim here, which is essentially a false arrest claim, was not *Heck*-barred because it does not necessarily imply the validity of his conviction. *See Knox*, 771 F. App'x at 658.

21

Amendment claims expired. Accordingly, Plaintiffs' Fourth Amendment claims should be dismissed with prejudice as untimely.

**V.     The Court Should Dismiss Plaintiffs' "Wrongful Conviction" Due Process Claims (Count IV) As A Matter Of Law.**

The Court should also dismiss with prejudice Count IV, which is largely duplicative of the fabrication of evidence due process claims in Count II. (*Compare* Compls. ¶ 146 with *id.* ¶¶ 160-62.) Indeed, both Counts accuse the Police Officer Defendants of fabricating witness statements and withholding evidence, depriving Plaintiffs of their right to a fair trial and due process. Thus, to the extent this Count is duplicative of Count II regarding the alleged fabrication of witness statements and suppression of that alleged misconduct, it should be dismissed with prejudice for the same reasons. *See supra* Argument III.

As for allegations unique to Count IV, the Court should dismiss the Complaints' bald accusation arising from the alleged destruction of evidence. Specifically, Plaintiffs allege "the Police Officer Defendants also destroyed physical evidence that, if subjected to forensic testing, would have demonstrated Plaintiff's innocence. Defendants destroyed this physical evidence knowing that it had exculpatory value. In the alternative, Defendants destroyed this potentially exculpatory evidence in bad faith." (Compls. ¶ 163.) The problem is there are *no* facts alleged anywhere in the Complaints to plausibly substantiate this allegation. Indeed, there is no discussion of any physical evidence that was destroyed, who specifically destroyed that physical evidence, when this physical evidence was destroyed, or how this physical evidence would have

demonstrated Plaintiffs' innocence. In fact, the only factual detail in the Complaints which relates to physical evidence is the fact that no DNA testing was conducted (*id.* ¶ 50), and this runs directly contrary to the conclusory allegation about unspecified evidence being destroyed. This is insufficient to state a plausible claim under Rule 12(b)(6). *See Twombly*, 550 U.S. at 555-57; *Washington v. Dart*, 2013 U.S. Dist. LEXIS 80019, at *4 (N.D. Ill. June 6, 2013) ("'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'") (quoting *Iqbal,* 556 U.S. at 678); *Miles v. McNamara*, 2014 U.S. Dist. LEXIS 31398, at *26 (N.D. Ill. Mar. 11, 2014) (granting motion to dismiss *Brady* claim where Plaintiff's conclusory allegations that allegedly exculpatory evidence would have "absolved Plaintiff of any criminal culpability" were unsubstantiated by any facts).

## VI. The Court Should Dismiss Plaintiffs' "Involuntary Servitude" Claims Brought Pursuant To The Thirteenth Amendment.

Plaintiffs allege Involuntary Servitude claims under the Thirteenth Amendment in Count V. The Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const., Amend. XIII, § 1. Involuntary servitude "means a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process." *United States v. Kozminski,* 487 U.S. 931, 952 (1988).

23

Plaintiffs' Thirteenth Amendment claims fail because they contain no allegations of forced labor. *See Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 901 (7th Cir. 1997) (Thirteenth Amendment claim "fails because there is no allegation that [plaintiff] was coerced into performing labor through the threat of physical or legal sanction"); *see also United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006) (claim failed "to provide any citation or basis for [plaintiff's] assertion" that he was subjected to enslavement).

Moreover, the Thirteenth Amendment's restriction against involuntary servitude does not apply to individuals who have been "duly convicted" of a crime. U.S. Const. Amend. XIII § 1 ("neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."). Here, from 2006 until 2019, both Plaintiffs were duly convicted by the legal process and a valid judgment. *See Heidelberg v. Manias*, 2019 U.S. Dist. LEXIS 173695, at *59 (C.D. Ill. Mar. 26, 2019). The fact those convictions were later vacated is legally immaterial, as "the thirteenth amendment's prohibition against involuntary servitude is not implicated . . . even though the conviction may be subsequently reversed." *Perrault v. Wisconsin*, 2016 U.S. Dist. LEXIS 2838, at *10-11 (E.D. Wis. Jan. 11, 2016); *see also Heidelberg*, 2019 U.S. Dist. LEXIS 173695, at *59 ("even where a conviction is 'subsequently reversed,' the Amendment 'is not implicated.'") (quoting *Omasta v. Wainwright*, 696 F.2d 1304, 1305 (11th Cir. 1983) (13th Amendment not implicated "where a prisoner is incarcerated pursuant to a presumptively valid judgment . . . even though the conviction may be subsequently

reversed")). These claims therefore have no legal basis and should be dismissed with prejudice.

## VII. Plaintiffs' Failure To Intervene Claims (Count VII) Cannot Survive.

Plaintiffs' Failure to Intervene Count alleges that "[i]n the manner described above, during the constitutional violations described herein, one or more of the Police Officer Defendants, the Prosecutor Defendants and Defendant Shepherd stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the duty and opportunity to do so" and that "[t]hese Defendants had ample, reasonable opportunities as well as the duty to prevent this harm but failed to do so." (Compls. ¶ 174, 175.) As already demonstrated (*see supra* at 9-12), these allegations do not supply any factual details to any specific Defendant as to any constitutional violation that he may have had a reasonable opportunity to prevent. *See Beaman v. Souk*, 2011 U.S. Dist. LEXIS 21194, at *33 (C.D. Ill. Mar. 2, 2011) (failure to intervene claim dismissed because a "conclusory statement" not tying a factual allegation to any particular defendant is "not entitled to weight.").

Moreover, this claim necessarily fails because a claim for failure to intervene is derivative of Plaintiffs' underlying constitutional claims, which fail for the reasons discussed above. *See Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). Therefore, Plaintiffs' failure to intervene claims should be dismissed as well.

**VIII.   The Court Should Dismiss Plaintiffs' Conspiracy Claims (Counts VII And XI).**

   **A.      Plaintiffs' Federal Law Conspiracy Claims Fail.**

The Complaints allege that the Police Officer Defendants and Cook County Investigator Shepherd agreed "among themselves to frame [each] Plaintiff for a crime he did not commit" and "to protect one another from liability." (Compls. ¶ 180.) As demonstrated below, these claims are legally deficient.

First, to the extent the Complaints allege the Police Officer Defendants "agreed among themselves" to frame Plaintiffs and cover up their malfeasance, such claims are barred as a matter of law by the intra-corporate conspiracy doctrine. "Under this doctrine, employees of the same company cannot be liable under a conspiracy theory if the employees act within the scope of their employment." *Haliw v. City of South Elgin*, 2020 U.S. Dist. LEXIS 47329, at *9 (N.D. Ill. Mar. 18, 2020) (citing *Travis v. Gary Cmty. Mental Health Ctr., Inc.*, 921 F.2d 108, 110 (7th Cir. 1990)). The doctrine's underlying rationale is that employees working for a single entity cannot conspire with one another. *Id.*

Although the intra-corporate conspiracy doctrine originated and was applied in the corporate and antitrust contexts, a recent decision from Judge Chang applied the doctrine in dismissing Section 1983 claims brought against police officers. *See Haliw*, 2020 U.S. Dist. LEXIS 47329, at *10. The court did so on qualified immunity grounds. *Id.* at *11. Specifically, the court in *Haliw* noted on the one hand that the rationale of the doctrine may not apply to Section 1983 conspiracy claims because the acts of a municipality's employees are not attributable to the governmental employer, unless the

26

employee happens to be the municipality's final policymaker. *Id.* at *10. Thus, under a § 1983 conspiracy theory, "there really is more than one legal entity when individual officers are sued." *Id.* But "[h]aving said all that," the court recognized that the Seventh Circuit has applied the doctrine to civil rights claims brought under Section 1985, and that other Circuits and courts in this district have applied the doctrine to Section 1983 claims. *Id.* at 10-11 (citing cases).

Given this uncertainty in the law, the district court dismissed the plaintiff's Section 1983 conspiracy claim with prejudice:

> In light of these extensions of the intracorporate conspiracy doctrine to § 1983, and absent controlling authority to the contrary, it cannot be said that the law is clearly established on this point. That is, reasonable officers would not necessarily know that a conspiracy amongst employees of a single municipality can violate the Constitution (no matter what the underlying substantive right is at stake). . . . Liability is not clearly established for conspiracies amongst police officers of a single municipality because the law is unsettled on whether the intracorporate conspiracy doctrine applies to § 1983 claims.

*Id.* at *11-12.

The same outcome is warranted here to the extent Plaintiffs' claims are premised on an alleged conspiracy amongst the Police Officer Defendants. Indeed, Plaintiffs' claim rests in part on a conspiracy between officers (Compls. ¶ 180), and they allege that defendants acted within the scope of their employment. (*Id.* ¶ 17 ("Each and every individual Defendant, known and unknown, acted under color of law and within the scope of his or her employment at all times relevant to this lawsuit").) Thus, Plaintiffs'

claims alleging conspiracy between the Police Officer Defendants should be dismissed because they are barred by the intra-corporate conspiracy doctrine.

Plaintiffs' remaining claim alleging a conspiracy between the Police Officer Defendants and Defendant Shepherd, a Cook County investigator, fails for a different reason:  there is a complete dearth of facts alleged to state a plausible claim. Indeed, the Complaints provide *no* details whatsoever regarding any agreement between the officers and Shepherd, such as when any agreement occurred, what the agreement entailed, or what specific steps were taken in furtherance of any agreement. Plaintiffs are required to plead *some* facts to render their claims plausible, and those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 553-55. And here, there is nothing in the Complaints beyond conclusory allegations that would demonstrate that the defendant officers and Shepherd came to any understanding to violate Plaintiffs' constitutional rights. Because the Complaints provide no information allowing Defendants to prepare their defense or for the court to determine whether Plaintiffs have a tenable theory or basis of suit, this claim should be dismissed. *See Dickman v. Cook Cty. State's Attorney*, 2018 U.S. Dist. LEXIS 43043, at *29 (N.D. Ill. Mar. 16, 2018) ("conclusory statement" that defendants "conspired and combined" together is "devoid of facts upon which a claim for relief can be based") (citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981)).

**B.    Plaintiffs' State Law Conspiracy Claims Fail.**

The Court should dismiss Plaintiffs' state law conspiracy claims for three reasons.

28

*First*, Plaintiffs' claims are based on underlying causes of action that are not cognizable, for the reasons demonstrated below. *See infra* at 30-36.

*Second*, even if these claims are legally viable, they should be dismissed as duplicative of their other state law claims. Under Illinois law, "[a] civil conspiracy involves two or more persons who combine for the purpose of accomplishing by concerted action either (1) a lawful purpose by unlawful means, or (2) an unlawful purpose by lawful means." *Patterson v. Dorrough*, 2012 U.S. Dist. LEXIS 155642, at *23 (N.D. Ill. Oct. 31, 2012). If a plaintiff alleges "a tort as the underlying wrongful act" for a state law conspiracy claim, and the underlying tort is already pled by the plaintiff in the case, the civil conspiracy claim is duplicative. *Id*. (citing *Tamburo v. Dworkin*, 2010 U.S. Dist. LEXIS 137817, at *27 (N.D. Ill. Dec. 29, 2010)) (internal quotation marks omitted); *see also Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 453 (7th Cir. 1982)).

Here, Plaintiffs allege underlying state law torts, including malicious prosecution (Count IX) and intentional infliction of emotional distress (Count X), are the basis for their state law civil conspiracy claims. (Compls. ¶¶ 196-204.) Plaintiffs' state law conspiracy claims do not allege any additional facts or actors than the underlying torts, making them wholly duplicative. *Mission Measurement Corp. v. Blackbaud, Inc.*, 287 F. Supp. 3d 691, 725-26 (N.D. Ill. 2017) (claims should be dismissed as duplicative where "Plaintiff fails to allege new facts not already alleged in the underlying tort claims nor seeks to extend liability to additional defendants.").

Although courts have disagreed regarding the viability of a separate state law conspiracy claims, several recent decisions have dismissed state law conspiracy claims

as non-cognizable under Rule 12(b)(6). *See Mission Measurement.*, 287 F. Supp. 3d at 725-26; *Chartwell Studio, Inc. v. Team Impressions, Inc.*, 2020 U.S. Dist. LEXIS 126748, at \*24-25 (N.D. Ill. July 20, 2020) ("It is well-settled, however, that a conspiracy claim alleging a tort as the underlying wrongful act is duplicative where the underlying tort has been pled.") (citing *Thermodyne Food Serv. Prods. v. McDonald's Corp.*, 940 F. Supp. 1300, 1310 (N.D. Ill. 1996)); *Murphy v. City of Chi.*, 2015 U.S. Dist. LEXIS 49357, at \*5-7 (N.D. Ill. Apr. 15, 2015) (dismissing state law conspiracy claims as duplicative where they are based on the same underlying facts as the alleged torts); *but see, e.g., Moore v. City of Chi.*, 2020 U.S. Dist. LEXIS 101340, at \*16-17 (N.D. Ill. June 10, 2020) (conspiracy claim deemed distinct from underlying torts); *Linkepic Inc. v. Vyasil, LLC*, 370 F. Supp. 3d 906, 926 (N.D. Ill. 2019) (same). This Court should follow Illinois law and dismiss with prejudice as duplicative the state law civil conspiracy claims asserted by Plaintiffs.

*Third and finally*, Plaintiffs' state law conspiracy claims suffer the same pleading defects as their federal law claims, as they fail to allege any plausible facts beyond conclusory allegations that would demonstrate that the defendant officers and Shepherd came to any understanding to commit the tortious acts alleged in the Complaints. *See supra* Argument VIIIA.

## IX.   The State Law Claims Of Malicious Prosecution, IIED, And Conspiracy Should Be Dismissed Under The *Hudson* Doctrine.

All of Plaintiffs' state law claims are barred by the *Hudson* doctrine and res judicata. Plaintiffs originally filed suit on March 16, 2005, under case number 05-cv-01551 ("*Fulton/Mitchell I*") alleging false arrest, coercive interrogation, deprivation of

fair trial, and conspiracy against defendants Zalatoris, Breen, Struck, Girardi, Winstead, and ASA Rubenstein arising from their interrogation and prosecution connected to the Collazo's murder. (Ex. G, *Fulton/Mitchell I* Complaint.) In that suit, Plaintiffs voluntarily dismissed their claims against ASA Rubenstein with prejudice on October 4, 2006, and then voluntarily dismissed their entire case on October 11, 2006. (Ex. H, Dkt. ##27, 29 in *Fulton/Mitchell I.*)

On October 2, 2007, Plaintiffs refiled a case with identical claims under case number 07-cv-05569. ("*Fulton/Mitchell II*") (Ex. I, *Fulton/Mitchell II* Complaint.) In *Fulton/Mitchell II*, Judge Darrah dismissed the claims for coercive interrogation, conspiracy and deprivation of right to fair trial as *Heck*-barred, but permitted the false arrest claim to proceed because it did not necessarily imply the invalidity of Plaintiffs' convictions. Discovery proceeded in *Fulton/Mitchell II*, but Plaintiffs moved to voluntarily dismiss their case on February 21, 2012, and the case was dismissed on that date. (Ex. J, Dkts. ##94, 96 in *Fulton/Mitchell II.*)

Under 735 ILCS 5/13-217, a plaintiff has one year (or until the end of the statute of limitations) to re-file a case which was voluntarily dismissed. In *Hudson v. City of Chicago*, the Illinois Supreme Court explained that "if there is an adjudication on the merits of one claim in a case, this determination will have res judicata effect on the filing of any other claims that could have been raised and determined in the first case." *Hudson v. City of Chi.*, 228 Ill. 2d 462, 478 (2008) (citing *Rein v. David A. Noyes & Co.*, 172 Ill.2d 325, 334-36 (1996)). In *Hudson*, the plaintiff brought negligence and willful and wanton claims against the City. The trial court dismissed the negligence claim and

31

plaintiff voluntarily dismissed the case, including the remaining willful and wanton claims. When plaintiff attempted to re-file the case with only the willful and wanton claim, the court dismissed the re-filed case as barred by res judicata. The court explained that this result was required because plaintiff's voluntary dismissal operated as an adjudication on the merits as to all claims which could be brought in the initial case. *Id.* at 473-474. The *Hudson* doctrine has since operated to bar claims that were first brought in the same cause of action as other claims that were dismissed with prejudice. *See, e.g., Brown v. City of Chi.* 771 F.3d 413, 415-416 (7th Cir. 2014) (dismissing state law claims that were first brought in a lawsuit along federal claims that were dismissed with prejudice; "a voluntary dismissal is res judicata if other claims in the dismissed suit had been dismissed on the merits.").

Here, the claims against ASA Rubenstein were dismissed with prejudice in *Fulton/Mitchell I* before the remaining claims were voluntarily dismissed. In *Fulton/Mitchell II*, Judge Darrah also dismissed claims for coercive interrogation and due process before Plaintiffs voluntarily dismissed their remaining claims. Thus, under *Hudson*, the voluntary dismissal in *Fulton/Mitchell II* operated as an adjudication on the merits for purposes of res judicata. Plaintiffs are not permitted to now raise claims which were or could have been brought in *Fulton/Mitchell II*. *Hudson*, 228 Ill. 2d at 478. Thus, because Plaintiffs did not refile within one year the claims they voluntarily dismissed, those claims are barred by 735 ILCS 5/13–217 and all state law claims arising from Plaintiffs' interrogation and prosecution are barred by res judicata and the *Hudson*

doctrine. *See Evans ex rel. Evans v. Lederle Labs.*, 167 F.3d 1106, 1112 (7th Cir. 1999)

("Regardless of the forum, Illinois permits a plaintiff just two bites at the apple.").

**X.     Plaintiffs' Lack Of Innocence Bars Their State Law Malicious Prosecution Claims.**

To prevail on a malicious prosecution claim, a plaintiff must prove that: (1) the

defendants commenced or continued the criminal proceeding against him; (2) they did

so with malice; (3) they lacked probable cause; (4) the proceeding terminated in his

favor in a manner indicative of innocence; and (5) he suffered damages. *Swick v.*

*Liautaud*, 169 Ill.2d 504, 512-513, 662 N.E.2d 1238 (1996); *Logan v. Caterpillar, Inc.*, 246

F.3d 912, 921-22 (7th Cir. 2001). The absence of even one of these elements precludes a

plaintiff from prevailing on this claim. *Id.*

**A.     The Complaints' Allegations Regarding the Necessary Element of Commencement and Continuation Are Legally Deficient.**

In order to satisfy the "commencement or continuing" element of a claim for

malicious prosecution, the court must examine "whether the defendant's conduct is

both the cause in fact and a proximate cause of the commencement or continuation of

the original criminal proceedings." *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 46, 131

N.E.3d 488. Here, while Plaintiffs alleged that police officers were involved in the

interrogations which led to their confessions, the Complaints are devoid of ***any*** factual

allegations to suggest that the Individual City Defendants were in any way involved in

the charging decision or in the State's decision to proceed with the prosecutions. Of

course, as this Court is aware, the decision to charge belongs to the prosecutor.

Moreover, the Complaints allege that prosecutors themselves were involved in

procuring the statements in this case. (*See* Compls. ¶46.) And it was the prosecutors who presented Griffin before the grand jury. (Ex. A at 20.) Thus, because Plaintiffs' allegations fail to state plausible claims on the commencement and continuation element, their malicious prosecution claim should be dismissed.

### B. The Dismissal of Charges via Nolle Is Not Indicative of Innocence.

In *Swick*, the court considered whether the bare entry of a *nolle prosequi* dismissing a criminal case was sufficient to permit a plaintiff to sue for malicious prosecution and held that the answer is a resounding no. 169 Ill. 2d at 513-514. The court reasoned that termination indicative of innocence must be an essential element, "[o]therwise, every time criminal charges are nol-prossed a civil malicious prosecution action could result." *Id*. at 514. The court observed further that the termination of criminal charges could be due to a host of reasons other than innocence, including compromise with the accused, a prosecutor's decision to grant mercy, or the impracticability of bringing the accused to trial. *Id*. at 513. In the end, "[f]or purposes of a malicious prosecution action, the plaintiff has the burden to prove that the *nolle prosequi* was entered for reasons related to his innocence." *Lund v. City of Rockford*, 956 F.3d 938, 949 (7th Cir. 2020).

Here, the Complaints fail to provide any factual detail to support the element of indicative of innocence beyond the self-serving conclusion that "Judge Lawrence Flood vacated [Plaintiffs'] convictions based on new evidence of innocence, and in recognition that constitutional violations had tainted their trial." (Compls. ¶100.)

This allegation ignores the actual language of Judge Flood's ruling, which was based on a question as to "whether or not there was a functioning camera in the rear entrance of John Fulton's building." (Ex. B at 2-3). Indeed, under the express language of Judge Flood's ruling, the convictions were vacated *without* any "conclusions regarding the guilt or innocence of petitioners." (*Id.*) His ruling was based on whether Plaintiffs had access to video camera or key FOB evidence from Fulton's residential building – but it in way questioned the reliability of Griffin's testimony or Plaintiffs' confessions. In fact, the "constitutional violations" referenced in the Complaints in the context of Judge Flood's post-conviction ruling were never even determined to be *Brady* violations, as opposed to Sixth Amendment violations based on ineffective assistance of Plaintiff's criminal defense counsel. *Id.* ("Whether you want to title this lack of disclosure as a Brady violation or ineffective assistance of counsel, the end result is the same as far as the petitioners are concerned.").

Therefore, because the Complaints fail to plausibly plead the essential element of termination indicative of innocence, the malicious prosecution claim should be dismissed.

## XI.    Plaintiffs' Claims For Intentional Infliction Of Emotional Distress ("IIED") Are Time Barred.

Plaintiffs' IIED claims are governed by a one-year statute of limitations under the Illinois Local Governmental & Governmental Employees Tort Immunity Act. 745 ILCS 10/8-101 (West 2014). Under *Bridewell v. Eberle*, 730 F.3d. 672, 678 (7th Cir. 2013), an IIED claim based upon an alleged malicious prosecution accrues from the time the

35

offense is charged. The Seventh Circuit reasoned that '[t]he idea that failing to reverse the ongoing effects of a tort restarts the period of limitations has no support in Illinois law—or in federal law either.'" *Gibbs v. Vill. of Flossmoor*, 2014 U.S. Dist. LEXIS 49414, at *17 (N.D. Ill. Apr. 10, 2014) (quoting *Bridewell*, 730 F.3d at 678); *Batchelor v. City of Chi.*, 2020 U.S. Dist. LEXIS, at *10 (N.D. Ill. Jan. 31, 2020) (IIED claims "accrue on the day of arrest, notwithstanding any factual entanglement with a claim for malicious prosecution"). Because Plaintiffs were charged in 2003, this claim is grossly untimely.

## XII.  Plaintiffs' Respondeat Superior And Indemnification Claims Should Be Dismissed.

Finally, the court should dismiss Plaintiffs' respondeat superior and statutory indemnification claims because the claims advanced against the Individual City Defendants are not cognizable. *Williams v. Rodriguez*, 509 F.3d 392, 405-06 (7th Cir. 2007); 745 ILCS 10/2-109 (2010) ("A local public entity is not liable for an injury resulting from an act or mission of its employee where the employee is not liable."); *Serino v. Hensley*, 735 F.3d 588, 596 n. 7 (7th Cir. 2013) (dismissing respondeat superior claim where underlying claims were dismissed).

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaints with prejudice pursuant to Rule 12(b)(6).


Respectfully submitted,

36

| | |
|---|---|
| s/ Shneur Nathan (Att. #6294495)<br>Shneur Nathan (snathan@nklawllp.com)<br>Avi Kamionski<br>(akamionski@nklawllp.com)<br>Grzegorz Labuz (glabuz@nklawllp.com)<br>Nathan & Kamionski LLP<br>Special Assistants Corporation Counsel<br>33 W. Monroe, Suite 1830<br>Chicago, IL 60603<br>(312) 612-1955 Direct<br><br><br><br>*Attorneys for Individual City Defendants* | Mark Flessner<br>Corporation Counsel for the City of<br>Chicago<br><br>s/ Michael D. Bess<br>Michael D. Bess<br>(mdbess@michaelbest.com)<br>Michael Best & Freidrich LLP<br>Special Assistant Corporation Counsel |

**Certificate of Service**

I, the undersigned attorney, hereby certify that I caused the foregoing document to be filed with the Court's CM/ECF system, which provided electronic notice and a copy of the same to all counsel of record.


/s/ Michael D. Bess