**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | | |
|---|---|---|---|
| JOHN FULTON, | | ) | |
| | | ) | |
| | Plaintiff, | ) | 20-cv-3118 |
| | | ) | |
| v. | | ) | Honorable Judge Lefkow |
| | | ) | |
| ROBERT BARTIK, et al., | | ) | |
| | | ) | |
| Defendants. | | ) | |
| ———————————————— | | ) | |
| | | ) | |
| ANTHONY MITCHELL, | | ) | |
| | | ) | 20-cv-3119 |
| Plaintiff, | | ) | |
| | | ) | Honorable Judge Lefkow |
| v. | | ) | |
| | | ) | |
| ROBERT BARTIK, et al., | | ) | |
| | | ) | |
| Defendants. | | ) | |

**COUNTY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
COMPLAINT AND MEMORANDUM IN SUPPORT THEREOF**

**Brian P. Gainer
Zachary A. Pestine
Monica Burkoth
Johnson & Bell, Ltd.
33 W. Monroe St., Ste. 2700
Chicago, Illinois 60603**

**T. Andrew Horvat
Cook Co. Assistant State's Attorney
50 W. Washington, 5th Floor
Chicago, Illinois 60602**

**ATTORNEYS FOR DEFENDANTS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

LEGAL STANDARD ......................................................................................................... 4

I. RES JUDICATA BARS ALL CLAIMS AGAINST DEFENDANT RUBINSTEIN. ............ 5

II. PLAINTIFFS' CONCLUSORY CLAIMS AGAINST THE COUNTY DEFENDANTS
FAIL TO MEET THE FEDERAL PLEADING STANDARD. ................................................ 6

   A. Plaintiffs' Complaints inappropriately "group-plead" allegations against the "Prosecutor
Defendants" without giving identified Defendants notice as to what is specifically alleged
against them. ...................................................................................................................... 6

   B. Plaintiffs fail to allege facts supporting a plausible conspiracy theory between Defendants
Rubinstein and Judge and the Police Officer Defendants. ...................................................... 9

   C. Plaintiffs fail to allege facts supporting a plausible conspiracy theory between Defendant
Shepherd and the Police Officer Defendants. ...................................................................... 11

III. PLAINTIFFS' COUNT II FABRICATION OF EVIDENCE CLAIM IS
INSUFFICIENTLY PLEADED. .......................................................................................... 11

   A. Plaintiffs fail to state a Fabrication of Evidence claim. ................................................ 11

   B. Any Count II *Brady* claim fails because nothing in Count II was "suppressed". ............. 13

IV. COUNTS III AND IV ARE REDUNDANT. .................................................................... 14

V. PLAINTIFF FAILS TO STATE A THIRTEENTH AMENDMENT CLAIM FOR
INVOLUNTARY SERVITUDE ........................................................................................... 14

VI. PLAINTIFFS' FAIL TO STATE CONSPIRACY CLAIMS. ........................................... 16

   A. Plaintiffs' Count VII Section 1983 Conspiracy claim fails for the reasons stated above.. 16

     i.   Plaintiffs' conclusory state law conspiracy theory fails for the same reasons as their
Section 1983 conspiracy theory. ......................................................................................... 17

     ii.   Plaintiffs' state law conspiracy theory is duplicative of other counts in their
Complaints. ..................................................................................................................... 18

VII. PLAINTIFFS' COUNT VI FAILURE TO INTERVENE CLAIM IS LEGALLY
INVALID AS TO THE PROSECUTOR DEFENDANTS AND SUFFERS FROM THE
SAME PLEADING DEFECTS AS THEIR OTHER CLAIMS. ............................................. 20

   A. Plaintiffs' Failure to Intervene claim is defeated by qualified immunity, as the Seventh
Circuit does not recognize failure to intervene claims against prosecutors, and the Prosecutor
Defendants maintain absolute immunity for Plaintiffs' prosecution. ....................................... 20

   B. Plaintiffs' Failure to Intervene claim is based on defective allegations. ............................ 22

VIII. PLAINTIFFS' COUNT IX MALICIOUS PROSECUTION CLAIM IS LEGALLY
INSUFFICIENT. ................................................................................................................ 23

A. Plaintiffs' cannot demonstrate the elements of malicious prosecution............................. 23

IX. THE STATUTE OF LIMITATIONS BARS PLAINTIFFS' COUNT X INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM. .......................................................... 27

X. COOK COUNTY IS NOT LIABLE TO INDEMNIFY PLAINTIFFS FOR ANY OF THEIR FAILED CLAIMS. ..................................................................................................... 27

CONCLUSION........................................................................................................................ 28

# TABLE OF AUTHORITIES

## Cases

*Atkins v. Hasan*, No. 15 CV 203, 2015 WL 3862724, at *3 (N.D. Ill. June 22, 2015) ............ 6, 23

*Batchelor v. City of Chicago*, No. 18 C 8513, 2020 WL 509034, at *4 (N.D. Ill. Jan. 31, 2020) 27

*Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015).......................................................... 16

*Betts v. United States*, 10 F.3d 1278, 1283 (7th Cir. 1993) ......................................................... 26

*Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013) ............................................................... 27

*Camm v. Faith*, 937 F.3d 1096, 1108 (7th Cir. 2019)................................................................... 13

*Chartwell Studio, Inc. v. Team Impressions, Inc.*, No. 19-CV-06944, 2020 WL 4053752, at *9
   (N.D. Ill. July 20, 2020) ............................................................................................................ 18

*Choyce v. Friar*, No. 08 C 202, 2008 WL 2567037, at *3 (N.D. Ill. June 24, 2008) .................... 6

*Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009) ......................................................... 10, 16

*Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 486, 693 N.E.2d 358, 371 (1998) ................... 19

*Grundhoefer v. Sorin*, 2014 IL App (1st) 131276, ¶ 11, 20 N.E.3d 775, 780 ............................. 24

*Hale v. Renee-Baker*, No. 01 C 7073, 2002 WL 1613765, at *1 (N.D. Ill. July 19, 2002).......... 14

*Heidelberg v. Manias*, No. 118CV01161SLDJEH, 2019 WL 4862069, at *19 (C.D. Ill. Mar. 26,
   2019)........................................................................................................................................... 15

*Hobbs v. Cappelluti*, 899 F. Supp. 2d 738, 773 (N.D. Ill. 2012) ................................................. 22

*Hoffman v. DuPage Cty., Illinois*, No. 16 C 9411, 2018 WL 1508486, at *4 (N.D. Ill. Mar. 27,
   2018)..................................................................................................................................... 22, 23

*Jagla v. BMO Fin. Grp.*, 248 F. App'x 743, 744–45 (7th Cir. 2007) ............................................ 6

*Jordan v. Klamenrus*, No. 15 C 157, 2020 WL 4547879, at *3 (N.D. Ill. Aug. 6, 2020) ........... 24

*Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012) .................................................................... 7

*Kunz v. City of Chicago*, 234 F. Supp. 2d 820, 823 (N.D. Ill. 2002)........................................... 17

*Lund v. City of Rockford, Illinois*, 956 F.3d 938, 949 (7th Cir. 2020).......................................... 25

*Mission Measurement Corp. v. Blackbaud, Inc.*, 287 F. Supp. 3d 691, 725 (N.D. Ill. 2017) 18, 19,
   20

*Moore v. City of Chicago*, No. 19 CV 3902, 2020 WL 3077565 ................................................. 19

*Patrick v. City of Chicago*, No. 18-2759, 2020 WL 5362160, at *8 (7th Cir. Sept. 8, 2020) 14, 21

*Perrault v. State*, No. 15-CV-144-BBC, 2016 WL 126918, at *3 (W.D. Wis. Jan. 11, 2016)..... 15

*Petty v. City of Chicago*, 754 F.3d 416, 423 (7th Cir. 2014) .................................................. 12, 13

*Redelmann v. Claire Sprayway, Inc.*, 375 Ill. App. 3d 912, 924, 874 N.E.2d 230, 241 (2007) ... 18

*Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1029 (7th Cir. 2006)................................... 14

*Stewart v. JP Morgan Chase Bank, N.A.*, No. 18 C 7584, 2020 WL 433888, at *2 (N.D. Ill. Jan.
   28, 2020)....................................................................................................................................... 4

*Swick v. Liautaud*, 169 Ill. 2d 504, 512, 662 N.E.2d 1238, 1242 (1996) .................................... 24

*Taylor v. City of Chicago*, 80 F. Supp. 3d 817, 826 (N.D. Ill. 2015) .......................................... 12

*Time Savers, Inc. v. LaSalle Bank*, N.A., 371 Ill. App. 3d 759, 771, 863 N.E.2d 1156, 1167
   (2007) .......................................................................................................................................... 17

*Torres v. Rebarchak*, 814 F.2d 1219, 1223 (7th Cir. 1987)........................................................... 6

*Treece v. Vill. of Naperville*, 903 F. Supp. 1251, 1258 (N.D. Ill. 1995)....................................... 25

*United States v. Kozminski*, 487 U.S. 931, 952 (1988) ................................................................. 15

*Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1075 (N.D. Ill. 2018) ..................... 10, 11, 16

Defendants McRay Judge, Jacob Rubinstein, Andrew Varga, Eugene Shepherd, and Cook County, Illinois (collectively "County Defendants"), by and through their attorneys, Special Assistant State's Attorneys Brian P. Gainer and Zachary Pestine of Johnson & Bell, Ltd., and Assistant Cook County State's Attorney, T. Andrew Horvat, for their Motion to Dismiss Plaintiffs John Fulton and Anthony Mitchell's ("Plaintiffs") Complaints and Memorandum in Support Thereof state as follows:

**INTRODUCTION**

On March 18 and 19, 2003, Plaintiffs Anthony Mitchell and John Fulton were arrested for the murder of Christopher Collazo. Complaints, ¶36, 59-60. Plaintiffs were convicted of the murder on August 31, 2006. Complaints, ¶¶1, 4; Exhibit A, Memorandum and Order Granting Defendants' Motion to Dismiss in 07-cv-05569, dated March 12, 2008, p. 4. Plaintiffs' friend, Johnitta Griffin, advised police officers that Plaintiffs were implicated in the murder. Complaints, ¶¶27, 32-35. Plaintiff Fulton confessed to the murder, and in so doing, implicated Plaintiff Mitchell. Complaints, ¶43.

In 2005, Plaintiffs filed suit against Defendant Rubinstein and a number of the Police Officer Defendants named in the instant suits, arising out of the same occurrence, namely the arrest and prosecution of Plaintiffs for the murder of Collazo. Exhibit B, Plaintiff's Complaint, 05-cv-01551, Dkt. #1, dated March 16, 2005. Plaintiffs alleged that Defendant Rubinstein coerced their interrogation – violating the Fifth and Fourteenth Amendments, conspired against them – violating the Fourth and Fourteenth Amendments, and deprived them of their rights to a fair trial under the Fifth and Fourteenth Amendments. Ex. B, ¶¶59-79. Plaintiffs also alleged false arrest under the Fourth and Fourteenth Amendments against the Police Officer Defendants. Ex. B, ¶¶45-63. On October 4, 2006, Plaintiffs voluntarily dismissed with prejudice Defendant Rubinstein from their 2005 suit. Exhibit C, Order Voluntarily Dismissing Defendant Rubinstein with Prejudice from 05-

cv-01551, Dkt. #27, dated October 4, 2006. On October 11, 2006, Plaintiffs voluntarily dismissed their 2005 lawsuit. Exhibit D, Order Granting Plaintiff's Motion for Voluntary Dismissal, 05-cv-01551, Dkt. #29, dated October 11, 2006.

Plaintiffs file the instant suits unsure of the actual involvement of the "Prosecutor Defendants" (Defendants Rubinstein, Judge, and Varga), relying on alternative facts as to their involvement. Complaints, ¶¶14, 33-43, 47-48, 63-64, 73-74. Plaintiffs allege that Defendant Varga may have conspired with the City Defendants to coerce a confession from Plaintiffs' friend Antonio Shaw, and that this is also the basis of constitutional deprivations. Complaints, ¶¶67-75. Plaintiffs acknowledge that Shaw's confession was suppressed and was not used against them at trial. Complaints, ¶¶76-77. Plaintiffs do not allege any involvement on behalf of Defendant Varga other than his conduct related to Shaw's suppressed confession. Complaints, ¶¶67-77, generally.

Plaintiffs allege Defendant Shepherd, an investigator for the Cook County State's Attorney's Office, fabricated evidence to give the false appearance that there was no camera monitoring the back door of Plaintiff Fulton's apartment building, where Fulton was alleged to have snuck in and out while committing the murder. Complaints, ¶¶82-83. Plaintiffs allege that Defendant Shepherd suppressed the information that Plaintiff Fulton used a key fob to enter through the back door, information Plaintiffs claim would have been exculpatory. Complaints, ¶¶85-86. Plaintiffs do not allege any further involvement on behalf of Defendant Shepherd. Complaints, ¶¶82-86, generally.

Plaintiffs refer to an unidentified group called "the prosecution" and claim that this group failed to present exculpatory evidence related to the information regarding the building where Plaintiff Fulton resided. Complaints, ¶¶88-98. Plaintiffs do not identify any members of "the prosecution" or identify any defendants in Paragraphs 88-98 of their Complaints. *Id*. Plaintiffs then

claim they were exonerated of the murder in 2019. Complaints, ¶¶99-100. However, the order

given by Cook County Circuit Judge Lawrence Flood vacating Plaintiffs' convictions stated:

> What is clear after reviewing the pleadings, exhibits, and testimony is that the jury did not receive evidence regarding whether or not there was a functioning camera in the rear entrance of John Fulton's building, nor did the jury hear about the swipe fob near the rear door. . . Whether you want to title this lack of disclosure as a Brady violation or ineffective assistance of counsel, the end result is the same as far as the petitioners are concerned. The information provided by the testimony during the course of the hearing and the exhibits entered into evidence should have been tendered for discovery by defense counsel through pretrial investigation or disclosure. It was relevant information that the jury should have been presented and considered in determining the outcome of the case. The State was correct in their summation when they stated that the Court was not the 13th juror in this case. **In my ruling, I draw no conclusions regarding the guilt or innocence of the petitioners.** What I do find, is that because the evidence surrounding the camera and the fob was not heard by the jury, the petitioners were prejudiced and did not receive a fair trial. Therefore, I'm vacating the petitioners' convictions and ordering a new trial for both petitioners.

Exhibit E, Transcript of Hearing on Motion for a New Trial, dated February 19, 2019, pp. 3-4.

After this ruling, the State agreed to *nolle prosequi* the case and the charges against

Plaintiffs were not retried. Exhibit F, Excerpts of Docket Sheets, *People of the State of Illinois v.*

*John Fulton and Anthony Mitchell,* Nos. 03-CR-08607-01 and 03-CR-08607-02 (Cook County

Cir. Ct. Jun. 10 & 11, 2020). Plaintiffs then filed petitions for certificates of innocence, which were

denied on February 21, 2020 by Chief Judge Leroy K. Martin, Jr. Exhibit G, Transcript of Ruling

on Plaintiffs' Petition for Certificates of Innocence, dated February 21, 2020, pp. 6-7.

Plaintiffs bring the following claims against the County Defendants: 1) False Confession

under the Fifth and Fourteenth Amendments against Defendant Rubinstein; 2) Fabrication of False

Witness Statements under the Fourteenth Amendment against the Prosecutor Defendants; 3)

Deprivation of Liberty without Probable Cause under the Fourth and Fourteenth Amendments

against Defendant Shepherd; 4) Due Process, Wrongful Conviction & Illegal Confinement under the Fourteenth Amendment against Defendant Shepherd; 5) Involuntary Servitude under the Thirteenth Amendment against Defendant Shepherd; 6) Section 1983 Failure to Intervene against unspecified Prosecutor Defendants and Defendant Shepherd; 7) Section 1983 Conspiracy to Deprive Constitutional Rights against Defendant Shepherd; 8) State Law Malicious Prosecution against Defendant Shepherd; 9) State Law Intentional Infliction of Emotional Distress against the Prosecutor Defendants and Defendant Shepherd; 10) State Law Civil Conspiracy against Defendant Shepherd, and 11) Indemnification against Cook County for the actions of the County Defendants. For the reasons stated below, each of Plaintiffs' claims against the County Defendants must be dismissed.

## **LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss "challenges a complaint for failure to state claim upon which relief may be granted. In ruling on a motion to dismiss, the Court accepts as true all well-pleaded facts in the Plaintiff's complaint and must construe the complaint in the 'light most favorable to the' plaintiff.' However, the Court is not 'obliged to accept as true legal conclusions or unsupported conclusions of fact.'" *Stewart v. JP Morgan Chase Bank, N.A.*, No. 18 C 7584, 2020 WL 433888, at *2 (N.D. Ill. Jan. 28, 2020) (internal citations omitted).

To survive a motion to dismiss, "a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face." *Stewart v. JP Morgan Chase Bank, N.A.*, No. 18 C 7584, 2020 WL 433888, at *2. This occurs when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. "While a plaintiff need not plead 'detailed factual allegations' to survive a motion to dismiss, she still must provide more than mere 'labels and conclusions or a formulaic recitation of

the elements of a cause of action' for her complaint to be considered adequate...." *Stewart*, at *2. (internal citations omitted).

## I. RES JUDICATA BARS ALL CLAIMS AGAINST DEFENDANT RUBINSTEIN.

In Count I, Plaintiffs bring a claim against Defendant Rubinstein for False Confession under the Fifth and Fourteenth Amendments, and against Defendant Rubinstein under the umbrella of "Prosecutor Defendants" for unspecified conduct and conclusory alternative facts in Count II – Fabrication of False Witness Statements under the Fourteenth Amendment, Count VI – Section 1983 Failure to Intervene, and Count X – State Law Intentional Infliction of Emotional Distress. Complaints, ¶¶135-150, 173-178, 202-204. Plaintiffs' Fifth and Fourteenth Amendment False Confession claims arise from the conclusory allegation that the named Defendants "in conspiracy… used physical violence and extreme psychological coercion in order to force Plaintiff to incriminate himself falsely." Complaints, ¶137.

Plaintiffs previously sued Defendant Rubinstein in 2005 for claims arising out of the same set of facts, namely their interrogation and prosecution for the murder of Christopher Collazo. Ex. B. These claims included coerced interrogation under the Fifth and Fourteenth Amendments, conspiracy under the Fourth and Fourteenth Amendments, and deprivation of rights to a fair trial under the Fifth and Fourteenth Amendments. Ex. B, ¶¶59-79. On October 4, 2006, Plaintiffs voluntarily dismissed with prejudice Defendant Rubinstein from this suit. Ex. C. There is no claim against Defendant Rubinstein in the instant suit that could not have been brought against him in the 2005 suit. In fact, most of the claims overlap. Plaintiffs' claims against Defendant Rubinstein in the case at bar are thus precluded under the doctrine of *res judicata*.

*Res judicata*, or claim preclusion, prevents parties from "relitigating claims that were or *could have been brought* in an earlier lawsuit that resulted in a final judgment on the merits. *Res judicata* applies when (1) there has been a final judgment on the merits in an earlier action, (2)

there is an identity of parties or privies in the two suits, and (3) there is an identity of the causes of action in the two suits." *Jagla v. BMO Fin. Grp.*, 248 F. App'x 743, 744–45 (7th Cir. 2007). (internal citation omitted). (emphasis added). Plaintiffs' previous suit against Defendant Rubinstein was dismissed with prejudice. Ex. C. Under the doctrine of *res judicata*, "dismissal with prejudice is a final adjudication on the merits." *Torres v. Rebarchak*, 814 F.2d 1219, 1223 (7th Cir. 1987). *Res judicata* thus applies because there is a final adjudication on the merits (the dismissal with prejudice), an identity of parties (Plaintiffs and Rubinstein), and all of the claims against Defendant Rubinstein arose out of the same transaction or occurrence as the earlier suit and therefore could have been brought in the earlier suit. Counts I, II, VI, and X must therefore be dismissed with prejudice as to Defendant Rubinstein.

## II.    PLAINTIFFS' CONCLUSORY CLAIMS AGAINST THE COUNTY DEFENDANTS FAIL TO MEET THE FEDERAL PLEADING STANDARD.

### A. Plaintiffs' Complaints inappropriately "group-plead" allegations against the "Prosecutor Defendants" without giving identified Defendants notice as to what is specifically alleged against them.

Throughout Plaintiffs' Complaints, they allege that "Defendants" or "Prosecutor Defendants" committed various acts and constitutional violations but fail to specify which individual Defendants committed which acts. Plaintiff refers to Defendants Rubinstein, Judge, and Varga as the "Prosecutor Defendants." Complaints, ¶14. While plaintiffs may refer to "defendants" in general if the alleged conduct clearly describes all defendants, it is insufficient to group-plead by referring to defendants collectively where the conduct alleged is not tied to each defendant's actions. *Atkins v. Hasan*, No. 15 CV 203, 2015 WL 3862724, at \*3 (N.D. Ill. June 22, 2015); *see also Choyce v. Friar*, No. 08 C 202, 2008 WL 2567037, at \*3 (N.D. Ill. June 24, 2008) ("the identities of the actual officers that were plausibly involved in Choyce's claims is a necessary fact that must be pled in order to properly put these individual Defendants on notice of the claims

brought against them.") Moreover, an "*individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012). (emphasis in original).

Plaintiffs' Complaints are laden with vague references to "Defendants" which offer zero clarity as to whom they refer. In fact, Plaintiffs use the term "Defendants" approximately fifty-seven times in their Complaints without specifying which Defendants were responsible for the alleged conduct. Complaints, ¶¶2, 4, 21, 25, 29, 31-32, 35-36, 39-45, 49-51, 60-62, 65-66, 68, 71, 75, 77-78, 80-81, 89-90, 92, 96, 98, 127, 134, 140-141, 143, 146-147, 149, 163, 167, 177, 178.[1] However, Plaintiffs certainly cannot refer to all named Defendants as the target of each reference, for such a reading would render their Complaints completely incoherent.

For instance, Paragraph 29 states "At some point, Police Officer Defendants gathered information relating to the Collazo murder that had no connection to Plaintiff, including a license plate number. This information was exculpatory for Plaintiff, but Defendants withheld this information from anyone outside the Chicago Police Department—<u>even the Cook County State's Attorney's Office</u>." Complaints, ¶29. (emphasis added). Given that the County Defendants were employed by the Cook County State's Attorney's Office, surely Plaintiffs cannot mean that Defendants withheld information from themselves. In Paragraph 32, Plaintiffs claim "Through threats and intimidation, and by feeding her a false narrative that they had concocted, Defendants coerced Griffin into falsely implicating Fulton in Collazo's murder." Complaints, ¶32. However, Plaintiffs never allege any contact between (Johnitta) Griffin and Defendants Judge, Varga, or Shepherd. Such vagueness and inconsistencies saturate Plaintiffs' Complaints.

---

[1] Some paragraphs included in this accounting contain multiple uses of the vague term.

The inscrutability of Plaintiffs' legal theories is similar to that of their factual allegations section. For instance, in Count II (under Section 1983), Plaintiffs claim that the "Prosecutor Defendants" acted individually, jointly, and in conspiracy with the Police Officer Defendants to deprive Plaintiffs of their "constitutional right to a fair trial and due process by fabricating witness statements implicating Plaintiff[s] in crimes [they] did not commit, which Defendants knew to be false, and by suppressing their own misconduct and the circumstances in which these witness statements were obtained." Complaints, ¶146. Plaintiffs contend, without identifying any Defendant that "Defendants used physical violence and psychological abuse to obtain false witness statements from Griffin, Fulton, Shaw, and other witnesses implicating Plaintiff in the Collazo murder." Complaints, ¶147. Plaintiffs commit the same errors in Counts VI and X. Complaints, ¶¶173-178, 202-204.

Furthermore, while Plaintiffs are unsure whether any Prosecutor Defendant ever fabricated a witness statement, they *are* certain that no Prosecutor Defendant used physical violence or psychological abuse against them, as such allegations are nowhere in the factual allegations section of Plaintiffs' Complaints. Complaints, ¶¶48, 64, 74; ¶¶18-134. Yet, Plaintiffs group-plead the Prosecutor Defendants into their legal theories without assigning responsibility to specific defendants. These allegations must be stricken, or at least clarified, so the County Defendants may properly respond to them, as it is unclear who Plaintiffs allege committed such conduct.

Moreover, while Plaintiffs group-plead Defendant Varga as a "Defendant" or "Prosecutor Defendant," the only conduct Defendant Varga is alleged to have committed relates to the statement of Antonio Shaw (who is not a plaintiff), which Plaintiffs acknowledge was suppressed and thus not introduced at trial. Complaints, ¶¶72-77. Therefore, even if the conclusory claim that Defendant Varga fabricated Shaw's statement were true, such statement did not become evidence

and was not used to convict Plaintiffs at trial. Plaintiffs accuse the Prosecutor Defendants of fabricating false witness statements in violation of the Fourteenth Amendment, failing to intervene in preventing the violation of unidentified constitutional rights, and intentionally inflicting emotional distress. Complaints, ¶¶145-150, 173-178, 202-204. By Plaintiffs' account, Defendant Varga did not commit any constitutional violations or cause Plaintiffs any damages as described in Counts II, VI, and X. Defendant Varga must be dismissed from Plaintiffs' suit.

### B. Plaintiffs fail to allege facts supporting a plausible conspiracy theory between Defendants Rubinstein and Judge and the Police Officer Defendants.

Even the allegations that Plaintiffs guess at are conclusory and fail to meet the 12(b)(6) pleading standards. For instance, in Paragraph 46, Plaintiffs allege an alternative fact that:

> The Police Officer Defendants arranged for and conspired with Defendants Assistant State's Attorneys Judge and Rubinstein to fabricate Fulton's false confession and false statements implicating Plaintiff and Shaw, and then to document falsely that the statements had come from Fulton as a result of legitimate police interrogation tactics. Additionally, to carry out this plot, Defendant Judge deliberately failed to document Fulton's statements that his confession was false and had been coerced from him in his report.

Complaints, ¶46. Plaintiffs make similar conclusory allegations regarding Defendant Rubinstein, but not Defendant Judge, in Paragraph 63. Complaints, ¶63 ("The Police Officer Defendants arranged for and conspired with Defendant Assistant State's Attorney Rubinstein to coerce Plaintiff's false confession and false statements implicating Fulton and Shaw, and then falsely document that the statements had come from Mitchell as a result of legitimate police interrogation tactics.") Notably, Plaintiffs' Complaints deprive the reader of any facts supporting coercion allegations against any Prosecutor Defendant.

To state a conspiracy claim under Section 1983, a plaintiff must specify that "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in

furtherance actually deprived him of those rights. Along with these elements, [plaintiff] must allege the parties, the general purpose, and the approximate date of the conspiracy." *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1075 (N.D. Ill. 2018). (internal citation omitted). Even before *Twombly* and *Iqbal*, conspiracy allegations "were often held to a higher standard than other allegations; mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her was not enough. The complaint in this case, though otherwise detailed, is bereft of any suggestion, beyond a bare conclusion, that the remaining defendants were leagued in a conspiracy with the dismissed defendants." *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009).

In *Williams v. City of Chicago*, the court dismissed the plaintiff's conspiracy theory where the plaintiff failed to plead any agreement between the conspirators to deprive the plaintiff of constitutional rights and merely alleged a conclusory claim that a conspiracy existed, in contravention of Supreme Court and Seventh Circuit requirements. *Williams v. City of Chicago*, 315 F. Supp. 3d at 1075–76. Similarly, Plaintiffs in the present case base Counts I, II, and X both on vague conspiracy theories and conclusory claims against Defendants Rubinstein and Judge, failing to plead any agreement to deprive Plaintiffs of constitutional rights, while merely lodging a bare suggestion that Defendants were leagued in a conspiracy. Defendants Judge and Rubinstein have zero notice of any alleged agreement, and Plaintiffs' conclusory conspiracy theories clearly fail to meet the federal pleading standard.

Plaintiffs seem to base their claims on undescribed violence allegedly committed by the Police Officer Defendants. Complaints, ¶¶139, 147. The Prosecutor Defendants are justifiably confused, because not only do Plaintiffs fail to describe any such violence in their Complaints, they never identify any violence committed by the Prosecutor Defendants. There are no facts by which Plaintiffs connect Defendants Judge or Rubinstein to any acts or conspiracies alleged in

Counts I, II, or X. Counts I, II, and X. These counts must therefore be dismissed as to Defendants Rubinstein and Judge.

Furthermore, to the extent that Plaintiffs claim Defendant Varga was a Prosecutor Defendant involved in any conspiracy or fabrication/coercion of witness statements and/or confessions, those claims fail both because of Plaintiffs' failed conspiracy theories and because, as stated above, Plaintiffs fail to plead that Defendant Varga was involved in any conduct that resulted in their claims.

### C. Plaintiffs fail to allege facts supporting a plausible conspiracy theory between Defendant Shepherd and the Police Officer Defendants.

As stated, Section 1983 conspiracy theories require plaintiffs to plead an actual agreement reached to deprive plaintiffs of constitutional rights, as well as the approximate date of the conspiracy. *Williams v. City of Chicago*, at 1075. In Counts III, IV, VII, and IX, Plaintiffs plead conspiracy claims against Defendant Shepherd but never plead an agreement to deprive Plaintiffs of their constitutional rights, nor the dates of the conspiracy. Complaints, ¶¶151-168, 179-184, 196-201. Plaintiffs allege the nebulous conspiracy intentionally inflicted emotional distress upon them. Complaints, ¶¶202-204. These claims are insufficiently pleaded and must be dismissed.

### III. PLAINTIFFS' COUNT II FABRICATION OF EVIDENCE CLAIM IS INSUFFICIENTLY PLEADED.

#### A. Plaintiffs fail to state a Fabrication of Evidence claim.

In Count II, Plaintiffs claim that the Police Officer Defendants and Prosecutor Defendants fabricated evidence by using "physical violence and psychological abuse to obtain false witness statements from Griffin, Fulton, Shaw, and other witnesses implicating" the Plaintiffs in the murder of Collazo. Complaints, ¶¶146-147. Although Plaintiffs present this as a fabrication of evidence claim, it is clear from their pleading that they base this claim on coerced statements, which is not the basis for a fabrication of evidence claim. A fabrication-of-evidence due process

11

violation occurs when the "criminal defendant is harmed by the police or prosecutor [who] manufactures evidence that he knows to be false. In contrast, where a plaintiff attempts to assert a due process claim based upon allegations that police officers coerced statements from co-defendants or witnesses, he or she does not state a due process claim, but rather, a malicious prosecution claim." *Taylor v. City of Chicago*, 80 F. Supp. 3d 817, 826 (N.D. Ill. 2015). (internal citations omitted). This is because "an officer fabricating evidence that she knows to be false is different than getting a reluctant witness to say what may be true." *Taylor v. City of Chicago*, 80 F. Supp. 3d at 826.

While Plaintiffs make the conclusory claim that these Defendants knew the witness statements were false, Plaintiffs neither identify which Defendants knew the claims were false nor offer any factual support in Complaints to substantiate the claim. Complaints, ¶146, generally. Thus, not only does Count II fail to meet the 12(b)(6) pleading standard, but without any factual support whatsoever to demonstrate that the Prosecutor Defendants knew the witness statements were false at the time they were taken, Plaintiffs allegations do not sound as a fabrication of evidence claim.

Nor is it relevant that Plaintiff styles Count II as a fabrication of evidence claim. The "true nature of the claim matters and parties should be precise in their terminology." *Petty v. City of Chicago*, 754 F.3d 416, 423 (7th Cir. 2014). In *Petty*, the Seventh Circuit affirmed summary judgment for defendants on the plaintiff's fabrication of evidence claim, holding that although the plaintiff "may have used terms and phrases such as 'manufactured false evidence' and 'false identification,' when one closely examines the evidence, it is clear that his case is a coercion case." *Petty v. City of Chicago*, 754 F.3d at 423. The Court further stated that there is no "magic talisman" that will turn a coercion case into a fabrication case, and that instead, it "will look at the underlying

facts of the claim." *Petty*, at 423. The underlying facts of Plaintiffs' Complaints do not provide any support for a fabrication claim against the Prosecutor Defendants, and in fact, the allegations in Count II clearly signal a coercion claim. Plaintiffs have failed to state a fabrication of evidence claim against the Prosecutor Defendants and Count II must be dismissed.

      **B.**      **Any Count II *Brady* claim fails because nothing in Count II was "suppressed".**

In Count II, Plaintiffs also claim that the Prosecutor Defendants fabricated false witness statements "by suppressing their own misconduct and the circumstances in which these witness statements were obtained." Complaints, ¶146. Not only is it illogical to claim that one can fabricate a witness statement via suppression of misconduct, but also, to the extent that Plaintiffs attempt to allege a *Brady* violation, they fail. In order to state a claim for a *Brady* violation, a plaintiff must plead: "(1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the [S]tate, either willfully or inadvertently; and (3) the evidence must have been material, meaning there is a reasonable probability that the result of the proceeding would have been different." *Camm v. Faith*, 937 F.3d 1096, 1108 (7th Cir. 2019). Evidence is suppressed for *Brady* purposes "only if (1) the prosecution failed to disclose evidence that it or law enforcement was aware of before it was too late for the defendant to make use of the evidence, and (2) the evidence was not otherwise available to the defendant through the exercise of reasonable diligence." *Camm*, 937 F.3d at 1108.

Plaintiffs cannot state a Brady claim in Count II because by their own admission, they were in the room at the time of the alleged "suppressed misconduct." Complaints, ¶¶146-147 ("Specifically, as described in detail above, Defendants used physical violence and psychological abuse to obtain false witness statements from Griffin, Fulton, Shaw, and other witnesses implicating Plaintiff in the Collazo murder.") Further, by Plaintiffs' admission, the Shaw statement was suppressed and was immaterial to Plaintiffs' convictions. Complaints, ¶¶76-77. If "the

fabricated evidence was immaterial, it cannot be said to have caused an unconstitutional conviction and deprivation of liberty." *Patrick v. City of Chicago*, No. 18-2759, 2020 WL 5362160, at *8 (7th Cir. Sept. 8, 2020). Plaintiffs do not explain who the "other witnesses" were, and therefore the Prosecutor Defendants cannot adequately respond to the claim. All evidence of alleged misconduct in this count of the complaint was available to Plaintiffs at all times. There is no *Brady* obligation to inform a defendant that their confession was coerced, nor is there an obligation to inform a prosecutor. *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1029 (7th Cir. 2006). Count II must be dismissed with prejudice.

### IV. COUNTS III AND IV ARE REDUNDANT.

In Count III, Plaintiffs claim that the Police Officer Defendants and Defendant Shepherd fabricated evidence to initiate judicial proceedings and secure a conviction. Complaints, ¶¶152-154. In Count IV, Plaintiffs again claim that the same Defendants fabricated evidence to initiate judicial proceedings and secure a conviction. Complaints, ¶¶160-162. Both Counts sound in due process, though Count III is brought under the Fourth and Fourteenth Amendments, while Count IV is brought under the Fourteenth Amendment only. Plaintiffs may not allege redundant claims. *Hale v. Renee-Baker*, No. 01 C 7073, 2002 WL 1613765, at *1 (N.D. Ill. July 19, 2002). Thus, to the extent Count VI regards fabricated evidence as the basis for a due process violations, such allegations must be dismissed with prejudice.

### V. PLAINTIFF FAILS TO STATE A THIRTEENTH AMENDMENT CLAIM FOR INVOLUNTARY SERVITUDE.

In Count V, Plaintiffs bring an Involuntary Servitude claim under the Thirteenth Amendment against the Police Officer Defendants and Defendant Shepherd, alleging that because Plaintiffs were "not duly convicted, [their] labor while [they were] incarcerated constituted involuntary servitude in violation of the Thirteenth Amendment." Complaints, ¶171. The

Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const., Amend. XIII, § 1. Involuntary servitude "means a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process." *United States v. Kozminski*, 487 U.S. 931, 952 (1988).

Not only do Plaintiffs' Complaints contain zero allegations of forced labor, any labor Plaintiffs undertook while in prison would not have been forced by Defendant Shepherd, who did not work for the prisons at which Plaintiffs were incarcerated. Furthermore, the Thirteenth Amendment specifically carves out an exception for those working as "punishment for crime whereof the party shall have been duly convicted." U.S. Const., Amend. XIII, § 1. Plaintiffs' conclusory claim that they were not duly convicted is not a panacea. Complaints, ¶171. Courts which have ruled on this issue have ruled decidedly against Plaintiffs' theory. *See Heidelberg v. Manias*, No. 118CV01161SLDJEH, 2019 WL 4862069, at *19 (C.D. Ill. Mar. 26, 2019). It is immaterial that Plaintiffs' convictions were later vacated, as "the thirteenth amendment's prohibition against involuntary servitude is not implicated . . . even though the conviction may be subsequently reversed." *Perrault v. State*, No. 15-CV-144-BBC, 2016 WL 126918, at *3 (W.D. Wis. Jan. 11, 2016), aff'd sub nom. *Perrault v. Wisconsin Dep't of Corr.*, 669 F. App'x 302 (7th Cir. 2016); *see also Heidelberg*, 2019 WL 4862069, at *19 ("even where a conviction is 'subsequently reversed,' the Amendment 'is not implicated.'") (quoting *Omasta v. Wainwright*, 696 F.2d 1304, 1305 (11th Cir. 1983) (Thirteenth Amendment not implicated "where a prisoner is incarcerated pursuant to a presumptively valid judgment . . . even though the conviction may be subsequently reversed")). Count V must be dismissed with prejudice.

## VI.     PLAINTIFFS' FAIL TO STATE CONSPIRACY CLAIMS.

### A.     Plaintiffs' Count VII Section 1983 Conspiracy claim fails for the reasons stated above.

In Count VII, Plaintiffs allege a Section 1983 conspiracy claim against the Police Officer Defendants and Defendant Shepherd, claiming that they "reached an agreement among themselves to frame Plaintiff for a crime he did not commit and conspired by concerted action to accomplish an unlawful purpose by unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights." Complaints, ¶180. Once more, to state a conspiracy claim under Section 1983, a plaintiff must specify that "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights. *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). Along with these elements, [Plaintiffs] must allege the parties, the general purpose, and the approximate date of the conspiracy." *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1075 (N.D. Ill. 2018). Even before *Twombly* and *Iqbal*, conspiracy allegations "were often held to a higher standard than other allegations; mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her was not enough. The complaint in this case, though otherwise detailed, is bereft of any suggestion, beyond a bare conclusion, that the remaining defendants were leagued in a conspiracy with the dismissed defendants." *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009).

In contrast to the above threadbare conspiracy claims, in Count VII, Plaintiffs take the minor step of alleging that the named Defendants reached an agreement to frame them. Complaints, ¶180. Yet Plaintiffs still fail to plead a viable conspiracy claim, as they allege nothing more than this conclusory allegation, unsupported by any facts, and still fail to allege the approximate date of the conspiracy. A "claim for civil conspiracy cannot be based upon

speculation or conjecture." *Kunz v. City of Chicago*, 234 F. Supp. 2d 820, 823 (N.D. Ill. 2002). Notably, Plaintiffs' Complaints fail to indicate that Defendant Shepherd ever even met or spoke with any of the Police Officer Defendants, and thus Plaintiffs' conspiracy theory is but a guess. If suspicion of a conspiracy is insufficient to state a Section 1983 conspiracy claim, guessing clearly fails the 12(b)(6) pleading standard. Without any specifics whatsoever as to the details, contours, or dates of the alleged conspiracy, Plaintiffs' conspiracy theory amounts to nothing more than mere conjecture. Count VII must be dismissed.

**B. Plaintiffs fail to plead a state law conspiracy claim, both because of Plaintiffs' threadbare allegations and because their conspiracy claim is duplicative of their other claims.**

**i. Plaintiffs' conclusory state law conspiracy theory fails for the same reasons as their Section 1983 conspiracy theory.**

In Count XI, Plaintiffs bring a state law civil conspiracy claim against the Police Officer Defendants and Defendant Shepherd, pleading the same conclusory allegations as in their Section 1983 conspiracy claims. Complaints, ¶¶206-207. Plaintiffs claim that the underlying torts these Defendants conspired to commit are malicious prosecution and intentional infliction of emotional distress. Complaints, ¶208. Under Illinois law, the "elements of civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Time Savers, Inc. v. LaSalle Bank*, N.A., 371 Ill. App. 3d 759, 771, 863 N.E.2d 1156, 1167 (2007). "In order to connect a defendant to an alleged civil conspiracy, the complaint must allege the necessary and important element of the existence of an agreement. The complaint must allege that the defendant knowingly and voluntarily participated in the common scheme at the heart of the alleged civil conspiracy."

*Redelmann v. Claire Sprayway, Inc.*, 375 Ill. App. 3d 912, 924, 874 N.E.2d 230, 241 (2007) (internal citations omitted).

Plaintiffs' Complaints do not sufficiently plead the elements of an Illinois civil conspiracy claim. First, Plaintiffs allege no facts to demonstrate concerted action between Defendant Shepherd and the Police Officer Defendants. Second, while Plaintiffs make faint, conclusory reference to an agreement, they fail to indicate that Defendant Shepherd ever even met or spoke with any of the Police Officer Defendants. Again, Plaintiffs' Complaints fail to put Defendant Shepherd on fair notice of the details of the conclusory conspiracy theory at which they guess. Count XI must be dismissed.

### ii. Plaintiffs' state law conspiracy theory is duplicative of other counts in their Complaints.

Plaintiffs' basis for their state law conspiracy claim is that the named Defendants conspired to commit malicious prosecution and intentional infliction of emotional distress, both of which are distinct causes of action that Plaintiffs also plead. Complaints, ¶¶196-204, 208. Plaintiffs' state law conspiracy claim is based on the very same facts and names the very same actors as their malicious prosecution and intentional infliction of emotional distress claims.[2] Complaints, ¶¶196-210. A "conspiracy claim alleging a tort as the underlying wrongful act is duplicative where the underlying tort has been pled." *Mission Measurement Corp. v. Blackbaud, Inc.*, 287 F. Supp. 3d 691, 725 (N.D. Ill. 2017); *see also Chartwell Studio, Inc. v. Team Impressions, Inc.*, No. 19-CV-06944, 2020 WL 4053752, at *9 (N.D. Ill. July 20, 2020) ("It is well-settled, however, that a conspiracy claim alleging a tort as the underlying wrongful act is duplicative where the underlying tort has been pled.") Because "a successful conspiracy claim enables a plaintiff to hold co-

---

[2] Plaintiffs also name the Prosecutor Defendants in their Count X Intentional Infliction of Emotional Distress Claim, but to the extent that Defendant Shepherd is named in Count X, it is for the very same conduct alleged in Plaintiffs' Count XI Conspiracy claim.

conspirators jointly liable for actions by other members of the conspiracy, a conspiracy claim is only actionable if it is based on new facts or seeks to extend liability for the underlying tort to new defendants." *Mission Measurement Corp. v. Blackbaud, Inc.*, 287 F. Supp. 3d at 725.

While Plaintiffs may cite *Moore v. City of Chicago* for the proposition that Illinois courts recognize "conspiracy as a distinct cause of action," *Moore* is not directly on point. No. 19 CV 3902, 2020 WL 3077565, at *6 (N.D. Ill. June 10, 2020). In *Moore*, Judge Gettleman allowed plaintiff's conspiracy theory to proceed based on *Dowd & Dowd, Ltd. v. Gleason*, an Illinois case which held that the plaintiff's conspiracy theory was not duplicative partly because "Gleason, McGuire & Shreffler is a named defendant in the civil conspiracy count, and not elsewhere." *Moore v. City of Chicago*, No. 19 CV 3902, 2020 WL 3077565, at *6; *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 486, 693 N.E.2d 358, 371 (1998). The Court in *Dowd* further emphasized that such claims could be duplicative, but that such a finding would be premature, and that, in any case, the plaintiff could not obtain extra recovery for the same injury. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d at 486.

In contrast to *Dowd & Dowd*, here Defendant Shepherd is both a named defendant in Plaintiffs' conspiracy count and in the underlying tort counts. Complaints, ¶¶196-210. Plaintiffs' conspiracy claims and their underlying tort claims are neither based on new facts nor seek to extend liability to new defendants. Complaints, ¶¶196-210. Rather, in order to plead an extra count in their Complaints (one which would not even add further recovery), Plaintiffs merely guess at a conspiracy redundant to the conclusory allegations in their other claims. Because Plaintiffs' conspiracy claim is neither based on new facts nor seeks to extend liability for the underlying torts to new defendants, it is not actionable. *Mission Measurement Corp.*, at 725. Count XI must be dismissed with prejudice.

19

**VII.    PLAINTIFFS' COUNT VI FAILURE TO INTERVENE CLAIM IS LEGALLY INVALID AS TO THE PROSECUTOR DEFENDANTS AND SUFFERS FROM THE SAME PLEADING DEFECTS AS THEIR OTHER CLAIMS.**

**A.    Plaintiffs' Failure to Intervene claim is defeated by qualified immunity, as the Seventh Circuit does not recognize failure to intervene claims against prosecutors, and the Prosecutor Defendants maintain absolute immunity for Plaintiffs' prosecution.**

In Count VI, Plaintiffs bring a Failure to Intervene claim under Section 1983 against Prosecutor Defendants and Defendant Shepherd, as well as the Police Officer Defendants, for allegedly failing to intervene upon the deprivation of their constitutional rights. Plaintiffs' claim merely consists of the conclusory allegation that "In the manner described above, during the constitutional violations described herein, one or more of the Police Officer Defendants, the Prosecutor Defendants and Defendant Shepherd stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the duty and the opportunity to do so." Complaints, ¶174.

Because Plaintiffs fail to specifically identify which Prosecutor Defendants failed to intervene at which times based on any specific constitutional violation, it is unclear how the Prosecutor Defendants may adequately answer Plaintiffs' failure to intervene claims. It is clear, however, that the Prosecutor Defendants had no legal duty to intervene. To the Prosecutor Defendants' best estimation, Plaintiffs' failure to intervene claims against the Prosecutor Defendants refer to the Police Officer Defendants' alleged coercive interrogation of Plaintiffs and Antonio Shaw and Plaintiffs' subsequent prosecution. Complaints, ¶¶42-52, 59-77. Again, Defendant Varga is only alleged to have acted in relation to Shaw's statement, which was suppressed and was immaterial Plaintiffs' conviction, and thus Defendant Varga cannot be said to have failed to intervene in violation of constitutional rights which were not violated. Complaints, ¶¶67-77.

The Prosecutor Defendants have qualified immunity as to Plaintiffs' allegations regarding their investigation of Plaintiffs. Qualified immunity protects "government officials performing discretionary functions...from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Patrick v. City of Chicago*, 213 F. Supp. 3d 1033, 1054 (N.D. Ill. 2016). In *Patrick v. City of Chicago*, the plaintiff brought a failure to intervene claim against assistant state's attorneys in an identical situation. The plaintiff claimed that the prosecutors "knew that he was being framed for murder and sat idly by—literally sat there—as the Officer Defendants coerced his false confession; at worst, the ASAs actively played a role in framing him and made no attempt to right their wrongs at any stage of his criminal proceedings." *Patrick v. City of Chicago*, 213 F. Supp. at 1054. In response to the plaintiff's theory, Judge Guzman cited Judge Aspen's reasoning in declining to find the existence of a prosecutor's duty to intervene:

> In *Gordon v. Devine*, Judge Aspen explained as follows:
>
> As the Defendant State's Attorneys point out, the Seventh Circuit has recognized failure to intervene claims against peace officers under § 1983. *See, e.g., Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). However, neither the Seventh Circuit, nor any Northern District of Illinois court, has recognized a failure to intervene claim against a prosecutor.... We decline the opportunity to expand the law to recognize such a claim here. 2008 WL 4594354, at *17.

*Patrick*, at 1054–55. The court emphasized that prosecutors do not have police powers, nor do they command police operations, and that "[p]rosecutors called to police stations to memorialize a confession lack not only the legal authority to direct or limit law enforcement officers in their investigations, but also any practical means by which they can effectively intervene." *Id*. at 1055.

In rejecting the plaintiff's failure to intervene claim, the court further explained:

> The prosecutor's real power in such a situation, it can be argued, lies in his/her authority to refuse to bring the indictment or to prosecute a case in which he believes a confession was coerced or fabricated. That power could conceivably be effectively used to intervene in the manner in which an investigation is being carried out. **But that determination, to prosecute or not to prosecute, is not in any sense investigatorial and enjoys the protection of absolute immunity.** To the extent that imposing a duty to intervene implies a duty to refuse to prosecute or to memorialize a (tainted) confession, imposing such a duty arguably interferes with the prosecutor's absolute discretion to determine the value of a case and decide or decline to prosecute.

*Id.* (emphasis added). In *Hobbs v. Cappelluti*, this Court found the above reasoning persuasive and dismissed the defendant prosecutors from a failure to intervene claim. *Hobbs v. Cappelluti*, 899 F. Supp. 2d 738, 773 (N.D. Ill. 2012) ("This court finds the reasoning in *Gordon* and *Andrews* persuasive and declines to extend Count IV to defendant prosecutors; it is dismissed as to them.") The Prosecutor Defendants ask the Court to follow its holding and the holdings of other judges in this District and dismiss them with prejudice from Plaintiffs' Count VI Failure to Intervene claim.

## B. Plaintiffs' Failure to Intervene claim is based on defective allegations.

Plaintiffs base their Failure to Intervene claim on the conclusory allegation that "In the manner described above, during the constitutional violations described herein, one or more of the Police Officer Defendants, the Prosecutor Defendants and Defendant Shepherd stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the duty and the opportunity to do so." Complaints, ¶174. Merely stating the elements of a failure to intervene claim is insufficient to state such a claim, and Plaintiffs' Complaints do not include "even an allegation [of which] Defendants observed one another, let alone that any could have or should have intervened." *Hoffman v. DuPage Cty., Illinois*, No. 16 C 9411, 2018 WL 1508486, at *4 (N.D. Ill. Mar. 27, 2018); *see also Atkins v. Hasan*, No. 15 C 203, 2015 WL 3862724, at *2 (N.D. Ill. June 22, 2015) (dismissing claims premised on "group pleading" that offers "no clues as to

22

whether, for the particular conduct described, plaintiffs assert that each and every one of the defendants engaged in that conduct....")

Plaintiffs' bare assertion does not give any specific defendant adequate notice of what he is alleged to have done or when he was alleged to have done it. "As the Seventh Circuit has explained, 'each defendant is entitled to know what he or she did that is asserted to be wrongful.'" *Hoffman v. DuPage Cty.*, Illinois, No. 16 C 9411, 2018 WL 1508486, at *4 (quoting *Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013)). Moreover, Plaintiffs' Failure to Intervene claim, to the extent it is intelligible, is based entirely on other conclusory allegations, as detailed above. Count VII must be dismissed.

## VIII. PLAINTIFFS' COUNT IX MALICIOUS PROSECUTION CLAIM IS LEGALLY INSUFFICIENT.

### A. Plaintiffs' cannot demonstrate the elements of malicious prosecution.

In Count IX, Plaintiffs plead state law malicious prosecution against the Police Officer Defendants and Defendant Shepherd, alleging that these defendants initiated and perpetuated criminal proceedings against them without probable cause and despite knowing they were innocent. Complaints, ¶197. Plaintiffs' claim against Defendant Shepherd, an investigator with the Cook County State's Attorney's Office, stems from their only allegations against Defendant Shepherd:

> Defendant Shepherd, an investigator for the Cook County State's Attorney's Office, fabricated evidence to support this new false story, and suppressed exculpatory evidence that would have disproved it. Defendant Shepherd went to Fulton's apartment building and fabricated photographic evidence which he used to give the false appearance that no camera monitored the back door… Defendant Shepherd suppressed this vital piece of exculpatory evidence, which would have conclusively disproved all of the false evidence supposedly implicating Fulton and Mitchell in the Collazo murder.

Complaints, ¶¶82-83, 86.

23

The elements of a cause of action for malicious prosecution are: "(1) the commencement or continuance by the defendant of an original judicial proceeding against the plaintiff; (2) termination of the original proceeding in favor of the plaintiff; (3) absence of probable cause for the proceeding; (4) malice; and (5) special damages. In order to sustain an action for malicious prosecution, the plaintiff must prove each element." *Grundhoefer v. Sorin*, 2014 IL App (1st) 131276, ¶ 11, 20 N.E.3d 775, 780. (internal citation omitted). "In regard to the second element, a malicious prosecution action cannot be predicated on underlying criminal proceedings which were terminated in a manner not indicative of the innocence of the accused." *Swick v. Liautaud*, 169 Ill. 2d 504, 512, 662 N.E.2d 1238, 1242 (1996). Plaintiffs cannot demonstrate the second element of their malicious prosecution claims because they have not sufficiently pleaded (and cannot demonstrate) that their criminal proceedings were terminated in a manner indicative of their innocence.

First, Judge Flood's ruling, a matter of public record, vacating Plaintiffs' convictions explicitly draws no conclusion as to Plaintiffs' innocence. "A court can take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Jordan v. Klamenrus*, No. 15 C 157, 2020 WL 4547879, at *3 (N.D. Ill. Aug. 6, 2020). To repeat, Judge Flood stated "In my ruling, I draw no conclusions regarding the guilt or innocence of the petitioners." Ex. E, p. 3.

Second, after the Plaintiffs' conviction was vacated, the State entered a *nolle prosequi* and Plaintiffs were not retried. Ex. F. Under Illinois law, a *nolle prosequi* does not terminate the merits of the case but instead merely reverts the matter to the condition which "existed before the commencement of the prosecution. For purposes of a malicious prosecution action, the plaintiff has the burden to prove that the *nolle prosequi* was entered for reasons related to his innocence…

A bare *nolle prosequi* order, which does not state the reasons behind it, is insufficient to establish that the proceedings were terminated in the plaintiff's favor." *Lund v. City of Rockford, Illinois*, 956 F.3d 938, 949 (7th Cir. 2020). (internal citations omitted). "When the nature of the dismissal is *nolle prosequi*, the court must look to underlying facts to determine whether the dismissal truly indicates innocence." *Treece v. Vill. of Naperville*, 903 F. Supp. 1251, 1258 (N.D. Ill. 1995).

It is Plaintiffs' burden to prove that the *nolle prosequi* was entered for reasons related to their innocence, and there is nothing in their Complaints which indicates as much. It Plaintiffs' burden to plead that such facts exists, and Plaintiffs failed to meet that burden. In fact, Plaintiffs fail to mention the *nolle prosequi* altogether, and their scant allegations related to the dismissal of charges consist entirely of three vague and conclusory sentences: In 2019, Cook County Judge Lawrence Flood "vacated both Plaintiff's and Fulton's convictions, based on new evidence of their innocence and in recognition that constitutional violations had tainted their trials. Prosecutors subsequently dropped all charges against them… The judicial proceedings against Plaintiff were terminated in his favor when the Cook County State's Attorney dismissed all charges against him." Complaints, ¶¶100, 155.[3] Plaintiffs clearly cannot meet their burden of proof if they cannot meet their burden under the federal pleading standards.

Third, after the *nolle prosequi*, Plaintiffs tried and failed to obtain certificates of innocence. Ex. G. In deciding whether to grant a certificate of innocence, the district court considers "whether the petitioner is truly innocent—that is, whether he committed the acts charged and, if so, whether those acts constituted a criminal offense—but the court makes that determination independent of the outcome of the trial or appeal, taking into account not only whether the petitioner was innocent but also whether he may be deemed responsible for his own prosecution." *Betts v. United States*,

---

[3] Plaintiffs also include an identical vague and conclusory allegation in Paragraph 5.

10 F.3d 1278, 1283 (7th Cir. 1993). Rejecting Plaintiffs' request for certificates of innocence,

Judge Leroy Martin held:

> And in the end, I believe that the -- that while the Movants have raised compelling arguments, **I am unconvinced that the Movants are able to satisfy the element of actual innocence.**
>
> In large part, that rests upon my belief that Mr. Mitchell gave a credible statement. I looked at the -- I looked at that statement, I looked at Mr. Mitchell give that statement, and while we can argue about some of the details of that statement, it appears to me, through his demeanor; his coolness; his -- the way he -- **he spoke and the way he was able to fill in certain details, it convinced my of the truthfulness of at least what I consider to be very important parts of that statement.**
>
> Additionally, I considered the statements by Precious, or Ms. Griffin. I considered her statements as well, and her conversations that she had with both Mr. Mitchell and Mr. Fulton at various times. And I know, we could debate some of the details, and I've debated and considered all of those things, over and over and over again.
>
> But nonetheless, the burden remains with the Petitioner. And I don't believe that the Court has to satisfy itself about every little point, but ultimately, be convinced that the Petitioners are actually innocent. And considering Mr. Mitchell's statement; considering the statements by Ms. Griffin, or Precious; as well as the events leading up to this horrific crime -- and that is, more specifically, Mr. Fulton's desire to arrange the purchase of a firearm.
>
> **Considering all of those things together, I just remain unconvinced that the Petitioners are able to sustain their burden.**
>
> So I must respectfully deny both Mr. Fulton's and Mr. Mitchell's petitions. And that, ladies and gentlemen, is how I see it.

Ex. G, pp. 5-7. (emphasis added). Therefore, not only do Plaintiffs fail to sufficiently plead that

the termination of judicial proceedings indicated their innocence, and not only do they fail to plead

that the *nolle prosequi* indicated their innocence, but the judge who extensively reviewed the

entirety of Plaintiffs' files could not find Plaintiffs innocent of the murder of Christopher Collazo.

Plaintiffs' Count IX Malicious Prosecution claim fails and must be dismissed.

26

## IX. THE STATUTE OF LIMITATIONS BARS PLAINTIFFS' COUNT X INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM.

In Count X, Plaintiffs bring an Intentional Infliction of Emotional Distress claim based on their arrest and prosecution. Complaints, ¶¶202-204. Plaintiffs were arrested on March 18 and 19, 2003. Complaints, ¶36, 59-60. A "claim of intentional infliction of emotional distress in the course of arrest and prosecution accrues on the date of the arrest." *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013). *See also Batchelor v. City of Chicago*, No. 18 C 8513, 2020 WL 509034, at *4 (N.D. Ill. Jan. 31, 2020) (Agreeing "with the other courts in this district that have applied *Bridewell* to determine intentional infliction of emotional distress claims arising from arrest and prosecution accrue on the day of arrest.") Under the Illinois Tort Immunity Act, the statute of limitations to bring tort claims against public employees is one year. 745 ILCS 10/8-101. Therefore, the statute of limitations for Plaintiffs' claims would have closed on March 18 and 19, 2004. Plaintiffs did not file their Complaint until May 27, 2020. Complaints, p. 1. Therefore, Plaintiffs' Count X Intentional Infliction of Emotional Distress claim is time-barred and must be dismissed with prejudice.

## X. COOK COUNTY IS NOT LIABLE TO INDEMNIFY PLAINTIFFS FOR ANY OF THEIR FAILED CLAIMS.

In Count XIII, Plaintiff requests indemnification for damages suffered as a result of the conduct alleged against the County Defendants. Under 745 ILCS 10/9-102,

> A local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article.

Because, as demonstrated in this Motion, Counts I-VII, and IX-XI must be dismissed as to the County Defendants, the Cook County is not liable for indemnification.

27

## **CONCLUSION**

WHEREFORE, the County Defendants respectfully move this Honorable Court to dismiss

Counts I-VII, and IX-XI of Plaintiffs' Complaints and grant the County Defendants all relief this

Court deems equitable and just.

Respectfully Submitted,

/s/ *Zachary A. Pestine*
One of the attorneys for the
Cook County Defendants

Brian P. Gainer (gainerb@jbltd.com)
Monica Burkoth (burkothm@jbltd.com)
Zachary A. Pestine (pestinez@jbltd.com)
JOHNSON & BELL, LTD.
33 W. Monroe, Suite 2700
Chicago, Illinois 60603
Tel: (312) 372-0770
Fax: (312) 372-9818

Respectfully Submitted,

*/s/ T. Andrew Horvat*
One of the attorneys for the
Cook County Defendants

Cook Co. Assistant State's Attorney
50 W. Washington, 5th Floor
Chicago, Illinois 60602
(312) 603-3362
timothy.horvat@cookcountyil.gov

## **CERTIFICAT OF SERVICE**

I, Zachary A. Pestine, hereby certify that, in accordance with Fed. R. Civ. P. 5 and LR 5.5 and the General Order on Electronic Case Filing (ECF), I served this Notice, together with the documents herein referred, electronically via the ECF-CM system to the above-named attorney on **October 26, 2020**.

/s/ *Zachary A. Pestine*

Zachary A. Pestine