## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JOHN FULTON, | ) | Case No. 20-cv-3118 |
| | ) | |
| *Plaintiff*, | ) | Hon. Joan H. Lefkow |
| | ) | District Judge |
| *v.* | ) | |
| | ) | Hon. Maria Valdez |
| ROBERT BARTIK, *et al.* | ) | Magistrate Judge |
| | ) | |
| *Defendants.* | ) | JURY TRIAL DEMANDED |

| | | |
|---|---|---|
| ANTHONY MITCHELL, | ) | Case No. 20-cv-3119 |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | [Consolidated with *Fulton v. Bartik* |
| *v.* | ) | for pre-trial purposes] |
| | ) | |
| ROBERT BARTIK, *et al.* | ) | |
| | ) | |
| *Defendants.* | ) | JURY TRIAL DEMANDED |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO THE
## COUNTY DEFENDANTS' MOTION TO DISMISS

Andrea D. Lyon
LYON LAW
53 W. Jackson Blvd., Ste. 1650
Chicago, IL 60604
T: 312-877-5543
F: 312-663-3707
andrea@andrealyon.com

Arthur Loevy
Jon Loevy
Russell Ainsworth
Julia Rickert
Sam Heppell
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
sam@loevy.com

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................... ii

Introduction ........................................................................................................................1

Factual Background ............................................................................................................1

Argument ............................................................................................................................2

    I.          Defendants' use of sources outside the complaint to dispute Plaintiffs' well-pleaded factual allegations is improper. ....................................................................2

    II.        Plaintiffs' claims against Defendant Rubinstein are not barred by *res judicata* because they had not accrued at the time of their earlier lawsuit. ............................4

        A.       *Res judicata* does not bar claims which had not accrued at the time of the prior judgment. ........................................................................................................4

        B.       Plaintiffs' claims in this case had not accrued and were not cognizable at the time of the 2005 case. ...............................................................................5

    III.      Plaintiffs easily surpass Rule 8's notice pleading standard. ................................7

        A.       Plaintiffs do not impermissibly rely on group pleading...................................7

        B.       Plaintiffs allege a plausible conspiracy between Defendants Rubinstein, Judge, and Varga, and the Police Officer Defendants...................................................12

        C.       Plaintiffs allege a plausible conspiracy between Defendant Shepherd and the Police Officer Defendants...............................................................................14

    IV.      Plaintiffs' Count II is well-pleaded. ..................................................................14

        A.       Count II alleges evidence fabrication, not merely witness coercion. ..............15

        B.       Defendants' suppression arguments offer no basis for dismissing Count II....17

    V.       Count III and Count IV are not redundant...........................................................18

    VI.      Plaintiffs plead a valid Thirteenth Amendment claim.........................................19

    VII.     Plaintiffs' conspiracy claims are valid. ..............................................................20

    VIII.   Defendants' challenges to Plaintiffs' failure to intervene claim lack merit.....21

        A.       The Prosecutor Defendants are not entitled to qualified immunity.................21

        B.       Plaintiffs' failure to intervene claims are sufficiently pleaded.......................26

    IX.      Plaintiffs adequately plead malicious prosecution. ...........................................27

    X.       Plaintiffs' IIED claims are timely. ....................................................................30

    XI.      Plaintiffs' indemnification claims should not be dismissed. .............................31

Conclusion .......................................................................................................................31

# TABLE OF AUTHORITIES

## Cases

*Abdullahi v. City of Madison*, 423 F.3d 763 (7th Cir. 2005)............................................23, 24, 26

*Alvear-Velez v. Mukasey*, 540 F.3d 672 (7th Cir. 2008) ....................................................................5

*Andersen v. City of Chicago*, 2019 WL 6327226 (N.D. Ill. Nov. 26, 2019)................................31

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................................7, 8

*Atkins v. Hasan*, 2015 WL 3862724 (N.D. Ill. June 22, 2015) ..................................................10

*Avery v. City of Milwaukee*, 847 F.3d 433 (7th Cir. 2017) ................................................15, 17

*Baker v. City of Chicago*, 2020 WL 5110377 (N.D. Ill. Aug. 31, 2020) ................................31

*Batchelor v. City of Chicago*, 2020 WL 509034 (N.D. Ill. Jan. 31, 2020)................................30

*Bausch v. Stryker Corp.*, 630 F.3d 546 (7th Cir. 2010) ..............................................................31

*BBL, Inc. v. City of Angola*, 809 F.3d 317 (7th Cir. 2015).........................................................18

*Bergholz v. John Marshall Law Sch.*, 2018 WL 5622052 (N.D. Ill. Oct. 30, 2018) ...................20

*Bridewell v. Eberle*, 730 F.3d 672 (7th Cir. 2013) .....................................................................30

*Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009) ..............................................................................8

*Brown v. City of Chicago*, 2019 WL 4694685 (N.D. Ill. Sept. 26, 2019)..................................31

*Burks v. Raemisch*, 555 F.3d 592 (7th Cir. 2009)..........................................................................8

*Chatman v. City of Chicago*, 2015 WL 1090965 (N.D. Ill. Mar. 10, 2015) ........................11, 25

*Choyce v. Friar*, 2008 WL 2567037 (N.D. Ill. June 24, 2008) ..................................................10

*Collins v. Village of Palatine, Ill.*, 875 F.3d 839 (7th Cir. 2017) ..............................................30

*Draper v. Rhay*, 315 F.2d 193 (9th Cir. 1963) ...........................................................................19

*Ennenga v. Starns*, 677 F.3d 766 (7th Cir. 2012) .........................................................................3

*Facebook, Inc. v. Teachbook.com LLC*, 819 F. Supp. 2d 764 (N.D. Ill. 2011)..............................3

*Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) ...........................................2

*General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074 (7th Cir. 1997).............2

*Global Relief v. New York Times. Co.*, 2002 WL 31045394 (N.D. Ill. Sep. 11, 2002) .............2, 3

*Gordon v. Devine*, 2008 WL 4594354 (N.D. Ill. Oct. 14, 2008)................................................25

*Hale v. Renee-Baker*, 2002 WL 1613765 (N.D. Ill. July 19, 2002) ..........................................18

*Harris v. City of Chicago*, 2015 WL 5445012 (N.D. Ill. Sept. 15, 2015)............................24, 25

*Heck v. Humphrey*, 512 U.S. 477 (1994) ...............................................................................6, 31

*Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344 (7th Cir. 1995) .............................3

*Hill v. City of Chicago*, 2020 WL 509031 (N.D. Ill. Jan. 31, 2020)..........................................31

*Hutchinson v. Spink*, 126 F.3d 895 (7th Cir. 1997) ....................................................................19

*Jacobs v. City of Chicago*, 215 F.3d 758 (7th Cir. 2000)..............................................................3

*Jagla v. BMO Fin. Grp.*, 248 F. App'x 743 (7th Cir. 2007) ........................................................4

*Johnson v. Village of Maywood*, 2012 WL 5862756 (N.D. Ill. Nov. 19, 2012)...........................9

*KFC Corp. v. Iron Horse of Metairie Rd., LLC*, 2020 WL 3892989 (N.D. Ill. July 10, 2020) ....18

*Kuhn v. Goodlow*, 678 F.3d 552 (7th Cir. 2012) ........................................................................10

*Kuri v. City of Chicago*, 2014 WL 114215 (N.D. Ill. Jan. 10, 2014)...........................................9

*Lovelace v. Gibson*, 2020 WL 6049901 (C.D. Ill. Oct. 13, 2020)..............................................25

*Lund v. City of Rockford, Illinois*, 956 F.3d 938 (7th Cir. 2020) ...............................................28

*McCullough v. Hanley*, 2018 WL 3496093 (N.D. Ill. July 20, 2018) ........................................24

*McDonough v. Smith*, 139 S. Ct. 2149 (2019)......................................................................6, 31

*Mission Measurement Corp. v. Blackbaud, Inc.*, 287 F. Supp. 3d 691 (N.D. Ill. 2017)..............20

*Newman v. Crane, Heyman, Simon, Welch & Clar*, 590 B.R. 457 (N.D. Ill. 2018).....................5

ii

*Patrick v. City of Chicago*, 2014 WL 7204501 (N.D. Ill. Dec. 17, 2014) ................................25
*Patrick v. City of Chicago*, 213 F. Supp. 3d 1033 (N.D. Ill. 2016) ...................... 21, 22, 23, 24
*Petty v. City of Chicago*, 754 F.3d 416 (7th Cir. 2014) ..............................................16
*Pursley v. City of Rockford*, 2019 WL 4918139 (N.D. Ill. Oct. 4, 2019) ...........................9
*Quinones v. Szorc*, 771 F.2d 289, 291 (7th Cir. 1985).................................................11
*Resendiz v. City of Chicago*, 2017 WL 11569364 (N.D. Ill. Aug. 10, 2017)......................21, 25
*Rich v. Baldwin*, 479 N.E.2d 361 (Ill. App. 1985).....................................................29
*Richman v. Sheahan*, 512 F.3d 876 (7th Cir. 2008).....................................................11
*Rivera v. Lake Co.*, 974 F. Supp. 2d 1179 (N.D. Ill. 2013)...............................9, 11, 25
*Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816 (7th Cir. 2009) ...........................11
*Rooding v. Peters*, 92 F.3d 578 (7th Cir. 1996).........................................................5
*Sanchez v. Vill. of Wheeling*, 447 F. Supp. 3d 693 (N.D. Ill. 2020) ..............................15
*Sanders v. City of Chicago Heights*, 2014 WL 5801181 (N.D. Ill. Nov. 7, 2014).................9
*Saunders v. City of Chicago*, 2013 WL 6009933 (N.D. Ill. Nov. 13, 2013)...........................25
*Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020)........................................................6
*Smith v. Burge*, 2016 WL 6948387 (N.D. Ill. Nov. 28, 2016) .......................................25
*Smith v. Potter*, 513 F.3d 781 (7th Cir. 2008) ........................................................5
*Sokolova v. United Airlines, Inc.*, 2019 WL 1572555 (N.D. Ill. Apr. 11, 2019)......................18
*Spring v. Schwarz*, 2017 WL 4130504 (N.D. Ill. Sep. 9, 2017).........................................9
*Swanson v. Citibank, N.A.*, 614 F.3d 400 (7th Cir. 2010) ............................................7
*Swick v. Liautaud*, 662 N.E.2d 1238 (Ill. 1996) ...................................................27, 29
*Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464 (7th Cir. 2020)..........................2
*Taylor v. City of Chicago*, 2018 WL 4075402 (N.D. Ill. Aug. 27, 2018)...............................15
*Thermodyne Food Serv. Prod., Inc. v. McDonald's Corp.*, 940 F. Supp. 1300 (N.D. Ill. 1996)..20
*Torres v. Rebarchak*, 814 F.2d 1219 (7th Cir. 1987)....................................................4
*Treece v. Village of Naperville*, 903 F. Supp. 1251 (N.D. Ill. 1995)...............................28
United States v. Kozminski, 487 U.S. 931 (1988).........................................................19
*Virnich v. Vorwald*, 664 F.3d 206 (7th Cir. 2011).......................................................7
*Waivio v. Bd. of Trustees of Univ. of Illinois at Chicago*, 290 F. App'x 935 (7th Cir. 2008) ........5
*Wallace v. Kato*, 549 U.S. 384 (2007) ..................................................................7
*Washington v. Summerville*, 127 F.3d 552 (7th Cir. 1997)...........................................29
Whitlock v. Brueggemann , 682 F.3d 567 (7th Cir. 2012)............................................24, 26
*Williams v. City of Chicago*, 315 F. Supp. 3d 1060 (N.D. Ill. 2018)...............................12
*Wilson v. City of Chicago*, 2009 WL 3242300 (N.D. Ill. Oct. 7, 2009)...............................12
*Yang v. Hardin*, 37 F.3d 282 (7th Cir. 1994)........................................................23, 26
*Zidek v. Analgesic Healthcare, Inc.*, 2014 WL 2566527 (N.D. Ill. June 6, 2014) ......................18

**Statutes**

735 ILCS 5/2-702 ..........................................................................................30

**Other Authorities**

U.S. Const. Amend XIII.....................................................................................19

iii

**<u>Rules</u>**

Fed. R. Civ. P. 8.................................................................................................................7
Fed. R. Civ. P. 12........................................................................................................2, 3, 7
Fed. R. Civ. P. 56.............................................................................................................2

## INTRODUCTION

John Fulton and Anthony Mitchell (collectively, "Plaintiffs") were regular teenagers who had absolutely no connection to the gruesome, gang-style murder of Christopher Collazo in March 2003. But rather than conduct a legitimate investigation, the Chicago police officers assigned to investigate opted to close the case quickly by framing Plaintiffs for the murder. These police officers were aided in their efforts by Defendants Rubinstein, Judge and Varga ("Prosecutor Defendants"), three Cook County Assistant State's Attorneys who helped to fabricate false evidence and coerce false confessions to implicate Plaintiffs, and by Defendant Shepherd, a State's Attorney investigator who fabricated and suppressed evidence about the electronic surveillance systems at Fulton's apartment building in an effort to bust Fulton's otherwise ironclad alibi. As a result, Plaintiffs were wrongfully convicted for the Collazo murder, and they lost the first 16 years of their adult lives in prison before their convictions were eventually overturned, and the murder charges eventually dropped.

Plaintiffs filed these federal civil rights lawsuits seeking to vindicate their constitutional and statutory rights violated by Defendants. The Prosecutor Defendants, Defendant Shepherd, and Defendant Cook County (collectively, "County Defendants") have moved to dismiss Plaintiffs' claims on an array of grounds. Dkt. 70. These arguments ignore controlling law and misperceive the actual facts of Plaintiffs' complaints. As detailed below, the County Defendants' motions to dismiss should be denied in their entirety.

## FACTUAL BACKGROUND

In detailed complaints spanning over 200 paragraphs, Plaintiffs lay out how the County Defendants helped frame them for a murder they did not commit. Plaintiffs also elaborate on certain factual allegations in this response, as the Seventh Circuit permits. "[I]n opposing a Rule 12(b)(6) motion," a plaintiff "may elaborate on his factual allegations so long as the new

elaborations are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (collecting cases).

In their response to the City Defendants' prior motion to dismiss, Plaintiffs included a detailed factual overview of their allegations. *See* Dkt. 74 at 2-7. To avoid duplication, Plaintiffs' incorporate by reference that prior factual overview as part of this response brief.

## ARGUMENT

## I.    DEFENDANTS' USE OF SOURCES OUTSIDE THE COMPLAINT TO DISPUTE PLAINTIFFS' WELL-PLEADED FACTUAL ALLEGATIONS IS IMPROPER.

Like the City Defendants in their motion, the County Defendants attempt to dispute the well-pleaded factual allegations in Plaintiffs' complaints, including by injecting extraneous materials into the case, primarily in an effort to contend that Plaintiffs are not innocent of the Collazo murder, or at least cannot establish that their charges were dismissed in a manner indicative of their innocence. That approach is not permissible. For purposes of deciding a motion to dismiss, courts accept the facts in the complaint as true and grant the plaintiff all reasonable inferences that can be drawn from those facts. *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020). As a result, the alternative set of facts Defendants put forward in their motion must be disregarded.

Courts are generally limited to the complaint when reviewing a motion to dismiss. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997); *see also Geinosky*, 675 F.3d at 745 n.1. If materials outside the complaint are considered, the motion must be treated as one under Rule 56. Fed. R. Civ. P. 12(d); *Global Relief v. New York Times. Co.*, 2002 WL 31045394, at *4 (N.D. Ill. Sep. 11, 2002). There is an exception when courts take judicial notice of matters of public record, but they may do so only when those matters "are (1) not subject to reasonable dispute and (2) either generally known within the

2

territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned." *Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012) (citing *General Elec. Capital*, 128 F.3d at 1081). For a fact to be judicially noticed, it must be beyond dispute. *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354 (7th Cir. 1995). As a result, factual findings made by other courts are generally not subject to judicial notice. *General Elec. Capital*, 128 F.3d at 1082 n.6 ("We agree that courts generally cannot take notice of findings of fact from other proceedings for the truth asserted therein because these findings are disputable and usually are disputed."); *Global Relief*, 2002 WL 31045394, at *4 ("Typically, [judicial] notice of a court order is limited to the purpose of recognizing the judicial act or litigation, but not for the truth of the matters asserted in the document.").

If facts from outside of a complaint are subject to dispute, those facts cannot be used to contradict a complaint or to decide a motion under Rule 12(b)(6). *General Electric Capital*, 128 F.3d at 1076-83; *Facebook, Inc. v. Teachbook.com LLC*, 819 F. Supp. 2d 764, 771-72 (N.D. Ill. 2011). The Seventh Circuit has reversed dismissals under Rule 12(b)(6) where contradictory facts from outside of the complaint were considered. *Jacobs v. City of Chicago*, 215 F.3d 758, 765 (7th Cir. 2000).

Because factual questions, such as questions about the origin and reliability of evidence introduced in Fulton and Mitchell's criminal trial, are strenuously contested in this case, they are all beyond judicial notice. As a result, where Defendants rely on their own interpretation of external documents and findings in judicial opinions to contest the facts in Plaintiffs' complaints—for example, when they contradict Fulton and Mitchell's allegations that they are factually innocent of the Collazo murder by asking this Court to rely on Judge Martin's credibility determinations from the Certificate of Innocence proceedings—those facts should be disregarded.

## II.    PLAINTIFFS' CLAIMS AGAINST DEFENDANT RUBINSTEIN ARE NOT BARRED BY *RES JUDICATA* BECAUSE THEY HAD NOT ACCRUED AT THE TIME OF THEIR EARLIER LAWSUIT.

In 2005—before Plaintiffs were convicted of the Collazo murder, and long before those convictions were ultimately vacated—Plaintiffs filed a lawsuit naming various individuals as defendants, including Defendant Rubinstein, bringing various claims related to the Collazo murder investigation, including a claim for false arrest. *See* Dkt. 70-2 (Ex. B to County Defs' MTD). On October 4, 2006, an agreed order was entered in that case voluntarily dismissing Defendant Rubinstein, "with prejudice and without costs." Dkt. 70-3 (Ex. C to County Defs' MTD). Defendants argue that, as a result of this "with prejudice" dismissal, all of Plaintiffs' claims against Defendant Rubinstein in this current case are barred by the doctrine of *res judicata*.[1] Dkt. 70 at 5-6. This argument fails because Plaintiffs' claims against Rubinstein did not accrue until long after the dismissal of their earlier case.

### A.    *Res judicata* does not bar claims which had not accrued at the time of the prior judgment.

Defendants cite two cases in support of their argument: one for the axiomatic elements of *res judicata* under federal law and the other for the proposition that, as a general matter, "dismissal with prejudice is a final adjudication on the merits." *Id.* (citing *Jagla v. BMO Fin. Grp.*, 248 F. App'x 743, 744-45 (7th Cir. 2007); *Torres v. Rebarchak*, 814 F.2d 1219, 1223 (7th Cir. 1987)). Applying these principles, they argue *res judicata* applies because the claims alleged here "could have been brought in the earlier suit." *Id.* at 6. But this argument overlooks the crucial fact that Plaintiffs' claims here could *not* have been pursued in the previous lawsuit, because they had not yet accrued. Thus, *res judicata* does not apply to bar Plaintiffs' claims.

---

[1]    Defendants do not assert any legal basis other than *res judicata* to support their argument that this with prejudice dismissal bars Plaintiffs' current claims, thus forfeiting any alternative theories.

The principle that claims which were not cognizable in a previous suit are not barred by a prior dismissal with prejudice is as axiomatic as the general elements of *res judicata* that Defendants cite, and is supported by a long line of case law in this district. Thus, while "*res judicata* will bar re-litigation" of "all issues that could have been raised in [the prior] proceeding[,]" "courts will refuse to apply '*res judicata* to preclude a second suit that is based on a claim that could not have been asserted in the first suit,'" which "includes claims that did not accrue during the first suit." *See Newman v. Crane, Heyman, Simon, Welch & Clar*, 590 B.R. 457, 464 (N.D. Ill. 2018) (quoting *Alvear-Velez v. Mukasey*, 540 F.3d 672, 677 (7th Cir. 2008)). Indeed, the Seventh Circuit has stated explicitly that "*[r]es judicata* does not bar a suit based on claims that accrue after a previous suit was filed." *Smith v. Potter*, 513 F.3d 781, 783 (7th Cir. 2008) (collecting cases); *see also Waivio v. Bd. of Trustees of Univ. of Illinois at Chicago*, 290 F. App'x 935, 938 (7th Cir. 2008) ("[C]laims that accrue after the prior suit was filed are not precluded."); *cf. Rooding v. Peters*, 92 F.3d 578, 580-82 (7th Cir. 1996) (applying Illinois state law rule of *res judicata* and holding that plaintiff's § 1983 malicious prosecution claims were not barred because they had not accrued at the time of the earlier proceeding).

**B. Plaintiffs' claims in this case had not accrued and were not cognizable at the time of the 2005 case.**

Defendants implicitly acknowledge that Plaintiffs' claims had not accrued at the time of the earlier lawsuit, for if they *had* accrued in 2005, these claims would fall far outside the statute of limitations, yet Defendants advance a limitations defense only to one claim, Plaintiffs' Count X for Intentional Infliction of Emotional Distress.[2] *See* Dkt. 70 at 27. Of course, if all or almost all of Plaintiffs' claims were timely when filed in 2020, as Defendants appear to acknowledge, they cannot have accrued in 2005.

---

[2] That sole statute of limitations challenge to the IIED claims lacks merit, as discussed below, *see infra* at Arg. X.

Defendants' choice not to litigate timeliness is wise, given the well-settled case law that the claims pleaded in this case did not accrue until, at the earliest, the day Plaintiffs' murder convictions were vacated in 2019. This line of cases stretches back more than 25 years to the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), holding that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated," where the plaintiff's claims "would necessarily imply the invalidity of his conviction or sentence." *Id.* at , 487, 489-90. In *Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020), a recent Seventh Circuit case applying and clarifying the scope of the *Heck* bar, the Court explained that the *Heck* bar applies to defer the accrual of an array of § 1983 claims arising from an alleged wrongful conviction that nearly perfectly matches the set of claims here, including claims for a coerced confession, malicious prosecution and deprivation of liberty, violations of the right to a fair trial and to be free of involuntary servitude, and for failure to intervene. *Savory v. Cannon*, 947 F.3d 409, 413 (7th Cir. 2020). And the *Heck* bar is in effect for claims challenging the validity of ongoing criminal proceedings even prior to any resulting conviction. *McDonough v. Smith*, 139 S. Ct. 2149, 2158 (2019). Because the claims against Defendant Rubinstein that are asserted in this lawsuit had not accrued at the time of the prior 2005 complaint—indeed, had not accrued until nearly 15 years later, when Plaintiffs' convictions were finally vacated—they are not barred by *res judicata* due to the prior dismissal with prejudice.

The stipulated dismissal with respect to Defendant Rubinstein simply operated as any dismissal with prejudice would, foreclosing from re-litigation the extant claims that were or could have been brought in the lawsuit related to the same subject matter. So, for example, the dismissal with prejudice serves as a bar to any reassertion of the false arrest claim against

Defendant Rubinstein, since a false arrest claim generally accrues at the time of the arrest and is not subject to the *Heck* bar. *See, e.g.*, *Wallace v. Kato*, 549 U.S. 384, 394 (2007). False arrest was Count I of Plaintiffs' 2005 complaint, Dkt. 70-2 at 5-7, which has been dismissed with prejudice, Dkt. 70-3, and which would therefore be barred if Plaintiffs sought to reassert the claim here. But they do not—Plaintiffs' complaints allege no claim for false arrest.

## III. PLAINTIFFS EASILY SURPASS RULE 8'S NOTICE PLEADING STANDARD.

Like the City Defendants, the County Defendants argue that Plaintiffs' claims fall short of the federal pleadings standard. They take issue with Plaintiffs' group pleading generally, Dkt. 70 at 6-9, and argue in particular that there are insufficient facts to make out a conspiracy involving the Prosecutor Defendants, *id.* at 9-11, or Defendant Shepherd, *id.* at 11. But Plaintiffs' allegations easily satisfy Rule 8's notice pleading standard.

### A. Plaintiffs do not impermissibly rely on group pleading.

The Federal Rules permit notice pleading and require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The plaintiff is not required to make "detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, dismissal for failure to state a claim under Rule 12(b)(6) is warranted only if "the allegations in the complaint, however true, could not raise a claim of entitlement to relief." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011), as amended (Jan. 3, 2012). The Court's role at this stage is not to determine whether Plaintiffs' account will ultimately hold up:

> "Plausibility" . . . does not imply that the district court should decide whose version to believe, or which version is more likely than not. . . . [T]he Court is saying instead that the plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself could these things have happened, not did they happen.

*Swanson v. Citibank*, N.A., 614 F.3d 400, 404 (7th Cir. 2010).

Applying these standards, Defendants' "group pleading" argument must be rejected, as similar arguments have been rejected in other cases. First, to the extent Defendants are asserting that Plaintiffs have failed to allege what particular misconduct each individual Defendant committed, their premise is incorrect. Under Seventh Circuit law, the same allegation explicitly directed at a group of defendants is sufficient to plead personal involvement after *Iqbal*, even if each defendant comprising the group is not named individually in each separate paragraph. *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009) (finding allegations that all members of a group of defendants engaged in misconduct unobjectionable); *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) (holding that a prisoner's statement that he repeatedly alerted a group of medical personnel to his medical condition and they did nothing in response stated a claim so long as the complaint at some point identified all of the medical personnel involved).

Plaintiffs have alleged acts of misconduct by three Assistant State's Attorneys acting in an investigative capacity, and one State's Attorney investigator, that took place during a single criminal investigation and in coordination with similar misconduct committed by other Defendant Police Officers. Plaintiffs have some information about the specific roles played by the County Defendants, but given the nature of the conspiracy, and at this early stage of the case, Plaintiffs do not know with precise accuracy which exact sub-sets of Defendants were personally involved in each act of misconduct. Tracking these informational imperfections, Plaintiffs' allegations at times draw in specific Defendants by name, and at times are cast more broadly at the group of Defendants as a whole. But given the rich factual detail across well over a hundred paragraphs of factual allegations, Defendants cannot credibly argue that the pleadings do not put them sufficiently on notice of what misconduct is alleged. Each of the individual Defendants is completely free to admit, deny, or claim lack of knowledge as to every single allegation that

8

Plaintiffs have pleaded, consistent with that particular Defendant's view of the truth, and that is all that is required at this early stage.

For that reason, courts in this District consistently have denied motions to dismiss filed in wrongful conviction cases where the defendants assert the same "group pleading" argument advanced here. *See*, *e.g.*, *Pursley v. City of Rockford*, 2019 WL 4918139, at *4 (N.D. Ill. Oct. 4, 2019) (rejecting group pleading argument and noting that a plaintiff is entitled under Rule 8 to direct allegations against a whole group of defendants); *Spring v. Schwarz*, 2017 WL 4130504, at *3 (N.D. Ill. Sep. 9, 2017) ("Group pleading that refers to 'Defendants' collectively is sufficient under Rule 8 when a plaintiff provides enough detail about the nature of the allegations to put each defendant on fair notice of the claims."); *Kuri v. City of Chicago*, 2014 WL 114283, at *7 (N.D. Ill. Jan. 10, 2014) ("Although it relies on 'group pleading,' Kuri's complaint is coherent, and the basis of his claims is easily understood."); *Sanders v. City of Chicago Heights*, 2014 WL 5801181, at *3 (N.D. Ill. Nov. 7, 2014) (rejecting defendants' "group pleading" argument because "[u]nder the circumstances, Plaintiff has alleged sufficient details that present a 'story that holds together'"); *Johnson v. Village of Maywood*, 2012 WL 5862756, at *2 (N.D. Ill. Nov. 19, 2012) ("Plaintiff could have made identical factual allegations in five separate paragraphs, alleging one-by-one that each Defendant witnesses or participated in the attack and failed to come to his aid. Plaintiff could have done so, but he was not required to."); *Rivera v. Lake Co.*, 974 F. Supp. 2d 1179, 1194-95 (N.D. Ill. 2013) ("[A]n allegation directed at multiple defendants can be adequate to plead personal involvement[.]"). This Court should adopt the same approach as was taken in these cases and hold that Plaintiffs' detailed allegations directed against all Defendants are sufficient to put them on notice of the claims against them.

The cases Defendants rely upon, *see* Dkt. 70 at 6-7, do not support their argument. Aside from their citation to *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012), for the general proposition that § 1983 claims must allege a Defendant's personal involvement—a basic requirement which Plaintiffs' detailed allegations readily meet—Defendants cite two cases where claims were dismissed for improper group pleading: *Atkins v. Hasan*, 2015 WL 3862724, at *3 (N.D. Ill. June 22, 2015) and *Choyce v. Friar*, 2008 WL 2567037, at *3 (N.D. Ill. June 24, 2008). Neither case is instructive here.

*Atkins* supports Plaintiffs position, as it recognizes that, depending on the context, "referring simply to 'the defendants' without further specification may adequately plead personal involvement" as required to maintain a § 1983 claim. *Atkins*, 2015 WL 3862724, at *3. The flaw with the *Atkins* plaintiffs' claims was that they were not even as specific as that, alleging instead that the misconduct was "performed by 'the defendants, or other individuals acting at the direction of, agreement with and/or with the actual knowledge of the defendants,'" such that it was unclear whether plaintiffs "contend that only some of the defendants, or possibly even *none* of them, performed a given act." *Id.* This is not an issue in Plaintiffs' complaints here. And in *Choyce,* the plaintiff stretched the liberal pleadings standard beyond its breaking point, alleging a single act of excessive force but naming twenty-seven defendants, and alleging only that "one or more" of the officers knocked her to the ground and "some or all" conspired to injure her. *Choyce*, 2008 WL 2567037, at *3. No surprise that the court found that these nebulous allegations were insufficient to put defendants on notice of what they were alleged to have done wrong, but the vague claims in *Choyce* are night and day with the detailed complaints brought by Plaintiffs here.

10

Second and independently, the very nature of some torts prevents plaintiffs from ascertaining which of many individual defendants is responsible for a specific act of misconduct. *See Richman v. Sheahan*, 512 F.3d 876, 884-85 (7th Cir. 2008) (noting that defendants may be jointly and severally liable for injuries even if it remains unclear which of them committed specific acts); *Quinones v. Szorc*, 771 F.2d 289, 291 (7th Cir. 1985) ("The very nature of a conspiracy obscures most, if not all, information about the alleged conspirators' agreement . . . . This is particularly true where, as here, much of the information regarding . . . the formation of the conspiracy [is] in the hands of the defendant."). For example, it remains unclear to Plaintiffs—though not to Defendants, who possess far greater personal knowledge—whether certain Defendants were directly involved in fabricating the false statements that they presented as originating from Johnitta Griffin. Dkt. 1 ¶¶ 31-35. But the fact that Plaintiffs lack personal knowledge about some of Defendants' actions does not mean that there is a pleading defect justifying dismissal. *See*, *e.g.*, *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009) (noting that where a plaintiff has been injured "as the consequence of the actions of an unknown member of a collective body, identification of the responsible party may be impossible without pretrial discovery" and that this is "not by itself a proper ground for dismissal"); *Chatman v. City of Chicago*, 2015 WL 1090965, at *4 (N.D. Ill. Mar. 10, 2015) ("Plaintiff may require discovery before identifying precisely which individual Defendant committed which alleged actions. Given the details alleged in the two-hundred and seven paragraphs in the complaint, Plaintiffs inability to specifically attribute a particular act to a particular individual Defendant does not doom the case at the pleading stage."); *Rivera*, 974 F. Supp. 2d at 1194-95 ("This Court recognizes that a plaintiff may not be able to attribute misconduct to specific individuals where the plaintiff did not know the identity of the offender at the time of the

incident."); *Wilson v. City of Chicago*, 2009 WL 3242300, at *2 (N.D. Ill. Oct. 7, 2009) ("[E]ach Defendant knows what he did or did not do and can admit or deny the fact based on this knowledge. . . . The Defendants, and not [the plaintiff], are in possession of the knowledge of precisely which of them, if any, interrogated, manipulated, threatened, or coerced [individuals] into giving false testimony."). This provides an independent reason for the Court to reject Defendants' "group pleading" argument.

### B. Plaintiffs allege a plausible conspiracy between Defendants Rubinstein, Judge, and Varga, and the Police Officer Defendants.

The County Defendants argue that Plaintiffs advance only vague and conclusory allegations of a conspiracy between Rubinstein, Judge, and Varga, and the Police Officer Defendants. Dkt. 70 at 9-11. This does not properly credit Plaintiffs' complaints. Defendants cite *Williams v. City of Chicago*, apparently viewing it as supporting their position, but there is no question that Plaintiffs properly allege "the parties, the general purpose, and the approximate date of the conspiracy," as that decision requires. *See* 315 F. Supp. 3d 1060, 1075 (N.D. Ill. 2018).

The purpose of the conspiracy was to eschew a "legitimate investigation into Collazo's murder" and instead "to close the case quickly by framing" Fulton, Mitchell and Shaw for a crime they did not commit. Dkt. 1 ¶ 31. While the Police Officer Defendants may have been the driving force behind this crooked investigation, Plaintiffs allege ample facts to tie in Rubinstein, Judge, and Varga. Rubinstein is alleged to have conspired with the Police Officer Defendants to fabricate a false statement from Johnitta Griffin implicating Fulton in the Collazo murder, a statement obtained from Griffin "[t]hrough threats and intimidation" and "by feeding her a false narrative that they had concocted." *Id.* ¶¶ 32-33. Rubinstein and Judge are alleged to have worked with the Police Officer Defendants to use "false promises of leniency, threats, and

physical violence," among an array of improper coercive tactics, to fabricate a false confession from Fulton which implicated himself, Mitchell and Shaw in the Collazo murder. *Id.* ¶¶ 42-47. Rubinstein is alleged to have done the same with the Police Officer Defendants to fabricate a similar false confession from Mitchell implicating himself, Fulton and Shaw, *id.* ¶¶ 60-63, and Varga the same with Shaw, *id.* ¶¶ 70-73. There is no deficiency in alleging a conspiracy on these facts.

Defendants raise an additional argument regarding Defendant Varga, reiterated throughout their motion—that because Varga's involvement was with Shaw, and because Shaw's false confession was eventually suppressed and not used at trial against Fulton and Mitchell, the allegations against Varga somehow fail. Dkt. 70 at 11. First, this argument is a non-starter as to the conspiracy claims; that Varga was a less successful co-conspirator in fabricating useable evidence against Plaintiffs does nothing to immunize him from his role in the conspiracy to frame them. But more broadly, Defendants' argument here and elsewhere regarding Varga's role misperceives the negative impact of Shaw's false statement on Plaintiffs' defense of the charges against them. Shaw was a crucial witness who could corroborate Plaintiffs' experiences of coercive police and prosecutorial tactics, and whose testimony in that regard would have been highly valuable to their defense at trial. But because Varga and his co-conspirators succeeded in coercing a false statement from Shaw which implicated both Fulton and Mitchell, his value as a defense witness to corroborate their claims of police misconduct was eviscerated; they could not call him at trial without risking the introduction of his statements against them and further adding to the ledger of fabricated evidence used against them. Dkt. 1 ¶ 77. Thus, even though the statement was not introduced at trial, Varga played a role in the conspiracy which in fact harmed Plaintiffs, and the claims against him should not be dismissed.

## C.   Plaintiffs allege a plausible conspiracy between Defendant Shepherd and the Police Officer Defendants.

Plaintiffs readily concede that their allegations of conspiracy against Defendant Shepherd are less robust than those involving Rubinstein, Judge and Varga, but read as a whole, their complaints still suffice to plausibly allege Shepherd's role as a co-conspirator with the Police Officer Defendants. Throughout the Collazo investigation, the Police Officer Defendants were working against Fulton's alibi (which, by nature of the police theory of the case, also served to exculpate Mitchell and Shaw), and had to revise the false evidence they were fabricating to fit their developing understanding of the facts, trying to preserve a theory of the murder that was not provably false by Fulton's video-supported alibi. *E.g.,* Dkt. 1 ¶¶ 42-43, 49, 65. Yet as the case proceeded towards trial, their efforts looked to be failing, as Fulton appeared to have an iron-clad alibi that made their narrative impossible. *Id.* ¶¶ 78-80. Enter Defendant Shepherd, who worked to bust Fulton's alibi by generating evidence to support (and suppressing evidence that would contradict) a narrative whereby Fulton snuck out the back of his apartment building to commit the crime, evading detection from the building's electronic surveillance systems. *Id.* ¶¶ 80-86. Defendants appear to suggest that this work by Shepherd was coincidentally entirely separate from the work of the Police Officer Defendants, but a far more plausible (and certainly permissible) reading of Plaintiffs' allegations is that Shepherd conspired with the Police Officer Defendants to support their crooked investigation and develop this vital, last-minute evidence they needed to salvage their false narrative against Fulton and Mitchell.

## IV.   PLAINTIFFS' COUNT II IS WELL-PLEADED.

In Count II, Plaintiffs bring claims under the Fourteenth Amendment's Due Process Clause related focused on Defendants' fabrication of false witness statements. Defendants first argue that Count II should be dismissed because, they contend, Plaintiffs have pleaded simple

14

coercion of witness statements and not fabrication of witness statements, Dkt. 70 at 11-13, and second that any *Brady* claim associated with Count II must fail because nothing was suppressed. Defendants are mistaken on both fronts.

### A. Count II alleges evidence fabrication, not merely witness coercion.

Like the City Defendants, the County Defendants' contend that their alleged misconduct was mere witness coercion, but likewise they fail to credit Plaintiffs' extensive allegations of fabrication. Plaintiffs have alleged that Defendants coerced witness statements, including from Johnitta Griffin, that they knew to be false and had concocted themselves. Dkt. 1 ¶¶ 31-35. This fabricated evidence was used against Plaintiffs at trial.

Plaintiffs' allegations make out an unmistakable due process fabrication claim. In *Avery v. City of Milwaukee*, 847 F.3d 433, 440 (7th Cir. 2017), defendants who "knew their reports of [plaintiff]'s confession were false when they wrote them" could be liable under due process fabrication theory because "those reports—and the fake confession—were used at trial to convict" plaintiff. *See also Sanchez v. Vill. of Wheeling*, 447 F. Supp. 3d 693, 701 (N.D. Ill. 2020) (fabrication claim sufficiently pleaded where plaintiff alleged "conduct beyond coerciveness"); *Taylor v. City of Chicago,* 2018 WL 4075402, at *3 (N.D. Ill. Aug. 27, 2018) (fabrication claim sufficiently pleaded where plaintiff alleged the defendant "fabricated evidence by causing a witness . . . to state falsely" that plaintiff had supplied the gun used in a shooting). The bottom line is that defendants "can't escape liability" for a due process fabrication violation "by shifting the focus to the background facts about the [interrogation] tactics they used," *Avery*, 847 F.3d at 440, but that is what Defendants are trying to do here.

Defendants contend that Plaintiffs fail to "offer any factual support . . . to substantiate the claim" that they knew the witness statements they were obtaining were false at the time they were taken. Dkt. 70 at 12. Such contention belies the detailed factual allegations which show just

that. For example, regarding the fabricated false statement from Johnitta Griffin, Defendants knew that her first statement (given freely without any threats or intimidation) denied any connection between the Collazo murder and the botched gun purchase involving Collazo and Fulton one month previously. Dkt. 1 ¶¶ 26-28. Yet after the Defendants decided to forego a legitimate investigation and instead work to close the case quickly by framing Plaintiffs, they reinterviewed Griffin, this time using aggressive tactics to feed her a narrative they had created which contradicted her prior statement. *Id.* ¶¶ 31-33. This is more-than-sufficient factual support for Plaintiffs' allegation that "Defendants knew that Griffin's new account, which they had concocted and fed to her, was false." *Id.* ¶¶ 35. So too for the false statements obtained by Defendants from Fulton and Mitchell, each implicating themselves and each other, which Defendants knew were false because, among other reasons, they were constantly having to revise the statements to ensure they presented a viable guilty narrative to counter their emerging understanding of Fulton's valid and video-supported alibi and the other objective evidence in the case. *See generally id.* ¶¶ 36-50, 59-66.

Defendants rely primarily on *Petty v. City of Chicago*, 754 F.3d 416, 423 (7th Cir. 2014), to argue that the Court should not blindly accept the "fabrication" label Plaintiffs use, and must instead look to the "true nature of the claim." Dkt. 70 at 12. Plaintiffs agree that the label "fabrication" standing alone would not be enough, but as described above they offer far more. Furthermore, *Petty* is of limited value at this stage as it was a case at summary judgment, at which stage a plaintiff must have sufficient record evidence from which a reasonable jury could conclude that the defendants had knowledge of the falsity of the coerced statement, such that the use of "terms and phrases such as 'manufactured false evidence' and 'false identification'" would not suffice. *Petty*, 754 F.3d at 423. But at the pleadings stage, there is no evidentiary

record, and Plaintiffs' allegations necessarily rest on such phrases, supported by sufficient specific facts as described above. There is no basis to dismiss this claim.

**B.     Defendants' suppression arguments offer no basis for dismissing Count II.**

Defendants argue that any *Brady* aspect to Count II should be dismissed because nothing was suppressed, since "by their own admission, they were in the room at the time of the alleged "suppressed misconduct." Dkt. 70 at 13-14. But while Plaintiffs were each present during their own interrogations, neither was present during the fabrication of a false statement from Griffin. Furthermore, the Defendants' failure to honestly document and disclose their misconduct deprived, for example, Fulton from bolstering his arguments that his confession was coerced by pointing to Defendants similar tactics used on Mitchell, and vice versa. And Plaintiffs also contend that Defendants, in violation of due process, suppressed evidence of the actions they had taken, and had seen each other take, to obtain these false coerced confessions, during periods of planning for and debriefing during and after the series of coercive interrogations, of which Plaintiffs had no knowledge, even as to their own interrogations.

The mere fact that Plaintiffs were aware at the time of their trial that all of these statements were false does not obviate Defendants' liability for suppression. Of course, Plaintiffs were aware of their own innocence, and thus knew that any evidence of their guilt was necessarily false, but that did not give Defendants free reign to suppress the exculpatory information where they themselves had created the false evidence. See *Avery*, 847 F.3d at 443-44 ("Avery knew that the informants' statements were false, but he did not know about the pressure tactics and inducements the detectives used to obtain them. . . . In other words, he did not have the evidence that could help him prove that the informants' statements were false.").

In any event, since Count II contains well-pleaded allegations of unlawful evidence fabrication in addition to suppression, and courts do not dismiss alternative legal theories or parts

of claims, Defendants' arguments offer no basis for dismissal. *See BBL, Inc. v. City of Angola*,
809 F.3d 317, 325 (7th Cir. 2015) ("Rule 12(b)(6) doesn't permit piecemeal dismissals
of *parts* of claims"); *see also, e.g.*, *KFC Corp. v. Iron Horse of Metairie Rd., LLC*, 2020 WL
3892989, at *3 (N.D. Ill. July 10, 2020); *Sokolova v. United Airlines, Inc.*, 2019 WL 1572555, at
*3 (N.D. Ill. Apr. 11, 2019); *Zidek v. Analgesic Healthcare, Inc.*, 2014 WL 2566527 (N.D. Ill.
June 6, 2014).

## V.     COUNT III AND COUNT IV ARE NOT REDUNDANT.

Defendants make a confusing and underdeveloped argument that Counts III and IV are
redundant and should be dismissed on that basis. Dkt. 70 at 14. This argument misperceives both
the nature of the claims and the relevant law. Of course, since all of the claims arise from the
same set of facts, there is necessarily some overlap, but Defendants misread these legal claims.
Count III alleges a Fourth and Fourteenth Amendment claim for deprivation of liberty without
probable cause, Dkt. 1 ¶¶ 151-158—a claim that does not focus on the conduct of Plaintiffs'
eventual criminal trials and does not, despite Defendants' assertion, "sound in due process," Dkt.
70 at 14. In contrast, Count IV is a due process claim for violation of Plaintiffs' rights to a fair
trial, regarding fabrication and suppression of evidence other than as to the fabricated witness
statements addressed in Count II. Dkt. 1 ¶¶ 159-168. In any event, potentially overlapping legal
theories as may be the case here are not the same as the redundant claims Defendants point to in
*Hale v. Renee-Baker*, 2002 WL 1613765, at *1 (N.D. Ill. July 19, 2002), where the court
dismissed official-capacity claims against individual defendants which were, by their inherent
nature, entirely coterminous with (and thus completely redundant of) claims against the
governmental entity which were also asserted in that case. There is no basis to dismiss either
Count III or Count IV as redundant of any other claims.

## VI.    PLAINTIFFS PLEAD A VALID THIRTEENTH AMENDMENT CLAIM.

Plaintiffs' Thirteenth Amendment claim should not be dismissed. The Supreme Court

in *United States v. Kozminski* concluded that the Thirteenth Amendment outlaws involuntarily

servitude, defined as a condition where "the victim had no available choice but to work or be

subject to legal sanction," 487 U.S. 931, 942-43 (1988), a provision which can be enforced under

§ 1983, *see Hutchinson v. Spink*, 126 F.3d 895, 901 (7th Cir. 1997).

Defendants argue that the claim fails because Plaintiffs have not alleged "forced labor,"

Dkt. 70 at 15, but in fact Plaintiffs have alleged that they were subjected to involuntary servitude

while they were wrongfully imprisoned, Dkt. 1 ¶ 171. And while *Kozminski* limited the

definition of "involuntary servitude" to physical or legal coercion, 587 U.S at 944, that limitation

is not inconsistent with Plaintiffs' allegations. Moreover, the Supreme Court in *Kozminski* was

interpreting "involuntary servitude" in the context of the criminal statute at issue in that case, and

left the door open to a more expansive reading outside the context of a criminal statute. *Id.* at

944-46.

Defendants also contend that, because the Thirteenth Amendment expressly permits

involuntary servitude "as a punishment for crime whereof the party shall have been *duly*

*convicted*," U.S. Const. Amend XIII (emphasis added), they are not liable for Plaintiffs'

involuntary servitude prior to the vacatur of their convictions. Dkt. 70 at 15. Plaintiffs, however,

are claiming that they were convicted in violation of due process, meaning they were never duly

convicted. And, unlike the cases that hold that the Thirteenth Amendment is not violated if

servitude is imposed during the pendency of a criminal appeal, when the conviction is assumed

to be valid absent further relief, *e.g.*, *Draper v. Rhay*, 315 F.2d 193, 197 (9th Cir. 1963),

Plaintiffs' convictions have been vacated, and the whole premise of Plaintiffs' due process

claims is that Defendants' creation of false evidence and suppression of exculpatory evidence

was the reason for their convictions. Their allegations are enough at this stage to plausibly plead a Thirteenth Amendment theory.[3] And to the extent Defendants argue the claim fails because Defendant Shepherd "did not work for the prisons at which Plaintiffs were incarcerated," Dkt. 70 at 15, this is beside the point. Plaintiffs allege that Defendants, including Defendant Shepherd, engaged in misconduct which caused them to be wrongfully convicted, and thus are liable for all of the consequences of that misconduct, including for subjecting them to forced labor while imprisoned as a result.

## VII.    PLAINTIFFS' CONSPIRACY CLAIMS ARE VALID.

Defendants reiterate their argument that Plaintiffs' conspiracy claims are insufficiently pleaded, *compare* Dkt. 70 at 9-11 *with id.* at 16-18, to which Plaintiffs respond above, *supra* Arg. III.B-C. They also argue that Plaintiffs' state law civil conspiracy claim must be dismissed as duplicative of the underlying torts of malicious prosecution and intentional infliction of emotional distress upon which it is based. Dkt. 70 at 18-19. The argument lacks merit.

Defendants are correct that Illinois law does not recognize civil conspiracy claims that do not expand the scope of liability. In other words, if a conspiracy claim implicates precisely the same people and conduct as the underlying claim, the conspiracy claim serves no purpose and should not proceed. *Mission Measurement Corp. v. Blackbaud, Inc.*, 287 F. Supp. 3d 691, 725 (N.D. Ill. 2017) ("Plaintiff fails to allege new facts not already alleged in the underlying tort claims nor seeks to extend liability to additional defendants."). On the other hand, conspiracy claims that do expand the scope of liability are cognizable. *See, e.g.*, *Thermodyne Food Serv. Prod., Inc. v. McDonald's Corp.*, 940 F. Supp. 1300, 1310 (N.D. Ill. 1996) (declining to grant

---

[3]    In any event, as is true of many of Defendants' other arguments for dismissal, their arguments about the Thirteenth Amendment can have no substantial effect on the scope of discovery and so need not be resolved at this stage. *See Bergholz v. John Marshall Law Sch.*, 2018 WL 5622052, at *4 (N.D. Ill. Oct. 30, 2018) ("Resolving this legal question will not change the scope of discovery . . . so this aspect of [the motion to dismiss] is denied without prejudice to renewal at summary judgment or prior to trial.")

summary judgment on a civil conspiracy claim "[b]ecause count VIII adds Liebermann, it is not completely identical to count V.")

While Defendants argue that this limitation bars Plaintiffs' state law civil conspiracy claims, this ignores that Plaintiffs have alleged that Defendant Shepherd conspired with the Police Officer Defendants to frame Plaintiffs, but have not alleged that Defendant Shepherd directly participated in the interrogations or that the Police Officer Defendants directly helped Shepherd create the misleading photos. This disjunction means that Plaintiffs' conspiracy claims do serve a purpose because, if proven, they would put the Police Officer Defendants and Defendant Shepherd on the hook for each other's misconduct. Dismissing Plaintiffs' conspiracy claims for failing to expand the scope of liability is not warranted at this early stage.

## VIII. DEFENDANTS' CHALLENGES TO PLAINTIFFS' FAILURE TO INTERVENE CLAIM LACK MERIT.

Defendants seek dismissal of Plaintiffs' failure to intervene claim, Count VI, arguing first that the Prosecutor Defendants are entitled to qualified immunity since they had no clearly established duty to intervene to prevent constitutional violations perpetrated by police officers, Dkt. 70 at 20-22, and that the claim is defective as to all of the County Defendants because it is insufficiently pleaded, *id.* at 22-23. Neither contention has merit.

### A. The Prosecutor Defendants are not entitled to qualified immunity.

The Prosecutor Defendants argue that qualified immunity shields them from Plaintiffs' failure to intervene claim, relying on *Patrick v. City of Chicago*, 213 F. Supp. 3d 1033, 1054-55 (N.D. Ill. 2016), a case decided at summary judgment. But *Patrick* is readily distinguishable, and to whatever extent it can be read to apply here, this Court should follow the more numerous and persuasive authority in this district which would permit this claim to proceed. *See, e.g.*, *Resendiz v. City of Chicago*, 2017 WL 11569364, at *2 (N.D. Ill. Aug. 10, 2017) (collecting cases).

First, Defendants appear to assume that Plaintiff's failure to intervene claim against the prosecutors is based solely on their alleged failure to intervene to prevent constitutional violations perpetrated by the Police Officer Defendants—in response to which they argue they had "no legal duty to intervene" to prevent misconduct being committed by a police officer. Dkt. 70 at 20. But this is too narrow a reading of the claim. Plaintiffs' complaints allege that the Prosecutor Defendants were involved in fabricating false witness statements and coercing false confessions. The complaints expressly allege that Judge and Rubinstein worked together to coerce false statements from Fulton implicating himself, Mitchell and Shaw, Dkt. 1 ¶¶ 46-47, such that each had an opportunity (and obligation) to intervene to prevent each other's constitutional violations, regardless of the violations perpetrated by the Police Officer Defendants. And it is certainly a fair inference from the facts alleged that all three Prosecutor Defendants, including Defendant Varga, were aware of each other's activities to coerce confessions and fabricate false witness statements throughout the Collazo murder investigation, yet they did nothing to stop their fellow prosecutors' misconduct. The claims thus survive against these Defendants regardless of whether they had an obligation to intervene to prevent the police officer misconduct.

Second, *Patrick* does not weigh heavily in favor of dismissal at this early stage. While the case contained a wide-ranging discussion of the relevant legal principles, including qualified immunity, its holding was narrow. Decided at the summary judgment stage, the court in *Patrick* held that "[g]iven the present state of the law in this Circuit, the nuanced considerations both pro and con, *and the particular facts of this case,* the Court cannot say that the ASA Defendants were under a duty to intervene, nor does the evidence show that they had any reasonable means or opportunity to do so." *Patrick*, 213 F. Supp. 3d at 1055 (emphasis added). Of course, at

summary judgment, there is an evidentiary record available, and the plaintiff in *Patrick* evidently failed to point to evidence in that case's record sufficient to create a triable issue of fact that those prosecutors under those circumstances had the opportunity and obligation to intervene to stop the police officers from perpetrating their misconduct. But here there is no record as yet, only allegations, and so it would be premature to rely on *Patrick* to dismiss the claims outright, foreclosing any possibility that Plaintiffs could develop facts to show that the Prosecutor Defendants could and should have intervened to stop police officer misconduct. Indeed, the court in *Patrick* expressly noted that it had determined, "[i]n a prior ruling . . . in the motion to dismiss context, that it was not inclined to foreclose the possibility of extending liability for failure to intervene to prosecutors," and that it "remains firm in that position *in principle*" but was "now persuaded" that the claim not stand "on the facts presented." *Id.* at 1054, n.18.

To the extent *Patrick* could be read more broadly to suggest that a prosecutor cannot be liable for failing to intervene to prevent constitutional violations committed by police officers, it is unpersuasive and should not be followed. *Patrick* found that "[p]rosecutors called to police stations to memorialize a confession lack not only the legal authority to direct or limit law enforcement officers in their investigations, but also any practical means by which they can effectively intervene." *Id.* But such a conclusion is hard to square with the Seventh Circuit case law on failure to intervene, which holds broadly that an individual may be liable for failing to intervene to prevent a constitutional violation committed by another when he has a "'realistic opportunity to intervene to prevent the harm from occurring.'" *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (quoting *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)). This is a flexible requirement that depends on the specific circumstances at issue, but

broadly speaking, a "'realistic opportunity to intervene' may exist whenever an officer could have 'called for a backup, called for help, or at least cautioned [the offending party] to stop.'" *Id.*

The fact that a prosecutor lacks the legal authority to direct a police officer to do something does not mean that a prosecutor, observing such officer engaging in blatantly unconstitutional misconduct, is unable to caution that officer to stop, or to bring the matter to the attention of that officer's supervisor. Thus, the conclusion in *Patrick* that prosecutors lack "any practical means by which they can effectively intervene" to prevent police officer misconduct rings hollow—at least, it cannot stand as a broad categorical proscription on such a claim. *Patrick*, 213 F. Supp. 3d at 1055. *See Harris v. City of Chicago*, 2015 WL 5445012, at *4 (N.D. Ill. Sept. 15, 2015) (rejecting prosecutor's argument "that he, a non-officer, was powerless to prevent the officer defendants from violating plaintiff's constitutional rights" because "[d]irect physical intervention was not required" and he "could have satisfied his duty to intervene by cautioning [the officers] to stop, or by bringing the situation to their supervisor's attention").

In any event, the more persuasive and numerous authorities in this district hold that a failure to intervene claim against a prosecutor is viable. In *Whitlock v. Brueggemann*, the Seventh Circuit held that prosecutors acting in an investigative capacity are subject to the same rules as police officers, and are protected only by qualified immunity. 682 F.3d 567, 580 (7th Cir. 2012). "Post-*Whitlock*, courts in this district have denied motions to dismiss failure-to-intervene claims against prosecutors, where, as here, it is alleged that they were involved in the investigation and had knowledge of the constitutional violation and, thus, would have had a realistic opportunity to prevent an officer from violating plaintiff's rights." *McCullough v. Hanley*, 2018 WL 3496093, at *16 (N.D. Ill. July 20, 2018). Similarly, applying *Whitlock's* legal

reasoning, in *Resendiz v. City of Chicago*, the court declined to dismiss a failure to intervene

claim against a prosecutor, following the lead of

> a number of courts [which] have declined to dismiss allegations for failure to
> intervene against prosecutors since *Whitlock* came down in 2012. *See e.g., Rivera
> v. Lake County*, 974 F. Supp. 2d 1179, 1191 (N.D. Ill. 2013) (declining to dismiss
> claim where prosecutor's liability for failure to intervene was plausible given that
> he participated in the investigation); *Chatman v. City of Chicago*, No. 14 C 2945,
> 2015 WL 1090965, at *10 (N.D. Ill. Mar. 10, 2015) (same); *Smith v. Burge*, No.
> 16 C 3404, 2016 WL 6948387, at *10 (N.D. Ill. Nov. 28, 2016) (same); *Harris v.
> City of Chicago*, 15 C 3859, 2015 WL 5445012, at *4 (N.D. Ill. Sept. 15, 2015)
> (same) *Patrick v. City of Chicago*, 14 C 3658, 2014 WL 7204501, at *10 (N.D.
> Ill. Dec. 17, 2014), reconsidered in part on other grounds *Patrick v. City of
> Chicago*, 103 F. Supp. 3d 907 (N.D. Ill. 2015) (same); *Saunders v. City of
> Chicago*, Nos. 12 C 9158, 12 C 9170, 12 C 9184, 2013 WL 6009933, at *10
> (N.D. Ill. Nov. 13, 2013), reconsidered in part on other grounds in *Saunders v.
> City of Chicago*, 146 F. Supp. 3d 957 (N.D. Ill. 2015) (same). The Court agrees
> with the reasoning in these cases that a prosecutor who acts as an investigator and
> allegedly fabricates evidence against a defendant during the investigation stage
> could be held liable for failure to intervene under Section 1983.

*Resendiz*, 2017 WL 11569364, at *2. *See also, e.g., Heidelberg v. Manias*, 2020 WL 7034315

(C.D. Ill. Nov. 30, 2020) (rejecting prosecutor defendants' qualified immunity argument on

failure to intervene at motion to dismiss stage); *Lovelace v. Gibson*, 2020 WL 6049901, at *31

(C.D. Ill. Oct. 13, 2020) (denying prosecutor's summary judgment motion on failure to

intervene).

Viewing the case law in its entirety, *Patrick* is an outlier. Moreover, the case upon which

*Patrick* relies, and from which Defendants block-quote—*Gordon v. Devine*, 2008 WL 4594354

(N.D. Ill. Oct. 14, 2008)—pre-dates *Whitlock*, rendering it of limited persuasive value.

Other than the citation to the ambiguous discussion of the issue in *Patrick*, Defendants

cite no case which holds that they are entitled to qualified immunity on the failure to intervene

claims. Nor could they. It was clearly established long before 2003 that "a state actor's failure to

intervene renders him or her culpable under § 1983." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir.

1994). "It is of no moment that the Supreme Court has never expressly held that [certain] conduct violates the Constitution; it is enough that officials have 'fair and clear warning' that their conduct is prohibited under earlier precedents," and moreover a "right can be clearly established on the basis of common sense." *Whitlock*, 682 F.3d at 586 (7th Cir. 2012). Here, Plaintiff alleges the Prosecutor Defendants were aware of egregious misconduct violating longstanding constitutional prohibitions against coercing false confessions and fabricating false statements, perpetrated both by fellow prosecutors and investigating police officers. The case law in 2003 gave them more than clear warning that they could not turn a blind eye—they had to do something, be it "call[ing] for a backup, call[ing] for help, or at least caution[ing] [the perpetrator] to stop." *Yang*, 37 F.3d at 285. Plaintiffs allege they did nothing of the sort, which suffices to maintain the claims at this early stage.

### B. Plaintiffs' failure to intervene claims are sufficiently pleaded.

In addition to their qualified immunity argument, Defendants argue that the failure to intervene claims are insufficiently pleaded because Plaintiffs' complaints do not specify where or how the alleged failure to intervene occurred. Dkt. 70 at 22-23. This argument is a non-starter. The fact-intensive nature of the failure to intervene inquiry makes it a particularly poor candidate for a motion to dismiss, and the Seventh Circuit "has made clear that the prongs of this analysis almost always implicate questions of fact for the jury: 'Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact . . .'" *Abdullahi*, 423 F.3d at 774. And at the motion to dismiss stage, little is required of a plaintiff to advance such a claim. The complaint need not "*explicitly* specify the existence of an opportunity for [the defendants] to have intervened," so long as the broader context from the facts alleged "demonstrate[s] . . . opportunities during which [they] could have acted." *Yang*, 37 F.3d at 285.

Plaintiffs' complaints far surpass this low bar. They allege that Defendants Rubinstein, Judge and Varga were involved in and aware of the abusive interrogations of one or more of Fulton, Mitchell and Shaw, Dkt. 1 ¶¶ 42-47, 61-63, 70-73, giving them ample opportunity to step in to forestall the misconduct of their prosecutorial colleagues or police co-conspirators. And while Plaintiffs' lack precise knowledge of the exact contours of Defendant Shepherd's involvement without the benefit of discovery, given his central role in manufacturing false evidence and suppressing exculpatory evidence to thwart Fulton's alibi, *id.* ¶¶ 80-86, it is a fair and plausible inference from these allegations that his role in the conspiracy gave him knowledge of the similar misconduct perpetrated by the Officer Defendants, yet he too did nothing to thwart their constitutional violations.

## IX.     PLAINTIFFS ADEQUATELY PLEAD MALICIOUS PROSECUTION.

Like the City Defendants, the County Defendants seek dismissal of Plaintiffs' malicious prosecution claims solely on the basis that Plaintiffs have not adequately alleged that their criminal proceedings were terminated in a manner indicative of their innocence. Dkt. 70 at 23-26. This argument impermissibly relies on material outside the pleadings, and also lacks merit.

Liability for malicious prosecution in Illinois requires the commencement or continuation of a criminal proceeding with malice but without probable cause and the termination of the proceeding in the plaintiffs' favor, meaning the case ended in a manner "indicative of innocence." *Swick v. Liautaud*, 662 N.E.2d 1238, 1243 (Ill. 1996). Defendants conflate Plaintiffs' burden at later stages of the case—to develop evidence in the summary judgment record permitting the inference, and ultimately proving at trial, that the charges against them were dropped in a manner indicative of innocence—with their much more limited obligations at pleadings stage.

Defendants cite two cases in support of their legal argument, but neither aids their case. Dkt. 70 at 25. *Lund v. City of Rockford, Illinois*, 956 F.3d 938 (7th Cir. 2020), is an appeal taken from a summary judgment order, and so offers little guidance as to the what is required on the indicative of innocence element at the pleadings stage. The case is also factually inapposite. In *Lund*, the plaintiff offered nothing more than the existence of a "bare *nolle prosequi* order, which [did] not state the reasons behind it," coupled with the "coincidence in timing" that the *nolle prosequi* was moved by the prosecution the same day the criminal defense attorney had noticed a motion to dismiss the charge. 956 F.3d at 949. The Seventh Circuit held that these two facts, standing alone and with no other evidence supporting a finding that the criminal charges were not well founded, were not sufficient to survive summary judgment. *Id.* Of course, here, Plaintiffs allege far more, including that their entire prosecution flowed from a corrupt criminal investigation designed to frame them, Dkt. 1 ¶ 31, and that their convictions were overturned when new evidence emerged supporting their innocence and demonstrating that their trials had been tainted by constitutional violations, *id.* ¶ 100.

The second case Defendants cite, *Treece v. Village of Naperville*, 903 F. Supp. 1251 (N.D. Ill. 1995), strongly supports Plaintiffs' position, as it holds that

> a *nolle prosequi* termination is generally considered a termination in favor of the plaintiff for the purposes of a malicious prosecution claim[,] . . . [but] if a *nolle prosequi* dismissal is the product of a compromise or technical failure, it does not indicate innocence.

*Id.* at 1258 (internal citations omitted) (collecting cases). Because neither party submitted any information regarding the underlying facts that would aid the court in making that determination, the court declined to dismiss the malicious prosecution claim at the pleadings stage, demonstrating the low bar that applies to satisfy this element at that stage. *Id.* Of course, here,

Plaintiffs affirmatively allege circumstances showing there was no "compromise or technical failure," but rather new evidence that supported Plaintiffs' longstanding claims of innocence.

Even when their cases proceed to trial, *Swick* merely requires that Plaintiffs demonstrate that the "circumstances surrounding the abandonment of the criminal proceedings must compel an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution." 662 N.E.2d at 1243. Neither an acknowledgement of innocence from the state nor a finding of innocence by a court or jury is required for a criminal proceeding to be indicative of innocence. Acquittal after trial, for example—which is not a finding of innocence and certainly not a concession of innocence by the state—qualifies as favorable termination indicative of innocence for malicious prosecution purposes. *See Rich v. Baldwin*, 479 N.E.2d 361, 362 (Ill. App. 1985). And when the state opts not even to try a defendant but instead ends the case with a *nolle prosequi*, a plaintiff need only "establish[] that the *nolle prosequi* was entered for reasons consistent with his innocence" to meet the favorable termination element, as the Seventh Circuit has explained when applying *Swick*. *Washington v. Summerville*, 127 F.3d 552, 557 (7th Cir. 1997).

The scenario Plaintiffs allege in their complaints—a *nolle prosequi* was entered in both of their cases after the emergence of additional alibi evidence had resulted in the grant of a new trial—is consistent with innocence and supports the inference that no reasonable grounds existed to pursue a prosecution. To elaborate further, an assistant state's attorney conceded when dropping the charges against Plaintiffs that the state would not be able to meet its burden at trial. In short, Plaintiffs' allegations are enough at this stage, and the question whether Plaintiffs will ultimately meet their burden at trial is not before the Court.[4]

---

[4]    Defendants devote nearly a full page of their brief to a single-space block quote from Judge Martin's order denying Plaintiffs' petitions for certificates of innocence—an order which Plaintiffs are

## X.     PLAINTIFFS' IIED CLAIMS ARE TIMELY.

Like the City Defendants, the County Defendants argue that Plaintiffs' claims for

intentional infliction of emotional distress are time-barred because they were not filed by March

2004—*i.e.*, within one year of Defendants' appalling behavior that forms the basis of these

claims. Dkt. 70 at 27. Normally, a statute of limitations defense should not be considered on a

motion to dismiss. *Collins v. Village of Palatine, Ill.*, 875 F.3d 839, 842 (7th Cir. 2017)

(explaining that dismissal under 12(b)(6) on timeliness grounds is appropriate only "if the

complaint contains everything necessary to establish that the claim is untimely"). Regardless,

Plaintiffs' IIED claims are timely because they are inextricably tied up with Plaintiffs' wrongful

convictions, and did not accrue under *Heck* until the charges against Plaintiffs were dropped.

There is a division of authority in this district over when IIED claims accrue. The line of

cases that applies *Heck* to delay the accrual of those claims under the circumstances present here

is more persuasive. Defendants rely upon *Batchelor v. City of Chicago*, 2020 WL 509034 (N.D.

Ill. Jan. 31, 2020), and the underlying case upon which *Batchelor* relied, *Bridewell v. Eberle*, 730

F.3d 672, 678 (7th Cir. 2013). Dkt. 70 at 27. But *Bridewell* never analyzed whether an IIED

claim can be *Heck*-barred; it merely considered whether the statute of limitations for IIED can be

extended under a continuing violation theory. The more persuasive line of cases in this district

has "concluded that when an IIED claim is based on the same misconduct that procured the

plaintiff's conviction, the statute of limitations does not begin to run until the wrongful

conviction has been overturned." *Baker v. City of Chicago*, 2020 WL 5110377, at *9 (N.D. Ill.

---

appealing. Dkt. 70 at 26. Essentially, they invite this Court to take judicial notice of Judge Martin's
credibility determinations and evaluation of the disputed factual record, and adopt those findings for the
purpose of dismissing Plaintiffs' malicious prosecution claims at the pleadings stage. They cite no case
law to support this request—unsurprisingly, as it is wholly improper, both as a matter of federal
procedural law, *see supra.* at Arg. I, and state substantive law, *see* 735 ILCS 5/2-702(j) ("The decision to
grant or deny a certificate of innocence shall be binding only with respect to claims filed in the Court of
Claims and shall not have a res judicata effect on any other proceedings.").

Aug. 31, 2020) (citing as examples *Hill v. City of Chicago*, 2020 WL 509031, at \*5 (N.D. Ill. Jan. 31, 2020); *Andersen v. City of Chicago*, 2019 WL 6327226, at \*6 (N.D. Ill. Nov. 26, 2019); and *Brown v. City of Chicago*, 2019 WL 4694685, at \*6 (N.D. Ill. Sept. 26, 2019)). This conclusion makes sense because the finality, federalism, and comity concerns highlighted by the Supreme Court in *Heck*, 512 U.S. at 484, and recently reiterated in *McDonough*, 139 S. Ct. at 2159, counsel against permitting an IIED claim to go forward if it would necessarily impugn an extant conviction. Plaintiffs' IIED claims, which are premised on the same misconduct that caused their wrongful convictions, necessarily impugn those convictions and so did not accrue until those convictions were set aside. Defendants' statute of limitations argument should be rejected.

## XI.    PLAINTIFFS' INDEMNIFICATION CLAIMS SHOULD NOT BE DISMISSED.

The only argument Defendants advance for the dismissal of Plaintiffs' indemnification claims against Cook County is that those claims cannot survive absent an underlying claim against one of the individual County Defendants. Dkt. 70 at 27. Because Defendants' arguments for dismissal of those underlying claims lack merit, the indemnification claims survive also.

## CONCLUSION

For the reasons given above, Plaintiffs request that Defendants' motions to dismiss be denied in their entirety.[5]

DATED: December 2, 2020                    RESPECTFULLY SUBMITTED,

                                      BY:    /s/ Sam Heppell
                                             *One of Plaintiffs' Attorneys*

---

[5] If the Court were to disagree with Plaintiffs, their complaints should be dismissed without prejudice and with leave to replead. *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010).

Arthur Loevy
Jon Loevy
Russell Ainsworth
Julia Rickert
Sam Heppell
LOEVY & LOEVY
311 N. Aberdeen Street
Chicago, IL 60607
T: 312-243-5900
F: 312-243-5902
julia@loevy.com

Andrea D. Lyon
LYON LAW
53 W. Jackson Blvd., Ste. 1650
Chicago, IL 60604
T: 312-877-5543
F: 312-663-3707
andrea@andrealyon.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 2, 2020, I filed the foregoing document using

the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Sam Heppell
*One of Plaintiffs' Attorney*s