**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | | |
|---|---|---|---|
| JOHN FULTON, | | ) | |
| | | ) | |
| | Plaintiff, | ) | 20-cv-3118 |
| | | ) | |
| v. | | ) | Honorable Judge Lefkow |
| | | ) | |
| ROBERT BARTIK, et al., | | ) | |
| | | ) | |
| Defendants. | | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | | ) | |
| | | ) | |
| ANTHONY MITCHELL, | | ) | |
| | | ) | 20-cv-3119 |
| Plaintiff, | | ) | |
| | | ) | Honorable Judge Lefkow |
| v. | | ) | |
| | | ) | |
| ROBERT BARTIK, et al., | | ) | |
| | | ) | |
| Defendants. | | ) | |

**COUNTY DEFENDANTS' REPLY IN SUPPORT
OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendants McRay Judge, Jacob Rubinstein, Andrew Varga, Eugene Shepherd, and Cook County, Illinois (collectively "County Defendants" or "Defendants"), by and through their attorneys, Special State's Attorneys Brian P. Gainer and Zachary Pestine of Johnson & Bell, Ltd., for their Reply in Support of their Motion to Dismiss Plaintiffs John Fulton and Anthony Mitchell's ("Plaintiffs") Complaints, state as follows:

**INTRODUCTION**

Plaintiffs' Response to the County Defendants' Motion to Dismiss ("Response") largely ignores established law. In this Reply, the County Defendants will address the litany of Plaintiffs' errors and restate the law as it is, not as Plaintiffs wish it to be.

1

I. **PLAINTIFFS CANNOT DISPUTE THAT THE MANNER IN WHICH THEIR JUDICIAL PROCEEDINGS TERMINATED DID NOT INDICATE THEIR INNOCENCE.**

Plaintiffs begin their Response with a strawman, namely that Defendants exhibited documents in their Motion to Dismiss to demonstrate that Plaintiffs are not actually innocent. [Dkt. #84, pp. 2-3]. Plaintiffs claim that Defendants "invite this Court to take judicial notice of Judge Martin's credibility determinations and evaluation of the disputed factual record, and adopt those findings for the purpose of dismissing Plaintiffs' malicious prosecution claims at the pleadings stage." *Id*. at 30. This is false, and it is an unreasonable reading of Defendants' Motion to Dismiss. Defendants do not ask the Court to adopt Judge Martin's findings, but rather clearly ask that the Court take judicial notice that Judge Martin *made* those findings. Defendants did not exhibit these documents to demonstrate whether Plaintiffs are innocent. Instead, these records demonstrate that Plaintiffs' proceedings were not terminated in a manner indicative of their innocence, a required element of Plaintiffs' malicious prosecution claim.

These court records are subject to judicial notice. A court "may take judicial notice of an adjudicative fact that is both not subject to reasonable dispute and either 1) generally known within the territorial jurisdiction of the trial court or 2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997), *citing Opoka v. INS*, 94 F.3d 392, 394 (7th Cir.1996) (recognizing that proceedings in other courts, both inside and outside the federal system, may be judicially noticed).

In their Response, Plaintiffs claim "The Seventh Circuit has reversed dismissals under Rule 12(b)(6) where contradictory facts from outside of the complaint were considered. *Jacobs v. City of Chicago*, 215 F.3d 758, 765 (7th Cir. 2000)." [Dkt. #84, p. 3]. *Jacobs* regards a district court's consideration of several photographs and a police report exhibited in a motion to dismiss, not

judicial notice of undisputed court records. *Jacobs v. City of Chicago*, 215 F.3d 758 (7th Cir. 2000). To reiterate, it is irrelevant whether Judge Martin ruled correctly, just as it is irrelevant whether Plaintiff's dispute that Judge Martin ruled correctly. What *is* relevant is whether Judge Martin made the ruling, and thus whether court records demonstrate that Plaintiffs cannot state a claim for malicious prosecution (and, as detailed below, whether Plaintiffs' claims are barred under the doctrine of *res judicata*). Plaintiffs do not dispute the accuracy of the court records that Defendants exhibited, and these records demonstrate that Plaintiffs' judicial proceedings were not terminated in a manner indicative of their innocence. [Dkt. #70, pp. 23-26, Ex. E-G].

This is dispositive because the elements of a cause of action for malicious prosecution are: "(1) the commencement or continuance by the defendant of an original judicial proceeding against the plaintiff; (2) termination of the original proceeding in favor of the plaintiff; (3) absence of probable cause for the proceeding; (4) malice; and (5) special damages. In order to sustain an action for malicious prosecution, the plaintiff must prove each element." *Grundhoefer v. Sorin*, 2014 IL App (1st) 131276, ¶ 11, 20 N.E.3d 775, 780. (internal citation omitted). "In regard to the second element, a malicious prosecution action cannot be predicated on underlying criminal proceedings which were terminated in a manner not indicative of the innocence of the accused." *Swick v. Liautaud*, 169 Ill. 2d 504, 512, 662 N.E.2d 1238, 1242 (1996). Plaintiffs cannot demonstrate the second element of their malicious prosecution claims because they cannot demonstrate that their criminal proceedings were terminated in a manner indicative of their innocence. Regardless of whether Plaintiffs are innocent, their malicious prosecution claims fail.

## II. PLAINTIFFS CHOSE TO DISMISS THEIR CASE AGAINST DEFENDANT RUBINSTEIN WITH PREJUDICE OVER FOURTEEN YEARS AGO, AND *HECK* DOES NOT DEFEAT *RES JUDICATA*.

Plaintiffs bring the following claims against Defendant Rubinstein: Count I – False Confession under the Fifth and Fourteenth Amendments, Count II – Fabrication of False Witness Statements under the Fourteenth Amendment, Count VI – Section 1983 Failure to Intervene, and Count X – State Law Intentional Infliction of Emotional Distress. [Dkt. #1, ¶¶135-150, 173-178, 202-204]. In their Motion to Dismiss, Defendants demonstrated that all claims against Defendant Rubinstein should be dismissed under the doctrine of *res judicata*. Plaintiffs previously sued Defendant Rubinstein in 2005 for claims arising out of the same set of facts, namely their interrogation and prosecution for the murder of Christopher Collazo. Plaintiffs admit that Defendant Rubinstein was previously dismissed with prejudice as a defendant in that case. Plaintiffs do not dispute that such case arose out of the same transaction or occurrence as the instant suit, nor do Plaintiffs dispute that their claims against Defendant Rubinstein in this case largely overlap with those in their previous suit. [Dkt. #84, pp. 4-7].

*Res judicata* prevents parties from "relitigating claims that were or could have been brought in an earlier lawsuit that resulted in a final judgment on the merits. *Res judicata* applies when (1) there has been a final judgment on the merits in an earlier action, (2) there is an identity of parties or privies in the two suits, and (3) there is an identity of the causes of action in the two suits." *Jagla v. BMO Fin. Grp.*, 248 F. App'x 743, 744–45 (7th Cir. 2007). (internal citation omitted).

Plaintiffs respond that the claims offered in this lawsuit did not accrue until after the dismissal of their earlier case. *Id*. at 4-7. But Plaintiffs' current claims against Defendant Rubinstein are largely the same as the ones dismissed with prejudice over fourteen years ago. [Dkt. #70, Ex. B, ¶¶59-79]. These claims included coerced interrogation under the Fifth and Fourteenth Amendments (also Counts I and II of the instant suit), conspiracy under the Fourth and Fourteenth Amendments (pleaded as part of Counts I and II), and deprivation of rights to a fair trial under the

4

Fifth and Fourteenth Amendments. *Id*. Plaintiffs never explain why their claims against Defendant Rubinstein accrued in 2005 (as they brought them then), but those same claims that arose out of the same transaction or occurrence did not accrue until after 2005 (as they bring those claims now). In other words, Plaintiffs argue that their claims against Defendant Rubinstein could not have been brought in 2005, despite the fact that those claims *were* brought in 2005 and were dismissed with prejudice.

Plaintiffs argue that Defendants implicitly acknowledge that the claims against Defendant Rubinstein did not accrue until after 2005 by not arguing that these claims are barred by the statute of limitations. [Dkt. #84, pp. 5-7]. Plaintiffs argue that under *Heck v. Humphrey*, such claims are not barred by the statute of limitations. *Id*. at 6. Under *Heck*, a "§ 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated… the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck v. Humphrey*, 512 U.S. 477, 487, 489–90, 114 S. Ct. 2364, 2372, 2374, 129 L. Ed. 2d 383 (1994).

In effect, Plaintiffs, without legal foundation, ask the Court to rule that *Heck* defeats *res judicata*. But federal appellate courts that have ruled on the issue have stated the opposite. "Having escaped the jaws of *Heck*, Leather should therefore be permitted to pursue his § 1983 claim in the district court unless principles of res judicata or collateral estoppel preclude his suit." *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999). Plaintiffs do not allege any new evidence against Defendant Rubinstein, nor do they explain how their earlier coerced interrogation and conspiracy claims, which they chose to dismiss with prejudice as to Defendant Rubinstein, differ from their current claims. Plaintiffs ended their case against Defendant Rubinstein over fourteen years ago,

and now, after all these years, and without legal foundation, attempt to revive it. The principles of *res judicata* dictate that Plaintiffs' claims against Defendant Rubinstein cannot stand.

### III.    PLAINTIFFS' GROUP-PLEADING REMAINS INSUFFICIENT.

Plaintiffs' zealous use of group-pleading is invalid. Plaintiffs claim that *Atkins*, in which the court found invalid group-pleading, differs from their case because in *Atkins*, it was unclear whether the plaintiffs contended that all, some, or none of the defendants performed the alleged acts. [Dkt. #84, p. 10]; *Atkins v. Hasan,* 2015 WL 3862724, at *3 (N.D. Ill. June 22, 2015). Plaintiffs state that "This is not an issue in Plaintiffs' complaints here," but this is *precisely* the issue in Plaintiffs' Complaints. Plaintiffs' Complaints vaguely reference "Defendants" approximately fifty-seven times without specifying which Defendants were responsible for the alleged conduct. [Dkt. #1, ¶¶2, 4, 21, 25, 29, 31-32, 35-36, 39-45, 49-51, 60-62, 65-66, 68, 71, 75, 77-78, 80-81, 89-90, 92, 96, 98, 127, 134, 140-141, 143, 146-147, 149, 163, 167, 177, 178].

In their Motion to Dismiss, Defendants offered just several of numerous specific examples of Plaintiffs' inscrutable references to "Defendants." Plaintiffs chose not to respond. More or less, when trying to decipher Plaintiffs' Complaints, Plaintiffs instruct each individual defendant to "figure it out. You know what you did." [Dkt. #84, pp. 8-9]. This is not how the legal process works. "As the Seventh Circuit has explained, 'each defendant is entitled to know what he or she did that is asserted to be wrongful.'" *Hoffman v. DuPage Cty.*, Illinois, No. 16 C 9411, 2018 WL 1508486, at *4 (quoting *Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013)).

### IV.    THERE ARE NUMEROUS DEFECTS IN PLAINTIFFS' CONSPIRACY CLAIMS.

#### A.    Plaintiffs fail to address their conspiracy pleading defects.

Curiously, in their Response, Plaintiffs do not defend their failure to plead the elements of conspiracy. To state a conspiracy claim under Section 1983, a plaintiff must specify that "(1) the

6

individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights. Along with these elements, [plaintiff] must allege the parties, the general purpose, and the approximate date of the conspiracy." *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1075 (N.D. Ill. 2018). (internal citation omitted). Even before *Twombly* and *Iqbal*, conspiracy allegations "were often held to a higher standard than other allegations; mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her was not enough. The complaint in this case, though otherwise detailed, is bereft of any suggestion, beyond a bare conclusion, that the remaining defendants were leagued in a conspiracy with the dismissed defendants." *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009).

Plaintiffs, in their Response, remain silent as to any alleged agreement entered into by the Prosecutor Defendants, the contours of such agreements, or when such agreement occurred. Instead, Plaintiffs quote from their Complaints regarding alleged conduct taken by the Prosecutor Defendants individually but fail to acknowledge that their pleadings failed to tie that conduct to any agreement. One theme of Plaintiffs' Response is their theory that some Defendants allegedly performed wrongful acts, so these Defendants might have been in cahoots, and at the pleading stage, the Court must find that everyone *was* in cahoots. [Dkt. #84, pp. 8-9, 14, 27]. But given Plaintiffs' refusal to even plead an agreement, Defendants cannot adequately respond to Plaintiffs' deficient conspiracy theories.

Further, as stated in Defendants' Motion to Dismiss, the *only* conduct Plaintiffs allege Defendant Varga to have taken is to coerce a confession, which was suppressed, of someone who is not a plaintiff in this case. [Dkt. #1, ¶¶67-77]. First, Plaintiffs claim that this can surely be the basis of a conspiracy. [Dkt. #83, p. 13]. Plaintiffs are wrong. To state a Section 1983 conspiracy claim, Plaintiffs must allege that overt acts in furtherance of the conspiracy *actually deprived* them

of constitutional rights. *Williams v. City of Chicago*, 315 F. Supp. 3d at 1075. Plaintiffs cannot enumerate a constitutional right which was violated by coercing a confession which was not used against them. Second, constitutional violations are not based on hypotheticals, yet Plaintiffs assert a constitutional violation based on events which never occurred:

> But because Varga and his co-conspirators succeeded in coercing a false statement from Shaw which implicated both Fulton and Mitchell, his value as a defense witness to corroborate their claims of police misconduct was eviscerated; they could not call him at trial without risking the introduction of his statements against them and further adding to the ledger of fabricated evidence used against them.

[Dkt. #84, p. 13]. Plaintiffs do not explain how the suppressed statement could have been used against them and offer no legal foundation for constitutional violations based on events which never occurred. In other words, Plaintiffs claim that Defendant Varga conspired to violate constitutional rights which were not ultimately violated, and his actions may have risked a further constitutional violation that never happened. This cannot be the basis of a legal claim.

**B. Plaintiffs fail to plead Section 1983 and state law conspiracy against Defendant Shepherd and fail to comprehend the duplicative nature of their state law conspiracy claim.**

**i. Plaintiffs admit to speculation about Defendant Shepherd's conspiracy role.**

In their Motion to Dismiss, Defendants demonstrated that Plaintiffs merely speculated about a conspiracy involving Defendant Shepherd and that a "claim for civil conspiracy cannot be based upon speculation or conjecture." *Kunz v. City of Chicago*, 234 F. Supp. 2d 820, 823 (N.D. Ill. 2002). In response, Plaintiffs double down on that speculation:

> Defendants appear to suggest that this work by Shepherd was coincidentally entirely separate from the work of the Police Officer Defendants, but a far more plausible (and certainly permissible) reading of Plaintiffs' allegations is that Shepherd conspired with the Police Officer Defendants to support their crooked investigation and develop this vital, last-minute evidence they needed to salvage their false narrative against Fulton and Mitchell.

[Dkt. #84, p. 14]. Plaintiffs do not even argue that they pleaded such guesswork in their Complaints. Rather, they argue that the Court should read such guesswork into their Complaints. Plaintiffs remain silent as to an alleged agreement and approximate date of the agreement, as required under Section 1983. *Williams*, at 1075. It is telling that Plaintiffs "readily concede" the lack of robustness of their conspiracy allegations against Defendant Shepherd. [Dkt. #84, p. 14]. Lawsuits, and certainly conspiracy claims, cannot be based on fishing expeditions, and Plaintiffs cannot request that the Court read non-existent allegations into their Complaints.

      ii.    **Plaintiffs refuse to allege an agreement between Defendant Shepherd and his alleged co-conspirators.**

Under Illinois law, the "elements of civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Time Savers, Inc. v. LaSalle Bank*, N.A., 371 Ill. App. 3d 759, 771, 863 N.E.2d 1156, 1167 (2007). "In order to connect a defendant to an alleged civil conspiracy, the complaint must allege the necessary and important element of the existence of an agreement. The complaint must allege that the defendant knowingly and voluntarily participated in the common scheme at the heart of the alleged civil conspiracy." *Redelmann v. Claire Sprayway, Inc.*, 375 Ill. App. 3d 912, 924, 874 N.E.2d 230, 241 (2007) (internal citations omitted). Plaintiffs refuse to allege any such agreement or that Defendant Shepherd knowingly and voluntarily participated in a common scheme. Rather, their state law conspiracy response merely refers to their Section 1983 conspiracy guesswork. [Dkt. #84, p. 20].

      iii.    **Plaintiffs fail to understand the basic tenets of conspiracy claims, and in turn, why their state law conspiracy claim is duplicative.**

In their Motion to Dismiss, Defendants demonstrated that Plaintiffs' state law conspiracy claim is duplicative because it is based on the same facts and names the same actors as their

malicious prosecution and intentional infliction of emotional distress claims. [Dkt. #70, pp. 18-19]. A "conspiracy claim alleging a tort as the underlying wrongful act is duplicative where the underlying tort has been pled." *Mission Measurement Corp. v. Blackbaud, Inc.*, 287 F. Supp. 3d 691, 725 (N.D. Ill. 2017). Because "a successful conspiracy claim enables a plaintiff to hold co-conspirators jointly liable for actions by other members of the conspiracy, a conspiracy claim is only actionable if it is based on new facts or seeks to extend liability for the underlying tort to new defendants." *Mission Measurement Corp. v. Blackbaud, Inc.*, 287 F. Supp. 3d at 725.

Plaintiffs respond that their claims are not duplicative because Defendant Shepherd took different acts in furtherance of the conspiracy than other defendants. [Dkt. #84, p. 21]. Plaintiff claims that "This disjunction means that Plaintiffs' conspiracy claims do serve a purpose because, if proven, they would put the Police Officer Defendants and Defendant Shepherd on the hook for each other's misconduct." *Id*. Plaintiffs merely describe the nature of conspiracy claims. If different people are leagued in a conspiracy, they are on the hook for each other's conduct in furtherance of the conspiracy. Of course, this is irrelevant to whether Plaintiffs' conspiracy claim is based on new facts or seeks to extend liability for the underlying tort to new defendants. Plaintiffs' state law conspiracy claim does not do this, and Plaintiffs do not argue otherwise.

## V. PLAINTIFFS' COUNT II FABRICATION CLAIM STILL FAILS.

In their Motion to Dismiss, Defendants demonstrated that Plaintiffs failed to state a Fabrication of Evidence claim in Count II because they base their claim not on fabricated evidence, but on allegedly coerced statements, which is not the basis of a fabrication claim. [Dkt. #70, pp. 11-13]. Plaintiffs' respond that the Prosecutor Defendants knew these statements to be false. [Dkt. #84, p. 16]. It is telling that, to support their argument that "Defendants" knew that Johnitta Griffin's statement was false, Plaintiffs cite Paragraphs 26-28 of their Complaints, which read:

10

26. Police Officer Defendants subsequently interviewed Griffin.

27. During her first interview, Griffin explained that she was friends with Collazo but knew nothing about his murder. She told the officers that she had referred Plaintiff, a friend of hers, to Collazo in order to purchase a gun, which Plaintiff had wanted for personal protection, and that Collazo and Marinelli had robbed Plaintiff rather than selling him a gun.

28. Griffin denied knowing of any connection between that robbery and Collazo's murder a month later.

[Dkt. #1, ¶¶26-28; Dkt. #84, p. 16]. Here, not only do Plaintiffs fail to allege that the Prosecutor Defendants knew the statement was false, but it is also yet another example of Plaintiffs playing fast and loose with the term "Defendants." Plaintiffs commit the same errors in Paragraphs 31-35, claiming "To frame Plaintiff, Mitchell, and Shaw, Police Officer Defendants re-interviewed Griffin." [Dkt. #84, p. 16; Dkt. #1, ¶¶31-35]. Plaintiffs simply fail to allege that the Prosecutor Defendants knew these statements to be false or how they knew them to be false. Plaintiffs' citations to the knowledge of non-Prosecutor Defendants are counterproductive to their cause.

Regarding their potential *Brady* claims, Plaintiffs state "The mere fact that Plaintiffs were aware at the time of their trial that all of these statements were false does not obviate Defendants' liability for suppression." [Dkt. #84, p. 17]. Plaintiffs continue to ignore that there is no *Brady* obligation to inform a defendant that his or her confession was coerced. *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1029 (7th Cir. 2006). Plaintiffs still do not identify the "other witnesses" to whom they refer in their Complaints. [Dkt. #1, ¶147]. Plaintiffs cannot state a *Brady* claim for Plaintiff Mitchell's own confession, nor for Shaw's statement, which was not used.

## VI. COUNTS III AND IV REMAIN REDUNDANT.

In both Counts III and IV of Plaintiffs' Complaints, Plaintiffs allege that the same Defendants fabricated evidence to initiate judicial proceedings and secure a conviction. [Dkt. #1, ¶¶152-154, 160-162]. Plaintiffs recognize that Count IV is a due process claim. Plaintiffs claim

their Count III Deprivation of Liberty without Probable Cause under the Fourteenth Amendment is not a due process claim. [Dkt. #84, p. 18]. This makes no sense, as Plaintiffs' Fourteenth Amendment liberty interest is only cognizable under the Due Process Clause. "[I]ndividuals do not have a federal right not to be summoned into court and prosecuted without probable cause. Instead, we usually analyze these self-styled 'malicious prosecution' claims as alleging a violation of a particular constitutional right, such as the right to be free from unlawful seizures under the Fourth Amendment, or the right to a fair trial under the Due Process Clause." *Serino v. Hensley*, 735 F.3d 588, 592 (7th Cir. 2013).

Plaintiffs clearly attempt to state a federal malicious prosecution claim, i.e., a due process violation, in Count III. Plaintiffs further claim that "Count III alleges a Fourth and Fourteenth Amendment claim for deprivation of liberty without probable cause, Dkt. 1 ¶¶ 151-158—a claim that does not focus on the conduct of Plaintiffs' eventual criminal trials." [Dkt. #84, p. 18]. This is odd because the operative language of Count III is that "Defendants caused Plaintiff to be deprived of his liberty without probable cause and subjected improperly to judicial proceedings for which there was no probable cause, in violation of his rights secured by the Fourth and Fourteenth Amendments." [Dkt. #1, ¶53]. Counts III and IV are the same claims, namely due process claims alleging that the same Defendants fabricated evidence to initiate judicial proceedings and secure a conviction. These claims are redundant, and one should be dismissed. *Hale v. Renee-Baker*, No. 01 C 7073, 2002 WL 1613765, at *1 (N.D. Ill. July 19, 2002).

## VII. PLAINTIFFS' THIRTEENTH AMENDMENT CLAIM REMAINS DEFICIENT.

In support of their Thirteenth Amendment claim, Plaintiffs state that because of Defendant Shepherd's alleged misconduct, he is "liable for all of the consequences of that misconduct, including for subjecting [Plaintiffs] to forced labor while imprisoned as a result." [Dkt. #84, p. 20].

Plaintiffs defend this odd claim, despite involuntary servitude being "a condition of servitude in which the victim is forced to work *for the defendant* by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process." *United States v. Kozminski*, 487 U.S. 931, 952 (1988). (emphasis added).

As Defendants demonstrated in their Motion to Dismiss, Defendant Shepherd never forced Plaintiffs to work for him as he did not work for their prison. Moreover, Plaintiffs' Complaint is silent as to forced labor. While Plaintiffs plead that any labor performed in the prison system constituted involuntary servitude, they neither alleged such labor was forced nor what labor was performed. [Dkt #1, ¶171, generally]. As Plaintiffs admit, the Supreme Court has defined "involuntary servitude" as physical or legal coercion. [Dkt. #84, p. 19]. Plaintiffs do not allege that Defendant Shepherd physically or legally coerced them to work, let alone to work *for him*. Plaintiffs add that "the Supreme Court in *Kozminski* was interpreting 'involuntary servitude' in the context of the criminal statute at issue in that case, and left the door open to a more expansive reading outside the context of a criminal statute." *Id*. Not only do Plaintiffs fail to explain this statement, but this statement is also clearly wrong. "The pivotal phrase [in the statute], 'involuntary servitude,' clearly was borrowed from the Thirteenth Amendment." *United States v. Kozminski*, 487 U.S. 931, 944–45, 108 S. Ct. 2751, 2761, 101 L. Ed. 2d 788 (1988).

Further mooting Plaintiffs' argument, Plaintiffs were duly convicted, even if their convictions were reversed. *Perrault v. State*, No. 15-CV-144-BBC, 2016 WL 126918, at *3 (W.D. Wis. Jan. 11, 2016), aff'd sub nom. *Perrault v. Wisconsin Dep't of Corr.*, 669 F. App'x 302 (7th Cir. 2016); *see also Heidelberg,* 2019 WL 4862069, at *19. Plaintiffs cite no cases to the contrary, and the case law is universally against them.

**VIII.   PLAINTIFFS' FAILURE TO INTERVENE CLAIM STILL FAILS.**

In response to Defendants' Failure to Intervene arguments, Plaintiffs misstate case law and attempt to rewrite their Complaints. Defendants cited numerous cases, including this Court's own ruling, to demonstrate that prosecutors have qualified immunity regarding intervening in police officers' coercion of confessions and statements, and absolute immunity in deciding whether to prosecute. [Dkt. #70, pp. 21-22]. In exchange, Plaintiffs cite one irrelevant case, calling it "the more numerous and persuasive authority." [Dkt. #84, p. 21]. Their case, *Resendiz*, states that "a prosecutor who acts as an investigator and allegedly fabricates evidence against a defendant during the investigation stage could be held liable for failure to intervene under Section 1983." *Resendiz v. City of Chicago*, No. 16 C 11046, 2017 WL 11569364, at *2 (N.D. Ill. Aug. 10, 2017).

Of course, that is not the issue. The issue is whether there exists a failure to intervene claim for prosecutors "allowing" police officers to fabricate statements, and courts in this District have resoundingly rejected such claims. Yet, that is the conduct for which Plaintiffs attempt to pin liability on the Prosecutor Defendants: "Defendant Rubinstein allowed the Police Officer Defendants to fabricate Griffin's statement, and then falsely documented that the statement had come from Griffin as a result of a legitimate police interview." [Dkt. #1, ¶33]. To dispute the overwhelming rejection of their claims, Plaintiffs cite *Abdullahi v. City of Madison*, a case which does not regard the actions of prosecutors. *Abdullahi v. City of Madison,* 423 F.3d 763 (7th Cir. 2005). Plaintiffs are conspicuously silent on this Court's own rejection of these claims. *Hobbs v. Cappelluti*, 899 F. Supp. 2d 738, 773 (N.D. Ill. 2012).

And while Plaintiffs now assert that their claim also encompasses Defendants Rubinstein and Judge failing to intervene on each other, their Complaints do not allege that Defendants Rubinstein and Judge knew of each other's alleged conduct. [Dkt. #1, ¶¶46-47]. Plaintiffs are not even certain that these defendants knew of *the police officers'* conduct. *Id*. at ¶48. Furthermore,

Plaintiffs explicitly request leave to conduct a fishing expedition regarding Defendant Shepherd's alleged failure to intervene. [Dkt. #84, p. 27]. This is illegal. "[D]iscovery is not to be used as a fishing expedition*." E.E.O.C. v. Harvey L. Walner & Assocs.*, 91 F.3d 963, 971 (7th Cir. 1996).

## IX.   PLAINTIFFS' INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ("IIED") CLAIMS ARE TIME-BARRED.

Plaintiffs cite relevant case law regarding the tension between *Heck* and IIED claims. [Dkt. #84, p. 30]. There is a split in this District on whether *Heck* tolls the one-year statute of limitations on their IIED claims when they stem from claims that might otherwise be *Heck*-barred. Numerous judges in this District have sided against Plaintiff: *Batchelor v. City of Chicago*, No. 18 C 8513, 2020 WL 509034, at *4 (N.D. Ill. Jan. 31, 2020); *Friends-Smiley v. City of Chicago, 16-CV-5646*, 2016 WL 6092637, at *2 (N.D. Ill. Oct. 19, 2016); *Phillips v. City of Chi.*, No. 14 C 9372, 2015 WL 5675529, at *7 (N.D. Ill. Sept. 24, 2015); *Chatman v. City of Chi.,* 2015 WL 1090965, *9 (N.D. Ill. Mar. 10, 2015); *Taylor v. City of Chicago*, 80 F. Supp. 3d 817, 828 (N.D. Ill. 2015); *Hill v. City of Chi.,* 2014 WL 1978407, *3 (N.D. Ill. May 14, 2014); *Bamberg v. City of Evanston,* 2014 WL 1612710, *4 (N.D. Ill. Apr. 16, 2014).

Defendants recognize, however, that this Court has previously ruled against Defendants' argument in *Hobbs v. Cappelluti*, which Defendants cite to support their failure to intervene argument. *Hobbs*, 899 F. Supp. 2d at 763. Defendants note that even if this Court does not find incongruities between the instant case and *Hobbs*, *res judicata* would still bar Plaintiffs' IIED claim against Defendant Rubinstein, and Plaintiffs' IIED claim would still fail against all Defendants because it is based on their other failed claims.

## X.   PLAINTIFFS' INDEMNIFICATION CLAIM FAILS BECAUSE ALL OF THEIR UNDERLYING CLAIMS FAIL.

Because Counts I-VII and IX-XI must be dismissed as to the County Defendants, Cook County is not liable for indemnification.

15

## <u>CONCLUSION</u>

WHEREFORE, the County Defendants reply in support of their Motion to Dismiss Counts

I-VII and IX-XI of Plaintiffs' Complaints.

Respectfully Submitted,

/s/ *Zachary A. Pestine*
One of the attorneys for the
Cook County Defendants

Brian P. Gainer (gainerb@jbltd.com)
Monica Burkoth (burkothm@jbltd.com)
Zachary A. Pestine (pestinez@jbltd.com)
Ahmed A. Kosoko (kosokoa@jbltd.com)
JOHNSON & BELL, LTD.
33 W. Monroe, Suite 2700
Chicago, Illinois 60603
Tel: (312) 372-0770
Fax: (312) 372-9818

*/s/ T. Andrew Horvat*
Cook Co. Assistant State's Attorney
50 W. Washington, 5th Floor
Chicago, Illinois 60602
(312) 603-3362
timothy.horvat@cookcountyil.gov

## <u>CERTIFICATE OF SERVICE</u>

I, Zachary A. Pestine, hereby certify that, in accordance with Fed. R. Civ. P. 5 and LR 5.5 and the General Order on Electronic Case Filing (ECF), I served this Notice, together with the documents herein referred, electronically via the ECF-CM system on December 15, 2020.

*/s/ Zachary A. Pestine*

Zachary A. Pestine

17