IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN FULTON, | ) | Case No. 20-cv-3118 |
| | ) | |
| *Plaintiff*, | ) | Hon. Joan H. Lefkow |
| | ) | District Judge |
| v. | ) | |
| | ) | Hon. Maria Valdez |
| ROBERT BARTIK, *et al.* | ) | Magistrate Judge |
| | ) | |
| *Defendants.* | ) | JURY TRIAL DEMANDED |

| | | |
|---|---|---|
| ANTHONY MITCHELL, | ) | Case No. 20-cv-3119 |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | [Consolidated with *Fulton v. Bartik* |
| v. | ) | for pre-trial purposes] |
| | ) | |
| ROBERT BARTIK, *et al.* | ) | |
| | ) | |
| *Defendants.* | ) | JURY TRIAL DEMANDED |

**PLAINTIFFS' MOTION FOR RECONSIDERATION
REGARDING THE DISMISSAL OF DEFENDANT RUBENSTEIN**

Plaintiffs John Fulton and Anthony Mitchell respectfully move for reconsideration of the portion of the Court's recent Opinion and Order (Dkt. 106) dismissing without prejudice their claims against Defendant Rubenstein, stating in support as follows:

**INTRODUCTION**

Plaintiffs allege that Defendant Rubenstein played a pivotal role in their wrongful convictions for a 2003 murder of which they were completely innocent. Rubenstein helped to coerce Plaintiffs' false confessions and to fabricate other false evidence, ultimately causing their

1

wrongful convictions in violation of their constitutional rights. Although Rubenstein could have intervened to prevent the use of the false inculpatory evidence to convict Plaintiffs, he did not.

In its Opinion and Order on Defendants' motions to dismiss, the Court dismissed Plaintiffs' claims against Defendant Rubenstein on the basis of *res judicata*. The Court found that an earlier dismissal with prejudice of a 2005 lawsuit Plaintiffs had brought against Rubenstein precluded Plaintiffs' claims in these cases.

Plaintiffs now seek reconsideration of this ruling. The dismissal of their 2005 claims cannot preclude the claims they advance against Rubenstein in their present lawsuits for two reasons. First, Plaintiffs' claims against Rubenstein arise from the denial of their right to a fair criminal trial, and their 2006 trial had not yet taken place in when the 2005 lawsuit was filed, meaning the disposition of that lawsuit cannot serve to bar these fair-trial claims. Second, the relationship between the *Heck* deferred-accrual rule and the equitable doctrine of *res judicata* demonstrates that dismissal of Plaintiffs' claims against Rubenstein is unwarranted.

## LEGAL STANDARD

"[U]nder Rule 54(b), the Court may exercise its inherent authority to reconsider its interlocutory orders because such orders may be revised at any time before the Court enters a final judgment." *Mitchell v. JCG Indus.*, 842 F. Supp. 2d 1080, 1082 (N.D. Ill. 2012). "A motion to reconsider a *ruling* is constrained only by the doctrine of the law of the case. And that doctrine is highly flexible, especially when a judge is being asked to reconsider [her] own ruling." *Pickett v. Prince*, 207 F.3d 402, 407 (7th Cir. 2000); *see id.* at 408 (encouraging errors to be corrected in the district court because "perhaps it won't come to us if the errors are purged"). Indeed, as the Seventh Circuit has explained, "[n]ot to reconsider in such circumstances would condemn the parties to the unedifying prospect of continued litigation when they knew that a possibly critical ruling was in error and, unless it became moot in the course of the proceedings, would compel a

2

reversal of the final judgment at the end of the case." *Santamarina v. Sears, Roebuck & Co.,* 466 F.3d 570, 572 (7th Cir. 2006). "Disposition of a motion for reconsideration is left to the discretion of the district court." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

## RELEVANT BACKGROUND

Christopher Collazo was killed in March 2003. Dkt. 1[1] ¶ 18. Plaintiffs allege that the investigation of Collazo's murder and their own subsequent prosecutions for that crime were tainted by police and prosecutorial misconduct, including the coercion of false statements and confessions, the fabrication of inculpatory evidence, and the suppression of exculpatory evidence. *Id.* ¶¶ 31-52, 59-87. As a result, in 2006, Plaintiffs were tried and convicted of Collazo's murder, despite that they were not involved in it in any way. *Id.* ¶¶ 1-6, 88-98. Defendant Rubenstein was one of the major perpetrators of the misconduct that caused Plaintiffs' convictions. *Id.* ¶¶ 33, 46-47, 63.

While Plaintiffs were being wrongfully prosecuted for murder but before their trial had commenced, they filed an 11-page complaint alleging various facts related to the criminal investigation. Dkt. 70-2 (Ex. B to Cnty. Defs. Mtn. to Dismiss) ¶¶ 1-44. In that 2005 lawsuit, Plaintiffs purported to bring claims against several Defendants, including Defendant Rubenstein, labeling their claims "False Arrest" (Count I) in violation of the Fourth and Fourteenth Amendments, *id.* ¶¶ 45-63, "Coercive Interrogation" (Count II) in violation of the Fifth and Fourteenth Amendments, *id.* ¶¶ 60-70,[2] "Conspiracy" (Count III) in violation of the Fourth and

---

[1] Since the pleadings in these consolidated cases are being filed on both dockets and the docket numbers are presently aligned, citations to "Dkt. ##" in this motion refer to the respective docket entries on both the *Fulton* and *Mitchell* dockets.

[2] There is a numbering error in the paragraphs of the Plaintiffs' 2005 complaint, with paragraphs 60-63, 67-70, and 75-77 repeated in adjacent sections of the document.

Fourteenth Amendments, *id.* ¶¶ 67-77, and "Deprivation of Right to Fair Trial" (Count IV) in violation of the Fifth and Fourteenth Amendments, *id.* ¶¶ 75-79. Again, despite the misleading label on Count IV of their complaint, Plaintiffs' criminal trials had not yet commenced when the 2005 complaint was filed.

In August 2006, Plaintiffs were tried and convicted based on the false and fabricated evidence that Defendants had coerced and created and allowed to be used against them at trial. Dkt. 1 ¶ 88; *see also* Dkt 70-1 (Ex. A to Cnty. Defs. Mtn. to Dismiss) at 4 (noting that "[o]n August 31, 2006, Fulton and Mitchell were convicted of murdering Collazo."). Soon after their convictions, for reasons that are not revealed in the current record and have not yet been explored in discovery, Plaintiffs voluntarily dismissed Defendant Rubenstein from their 2005 suit with prejudice—but without consideration or reliance on a settlement agreement. Dkt. 70-3 (Ex. C to Cnty. Defs. Mtn. to Dismiss). Shortly thereafter, Plaintiffs voluntarily dismissed the whole case without prejudice, Dkt. 70-4 (Ex. D to Cnty. Defs. Mtn. to Dismiss), refiling just under a year later in accordance with a statutory deadline, Dkt 70-1 at 4. Then, in 2008, the district court concluded that all of Plaintiffs' claims, aside from their claims for false arrest, were subject to the delayed-accrual rule of *Heck* v. *Humphrey*, 512 U.S. 477 (1994). *Fulton v. Zalatoris*, No. 07 C 5569, 2008 WL 697349, at *4-*5 (N.D. Ill. Mar. 12, 2008). In other words, those claims were not cognizable because they had yet to accrue in 2008. The Court therefore dismissed those claims without prejudice. *Id.* at *5.

Plaintiffs' convictions remained in place until February 19, 2019, when they were vacated by Judge Flood. *See* Dkt. 70-5 (Ex. E to Cnty. Defs. Mtn. to Dismiss). The State then dropped all charges. Only then did Plaintiffs' *Heck*-barred claims accrue.

---

On May 27, 2020, Plaintiffs filed their complaints in the above-captioned lawsuits, bringing several causes of action against Defendant Rubenstein. *See generally* Dkt. 1. Plaintiffs did not bring claims against any Defendant for false arrest, a cause of action that accrued when they were arrested in 2003.

Defendant Rubenstein moved to dismiss the claims against him on the basis that they were precluded by his dismissal with prejudice from Plaintiffs' 2005 lawsuit. Dkt. 70 at Arg. I; Dkt 70-3. Importantly, Rubenstein asserted no contract-based argument for dismissing Plaintiffs' current claims against him; he did not contend that he was entitled to the benefit of some bargain he had struck with Plaintiffs.

Plaintiffs opposed Defendant Rubenstein's motion, responding that his dismissal with prejudice from the 2005 case could not operate to preclude claims that had not yet accrued at the time of the 2005 complaint's filing. Dkt. 84 at Arg. II.

The Court issued its Opinion and Order on July 1, 2021, rejecting most of Defendants' arguments but agreeing that *res judicata* barred all claims against Defendant Rubenstein. Dkt. 106. In adjudicating Defendant Rubenstein's *res judicata* argument, the Court focused primarily on the applicability of the so-called *Heck* bar to Plaintiffs' prior claims. *Id.* at 11-12. The Court noted that the prior dismissal of the claims against Defendant Rubenstein had not been under *Heck*, and that, in any event, the *Heck* bar was waivable. *Id.* The Court also observed that Plaintiffs had not identified any authority that the *Heck* bar trumps *res judicata*. But the Court noted as well that events "between the filing of the 2005 action and the 2006 conviction" might support claims against Rubenstein and therefore dismissed the claims against him without prejudice and with leave for Plaintiffs to replead to identify additional operative facts. *Id.*

5

**ARGUMENT**

Plaintiffs respectfully seek reconsideration of the Court's dismissal of their claims against Defendant Rubenstein. That ruling was based on an erroneous view of the events surrounding his dismissal from the 2005 suit, and it did not account for the accrual-related arguments demonstrating that Plaintiffs' claims against Defendant Rubenstein should not be dismissed.

The law of preclusion in this Circuit is plain and well-settled: "*Res judicata* does not bar a suit based on claims that accrue after a previous suit was filed." *Smith v. Potter*, 513 F.3d 781, 783 (7th Cir. 2008) (collecting cases); *see* Dkt. 84 (Response Brief) at 10 (quoting *Smith v. Potter*).[3] *See also Waivio v. Bd. of Trustees of Univ. of Illinois at Chicago*, 290 F. App'x 935, 938 (7th Cir. 2008) ("[C]laims that accrue after the prior suit was filed are not precluded."). This straightforward rule holds "[e]ven if the [earlier] dismissal had been with prejudice." *Smith*, 513 F.3d at 783.

For two reasons, the claims Plaintiffs now bring against Defendant Rubenstein were not cognizable during Plaintiffs' 2005 lawsuit. As a result, these claims cannot be barred by the equitable doctrine of *res judicata* based on that lawsuit. *Id.*

The first reason is primarily factual: Because Plaintiffs' criminal trials did not commence until 2006, no claims implicating Plaintiffs' due process right to a fair trial or their privilege against self-incrimination at trial could have accrued in 2005 when their suit was filed. The trial itself, therefore, is an event occurring after the filing of the 2005 complaint that gives rise to Plaintiffs' claims against Rubenstein, someone who could have intervened to prevent the constitutional violations at trial but chose not to. These facts, which are already alleged in

---

[3] Plaintiffs cite to the CM/ECF page numbers, not the internal pagination of the response brief.

6

Plaintiffs' complaints, satisfy the Court's call for allegations of events "between the filing of the 2005 action and the 2006 conviction" that give rise to liability for Rubenstein.

The second reason is purely legal: The rule of *Heck* is a delayed-accrual rule, *Savory v. Cannon*, 947 F.3d 409, 415 (7th Cir. 2020) (en banc), meaning that *res judicata* cannot apply to any claims that were *Heck*-barred when Rubenstein was dismissed from the case, *see Smith*, 513 F.3d at 783. The fact that the *Heck* bar has at times been described as a waivable defense does not change that *res judicata* does not impact claims that had not accrued at the time the purportedly preclusive suit was filed. Moreover, *res judicata* is an equitable doctrine that the Court can decline to apply when applying it would be inequitable. *See Doherty v. Fed. Deposit Ins. Corp.*, 932 F.3d 978, 983 (7th Cir. 2019) ("Equity dictates that the doctrine of *res judicata* will not be technically applied if to do so would create inequitable and unjust results"). Considering the impossible position Plaintiffs were in as they pursued their civil claims against Defendant Rubenstein, a prosecutor, while simultaneously being criminally prosecuted, the application of *res judicata* to their claims would indeed be inequitable.

> **A.** **Plaintiffs' trial took place after the filing of the 2005 lawsuit, meaning that the central event supporting their current trial-based claims could not have formed the basis for the 2005 lawsuit.**

In its Order and Opinion of July 1, 2021, the Court invited Plaintiffs to amend their complaints to add any allegations of events that occurred "between the filing of the 2005 action and the 2006 conviction" that could "support any of their claims against Rubinstein." Dkt. 106 at 12. Plaintiffs' complaints, however, contain such allegations already. Specifically, Plaintiffs allege that they were tried in 2006, after the 2005 complaint was filed, and that Rubenstein failed to intervene to prevent the false evidence he had participated in creating from being used against them at trial in violation of the Constitution. Dkt. 1 ¶¶ 33, 46-47, 63, 88-98, 173-175. Such a failure to break the causal chain is precisely why police officers and prosecutors who acted as

7

investigators can be liable for constitutional violations that occur at trial. *See Whitlock v. Brueggemann*, 682 F.3d 567, 582-84 (7th Cir. 2012) (noting that "a prosecutor whose investigatory conduct is the proximate cause of the due process violation that occurs when the false evidence is introduced at trial is held to the same standard of liability as a police officer who does the same thing," and an "official who fabricates evidence that later is used to deprive someone of liberty" can be liable because "[w]ithout the fabrication, the prosecuting attorney would have had no tainted evidence to introduce at trial," but that liability might dissipate and the causal link broken if the official "tells a prosecuting attorney before trial about the fabrication").

That no trial had yet occurred at the time Plaintiffs' 2005 complaint was filed is indisputable, and so as a matter of reason and law, no action could lie for the deprivation of a fair trial at that time, meaning Plaintiffs' current trial-based claims were not and could not have been encompassed by that lawsuit. *See, e.g.*, *Smith*, 513 F.3d at 783; *Waivio*, 290 F. App'x at 938. Indeed, "a section 1983 plaintiff may state a due process claim based on the fabrication of evidence only when the fabricated evidence is used at trial and he or she is subsequently convicted." *Lofton v. Eberle*, 14 C 898, 2015 WL 507472, at *3 (N.D. Ill. Feb. 5, 2015). And the same holds for Plaintiffs' coerced confession claims, the gravamen of which is the use of those allegedly coerced confessions to secure their wrongful convictions at their 2006 criminal trial. *See* Dkt. 1 ¶¶ 92, 97; *Wrice v. Burge*, 187 F. Supp. 3d 939, 953 (N.D. Ill. 2015) (plaintiff "could not have asserted a viable Fifth Amendment claim until the prosecution used his coerced confession against him at trial"). Indeed, Plaintiffs' trial, which revolved around the introduction of false confessions and other fabricated evidence against them, was itself the central event supporting each of Plaintiffs' trial-based due process and self-incrimination claims.

8

Defendant Rubenstein may counter that Plaintiffs voluntarily dismissed him from the 2005 suit shortly *after* they were tried and convicted. But that is a red herring. Under the law, what matters for *res judicata* purposes is whether the claims had accrued at the time the previous suit was filed—2005—and not when it was dismissed in 2006. *Smith*, 513 F.3d at 783; *Waivio*, 290 F. App'x at 938. Thus, Plaintiffs' 2006 trial and convictions were not part of their 2005 complaint and could not form the basis of a claim against Rubenstein at the time the suit was filed. The possibility that Plaintiffs could have amended their 2005 complaint following their trial is irrelevant. *See Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 915 (7th Cir. 1993) ("[P]laintiffs need not amend filings to include issues that arise after the original suit is lodged" to avoid *res judicata*). The bottom line is that the claims Rubenstein argues are precluded had not accrued in 2005, meaning Rubenstein's dismissal from the 2005 case does not preclude the present actions.[4]

**B.     The equitable doctrine of *res judicata* cannot be applied to claims that were *Heck*-barred at the time of the purportedly preclusive judgment.**

In rejecting Plaintiffs' argument that no judgment can preclude claims that were *Heck*-barred during the earlier suit, the Court observed that *Heck* is a defense that can be waived by a defendant or bypassed by a court. Dkt. 106 at 12. While some Seventh Circuit cases have indeed treated the *Heck* bar as optional or discretionary, *see, e.g.*, *Polzin v. Gage*, 636 F.3d 834, 838 (7th Cir. 2011); *Carr v. O'Leary*, 167 F.3d 1124, 1126 (7th Cir. 1999), these cases are not good law following *McDonough v. Smith*, in which the Supreme Court reemphasized that the *Heck* bar

---

[4]     Because Plaintiffs believe it was a shortcoming of clarity on their part and a resulting misapprehension by the Court, rather than the absence of specific missing factual allegations, that led to the dismissal of their claims against Rubenstein, they have elected to pursue this motion for reconsideration. However, in the event that the Court determines that any of the arguments contained in this motion should be made as allegations in the context of an Amended Complaint, Plaintiffs respectfully seek leave to file Amended Complaints consistent with the assertions contained herein.

9

exists to protect federal-state comity and explained that "there is no reason to put the onus to safeguard comity on district courts exercising case-by-case discretion—particularly at the foreseeable expense of potentially prejudicing litigants and cluttering dockets with dormant, unripe cases." 139 S. Ct. 2149, 2158 (2019). But even if the Seventh Circuit cases holding that *Heck* can be bypassed were good law, which Plaintiffs deny,[5] those decisions do not stand in the way of rejecting Defendant Rubenstein's motion to dismiss.

One reason the possibility of bypassing the *Heck* bar is irrelevant here is that the district court never said during the earlier litigation that *Heck* was being set aside for any of Plaintiffs' otherwise *Heck*-barred claims. To the contrary, the court decided in 2008 that all of Plaintiffs' due process claims were indeed *Heck*-barred. *Fulton*, 2008 WL 697349, at *4-*5. And no case has held that a Court can silently bypass *Heck* for some defendants and then later impose the bar for others. As a result, Defendant Rubenstein's dismissal with prejudice in 2006 following Plaintiffs' convictions—at which point their current claims were unquestionably *Heck*-barred, *see Heck*, 512 U.S. at 486-87—must be understood to preclude only those claims that the district court later found were not *Heck*-barred, namely, the false arrest claims. *See Fulton*, 2008 WL 697349, at *3 (concluding that Plaintiffs' false arrest claims had accrued).

In rejecting Plaintiffs' argument based on *Heck*, the Court also noted that there is a dearth of authority "allowing *Heck* to be raised as an exception to claim preclusion." Dkt. 106 at 12. Plaintiffs acknowledge that they are unaware of a case holding that *Heck* is an exception to

---

[5] Even before *McDonough*, the proposition that any individual defendant could waive a protection for our system of federalism was legally questionable, but *McDonough* leaves no room for doubt about the purpose and import of *Heck*. Perhaps a state itself could consent to the non-imposition of the *Heck* bar, but allowing an individual defendant to do so flies directly in the face of the core purpose of the bar. If the Court nevertheless concludes that it is bound by the pre-*McDonough* caselaw on the waivability of the *Heck* bar—and that this issue controls with respect to Defendant Rubenstein—Plaintiffs hereby preserve this issue for appeal.

10

claim preclusion. However, Plaintiffs' position is not that *Heck* is an exception to claim preclusion; their position is that *Heck* operates to delay accrual and that *res judicata* simply does not apply to claims that had not accrued when the ostensibly preclusive case was filed. The rule of *Heck* is explicitly a delayed-accrual rule, *Heck*, 512 U.S. at 489-90 ("[A] § 1983 cause of action for damages attributable to an unconstitutional conviction . . . does not accrue until the conviction . . . has been invalidated."), and binding precedent also explicitly holds that claims that had not accrued at the time of an earlier lawsuit are not subject to preclusion based on that lawsuit, *e.g.*, *Smith*, 513 F.3d at 783. Together, these unequivocal precedents leave no room for the conclusion that *res judicata* can bar claims that were *Heck*-barred at the time of the suit purportedly precluding the claims.

Looking to the nature of *res judicata* as compared to the *Heck* bar also supports Plaintiffs' position that *res judicata* is inapplicable to previously *Heck*-barred claims. The delayed-accrual rule of *Heck* concerns whether a cause of action exists at all, *Heck*, 512 U.S. at 489 (in situations where *Heck* bar applies, "[w]e . . . deny the existence of a cause of action"), whereas *res judicata* is an equitable doctrine that courts can decline to apply when doing so would be inequitable, *Doherty*, 932 F.3d at 983. Here, Plaintiffs brought a civil case against Defendant Rubenstein—a prosecutor who had helped to frame them—while they were being actively criminally prosecuted. Plaintiffs took this course of action because they feared waiting to sue would mean running out the limitations period for some of their claims, an understandable calculus but one that is also "fraught with peril" for criminal defendants. *McDonough*, 139 S. Ct. at 2158. Afterward—for reasons unknown to Plaintiffs' current counsel and, so far, unexplained by Defendant Rubenstein—Plaintiffs dismissed him with prejudice following their convictions but before their sentencing. Considering the extremely difficult circumstances Plaintiffs faced at

that time as teenagers being prosecuted for a murder they did not commit, their decision to dismiss Defendant Rubenstein should not be given preclusive effect—certainly not a preclusive effect broad enough to bar claims that were not even actionable at the time the earlier suit was filed or at the time of Rubenstein's dismissal from it.

Alternatively, the Court could delay determining whether to apply *res judicata* in this case until a later stage, when a fuller record explaining Defendant Rubenstein's dismissal from the 2005 case has been developed. As Plaintiffs have noted, Defendant Rubenstein raised no contract-based defense in his motion to dismiss but, rather, relied entirely on his purported entitlement to equitable relief. The circumstances by which he obtained his dismissal from the 2005 lawsuit could well bear on whether equitable relief is appropriate in this instance.

## CONCLUSION

For the reasons given above, Plaintiffs respectfully request that the Court reconsider its dismissal of their claims against Defendant Rubenstein.

DATED: July 29, 2021                                RESPECTFULLY SUBMITTED,

                                                    BY:  /s/ Julia Rickert
                                                         *One of Plaintiffs' Attorneys*

Arthur Loevy
Jon Loevy
Russell Ainsworth
Julia Rickert
Sam Heppell
LOEVY & LOEVY
311 N. Aberdeen Street
Chicago, IL 60607
T: 312-243-5900
F: 312-243-5902
julia@loevy.com

Andrea D. Lyon
LYON LAW
53 W. Jackson Blvd., Ste. 1650
Chicago, IL 60604
T: 312-877-5543
F: 312-663-3707
andrea@andrealyon.com

## CERTIFICATE OF SERVICE

 I hereby certify that on July 29, 2021, I filed the foregoing document using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Julia Rickert
*One of Plaintiffs' Attorney*s
