**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN FULTON** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | **No. 20-cv-3118** |
| *-vs-* | ) | |
| **ROBERT BARTIK, JOHN** | ) | **Judge John H. Lefkow** |
| **ZALATORIS, JAMES BREEN,** | ) | **Magistrate Hon. Maria Valdez** |
| **LEONARD ROLSTON, EDWARD** | ) | |
| **WINSTEAD, JOSEPH STRUCK,** | ) | |
| **ROBERT GIRARDI, RICHARD** | ) | |
| **CERVENKA, MICHAEL KENNEDY,** | ) | |
| **MICHAEL SCHMITZ, BRIAN SKORA,** | ) | |
| **INV. S. FRANCO (#40141), DETECTIVE** | ) | |
| **AGUIRRE, UNKNOWN CHICAGO** | ) | |
| **POLICE OFFICERS, MCRAY JUDGE,** | ) | |
| **JACOB RUBINSTEIN, ANDREW** | ) | |
| **VARGA, EUGENE SHEPHERD, COOK** | ) | |
| **COUNTY, and the CITY OF CHICAGO,** | ) | |
| | ) | |
| *Defendants.* | ) | |

## COUNTY DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Defendants McRay Judge, Andrew Varga, Eugene Shepherd, and Cook County, Illinois (collectively "County Defendants" or "Defendants"), by and through their attorneys, Special State's Attorneys Johnson & Bell, Ltd., for their Answer to Plaintiff's Complaint, state as follows:[1]

### INTRODUCTION

1.      Plaintiff John Fulton was a teenager who had never been convicted of any crime when, in 2003, he was wrongfully arrested for the gruesome murder of Christopher Collazo.

---

[1] Pursuant to this Court's Opinion and Order issued on July 1, 2021, all claims brought against Defendant Jacob Rubinstein have been dismissed. (Op. 11–13, July 1, 2021, ECF No. 106.) Although the Court gave Plaintiff "leave to replead if [he] can identify facts postdating the 2005 action that support [his] claims," *id.* at 12–13, Plaintiff has not amended his complaint. Accordingly, Defendant Rubinstein is dismissed from the case, and he makes no answer to the complaint.

Plaintiff was entirely innocent of that crime, and no physical evidence, eyewitnesses, or any other credible evidence ever connected him to Collazo's murder.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

2.      Defendants fabricated all of the evidence used to convict Plaintiff—including using physical and psychological abuse to extract false confessions from Plaintiff—and withheld exculpatory evidence that proves, among other things, that Plaintiff's alibi for the night of the Collazo murder was airtight.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

3.      Aside from this coerced, false confession, Plaintiff has always maintained his innocence.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

4.      Defendants' misconduct caused Plaintiff to be convicted of Collazo's murder and sentenced to 31 years in prison.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

5.      In 2019, Cook County Judge Lawrence Flood vacated Plaintiff's convictions, along with the convictions of his co-defendant Anthony Mitchell, based on new evidence of their innocence and in recognition that constitutional violations had tainted their trial. Prosecutors subsequently dropped all charges against them.

**ANSWER: Defendants admit that in 2019, Cook County Judge Lawrence Flood vacated both Fulton's and Mitchell's convictions and that all charges against them were "dropped" but deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

6.      As a result of Defendants' misconduct, Plaintiff spent over 16 years behind bars for a crime of which he was completely innocent. He now seeks justice for the harms Defendants caused him and redress for the loss of liberty and terrible hardship that he endured and continues to endure because of Defendants' callous, illegal actions.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

## JURISDICTION AND VENUE

7.      This action is brought pursuant to 42 U.S.C. § 1983 and Illinois law to redress the Defendants' tortious conduct and their deprivation of Plaintiff's rights secured by the U.S. Constitution.

**ANSWER: Defendants admit that Plaintiff has brought this action pursuant to 42 U.S.C. § 1983 and Illinois law but deny they engaged in any misconduct.**

8.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

**ANSWER: Defendants admit that this Court has jurisdiction over this action but deny they engaged in any misconduct.**

9.      Venue is proper under 28 U.S.C. § 1391(b). Plaintiff resides in this judicial district. The events and omissions giving rise to Plaintiff's claims occurred within this judicial district, including the investigation, prosecution, and trials resulting in Plaintiff's convictions. And many, if not all, of the Defendants reside in this judicial district.

**ANSWER: Defendants admit that venue is proper but deny they engaged in any misconduct.**

<strong>PARTIES</strong>

10.      Plaintiff is an African-American man and resident of Cook County, Illinois, who spent over 16 years incarcerated for a murder of which he was completely innocent. At the time of his arrest, Plaintiff was an 18-year-old high school senior.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

11.      At all times relevant to the events described in this Complaint, Defendants Robert Bartik, John Zalatoris, James Breen, Leonard Rolston, Edward Winstead, Joseph Struck, Robert Girardi, Richard Cervenka, Michael Kennedy, Michael Schmitz, Brian Skora, Inv. S. Franco (#40141), Detective Aguirre , and other unknown law enforcement officers (collectively, the "Police Officer Defendants") were police officers in the Chicago Police Department.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

12.     At all times relevant to the events described in this Complaint, Defendants Richard Cervenka, Michael Kennedy, and other unknown law enforcement officers supervised the other officers in the preceding paragraph. These Defendants participated in the misconduct alleged in this Complaint and also facilitated, condoned, approved, and turned a blind eye to the misconduct of the Defendants whom they supervised.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

13.     Defendant City of Chicago is an Illinois municipal corporation that is or was the employer of the above-named Police Officer Defendants. Each of those Police Officer Defendants acted during their investigation of the Collazo murder as agents or employees of the City of Chicago. The City of Chicago is liable for all torts committed by the Police Officer Defendants pursuant to the doctrine of *respondeat superior.* The City of Chicago is also responsible for the policies and practices of the Chicago Police Department, regardless of whether the Police Officer Defendants were aware that acting in accordance with certain of the Departments' policies and practices would deprive Plaintiffs of their constitutional rights.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

14.     At all times relevant to the events described in this Complaint, Defendants Judge, Rubinstein, and Varga (collectively, the "Prosecutor Defendants") were Assistant Cook County State's Attorneys. These Defendants conspired with the Police Officer Defendants, prior to the existence of probable cause to believe Plaintiffs had committed a crime, and while acting in an investigatory capacity, to conceal and fabricate evidence, manipulate witness testimony, coerce false confessions, and maliciously prosecute Plaintiff for Christopher Collazo's murder.

**ANSWER: Defendants admit that the Prosecutor Defendants were Assistant Cook County State's Attorneys but lack knowledge or information sufficient to form a belief as to the truth of the allegation "[a]t all times relevant to the events described in this Complaint" because that phrase is vague and undefined. Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them.**

15.     At all times relevant to the events described in this Complaint, Defendant Shepherd was an investigator for the Cook County State's Attorney's Office.

**ANSWER: Defendants admit that Defendant Shepherd was an investigator for the Cook County State's Attorney's Office but lack knowledge or information sufficient to form a belief as to the truth of the allegation "[a]t all times relevant to the events described in this Complaint" because that phrase is vague and undefined. Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them.**

16.     Defendant Cook County is a governmental entity within the State of Illinois, which consists in part of its Cook County State's Attorney's Office. Defendant Cook County was at all relevant times the employer of Defendants Judge, Rubinstein, Varga, and Shepherd, and is a necessary party to this lawsuit.

**ANSWER: Defendants admit that the Prosecutor Defendants were employed by Cook County but lack knowledge or information sufficient to form a belief as to the truth of the allegation "[a]t all relevant times" because that phrase is vague and undefined. Defendants deny the remaining allegations in this paragraph.**

17.     Each and every individual Defendant, known and unknown, acted under color of law and within the scope of his or her employment at all times relevant to this lawsuit. Each of the individual Defendants is sued in his or her individual capacity unless otherwise noted.

**ANSWER: Defendants admit that the County Defendants were acting under the color of law and in the scope of their employment, but lack knowledge or information sufficient to form a belief as to the truth of the allegation "at all times relevant to this lawsuit" because that phrase is vague and undefined. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph that are directed toward any other defendants.**

## PLAINTIFF'S FACTUAL ALLEGATIONS

### The Crime

18.     Around 3:00AM on March 10, 2003, a man called 911 to report an alley fire in the 5200 block of South Peoria Street. Responding officers arrived at the scene to find Christopher Collazo's partially burned remains.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

19.     Collazo's body was bound with duct tape around his wrists and ankles, and duct tape also covered his mouth. There was visible blood on his body and on the ground in its immediate vicinity.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

### The Initial Investigation

20.     After Collazo's body was discovered on March 10, 2003, Police Officer Defendants interviewed the 911-caller, a neighborhood resident named Sid Taylor.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

21. Taylor explained to Defendants that he had seen a fire in the alley from his window and two men near the fire. He also told Defendants that he had been unable to see the race of either man.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

22. Also, on March 10, Police Officer Defendants interviewed Collazo's friend Marcus Marinelli.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

23. Marinelli is the last person known to have seen Collazo alive.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

24. Collazo and Marinelli were both active members of the Maniac Latin Disciples street gang.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

25. Marinelli told Defendants that he had last seen Collazo at 9:00 PM on March 9. Marinelli also told Defendants that he and Collazo had robbed a Black teenager at gunpoint approximately one month earlier. He explained that a 17-year-old girl named Johnitta Griffin had referred the teenager to Collazo to purchase a gun from him but that he and Collazo had robbed the teen instead.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

26.     Police Officer Defendants subsequently interviewed Griffin.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

27.     During her first interview, Griffin explained that she was friends with Collazo but knew nothing about his murder. She told the officers that she had referred Plaintiff, a friend of hers, to Collazo in order to purchase a gun, which Plaintiff had wanted for personal protection, and that Collazo and Marinelli had robbed Plaintiff rather than selling him a gun.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

28.     Griffin denied knowing of any connection between that robbery and Collazo's murder a month later.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

29.     At some point, Police Officer Defendants gathered information relating to the Collazo murder that had no connection to Plaintiff, including a license plate number. This information was exculpatory for Plaintiff, but Defendants withheld this information from anyone outside the Chicago Police Department—even the Cook County State's Attorney's Office.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

30.     Additionally, at a time currently unknown to Plaintiff, Defendants Schmitz and Skora created a police report in which they falsely document that Sid Taylor had identified the race of the men he saw in the alley near Collazo's body as Black.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

### Defendants Begin Building a False Case Against Plaintiff

31. Defendants chose not to pursue a legitimate investigation into Collazo's murder. Instead, they opted to close the case quickly by framing Plaintiff and, ultimately, Anthony Mitchell and Antonio Shaw, a 15-year-old friend of Plaintiff and Mitchell.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

32. To frame Plaintiff, Mitchell, and Shaw, Police Officer Defendants re-interviewed Griffin. Through threats and intimidation, and by feeding her a false narrative that they had concocted, Defendants coerced Griffin into falsely implicating Plaintiff in Collazo's murder. In Griffin's false new account, Plaintiff had demanded that she facilitate revenge on Collazo for the February robbery, and she had talked with him multiple times by phone on and around March 9.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

33. The Police Officer Defendants arranged for and conspired with Defendant Assistant State's Attorney Rubinstein to record a false statement from Griffin. Defendant Rubinstein allowed the Police Officer Defendants to fabricate Griffin's statement, and then falsely documented that the statement had come from Griffin as a result of a legitimate police interview. Defendant Rubinstein did so because he was aware that probable cause did not exist to charge either Plaintiff or Mitchell for the Collazo murder.

**ANSWER: Rubinstein has been dismissed from this case. The other Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

34.     In the alternative, the Police Officer Defendants concealed their fabrication of Griffin's statement from the Prosecutor Defendants.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

35.     Defendants knew that Griffin's new account, which they had concocted and fed to her, was false. Defendants' purpose was not to obtain truthful information from Griffin, nor was it to find Collazo's real killer or killers. Thus, they took no steps to corroborate the story they had coerced from her. They did not inspect her phone; they did not seek her or Plaintiff's phone records; and they did not verify simple and easily disprovable details of her account. These basic investigative steps would have shown the new Griffin story to be impossible.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

**The Arrest and Initial Questioning of Plaintiff**

36.     Based solely on Griffin's coerced, fabricated false statements, Defendants entered Plaintiff's apartment with their guns drawn in the early hours of March 18, 2003 and arrested him.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

37.    At the time of Plaintiff's arrest, he was an 18-year-old high school senior, two months away from graduation.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

38.    He was living with his fiancée, Yolanda Henderson, and their infant child. He had no criminal convictions and no gang affiliation.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

39.    At the police station, Defendants questioned Plaintiff about his relationship with Christopher Collazo. Plaintiff truthfully explained that Johnitta Griffin had put him in touch with Collazo in late January or early February so that he could purchase a gun from him for personal protection, that he (along with Anthony Mitchell and Antonio Shaw) had gone to meet Collazo and Marinelli, who had robbed Plaintiff at gunpoint, taking a wad of cash totaling $15.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

40.    Neither Plaintiff nor Mitchell saw Collazo again after that night, which Plaintiff truthfully told Defendants.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

41.    Defendants refused to accept Plaintiff's truthful denials, and they continued their interrogation and accused him of murdering Collazo in revenge for the robbery. Plaintiff denied seeking revenge on Collazo and denied any knowledge of his death. Plaintiff told Defendants truthfully that he was with Yolanda Henderson at the University of Chicago Hospital emergency

room starting before 9:00 PM on the night of March 9 and otherwise home at their apartment until he left for school on the morning of March 10, several hours after Collazo's body was found.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

### Defendants Coerce Plaintiff To Falsely Confess and To Implicate Mitchell

42.     Instead of taking appropriate steps to investigate Plaintiff's truthful alibi, Defendants demanded that he abandon it and confess to Collazo's murder. They insisted that he adopt the fabricated story they had coerced from Griffin—a story that a mountain of objective evidence would later expose as impossible. In order to ensure they coerced a confession that they could use, Defendants fed Plaintiff details about Collazo's murder that he could not have otherwise known.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

43.     Plaintiff initially refused to falsely confess, but Defendants were unrelenting in their demands and employed illegal tactics to overcome his will. Eventually, they succeeded in coercing Plaintiff to confess to Collazo's murder—and to implicate his friends, Anthony Mitchell and Antonio Shaw.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

44.     Defendants' coercive interrogation tactics included, but were not limited to, false promises of leniency, threats, and physical violence, all while holding Plaintiff incommunicado in harsh conditions of detention over an extended period of time.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

45.     These tactics and others, over the lengthy period of time during which he was held in custody, eventually overcame Plaintiff's will. The resulting confessions he gave were entirely and demonstrably false. Any true facts they contained about Collazo's murder were fed to Plaintiff by Defendants.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

46.     The Police Officer Defendants arranged for and conspired with Defendants Assistant State's Attorneys Judge and Rubinstein to coerce Plaintiff's false confession and false statements implicating Mitchell and Shaw, and then to document falsely that the statements had come from Fulton as a result of legitimate police interrogation tactics. Additionally, to carry out this plot, Defendant Judge deliberately failed to document Plaintiff's statements that his confession was false and had been coerced from him in his report.

**ANSWER: Defendants deny the allegations of misconduct directed at Judge, and further deny the allegations of misconduct in this paragraph to the extent those allegations are directed at the other County Defendants. Rubinstein has been dismissed from this case, and the allegations against him are therefore no longer in dispute. Defendants lack knowledge or**

information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

47.     Defendants Judge and Rubinstein did these things because they were aware that probable cause did not exist to charge either Plaintiff or Mitchell for the Collazo murder, and they were complicit with the Police Officer Defendants in wanting to frame them for that murder.

**ANSWER: Defendants deny the allegations of misconduct directed at Judge, and further deny the allegations of misconduct in this paragraph to the extent those allegations are directed at the other County Defendants. Rubinstein has been dismissed from this case, and the allegations against him are therefore no longer in dispute. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

48.     In the alternative, the Police Officer Defendants concealed their coercive interrogation tactics and their fabrication of Plaintiff's statement from the Prosecutor Defendants.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

49.     Over the course of their multi-day interrogation, Defendants coerced Plaintiff to give multiple versions of his fabricated false statements, which he adopted, recanted and amended as Defendants honed the "confession" to fit their developing understanding of the evidence.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

50.     Plaintiff's false confession included that he, Mitchell, and Shaw had severely beaten Collazo and had placed him in the trunk of Fulton's car for an extended period. Because

Defendants knew the confession was false, they did not seek to have Plaintiff's car tested for Collazo's blood or DNA.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

51.     Instead of seeking the true perpetrators, Defendants chose to bolster the fabricated false confessions they had coerced from Plaintiff by fabricating an additional false confession that he never gave. This additional false statement was ostensibly obtained by Defendant Bartik, a police officer and polygrapher, while Bartik was supposed to be preparing to perform a polygraph examination of Plaintiff.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

52.     Defendant Bartik falsely claimed that Plaintiff spontaneously confessed to Collazo's murder before the planned exam, after which Bartik no longer saw a need to perform it. But Plaintiff never confessed to Bartik whatsoever. This supposed "confession" was entirely fabricated by Defendant Bartik.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

### The Police Officer Defendants' History of Misconduct

53.     This fabricated confession was not an aberration for Defendant Bartik, but rather was a practice that he employed in numerous other cases, telling a strikingly similar false story

about numerous other individuals. In at least the following instances, Bartik has falsely claimed that a suspect spontaneously confessed to him during preparation for a polygraph exam:

    a. In 2001, Bartik falsely claimed that, before he had the opportunity to give teenager Dany Lanza a polygraph exam, Mr. Lanza blurted out a confession to child molestation.

    b. In 2001, Bartik falsely claimed that Donny McGee orally confessed to a gruesome murder before Bartik had the chance to administer a polygraph exam to Mr. McGee. Despite Bartik's claim that Mr. McGee confessed, Mr. McGee was acquitted at trial after the evidence revealed that Mr. McGee was making phone calls to his groomsmen in preparation for his upcoming wedding at the time of the murder. Furthermore, DNA testing performed on blood found at the scene of the murder excluded Mr. McGee.

    c. In 2003, Bartik falsely claimed that Lamar Blount confessed to murder, supposedly before Bartik had the chance to give him a polygraph exam. Despite that alleged confession, Mr. Blount was cleared of all charges.

    d. In 1999, Bartik falsely claimed that Rory Cook confessed to him about committing a murder. According to Bartik, Mr. Cook also blurted out his confession before he could administer a polygraph exam.

    e. In 2003, Bartik falsely claimed that Lee Murphy confessed to him about committing a murder, again (according to Bartik) doing so before Bartik even began administering the polygraph exam.

     f.  In 2001, Bartik falsely claimed that Michael Banks made inculpatory statements to him regarding a murder investigation. Bartik claimed these statements took place at the polygraph office but outside of the formal polygraph exam.

     g.  In 2004, Bartik falsely claimed that Demetrius Daniels made inculpatory statements to him regarding the death of Mr. Daniels' three-month-old daughter during the "pre-test" period of the polygraph exam.

     h.  In 2003, Bartik falsely claimed that Robert Robinson made inculpatory statements to him before Bartik had begun administering the polygraph exam.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

54.    In the realm of polygraph administration, it is extremely rare for someone to confess prior to the examination. Yet Defendant Bartik has claimed to have obtained more than 100 confessions over a five-year period during this "pre-test" period. For this phenomenon to happen repeatedly to Defendant Bartik defies all statistical probability.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

55.    In addition to the practice described above, Defendant Bartik has a pattern of misconduct related to the improper and unconstitutional questioning of criminal suspects and the improper and corrupt use of polygraph examinations, including, for example:

     a.  In 2005, Bartik participated in a physically violent and psychologically coercive interrogation of Nicole Harris, including lying about a polygraph exam, forcing Ms. Harris to falsely confess to murdering her four-year-old son, who had in fact died as

a result of a tragic accident. Ms. Harris was exonerated after her conviction was thrown out due to violations of her constitutional right to a fair trial.

b. In 2000, Bartik participated in a physically violent and psychologically coercive interrogation of Anteleto Jones, forcing Mr. Jones to falsely confess to a murder. Several eyewitnesses have come forward to explain that Jones was not involved in the shooting, but Mr. Jones was convicted due to Bartik's misconduct.

c. In 2000, Bartik helped to frame Larry Scott for a murder he did not commit by falsely claiming a polygraph examination of an alternative suspect was inconclusive, even though that suspect admitted to stabbing the murder victim during the exam.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

56.    As with Defendant Bartik, the misconduct committed by the other Police Officer Defendants during the Collazo murder investigation was not an aberration. Indeed, several of the Police Officer Defendants have extensive histories of committing similar misconduct in other cases, including but not limited to the following instances:

a. In 2001, Defendant Zalatoris used physical violence and psychological coercion while interrogating 16-year-old Andre Richardson, in order to coerce Mr. Richardson to give an involuntary confession to murdering his infant daughter.

b. In 2000, Zalatoris used physical violence and psychological coercion to extract an involuntary confession from Paul Salgado, despite the fact that Zalatoris knew Mr. Salgado was represented by an attorney and knew Mr. Salgado had invoked his *Miranda* rights.

c. In 1997, Defendant Rolston was part of a corrupt police investigation that targeted 15-year-old Eric Kittler and coerced him to falsely confess to a fatal grocery store robbery, despite his complete innocence. Due to the misconduct committed by Rolston and other Chicago Police officers, Mr. Kittler was wrongfully convicted and spent five years behind bars before his conviction was overturned and he was acquitted because there was no evidence implicating him in the crime. Mr. Kittler brought a lawsuit against Rolston and the other officers who framed him, which the City of Chicago settled for $2 million.

d. In 1997, Rolston was part of a corrupt police investigation that targeted Robert Wilson. Rolston and other Chicago Police officers used physical violence and psychological coercion to get Mr. Wilson to confess to a violent assault at a bus stop, and used manipulative and unduly suggestive tactics to obtain a false identification of Mr. Wilson by the victim, while unlawfully suppressing exculpatory evidence casting doubt on the victim's identification.

e. In 1999, Zalatoris and Rolston both participated in a multi-day, abusive interrogation of Richard Malek, subjecting Mr. Malek to physical violence accompanied by threats and other psychologically coercive tactics while holding Mr. Malek incommunicado at Area One, in order to obtain an involuntary confession from him.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

57.     In addition to their frequent involvement in similar corrupt and abusive police investigations, several of the Police Officer Defendants have been repeatedly implicated in

perpetrating acts of unjustified violence against members of the public, demonstrating willful disregard for the constitutional protections against excessive force and echoing their willingness to use violence during police interrogations to achieve their desired ends. These examples include several unjustified acts of violence so serious that they led to civil rights lawsuits against the Police Officer Defendants, including both Defendant Zalatoris (*Harris v. Paluch, et al.,* 91-cv-0362; *Cora, et al. v. City of Chicago, et al.,* 91-cv-3407; *East, et al. v. City of Chicago, et al.,* 88-cv-8131, *Williams v. City of Chicago, et al.,* 04-cv-5131) and Defendant Breen (*Williams v. City of Chicago, et al.,* 04-cv-5131).

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

58.     The history of similar misconduct perpetrated by the Police Officer Defendants is borne out by the numerous citizen complaints filed against them. Indeed, the Police Officer Defendants rank among the most prolific officers in the Chicago Police Department in terms of accumulating allegations of misconduct from members of the public and fellow officers. For example, Defendant Breen is in the 93rd percentile for complaints filed against him (more complaints than 93% of other Chicago police officers, adjusted to account for years of service); Defendant Zalatoris is in the 90th percentile; and Defendant Winstead and Defendant Struck are in the 89th percentile.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

### Anthony Mitchell's Arrest and Coerced False Confession

59.     At the time of Anthony Mitchell's arrest, he was 17-years-old. Like Fulton, he had no criminal convictions and no gang affiliation.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

60.     Mitchell was arrested near midnight on March 19, 2003, over 48 hours into Plaintiff's interrogation. Mitchell truthfully denied any involvement in or knowledge of Christopher Collazo's murder, but Defendants, by employing abusive interrogation tactics, ultimately succeeded in coercing a false confession from him, just as they had succeeded with Plaintiff.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

61.     To obtain Mitchell's false confession, Defendants used similar psychologically coercive and physically violent tactics as they had used—and were still using—on Fulton.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

62.     Defendants terrorized Mitchell until they overbore his will and were able to coerce him to say what they wanted him to say.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

63.     The Police Officer Defendants arranged for and conspired with Defendant Assistant State's Attorney Rubinstein to fabricate Mitchell's false confession and false statements implicating Plaintiff and Shaw, and then falsely document that the statements had come from

Mitchell as a result of legitimate police interrogation tactics. Defendant Rubinstein did these things because he was aware that probable cause did not exist to charge either Plaintiff or Mitchell for the Collazo murder, and he was complicit with the Defendant Officers in acting to frame them for that murder.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Rubinstein has been dismissed from this case, and the allegations against him are therefore no longer in dispute. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

64.     In the alternative, the Police Officer Defendants concealed their coercive interrogation tactics and their fabrication of Mitchell's statement from the Prosecutor Defendants.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

65.     Over the course of their multi-day interrogation, Defendants coerced Mitchell to give multiple versions of his fabricated false statements, which he adopted, recanted and amended as Defendants honed the "confession" to fit their developing understanding of the evidence.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

66.     The false confession Defendants obtained from Mitchell largely mirrored the false confession that Defendants obtained from Fulton. As with the Fulton confession, later-emerging evidence would prove that the sequence of events fed to Mitchell was impossible.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

### Antonio Shaw's Arrest and Coerced False Confession

67.     Plaintiff's friend Antonio Shaw was implicated in Collazo's murder by the coerced false confessions of Plaintiff and Mitchell. He was then fifteen years old.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

68.     Like Plaintiff and Mitchell, Shaw had no involvement whatsoever in the murder. Nor did Defendants have any legitimate reason to suspect him of being involved.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

69.     The Police Officer Defendants nevertheless arrested Shaw.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

70.     After arresting him, they presented Shaw with the false confessions of Plaintiff and Mitchell and subjected him to a physically and psychologically coercive interrogation.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

71. Shaw ultimately succumbed to Defendants' illegal interrogation tactics and falsely confessed to Collazo's murder. He also falsely implicated Plaintiff and Mitchell in that murder.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

72. The Police Officer Defendants arranged for and conspired with Defendant Assistant State's Attorney Varga to fabricate Shaw's false confession and false statements implicating Plaintiff and Mitchell, and then to document falsely that the statements had come from Shaw as a result of legitimate police interrogation tactics.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph directed at Varga. Defendants deny the other allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

73. Defendant Varga did these things because he was aware that probable cause did not exist to charge either Plaintiff, Mitchell, or Shaw for the Collazo murder, and he was complicit with the Police Officer Defendants in wanting to frame them for that murder.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph directed at Varga. Defendants deny the other allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

74. In the alternative, the Police Officer Defendants concealed their coercive interrogation tactics and their fabrication of Shaw's statement from the Prosecutor Defendants.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

75.     Based on Shaw's coerced, false statements and other evidence fabricated by Defendants, Shaw was charged with murdering Collazo.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

76.     Before trial, however, Shaw successfully moved to suppress his false confession. The judge ruled that the confession had been obtained through illegal, false promises of leniency. The state declined to appeal the court's grant of Shaw's motion and instead dropped the charges against him.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

77.     Defendants' coercion of false statements from Shaw was part of their conspiracy to frame him, Plaintiff, and Mitchell for Collazo's murder. Although Shaw's false confession ultimately was suppressed and so could not be used against him, its existence damaged Shaw's ability to provide exculpatory testimony at trial on behalf of Plaintiff and Mitchell.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

### Evidence Contradicts Defendants' Fabricated Stories

78.     Evidence soon emerged that proved Defendants' fabricated narratives about Collazo's murder were false and that Fulton and Mitchell's original and subsequent denials of

involvement in the murder were true. This evidence includes, but is not limited to, evidence that the logistics of Fulton and Mitchell's supposed travel from the Southside to the Northside and the circumstances of their supposed encounter with Collazo were physically impossible, and phone records and video evidence which confirmed that Fulton had an ironclad alibi for the time he and Mitchell were supposedly murdering Collazo.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

79.     Plaintiff's fully corroborated alibi also demonstrates that Mitchell is innocent of the Collazo murder. The prosecution's sole theory of Mitchell's involvement was that Fulton knew from Griffin where to find Collazo on March 9, recruited Mitchell to exact revenge on Collazo, and drove his own car to commit the crime.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

**Defendants Concoct New False Stories and Fabricate Additional Evidence**

80.     As the evidence mounted that Plaintiff's alibi was true, conclusively demonstrating the falsity of their fabricated evidence implicating both Fulton and Mitchell, Defendants concocted a new false story to explain how Fulton and Mitchell nevertheless could have murdered Collazo.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

81.     In the final version they settled upon, which was also entirely false, Defendants claimed that Fulton had managed to evade the security cameras at his apartment building by sneaking out through an unmonitored back door in the middle of the night, committed the murder with Mitchell and Shaw, and then snuck back in the same way before leaving for school in the morning.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

82.     Defendant Shepherd, an investigator for the Cook County State's Attorney's Office, fabricated evidence to support this new false story, and suppressed exculpatory evidence that would have disproved it.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph directed at Shepherd. Defendants deny the other allegations of misconduct in this paragraph to the extent those allegations are directed at them.**

83.     Defendant Shepherd went to Fulton's apartment building and fabricated photographic evidence which he used to give the false appearance that no camera monitored the back door.

**ANSWER: Defendants deny the allegations contained in this paragraph.**

84.     In reality, Fulton's apartment building had no unmonitored door that could be used to leave and return undetected. The building had a back door, but that door was monitored by a security camera.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

85. The security camera system—and an electronic fob system which tracked all entries to the building—meant that Fulton could not have left and returned to his apartment building without detection.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

86. Defendant Shepherd suppressed this vital piece of exculpatory evidence, which would have conclusively disproved all of the false evidence supposedly implicating Fulton and Mitchell in the Collazo murder.

**ANSWER: Defendant Shepherd denies the allegations contained in this paragraph. The other Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

87. This suppression of exculpatory evidence was part of a pattern of similar misconduct committed by investigators within the Cook County State's Attorneys Office. For example, in another case in 2006, an investigator with the CCSAO was assigned to investigate charges against Jermaine Walker, which hinged on video surveillance of interactions between Walker and police. The investigator, using similar techniques of selective and misleading photography, fabricated false evidence to purportedly show that no such camera existed, while suppressing the true, exculpatory evidence—the existence of a camera—that corroborated Walker's claims. When the investigator's misconduct came to light ten years later, all charges against Walker were dismissed.

**ANSWER: Defendants deny the allegations contained in this paragraph.**

### Defendants' Misconduct Causes Plaintiffs To Be Convicted at Trial

88. In 2006, Plaintiff was tried for the Collazo murder, with Mitchell as a co-defendant.

**ANSWER: Admitted.**

89.     Before and during Plaintiff's trial, Defendants suppressed a great deal of evidence that would have exculpated him from involvement in the Collazo murder. Defendants withheld this exculpatory evidence from the State's Attorney's Office, from Plaintiff, and from Plaintiff's co-defendant Mitchell.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

90.     Additionally, the prosecution did not present any inculpatory evidence at trial other than the evidence fabricated by Defendants.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

91.     The prosecution presented Griffin's fabricated narrative implicating Plaintiff and Mitchell in the Collazo murder.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

92.     The prosecution presented Plaintiff's false confession that had been coerced by Defendants, and the pre-polygraph confession that Defendants have invented out of thin air.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

93. The sole theory of guilt relied on by the prosecution was that Plaintiff and Mitchell committed the Collazo murder together. All of the fabricated evidence the prosecution presented was in support of this joint action narrative.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

94. A major component of Plaintiff's defense at trial was his alibi. If this alibi was true, then it would prove that all of the prosecution's fabricated evidence against Plaintiff was false.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

95. The alibi was compelling, supported by video and other incontrovertible documentary evidence.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

96. To combat this alibi defense, the prosecution relied on the fabricated photographic evidence from the back door of Plaintiff's apartment building, which they used to falsely suggest to the jury that he could have snuck in and out the back door to commit the Collazo murder without being detected. This attack on Plaintiff's alibi would not have been possible if Defendants had not created false inculpatory evidence and suppressed the exculpatory evidence of the true facts related to the backdoor security systems.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

97.    Based on the fabricated evidence and coerced confession and as a result of the suppressed exculpatory evidence, Plaintiff was convicted of the Collazo murder and sentenced to 31 years in prison.

**ANSWER: Defendants admit that Plaintiff was convicted of the Collazo murder and sentenced to prison but deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

98.    Without the Defendants' misconduct, Plaintiff would never have been charged with, prosecuted for, or convicted of the Collazo murder.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

**Plaintiff's Exoneration**

99.    From the time Plaintiff was falsely charged with murder, he has consistently maintained his innocence of the Collazo murder. He continued to do so after his conviction, vigorously pursuing all available avenues of post-conviction relief.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

100.    In 2019, Cook County Judge Lawrence Flood vacated both Plaintiff's and Mitchell's convictions, based on new evidence of their innocence and in recognition that constitutional violations had tainted their trials. Prosecutors subsequently dropped all charges against them.

**ANSWER: Defendants admit that, in 2019, Fulton's and Mitchell's convictions were vacated by Judge Flood but deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

### Policy and Practice of Impunity

101.    At all times relevant to the prosecution of Plaintiff, the City of Chicago and the Chicago Police Department routinely failed to investigate cases in which Chicago Police detectives recommended charging an innocent person with a serious crime, and no Chicago Police officer has ever been disciplined as a result of his misconduct in any of those cases.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

102.    The City of Chicago and the Chicago Police Department routinely failed to investigate cases in which Chicago Police detectives arrested an individual without probable cause.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

103.    Prior to and during the period in which Plaintiff was arrested, charged, and prosecuted for Christopher Collazo's murder, the City of Chicago also operated a dysfunctional disciplinary system for Chicago Police officers accused of serious misconduct. The City almost never imposed significant discipline against police officers accused of violating the civil and

constitutional rights of members of the public. The Chicago Police disciplinary apparatus included no mechanism for identifying police officers who were repeatedly accused of engaging in misconduct.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

104.    The U.S. Department of Justice recently issued a report finding that there were "engrained deficiencies in the systems CPD uses to provide officers with supervision and training." In particular, on the subject of training, the DOJ concluded that the "CPD's inattention to training needs, including a longstanding failure to invest in the resources, facilities, staffing, and planning required to train a department of approximately 12,000 members, leaves officers underprepared to police effectively and lawfully. Officer errors and misconceptions that result from lack of training are not corrected in the field, because CPD has neither structured supervision in a way that will adequately support officers, nor invested in programs and systems that will detect when officers are in need of help or exhibiting behavior that must be corrected. Officers' ability to stay safe, protect public safety, and police within constitutional standards suffers as a result."

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

105.    On the subject of supervision, the DOJ concluded among other things that "[i]nstead of encouraging the chain of command to instill proper policing tactics and respect for constitutional policing in CPD officers, CPD provides little incentive, or even opportunity, for supervisors to meaningfully guide and direct CPD officers. CPD provides even less incentive for supervisors to hold officers accountable when they deviate from CPD policy and the law. The City has long known that CPD's direct supervision of officers is inadequate, including through the fact

that multiple reports in the last two decades have highlighted deficiencies in CPD's supervisory practices. Yet, City and CPD leadership have not made the necessary reforms to CPD's supervision structure and processes, and community and officer safety suffer as a result."

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

106.    The DOJ "confirmed that CPD's accountability systems are broadly ineffective at deterring or detecting misconduct, and at holding officers accountable when they violate the law or CPD policy." In particular, the Department of Justice found that the City failed to investigate nearly half of misconduct complaints; where investigations did occur, there were "consistent patterns of egregious investigative deficiencies"; and where misconduct complaints are sustained, discipline was inconsistent and unpredictable.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

107.    Similarly, the Chicago Police Accountability Task Force reported in April 2016 that "[g]oing back years, and continuing to the present day, CPD has missed opportunities to make accountability an organizational priority."

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

108.    Between 2004 and 2016, the City paid more than $500 million to settle or pay judgments in police misconduct cases. Yet the City failed to conduct disciplinary investigations in more than half of the cases and recommended discipline in fewer than 4% of those cases.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

109. Between 2011 and 2015, nearly half of complaints filed against Chicago Police officers were not even investigated. More than 95% of complaints against the Chicago Police that were investigated were found to be "unsustained." And less than 2% of complaints against the Chicago Police resulted in any discipline.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

110. As a matter of both policy and practice, municipal policy makers and department supervisors condoned and facilitated a code of silence within the Chicago Police Department. In accordance with this code, officers refused to report and otherwise lied about misconduct committed by their colleagues, including the misconduct at issue in this case.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

111. The failure of police supervision and discipline in the City of Chicago during the relevant time period is a fact admitted by Chicago police officers and City policymakers. In December 2016, the President of the police officers' union for the City of Chicago admitted that there is a "code of silence" in the Chicago Police Department. In 2017, the U.S. Department of Justice found that current officers of the CPD and former high-level officials of the CPD acknowledged a "code of silence." And former Chicago Mayor Rahm Emanuel also has acknowledged that a "code of silence" exists within the Chicago Police Department.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

112. The code of silence in the Chicago Police Department is longstanding and has been documented for decades. In the case of *Klipfel v. Bentsen,* No. 94 C 6415 (N.D. Ill.), a federal jury

found that as of 1994 the Chicago Police maintained a code of silence that facilitated police misconduct. In *Obrycka v. City of Chicago,* No. 07 C 2372 (N.D. Ill.), a different federal jury found that, as of February 2007, "the City had a widespread custom and/or practice of failing to investigate and/or discipline its officers and/or code of silence."

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

113.    As a result of the City of Chicago's established practice of not tracking and identifying police officers who are repeatedly accused of the same kinds of serious misconduct, failing to investigate cases in which the police are implicated in a wrongful charge or conviction, failing to discipline officers accused of serious misconduct and facilitating a code of silence within the Chicago Police Department, officers, including the Police Officer Defendants, have come to believe that they may violate the civil rights of members of the public and cause innocent persons to be charged with serious crimes without fear of adverse consequences. As a result of these policies and practices of the City of Chicago, members of the Chicago Police Department act with impunity when they violate the constitutional and civil rights of citizens.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

114.    The same code of silence and ineffective system of police oversight were in place when Plaintiff's constitutional rights were violated beginning in March 2003. Defendant City of Chicago's policy and practice of allowing police officers to violate the constitutional rights of members of the public with impunity was a cause of the violations of Plaintiff's constitutional rights alleged herein.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

**Policy and Practice of Convicting Innocent Persons in Violation of Due Process**

115.    The Chicago Police Department's policies and widespread customs and practices have caused scores of miscarriages of justice, including those inflicted upon Plaintiff. Since 1986, no fewer than 70 cases have come to light in which Chicago police officers fabricated false evidence and/or suppressed exculpatory evidence in order to cause the convictions of innocent person for serious crimes that they did not commit.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

116.    These cases include many in which Chicago Police Department officers used the same tactics that the Police Officer Defendants employed against Plaintiff in this case, including: (1) fabricating witness statements; (2) concealing exculpatory evidence; (3) manipulating witnesses in order to influence their testimony; and (4) using other tactics to secure the arrest, prosecution, and conviction of a person without probable cause and without regard to the person's actual guilt or innocence.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

117.    At all relevant times, members of the Chicago Police Department, including the Police Officer Defendants in this action, routinely manufactured evidence against innocent persons by threatening, pressuring, striking, manipulating, otherwise coercing, and offering inducements to suspects and witnesses to obtain false statements implicating innocent persons, knowing full well that those statements were false. As a matter of widespread practice and for the purpose of

wrongfully convicting innocent persons, members of the Chicago Police Department, including the Police Officer Defendants in this action, contrived false witness narratives that were fed to vulnerable witnesses who then adopted those narratives as their own. Chicago Police Department officers also systematically suppressed exculpatory and/or impeaching material by concealing evidence that a witness was coerced or induced to make false statements.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

118. The municipal policy and practice described in the paragraphs above was recently described in a Federal Bureau of Investigation FD-302 Report of an interview with Assistant State's Attorney Terence Johnson. The Report documents, *inter alia*, that Chicago police detectives would feed information to witnesses and coach them through court-reported and handwritten statements, coerce witnesses into sticking to a detective's theory of the case, physically abuse witnesses, and work together to develop and rehearse false narratives so there were no inconsistencies in the witnesses' stories.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

119. Consistent with the municipal policy and practice described in the preceding paragraph, employees of the City of Chicago, including the named Police Officer Defendants, fabricated reports and other evidence that was used to wrongfully prosecute Plaintiff.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

120. At all times relevant hereto, members of the Chicago Police Department, including the Police Officer Defendants in this action, systematically suppressed exculpatory and/or

impeaching material by intentionally secreting discoverable reports, memos and other information in files that were maintained solely at the police department and were not disclosed to the participants in the criminal justice system, including prosecutors and defense counsel. As a matter of widespread custom and practice, these clandestine files were withheld from the State's Attorney's Office and from criminal defendants, and they were routinely destroyed or hidden at the close of the investigation, rather than being maintained as part of the official file.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

121.    Consistent with the municipal policy and practice described in the preceding paragraph, employees of the City of Chicago, including the named Police Officer Defendants, intentionally concealed exculpatory evidence from Plaintiff.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

122.    Moreover, the municipal policy and practice described above caused the suppression of exculpatory evidence in this case, regardless of the subjective state of mind of the named Police Officer Defendants.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

123.    The existence of this policy and practice of suppressing exculpatory and/or impeaching material in clandestine files was established and corroborated in the cases of, *inter alia, Rivera v. Guevara,* No. 12 C 4428 (N.D. Ill.), *Fields v. City of Chicago,* No. 10 C 1168 (N.D. Ill.), and *Jones v. City of Chicago,* No. 87 C 2536 (N.D. Ill.).

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

124.    The policy and practice of suppressing exculpatory or impeaching material evidence was alive and well at the time of the investigation into Christopher Collazo's murder, for which Plaintiff was wrongfully arrested and prosecuted.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

125.    The City of Chicago and the Chicago Police Department also failed in the years prior to Plaintiff's wrongful arrest and prosecution to provide adequate training to Chicago Police Detectives and other officers in any of the following areas, among others:

     a.  The constitutional requirement to disclose exculpatory evidence, including how to identify such evidence and what steps to take when exculpatory evidence has been identified in order to ensure that the evidence is made part of the criminal proceeding;

     b.  The need to refrain from physical and psychological abuse, and manipulative and coercive conduct, in relation to suspects and witnesses;

     c.  The risk of false confession and how to recognize when a false confession that has been elicited;

     d.  The risks of wrongful conviction and the steps police officers should take to minimize risks;

     e.  The risks of engaging in tunnel vision during investigation; and

f. The need for full disclosure, candor, and openness on the part of all officers who participate in the police disciplinary process, both as witnesses and as accused officers, and the need to report misconduct committed by fellow officers.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

126. The need for police officers to be trained in these areas was and remains obvious. The City's failure to train Chicago police officers as alleged in the preceding paragraph caused Plaintiff's wrongful conviction and injuries.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

127. The City's failure to train, supervise, and discipline its officers condones, ratifies, and sanctions the kind of misconduct that Defendants committed against Plaintiffs. Constitutional violations such as those that occurred in this case are encouraged and facilitated as a result of the City's practices and de facto polices described above.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

128. The City of Chicago and final policymaking officials within the Chicago Police Department failed to remedy the patterns of abuse described in the preceding paragraphs, despite actual knowledge of the pattern of misconduct. They thereby perpetuated the unlawful practices and ensured that no action would be taken (independent of the judicial process) to remedy Plaintiffs' ongoing injuries.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

129.   The policies and practices described in the foregoing paragraphs were also approved by the City of Chicago's policymakers, who were deliberately indifferent to the violations of constitutional rights described herein.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

### Plaintiff's Devastating Injuries

130.   During his more than 16 years of wrongful imprisonment, Plaintiff was deprived of the ability to interact freely with his loved ones; to be present for holidays, births, deaths, and other life events; to pursue his passions and interests; to engage in meaningful labor and develop a career; and to live freely, as an autonomous being.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

131.   Instead, Plaintiff was detained in harsh, dangerous, and isolating conditions in maximum security prisons. He was branded a murderer.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

132.   Because of his wrongful imprisonment, Plaintiff was separated from his infant son and was unable to parent him and to participate in his growth and development. Plaintiff was also separated from the mother of his son, to whom he was engaged, and was thus deprived of

companionship and the unique experiences of building a loving family together. Additionally, Plaintiff was deprived of the ability to spend any last precious moments with his grandfather, who raised Plaintiff as a father and who died while Plaintiff was incarcerated. Plaintiff was not allowed to attend his grandfather's funeral.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

133.    As a result of his wrongful conviction and incarceration, Plaintiff must now attempt to rebuild his life outside of prison, all without the benefit of the life experiences that ordinarily equip adults for such a task.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

134.    In addition to causing the severe trauma of Plaintiff's wrongful imprisonment and loss of liberty, Defendants' misconduct caused and continues to cause Plaintiff extreme physical and psychological pain and suffering, humiliation, fear, anxiety, deep depression, despair, and other physical and psychological effects.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

## COUNT I
### 42 U.S.C. § 1983 – False Confession (Fifth and Fourteenth Amendments)

135.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER: Defendants incorporate their answers to each of the preceding paragraphs as if fully restated here.**

136.     In the manner described more fully above, the Police Officer Defendants and Defendants Judge and Rubinstein—acting as investigators and without probable cause to suspect Plaintiff of any crime, and acting individually, jointly, and/or in conspiracy with one another, as well as under color of law and within the scope of their employment—forced Plaintiff to make false statements involuntarily and against his will, which incriminated him and which were used against him in criminal proceedings, in violation of his rights secured by the Fifth and Fourteenth Amendments.

**ANSWER: Defendants deny the allegations of this paragraph directed at Judge. Rubinstein has been dismissed from this case, so the allegations in this paragraph directed at him are no longer at issue. Defendants deny the other allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

137.     In addition, the Police Officer Defendants and Defendants Judge and Rubinstein—acting as investigators and without probable cause to suspect Plaintiff of any crime, and acting individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment—used physical violence and extreme psychological coercion in order to force Plaintiff to incriminate himself falsely and against his will in a crime he had not committed, in violation of his right to due process secured by the Fourteenth Amendment. This misconduct was so severe as to shock the conscience, it was designed to injure Plaintiff, and it was not supported by any conceivable governmental interest.

**ANSWER: Defendants deny the allegations of misconduct directed at Judge, and deny he was acting as an investigator. Rubinstein has been dismissed from this case, so the allegations against him are no longer at issue. Defendants deny the other allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

138.     In addition, the Police Officer Defendants and Defendants Judge and Rubinstein—acting as investigators and without probable cause to suspect Plaintiff of any crime, and acting individually, jointly, and in conspiracy with one another, and others unknown, as well as under color of law and within the scope of their employment—fabricated a false confession, which was attributed to Plaintiff and used against Plaintiff in his criminal proceedings, in violation of his right to a fair trial protected by the Fourteenth Amendment.

**ANSWER: Defendants deny the allegations of misconduct directed at Judge, and deny he was acting as an investigator.  Rubinstein has been dismissed from this case, so the allegations against him are no longer at issue. Defendants deny the other allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

139.     Specifically, and as described more fully above, the Police Officer Defendants and Defendants Judge and Rubinstein conducted, participated in, encouraged, advised, and ordered an unconstitutional, multi-day interrogation of Plaintiff, using physical violence and psychological coercion, which overbore Plaintiff's will and caused Plaintiff to make involuntary statements implicating himself in the murder of Christopher Collazo.

**ANSWER: Defendants deny the allegations of misconduct directed at Judge. Rubinstein has been dismissed from this case, so the allegations against him are no longer at issue. Defendants deny the other allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

140.    Those false incriminating statements were wholly fabricated by the Defendants and attributed to Plaintiff.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

141.    The false statements coerced by Defendants were used against Plaintiff to his detriment throughout his criminal case. These statements were the reason that Plaintiff was prosecuted and convicted of the Collazo murder.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

142.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

143.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

144.    The misconduct described in this Count by the Police Officer Defendants was undertaken pursuant to the police and practice of the Chicago Police Department, in the manner more fully described below in Count VIII.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

**COUNT II**
**42 U.S.C. § 1983 – Fabrication of False Witness Statements (Fourteenth Amendment)**

145.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER: Defendants incorporate their answers to each of the preceding paragraphs as if fully restated here.**

146.    In the manner described more fully above, the Police Officer Defendants and the Prosecutor Defendants—acting as investigators and without probable cause to suspect Plaintiff of any crime, and acting individually, jointly, and in conspiracy with one another, and others unknown, as well as under color of law and within the scope of their employment—deprived Plaintiff of his constitutional right to a fair trial and due process by fabricating witness statements implicating Plaintiff in crimes he did not commit, which Defendants knew to be false, and by suppressing their own misconduct and the circumstances in which these witness statements were obtained.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants deny that the "prosecutor defendants" were acting as investigators. Defendants admit that they were acting under the color of law and in the scope of their employment. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

147.     Specifically, as described in detail above, Defendants used physical violence and psychological abuse to obtain false witness statements from Griffin, Mitchell, Shaw, and other witnesses implicating Plaintiff in the Collazo murder.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

148.     The misconduct described in this Count was objectively unreasonable, and was undertaken and effected intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

149.     As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

150.    The misconduct described in this Count by the Police Officer Defendants was undertaken pursuant to the police and practice of the Chicago Police Department, in the manner more fully described below in Count VIII.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

### COUNT III
### 42 U.S.C. § 1983 –Deprivation of Liberty without Probable Cause (Fourth and Fourteenth Amendments)

151.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER: Defendants incorporate their answers to each of the preceding paragraphs as if fully restated here.**

152.    In the manner described above, the Police Officer Defendants and Defendant Shepherd, individually, jointly, and in conspiracy with one another, and others unknown, as well as under color of law and within the scope of their employment, used false evidence that they had manufactured in order to accuse Plaintiff of criminal activity and cause the initiation, continuation, and perpetuation of judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent.

**ANSWER: Defendants deny the allegations of misconduct directed at Shephard. Defendants deny the other allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

153.    In so doing, these Defendants caused Plaintiff to be deprived of his liberty without probable cause and subjected improperly to judicial proceedings for which there was no probable cause, in violation of his rights secured by the Fourth and Fourteenth Amendments.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

154.    These Defendants instituted and continued these judicial proceedings against Plaintiff maliciously, resulting in injury.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

155.    The judicial proceedings against Plaintiff were terminated in his favor when the Cook County State's Attorney dismissed all charges against him.

**ANSWER: Defendants deny the allegations contained in this paragraph.**

156.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, and with malice, and in total disregard of the truth and Plaintiff's clear innocence.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

157.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

158.    The misconduct described in this Count by the Police Officer Defendants was undertaken pursuant to the police and practice of the Chicago Police Department, in the manner more fully described below in Count VIII.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

**COUNT IV**
**42 U.S.C. § 1983 – Due Process, Wrongful Conviction & Illegal Confinement (Fourteenth Amendment)**

159.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER: Defendants incorporate their answers to each of the preceding paragraphs as if fully restated here.**

160.    As described in detail above, the Police Officer Defendants and Defendant Shepherd—while acting individually, jointly, and/or in conspiracy with one another, and others unknown, as well as under color of law and within the scope of their employment—deprived Plaintiff of his constitutional right to a fair trial, his right not to be wrongfully convicted, and his right to be free of involuntary confinement.

**ANSWER: Defendants deny the allegations of misconduct directed at Shepherd. Defendants deny the other allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

161.    In the manner described more fully above, the Police Officer Defendants and Defendant Shepherd deliberately withheld exculpatory evidence from Plaintiff and from state prosecutors (including the Prosecutor Defendants), among others, thereby misleading and misdirecting the criminal prosecution of Plaintiff.

**ANSWER: Defendants deny the allegations of misconduct directed at Shepherd. Defendants deny the other allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

162.    The Police Officer Defendants and Defendant Shepherd also fabricated and manufactured evidence and solicited false evidence—including fabricated witness statements, and witness testimony that they knew to be false and perjured—fabricated police reports falsely implicating Plaintiff in the crime, obtained Plaintiff's conviction using that false evidence, and failed to correct fabricated evidence that they knew to be false when it was used against Plaintiff during his criminal case.

**ANSWER: Defendants deny the allegations of misconduct directed at Shepherd. Defendants deny the other allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

163.    The Police Officer Defendants also destroyed physical evidence that, if subjected to forensic testing, would have demonstrated Plaintiff's innocence. Defendants destroyed this physical evidence knowing that it had exculpatory value. In the alternative, Defendants destroyed this potentially exculpatory evidence in bad faith.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

164.    In addition, based upon information and belief, the Police Officer Defendants concealed, fabricated, and destroyed additional evidence that is not yet known to Plaintiff.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

165.    The Police Officer Defendants' and Defendant Shepherd's misconduct directly resulted in the unjust and wrongful criminal prosecution and conviction of Plaintiff and the deprivation of Plaintiff's liberty, thereby denying his constitutional right to a fair trial guaranteed by the Fourteenth Amendment. Absent this misconduct, the prosecution of Plaintiff could not have and would not have been pursued.

**ANSWER: Defendants deny the allegations of misconduct directed at Shepherd. Defendants deny the other allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

166.    The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

167.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

168.    The misconduct described in this Count by the Police Officer Defendants was undertaken pursuant to the police and practice of the Chicago Police Department, in the manner more fully described below in Count VIII.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

**COUNT V**
**42 U.S.C. § 1983 – Involuntary Servitude (Thirteenth Amendment)**

169.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER: Count V is no longer operative, as it was dismissed with prejudice pursuant to the Court's Opinion and Order issued on July 1, 2021.**

170.    In the manner described above, Police Officer Defendants' and Defendant Shepherd's misconduct deprived Plaintiff of due process and denied him a fair trial. Plaintiff thus was not duly convicted of the crimes with which he was charged.

**ANSWER: Count V is no longer operative, as it was dismissed with prejudice pursuant to the Court's Opinion and Order issued on July 1, 2021.**

171.    Because Plaintiff was not duly convicted, his labor while he was incarcerated constituted involuntary servitude in violation of the Thirteenth Amendment.

**ANSWER: Count V is no longer operative, as it was dismissed with prejudice pursuant to the Court's Opinion and Order issued on July 1, 2021.**

172.    The misconduct described in this Count by the Police Officer Defendants was undertaken pursuant to the police and practice of the Chicago Police Department, in the manner more fully described below in Count VIII.

**ANSWER: Count V is no longer operative, as it was dismissed with prejudice pursuant to the Court's Opinion and Order issued on July 1, 2021.**

## COUNT VI
### 42 U.S.C. § 1983 – Failure to Intervene

173.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER: Defendants incorporate their answers to each of the preceding paragraphs as if fully restated here.[2]**

174.     In the manner described above, during the constitutional violations described herein, one or more of the Police Officer Defendants, the Prosecutor Defendants and Defendant Shepherd stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the duty and the opportunity to do so.

**ANSWER: Defendants deny the allegations of misconduct directed at Shepherd, Judge, and Varga. Rubinstein has been dismissed from this case, so the allegations against him are no longer at issue. Defendants deny the other allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

175.     As a result of the Defendants' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered pain and injury, as well as emotional distress. These Defendants had ample, reasonable opportunities as well as the duty to prevent this harm but failed to do so.

---

[2] Pursuant to this Court's Opinion and Order issued on July 1, 2021, Count VI has been dismissed without prejudice as to Defendant Varga. (Op. 19–21, July 1, 2021, ECF No. 106.) Although the Court gave Plaintiff "leave to replead if [he] can allege facts showing that [Varga] failed to intervene in an underlying constitutional deprivation, despite having a reasonable opportunity to do so," *id.* at 21, Plaintiff has not amended his complaint. As such, Count VI is no longer operative as to Defendant Varga.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

176.    The misconduct described in this Count was objectively unreasonable, was undertaken and committed intentionally.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

177.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

178.    The misconduct described in this Count by the Police Officer Defendants was undertaken pursuant to the police and practice of the Chicago Police Department, in the manner more fully described below in Count VIII.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

## COUNT VII
### 42 U.S.C. § 1983 – Conspiracy to Deprive Constitutional Rights

179.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER: Defendants incorporate their answers to each of the preceding paragraphs as if fully restated here.[3]**

180.    As described more fully in the preceding paragraphs, the Police Officer Defendants and Defendant Shepherd, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime he did not commit and conspired by concerted action to accomplish an unlawful purpose by unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

**ANSWER: Defendants deny the allegations of misconduct directed at Shepherd. Defendants deny the other allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

181.    In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

182.    The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

---

[3] Pursuant to this Court's Opinion and Order issued on July 1, 2021, Count VII has been dismissed without prejudice as to Defendant Varga. (Op. 21–25, July 1, 2021, ECF No. 106.) Although the Court gave Plaintiff "leave to replead if [he] can allege that Varga took part in a conspiracy beyond the alleged involvement in Shaw's confession," *id.* at 25, Plaintiff has not amended his complaint. As such, Count VII is no longer operative as to Defendant Varga.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

183. As a result of the Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

184. The misconduct described in this Count by the Police Officer Defendants was undertaken pursuant to the police and practice of the Chicago Police Department, in the manner more fully described below in Count VIII.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

### COUNT VIII
### 42 U.S.C. § 1983 – Policy, Practice & Custom Claim Against the City of Chicago

185. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER: Defendants incorporate their answers to each of the preceding paragraphs as if fully restated here.**

186. As described in detail above, the City of Chicago is liable for the violation of Plaintiff's constitutional rights because Plaintiff's injuries were caused by the policies, practices, and customs of the City of Chicago, as well as by the actions of policy-making officials for the City of Chicago.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

187.    At all times relevant to the events described in this Complaint and for a period of time prior and subsequent thereto, the City of Chicago failed to promulgate proper or adequate rules, regulations, policies, and procedures for: the conduct of interrogations and questioning of criminal suspects; the collection, documentation, preservation, testing, and disclosure of evidence; the writing of police reports and taking of investigative notes; obtaining statements and testimony from witnesses; and maintenance of investigative files and disclosure of those files in criminal proceedings. In addition, or alternatively, the City of Chicago failed to promulgate proper and adequate rules, regulations, policies, and procedures for the training and supervision of officers and agents of the Chicago Police Department and the City of Chicago, with respect to these subjects.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

188.    These failures to promulgate proper or adequate rules, regulations, policies, and procedures were committed by officers and agents of the Chicago Police Department and the City of Chicago, including the Defendants.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

189.    In addition, at all times relevant to the events described in this Complaint and for a period of time prior thereto, the City of Chicago had notice of a widespread practice and custom by officers and agents of the Chicago Police Department and the City of Chicago under which individuals suspected of criminal activity, such as Plaintiff, were routinely deprived of their right

to due process. For instance, it was common that suspects were prosecuted based on fabricated evidence.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

190.     Specifically, at all times relevant to the events described in this Complaint and for a period of time prior thereto, the City of Chicago had notice of widespread practices by officers and agents of the Chicago Police Department and the City of Chicago, which included one or more of the following: (1) officers did not record investigative information in police reports, did not maintain proper investigative files, or did not disclose investigative materials to prosecutors and criminal defendants; (2) officers falsified statements and testimony of witnesses; (3) officers fabricated false evidence implicating criminal defendants in criminal conduct; (4) officers failed to maintain or preserve evidence or destroyed evidence; (5) officers coerced involuntary confessions, and (6) officers pursued wrongful convictions through profoundly flawed investigations.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

191.     These widespread practices, individually and together, were allowed to flourish because the leaders, supervisors, and policymakers of the City of Chicago directly encouraged and were thereby the moving force behind the very type of misconduct at issue by failing to adequately train, supervise, and control their officers, agents, and employees on proper interrogation techniques and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses such as those affecting Plaintiffs.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

192.    The above widespread practices and customs, so well settled as to constitute de facto policies of the City of Chicago, were able to exist and thrive, individually and together, because policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

193.    As a result of the policies and practices of the City of Chicago, numerous individuals have been wrongfully convicted of crimes that they did not commit.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

194.    In addition, the misconduct described in this Count was undertaken pursuant to the policies and practices of the City of Chicago in that the constitutional violations committed against Plaintiff were committed with the knowledge or approval of persons with final policymaking authority for the City of Chicago or were actually committed by persons with such final policymaking authority.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

195.    Plaintiff's injuries were directly and proximately caused by officers, agents, and employees of the City of Chicago, including but not limited to the individually named Defendants, who acted pursuant to one or more of the policies, practices, and customs set forth above in engaging in the misconduct described in this Count.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

## COUNT IX
## State Law Claim – Malicious Prosecution

196.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER: Defendants incorporate their answers to each of the preceding paragraphs as if fully restated here.**

197.     In the manner described above, the Police Officer Defendants and Defendant Shepherd, individually, jointly, and/or in conspiracy with one another, and others unknown, as well as within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate and to continue and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent.

**ANSWER: Defendants deny the allegations of misconduct directed at Shepherd. Defendants deny the other allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

198.     In so doing, the Defendants caused Plaintiff to be subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

199.     The judicial proceedings against Plaintiff were terminated in his favor when the Cook County State's Attorney dismissed all charges against him.

**ANSWER: Defendants deny the allegations contained in this paragraph.**

200.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, and in total disregard of the truth and Plaintiff's clear innocence.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

201.    As a result of the Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

**COUNT X**
**State Law Claim – Intentional Infliction of Emotional Distress**

202.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER: Defendants incorporate their answers to each of the preceding paragraphs as if fully restated here.**

203.    The actions, omissions, and conduct of the Police Officer Defendants, the Prosecutor Defendants, and Defendant Shepherd as set forth above were extreme and outrageous. These actions were rooted in an abuse of power and authority and were undertaken with the intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiffs, as is more fully alleged above.

**ANSWER: Defendants deny the allegations of misconduct directed at Shepherd, Judge, and Varga. Rubinstein has been dismissed from this case, so the allegations against him are no longer at issue. Defendants deny the other allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

204.     As a direct and proximate result of the Defendants' actions, Plaintiff suffered and continues to suffer emotional distress and other grievous and continuing injuries and damages as set forth above.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

**COUNT XI**
**State Law Claim – Civil Conspiracy**

205.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER: Defendants incorporate their answers to each of the preceding paragraphs as if fully restated here.**

206.     As described more fully in the preceding paragraphs, the Police Officer Defendants and Defendant Shepherd, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime he did not commit and conspired by concerted action to accomplish an unlawful purpose and/or to achieve a lawful purpose by unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

**ANSWER: Defendants deny the allegations of misconduct directed at Shepherd. Defendants deny the other allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

207. In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

208. The violations of Illinois law described in this complaint, including Defendants' malicious prosecution of Plaintiff and their intentional infliction of emotional distress, were accomplished by Defendants' conspiracy.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

209. The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

210. As a result of the Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER: Defendants deny the allegations of misconduct in this paragraph to the extent those allegations are directed at them. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

## COUNT XII
### State Law Claim – *Respondeat Superior*

211.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER: Defendants incorporate their answers to each of the preceding paragraphs as if fully restated here.**

212.    While committing the misconduct alleged in the preceding paragraphs, the Police Officer Defendants were employees, members, and agents of the City of Chicago, acting at all relevant times within the scope of their employment.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

213.    Defendant City of Chicago is liable as principal for all torts committed by its agents.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

## COUNT XIII
### State Law Claim – Indemnification

214.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER: Defendants incorporate their answers to each of the preceding paragraphs as if fully restated here.**

215.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

**ANSWER: Defendants make no answer to this paragraph on the basis that it calls for a legal conclusion. Defendants admit only the duties that the law requires.**

216.    The Police Officer Defendants are or were employees and agents of the City of Chicago, acting at all relevant times within the scope of their employment in committing the misconduct described herein.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

217.    Defendant City of Chicago is responsible to pay any judgment entered against the Police Officer Defendants. Plaintiff therefore demands judgment against Defendant City of Chicago, in the amounts awarded to Plaintiff against the Police Officer Defendants as compensatory damages, attorneys' fees, costs and interest.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

218.    Defendant Cook County is responsible to pay any judgment against the Prosecutor Defendants and Defendant Shepherd. Plaintiff therefore demands judgment against Defendant Cook County, in the amounts awarded to Plaintiff against the Prosecutor Defendants and Defendant Shepherd as compensatory damages, attorneys' fees, costs and interest.

**ANSWER: Defendants make no answer to this paragraph on the basis that it calls for a legal conclusion. Defendants admit only the duties that the law requires.**

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**
**(Absolute Prosecutorial Immunity)**

At all relevant times, Defendants Judge, Varga, and Shepherd were Assistant State's Attorneys with the Cook County State's Attorneys' Office acting within the scope of their

prosecutorial duties. As such, Plaintiff's federal and state law claims against Defendants Judge, Varga, and Shepherd are barred on the basis of absolute prosecutorial immunity.

**SECOND AFFIRMATIVE DEFENSE**
**(Qualified Immunity)**

At all relevant times, Defendants Judge, Varga, and Shepherd were Assistant State's Attorneys with the Cook County State's Attorneys' Office. To the extent any of their actions are not protected by absolute prosecutorial immunity, they are protected by qualified immunity as their actions were at all times proper in light of clearly established law.

**THIRD AFFIRMATIVE DEFENSE**
**(Sovereign Immunity)**

Plaintiff's claims against Defendants Judge, Varga, and Shepherd are really claims against a State official based upon their actions as Assistant State's Attorneys, functions that fall within the scope of their employment and authority as Assistant State's Attorneys.

Plaintiff's claims against Defendants Judge, Varga, and Shepherd relate to the initiation of charges against, and the criminal prosecution of Plaintiff. The State's Attorney is the constitutional officer vested with exclusive discretion in the initiation and management of a criminal prosecution. The prosecution of Plaintiff's case is, therefore, well within the scope of the State's Attorney's authority. There are no allegations that Defendants Judge, Varga, and Shepherd breached a duty owed to the public independent of their state employment, and the complained of actions involve matters within an Assistant State's Attorney's normal and official functions. As such, the Illinois Court of Claims has sole and exclusive jurisdiction over Plaintiff's state law claims against Defendants Judge, Varga, and Shepherd.

## FOURTH AFFIRMATIVE DEFENSE
### (Tort Immunity Act 745 ILCS 10/2-208)

Under 745 ILCS 10/2-208 of the Tort Immunity Act, "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, unless he acts maliciously and without probable cause."

Defendants Judge, Varga, and Shepherd did not act maliciously or without probable cause. Thus, Plaintiff's state law claims against Defendants Judge, Varga, and Shepherd that rely on evidence of injury caused by Defendants Judge, Varga, and Shepherd instituting or prosecuting the case against Plaintiff are barred under 745 ILCS 10/2-208.

## FIFTH AFFIRMATIVE DEFENSE
### (Tort Immunity Act 745 ILCS 10/2-202)

Under 745 ILCS 10/2-202 of the Tort Immunity Act, "A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct."

Defendants Judge, Varga, and Shepherd were public employees who followed the law in all abovementioned alleged conduct and did not act "willfully and wantonly" in any such conduct. Plaintiff's state law claims against Defendants Judge, Varga, and Shepherd are therefore barred under 745 ILCS 10/2-202.

## SIXTH AFFIRMATIVE DEFENSE
### (Tort Immunity Act 745 ILCS 10/2-204)

Under 745 ILCS 10/2-204 of the Tort Immunity Act, "Except as otherwise provided by statute, a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person."

Plaintiff's state law claims against Defendants Judge, Varga, and Shepherd that rely on evidence of acts or omissions of other persons are barred under 745 ILCS 10/2-204.

## SEVENTH AFFIRMATIVE DEFENSE
### (Tort Immunity Act 745 ILCS 10/2-201)

Under 745 ILCS 10/2-201 of the Tort Immunity Act, "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."

Plaintiff's state law claims against Defendants Judge, Varga, and Shepherd that involve the determination of policy or the exercise of discretion are barred under 745 ILCS 10/2-201.

## EIGHTH AFFIRMATIVE DEFENSE
### (Judicial Estoppel / Statue of Limitations)

The doctrine of judicial estoppel, and the applicable statute of limitations, both bar Plaintiff from proceeding with the alleged causes of action.

## NINTH AFFIRMATIVE DEFENSE
### (Res Judicata / Collateral Estoppel)

The doctrines of res judicata and collateral estoppel both bar Plaintiff from proceeding with the alleged causes of action.

## TENTH AFFIRMATIVE DEFENSE
### (Willful and Wanton Conduct)

To the extent any injuries or damages claimed by Plaintiff were proximately caused, in whole or in part, by negligent, willful, wanton and/or other wrongful conduct on the part of Plaintiff, any verdict or judgment obtained by Plaintiff must be reduced by an amount commensurate with the degree of fault attributed to Plaintiff by the jury in this case.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate)

To the extent Plaintiff failed to mitigate any of his claimed injuries or damages, any verdict or judgment obtained by Plaintiff must be reduced or eliminated for his failure to mitigate.

## TWELFTH AFFIRMATIVE DEFENSE
### (Immunity from Punitive Damages)

Local governments are immune from punitive damages liability under 42 U.S.C. § 1983.

*City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Therefore, to the extent Plaintiff

seeks punitive damages, Defendant Cook County asserts immunity from the same.

### <u>JURY DEMAND</u>

Defendants McRay Judge, Andrew Varga, Eugene Shepherd, and Cook County, Illinois,

demand a trial by jury.


Dated: July 29, 2021                          Respectfully submitted,

                                         **JOHNSON & BELL, LTD.**

                          By:      <u>*/s/ Brian P. Gainer*</u>
                                   Brian P. Gainer


Brian P. Gainer (gainerb@jbltd.com)
Monica Burkoth (burkothm@jbltd.com)
Samuel D. Branum (branums@jbltd.com)
JOHNSON & BELL, LTD.
33 W. Monroe, Suite 2700
Chicago, Illinois 60603
Tel: (312) 372-0770
Fax: (312) 372-9818