**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN FULTON, | ) | |
| | ) | |
| Plaintiff, | ) | 20-cv-3118 |
| | ) | |
| v. | ) | Honorable Judge Lefkow |
| | ) | |
| ROBERT BARTIK, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |
| | ) | |
| ANTHONY MITCHELL, | ) | |
| | ) | 20-cv-3119 |
| Plaintiff, | ) | |
| | ) | Honorable Judge Lefkow |
| v. | ) | |
| | ) | |
| ROBERT BARTIK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants McRay Judge, Andrew Varga, Eugene Shepherd, and Cook County (hereinafter collectively referred to as the "County Defendants") by and through their attorneys, Johnson & Bell, Ltd., pursuant to Federal Rule of Civil Procedure 56(b) and Local Rule 56.1 of the Rules of the United States District Court for the Northern District of Illinois, respectfully submit their Memorandum of Law in Support of their Motion for Summary Judgment seeking dismissal of Plaintiffs' Complaints.[1] Defendants respectfully seek to incorporate herein by

---

[1] As indicated by the caption above, the Plaintiffs have filed two separate suits, with two separate case numbers. The cases have been designated as "related" and the allegations and counts in both cases are largely the same. [Dkt. 32, Case No. 20 cv 3118]. All the arguments below herein are directed to the claims of both Plaintiffs, unless otherwise noted below.

reference their Joint Local Rule 56.1(a) Statement of Undisputed Material Facts filed concurrently with this memorandum.

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 3

LEGAL STANDARD ........................................................................................................ 8

ARGUMENT ..................................................................................................................... 8

I.   SUMMARY JUDGMENT IS PROPER FOR THE COOK COUNTY DEFENDANTS
     BASED ON THE APPLICATION OF VARIOUS IMMUNITIES. .................................... 8

     A.   ASA Judge and ASA Varga Have Absolute Prosecutorial Immunity
          for All Federal Claims. ...................................................................................... 8

     B.   ASA Judge, ASA Varga, and Defendant Shepherd Have Qualified
          Immunity for All Federal Claims. ..................................................................... 11

     C.   ASA Judge and ASA Varga Have Absolute Prosecutorial Immunity
          for State Claims. ................................................................................................ 12

     D.   Defendants Judge, Varga, and Shepherd Have Sovereign Immunity. ........................ 13

     E.   Defendants Judge, Varga, and Shepherd have absolute immunity for
          their testimony in the criminal court proceedings. ........................................... 15

II.  DEFENDANTS JUDGE, VARGA, AND SHEPHERD ARE ENTITLED TO
     SUMMARY JUDGMENT ON ADDITIONAL GROUNDS. ............................................... 16

     A.   ASA Judge is Entitled to Summary Judgment on the Count I Claim of
          False Confession Because He Did Not Coerce Fulton's Inculpatory
          Statement. .......................................................................................................... 16

     B.   Judge is Entitled to Summary Judgement on Count II, Plaintiffs'
          Fabrication of False Witness Statements Claims .............................................. 18

     C.   Varga is Entitled to Summary Judgment on Count II, Plaintiffs'
          Fabrication of False Witness Statements Claim. .............................................. 19

     D.   ASA Varga is Entitled to Summary Judgment on Count II Because
          He Did Not Fabricate Shaw's Handwritten Statement ...................................... 21

E. ASA Varga is Entitled to Summary Judgment on Count II Because There is No Evidence that he Physically or Psychologically Coerced Shaw.................................................................................................................... 21

F. ASA Varga is Entitled to Summary Judgment on Count II Because Shaw's Statement was Suppressed. ................................................................. 22

G. Defendant Shepherd is Entitled to Summary Judgment on Count III's Claim of Deprivation of Liberty without Probable Cause............................. 23

H. Defendant Shepherd is Entitled to Summary Judgment on Count III's Claim of Deprivation of Liberty Because His Investigation Was Not the Proximate Cause of Plaintiffs' Injuries....................................................... 25

I. Defendant Shepherd is Entitled to Summary Judgment on the Count IV Claim of Due Process, Wrongful Conviction, and Illegal Confinement........................................................................................................ 26

J. ASA Judge and Defendant Shepherd are Entitled to Summary Judgment on Count VI's Claim of Failure to Intervene.................................. 27

K. Defendant Shepherd is Entitled to Summary Judgment on Plaintiffs' Conspiracy Claims Contained in Counts VII and XI. .................................. 29

L. Defendant Shepherd is Entitled to Summary Judgment on Plaintiffs' Conspiracy Claims Because He Did Not Deprive Plaintiffs of Their Rights....................................................................................................................... 30

M. Defendant Shepherd is Entitled to Summary Judgment on the State Law Malicious Prosecution Claim in Count IX............................................. 31

N. Defendants Varga, Judge, and Shepherd are Entitled to Summary Judgment on Plaintiffs' Intentional Infliction of Emotional Distress Claim Contained in Count X. ...................................................................... 32

O. Count XIII Should be Dismissed Against Cook County, because there is no Evidence of Any Torts Committed by any Cook County Agent......................... 34

CONCLUSION ........................................................................................................... 35

## TABLE OF AUTHORITIES

U.S. Supreme Court

*Briscoe v. Lahue*, 460 U.S. 325, 103 S. Ct. 1108 (1983)..........................................15, 25

*Buckley v. Fitzsimmons*, 509 U.S. 259, 113 S. Ct. 2606 (1993) ....................................11

*Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808 (2009)..........................................11

Seventh Circuit

*Archer v. Chisholm*, 870 F.3d 603 (7th Cir. 2017) .......................................................31

*Bailey v. City of Chicago*, 779 F.3d 689 (7th Cir. 2010) ...............................................33

*Blood v. VH-1 Music First*, 668 F.3d 543 (7th Cir. 2012)..............................................25

*Bloodworth v. Vill. of Greendale*, 475 Fed. App'x 92 (7th Cir. 2012)..............................8

*Burks v. Raemisch*, 555 F.3d 592 (7th Cir. 2009)..........................................18, 20, 27

*Colbert v. City of Chicago*, 851 F.3d 649 (7th Cir. 2017) ...........................26, 31, 32

*Dassey v. Dittmann*, 877 F.3d 297 (7th Cir. 2017).....................................21, 22

*Daugherty v. Harrington*, 906 F.3d 606 (7th Cir. 2018) ...............................................29

*Dix v. Edelman Financial Services*, LLC, 978 F.3d 507 (7th Cir. 2020) ......................29

*Fields v. Wharrie*, 672 F.3d 505 (7th Cir. 2012) ....................................8, 11, 21

*Gill v. City of Milwaukee*, 850 F.3d 335 (7th Cir. 2017).............................................27

*Goodman v. National Sec. Agency, Inc.*, 621 F.3d 651 (7th Cir. 2010).........................8

*Gossmeyer v. McDonald*, 128 F.3d 481 (7th Cir. 1997).............................................13

*Hart v. Mannina*, 798 F.3d 578 (7th Cir. 2015) .........................................................22

*Hunt v. Jaglowski*, 926 F.2d 689 (7th Cir. 1991) .........................................................9

*Janusiak v. Cooper*, 937 F.3d 880 (7th Cir. 2019) .....................................................22

*Lewis v. Washington*, 183 F. App'x 553 (7th Cir. 2006) ........................................30, 31

*Patrick v. City of Chi.*, 974 F.3d 824 (7th Cir. 2020) ...............................23, 24, 26

*Smith v. Gomez*, 550 F.3d 613 (7th Cir. 2008) ...........................................................30

*Smith v. Power*, 346 F.3d 740 (7th Cir. 2003) .............................................................9

*Stinson v. Gauger*, 868 F.3d 516 (7th Cir. 2017) ...............................................................19, 20, 21

*Swetlik v. Crawford*, 738 F.3d 818 (7th Cir. 2013)...........................................................................8

*Vance v. Peters*, 97 F.3d 987 (7th Cir. 1996)...........................................................................18, 20

*Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012)...............................................................23

*Yang v. Hardin*, 37 F.3d 282 (7th Cir. 1994) ................................................................................27

<u>District Court</u>

*Andrews v. Burge*, 660 F. Supp. 2d 868 (N.D. Ill. 2009)...........................................................10, 13

*Beaman v. Souk*, 7 F. Supp. 3d 805 (C.D. Ill. 2014)......................................................................27

*Brown v. City of Chi.*, No. 18 C 7064, 2022 U.S. Dist. LEXIS 178840

    (N.D. Ill. Sep. 30, 2022).....................................................11, 17, 18, 19, 20, 22, 23, 27

*Harris v. City of Chicago*, 330 F.R.D. 508 (N.D. Ill. 2018)............................................................10

*Heidelberg v. Manias*, 503 F. Supp. 3d 758 (C.D. Ill. 2020)............................................................8

*Jackson v. City of Peoria*, No. 4:16-cv-01054-SLD-JEH, 2017 U.S. Dist. LEXIS 48705

    (C.D. Ill. Mar. 31, 2017) ....................................................................................16, 17

*Kitchen v. Burge*, 781 F. Supp. 2d 721 (N.D. Ill. 2011) .................................................................13

*Linder v. McPherson*, No. 14-cv-2714, 2015 U.S. Dist. LEXIS 10537

    (N.D. Ill. Jan. 29, 2015) .........................................................................................26

*Melongo v. Podlasek*, No. 13 C 4924, 2015 U.S. Dist. LEXIS 199011

    (N.D. Ill. June 9, 2015) ..........................................................................................13

*Powell v. City of Berwyn*, 68 F. Supp. 3d 929 (N.D. Ill. 2014) ......................................................27

*Scott v. Bender*, 948 F. Supp. 2d 859 (N.D. Ill. 2013)...................................................................32

*Serrano v. Guevara*, 315 F. Supp. 3d 1026 (N.D. Ill. 2018) ....................................................12, 28

*Starks v. City of Waukegan*, 123 F. Supp. 3d 1036 (N.D. Ill. 2015)...............................................30

*Taylor v. City of Chi.*, 80 F. Supp. 3d 817 (N.D. Ill. 2015) ...........................................................16

<u>State Court</u>

*Coghlan v. Beck*, 2013 IL App (1st) 120891, 368 Ill. Dec. 407, 984 N.E.2d 132..........................30

*Currie v. Lao*, 148 Ill. 2d 151, 170 Ill. Dec. 297, 592 N.E.2d 977 (1992).....................................13

*Healy v. Vaupel*, 133 Ill. 2d 295, 140 Ill. Dec. 368, 549 N.E.2d 1240 (1990) ............................... 14

*Lee v. Chi. Transit Auth.,* 152 Ill. 2d 432, 178 Ill. Dec. 699, 605 N.E.2d 493 (1992) .................. 25

*McClure v. Owens Corning Fiberglas Corp.*,

    188 Ill. 2d 102, 241 Ill. Dec. 787, 720 N.E.2d 242 (1999) ................................................ 29

*Schweihs v. Chase Home Fin., LLC*, 2016 IL 120041, 412 Ill. Dec. 882, 77 N.E.3d 50 .............. 33

*Swick v. Liautaud*, 169 Ill. 2d 504, 215 Ill. Dec. 98, 662 N.E.2d 1238 (1996) ............................ 32

*Ware v. Carey*, 75 Ill. App. 3d 906, 31 Ill. Dec. 488, 394 N.E.2d 690 (1979) .............................. 14

*Watkins v. Office of the State Appellate Def.*,

    2012 IL App (1st) 111756, 364 Ill. Dec. 109, 976 N.E.2d 387 .......................................... 14

*Welch v. Ill. Supreme Court*, 322 Ill. App. 3d 345, 256 Ill. Dec. 350, 751 N.E.2d 1187 (2001)....14

*White v. City of Chi.*, 369 Ill. App. 3d 765, 308 Ill. Dec. 518, 861 N.E.2d 1083 (2006) .........13, 14

## **INTRODUCTION**

This case arises from the March 10, 2003, murder of Christopher Collazo. Both Plaintiffs, John Fulton and Anthony Mitchell, were tried for Collazo's murder, and on August 31, 2006, they were convicted and sentenced to prison. In 2019, those convictions were vacated, and the Cook County State's Attorney's Office dismissed the charges against both Fulton and Mitchell. On May 26, 2020, both Plaintiffs filed these suits against the County Defendants, the City of Chicago, and multiple Chicago police officers. [Dkt. 1].

Originally, Jacob Rubinstein, a former Cook County State's Attorney, was named as one of the County Defendants. [Dkt. 1]. On October 26, 2020, the County Defendants filed a motion to dismiss certain claims against them for various reasons. [Dkt. 70]. The motion sought the complete dismissal of Rubinstein on *res judicata* grounds. [Dkt. 70]. On July 1, 2021, this Court granted in part and denied in part the County Defendants motion to dismiss. [Dkt. 106]. As part

of this ruling, the Court dismissed all claims against Defendant Rubinstein, without prejudice, and gave Plaintiffs twenty-one days to replead. [Dkt. 106]. Plaintiff chose not to replead within the time allotted by the Court, and instead filed a motion to reconsider the dismissal of Rubinstein. [Dkt. 110]. On November 9, 2021, this Court denied Plaintiffs' motion to reconsider, and dismissed Rubinstein with prejudice. [Dkt. 126]. As a result, Jacob Rubinstein is no longer a defendant in these cases. [Dkt. 126, p. 6].

Other claims asserted by Plaintiffs in their complaints were also dismissed pursuant to Defendants' motions to dismiss. [Dkt. 106]. Plaintiffs' Count V, for "Involuntary Servitude" was dismissed with prejudice. [Dkt. 106]. Plaintiffs' failure to intervene and conspiracy claims against Defendant Varga (Counts VI and VII) were dismissed without prejudice, with twenty-one days to replead. [Dkt. 106]. No amended complaint was filed, so those claims against Defendant Varga are no longer operative.

As to the County Defendants, the following claims survived: Count I – §1983 False Confession (Fifth and Fourteenth Amendments) Fulton against Defendant Judge; Count II - §1983 Fabrication of False Witness Statements (Fourteenth Amendment) against "Prosecutor Defendants;" Count III - §1983 Deprivation of Liberty Without Probable Cause (Fourth and Fourteenth Amendments) against Defendant Shepherd; Count IV – Due Process, Wrongful Conviction & Illegal Confinement (Fourteenth Amendment) against Defendant Shepherd; Count VI – §1983 Failure to Intervene against Defendant Shepherd, and, presumably[2], Defendant Judge;

---

[2] This count presumably includes ASA Judge because, like most of the other counts in the complaint, is vaguely plead to include "police officer defendants," "prosecutor defendants," and Shepherd. As explained more fully below, Judge is the only "prosecutor defendant" who spoke to Fulton and is therefore the only "prosecutor defendant" who could have possibly "intervened" on Fulton's behalf. Count VI in the Mitchell complaint cannot stand here, because none of the remaining "prosecutor defendants" ever interacted with Mitchell. Also, it should be noted that Paragraph 178 of the complaints seems to indicate that these claims aren't against the "prosecutor defendants" at all but are instead against the "police officer defendants." [Dkt. 1, both cases, ¶178].

Count VII - §1983 Conspiracy to Deprive Constitutional Rights against Defendant Shepherd; Count IX – State Law Malicious Prosecution against Defendant Shepherd; Count X – State Law Intentional Infliction of Emotional Distress against "Prosecutor Defendants" and Defendant Shepherd; Count XI – State Law Civil Conspiracy against Defendant Shepherd, and Count XIII – State Law Indemnification against Cook County.

## **LEGAL STANDARD**

Summary judgment is appropriate where the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Bloodworth v. Vill. of Greendale*, 475 Fed. App'x 92, 95 (7th Cir. 2012). Summary judgment is the "put up or shut up" moment in litigation, in which the non-moving party will prove their case. *Goodman v. National Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The court must view the evidence in the light most favorable to the non-moving party and give the non-moving party the benefit of reasonable inferences in their favor. *Swetlik v. Crawford*, 738 F.3d 818, 821 (7th Cir. 2013).

## **ARGUMENT**

I. **SUMMARY JUDGMENT IS PROPER FOR THE COOK COUNTY DEFENDANTS BASED ON THE APPLICATION OF VARIOUS IMMUNITIES.**

A. **ASA Judge and ASA Varga Have Absolute Prosecutorial Immunity for All Federal Claims.**

"A prosecutor is absolutely immune from suit for all actions and decisions undertaken in furtherance of his prosecutorial duties." *Fields v. Wharrie,* 672 F.3d 505, 510 (7th Cir. 2012) ("*Fields I*"). "Prosecutorial immunity attaches to the failure to comply with disclosure obligations and the suppression of evidence, the initiation of a criminal prosecution, the evaluation and

preparation of evidence collected by the police for presentation at trial, and court appearances to obtain search warrants." *Heidelberg v. Manias*, 503 F.Supp.3d 758, 779-780 (C.D. Ill. 2020) (internal citations omitted). Prosecutorial immunity applies even when the prosecutorial action was done maliciously or unreasonably. *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003).

In *Hunt v. Jaglowski*, the Seventh Circuit ruled in favor of the defendant prosecutor where the plaintiff allegedly told the prosecutor that the police had coerced his agreement to confess, and the prosecutor told him that there was nothing he could do about it. 926 F.2d 689, 692-694 (7th Cir. 1991). The Court explained that prosecutors are absolutely immune in their function in gathering and evaluating evidence in order to make a prosecutorial decision as to whether to file charges, and that the prosecutor was immune from liability because his function in being present and taking a statement from the plaintiff was merely to review the evidence and approve or disapprove the charges. *Id.* at 693.

Here, ASA Judge learned about the Collazo murder investigation when a felony review dispatcher called him in the early morning hours of March 19, 2003, to go to Area 1. (SoF ¶¶18-20). ASA Judge's only involvement was interviewing John Fulton after he had already been arrested, interrogated by detectives, and had made an inculpatory statement to detectives Breen and Zalatoris. (SoF ¶¶18-20, 41-44). ASA Judge never interviewed Anthony Mitchell or Antonio Shaw. (SoF ¶41). Significantly, ASA Judge was not present when Fulton claims that detectives physically and/or mentally abused him, and there is no evidence to suggest that ASA Judge was aware that this occurred. (SoF ¶¶28-29, 39). ASA Judge did not approve charges against Fulton or Mitchell, and it is undisputed that he reported Fulton's statement, recantation, and alibi to the police and his colleagues. (SoF ¶¶ 33-38, 43-44). He also, later, testified about Fulton's statement, recantation, and alibi in court. (SoF ¶¶ 33-38, 43-44).

Similarly, ASA Varga learned about the Collazo investigation from ASA Rubinstein after Fulton was already in custody and had made an inculpatory statement to detectives. (SoF ¶¶ 45-53). ASA Varga's only involvement in the case was interviewing Shaw, after Shaw had already been arrested and interrogated by detectives. (SoF ¶¶45-58). *Cf. Harris v. City of Chicago*, 330 F.R.D. 508, 516 (N.D. Ill. 2018) (finding an ASA entitled to prosecutorial immunity when taking statements from a suspect after being told by police he had confessed).

Significantly, ASA Varga was not present during Shaw's claims of being physically and/or mentally abused by detectives, and there is no evidence to the contrary. (SoF ¶¶ 62, 77). ASA Varga never interviewed Fulton or Mitchell. (SoF ¶88). ASA Varga did not testify at the criminal trials of Fulton or Mitchell. (SoF ¶¶80-82).

ASA Judge and ASA Varga's interactions with Fulton and Shaw in this case relate solely to performing their job duties as a felony review assistant state's attorneys. They interviewed Fulton and Shaw, and obtained statements from both, which are prosecutorial functions. As one Northern District Court elaborated:

> It is within the proper role of an advocate for the State to take a court reported statement, as well as to see and hear the defendant give the statement, rather than simply take the word of the police that the defendant has confessed. The prosecutor acts within his core functions when he evaluates the evidence gathered by police and, in the case of a confession, takes steps to see that the words of the defendant are properly preserved. A prosecutor should not be deprived of immunity because, in a case of murder, he decides to hear what the defendant has to say for himself.

*Andrews v. Burge*, 660 F.Supp.2d 868, 878 (N.D. Ill. 2009) (an ASA was entitled to absolute immunity when the criminal defendant did not allege that the prosecutor departed from the common practice of taking a confession by asking questions as he or she would ask a witness examined in a courtroom.). ASA Judge's and ASA Varga's involvement in the Collazo murder investigation was limited to their roles as

prosecutors, and they are entitled to absolute immunity for the federal claims and summary judgment is proper.

      **B.**      **ASA Judge, ASA Varga, and Defendant Shepherd Have Qualified Immunity for All Federal Claims.**

Qualified immunity is sufficient to protect officials who are required to exercise their discretion related to public interest in encouraging this exercise of official authority. *Buckley v. Fitzsimmons*, 509 U.S. 259, 268, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993). Qualified immunity is applicable unless the plaintiff makes out a constitutional right that was clearly established at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232, S. Ct. 808, 172 L. Ed. 2d 565 (2009). Where a prosecutor acts as an investigator rather than a legal advocate, he is entitled to qualified immunity that would be granted to police officers carrying out those same duties. *Brown v. City of Chicago,* 2022 U.S. Dist. LEXIS 178840, 2022 WL 4602714, at *58 (N.D. Ill. 2022); see also *Fields I* at 511. When a prosecutor performs the investigative functions normally performed by a detective or police officer, "it is not appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." *Buckley*, 509 U.S. at 273.

In determining whether the prosecutor's action was prosecutorial, courts look to see if the prosecutor was acting as an officer of the court and if the actions are related to the judicial phase of the criminal process. *Id.* This includes pressing charges and initiating prosecution. *Buckley,* 509 U.S. at 270. In contrast, "[p]rosecutors do not function as advocates before probable cause to arrest a suspect exists." *Fields I* at 512. "There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand." *Buckley*, 509 U.S. at 273.

As discussed above, ASA Judge and ASA Varga's interactions with the detectives, Fulton, and Shaw in this case arose out of their prosecutorial duties to review the evidence and interview witnesses, and so they have absolute immunity. (SoF ¶¶10-84). Even if ASA Varga and ASA Judge are not entitled to absolute immunity, in 2003 when the events here took place, there was no clearly established constitutional obligation under §1983 for a prosecutor to intervene in any alleged constitutional violations by a police officer, and so they are still entitled to qualified immunity. *See Serrano v. Guevara,* 315 F.Supp.3d 1026, 1038 (N.D. Ill. 2018) (Prosecutor entitled to qualified immunity because there was no clearly established duty to intervene in 1993). Accordingly, ASA Varga and ASA Judge are protected by qualified immunity, and summary judgment is proper.

Defendant Shepherd is also entitled to qualified immunity as an investigator for the State's Attorney's Office. An investigator may be entitled to qualified immunity if his discretionary actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Buckley v. County of DuPage*, 1996 U.S. Dist. LEXIS 5855, *6-7. Defendant Shepherd's only involvement in this case was to investigate the Lake Meadows Apartments for security cameras, and then testify about what he found. (SoF ¶¶85-94). There is, quite literally, no evidence in this case indicating that Defendant Shepherd did anything else, and there is a raft of evidence that what he determined about the cameras (that there were none) and what he testified to (that there were none), was accurate. (SoF ¶¶85-100). As a result, Defendant Shepherd is also entitled to qualified immunity for performing his job as an investigator without violating clearly established statutory or constitutional right.

**C.      ASA Judge and ASA Varga Have Absolute Prosecutorial Immunity for State Claims.**

For the same reasons that ASA Judge and ASA Varga have absolute immunity for the federal claims, they have absolute immunity for the state law claims. "Illinois and federal doctrines of prosecutorial immunity are coterminous," therefore, a prosecutor who is entitled to prosecutorial immunity under federal law will also be entitled to immunity with respect to state law claims. *Kitchen v. Burge*, 781 F.Supp.2d 721, 737 (N.D. Ill. 2011), *see also Andrews*, 660 F.Supp.2d at 879. ("The state law rules governing prosecutorial immunity are, as everywhere or nearly everywhere, at least as broad as those found in federal law and the state law claims against [prosecutor] are also dismissed."), *White v. City of Chicago*, 369 Ill. App. 3d 765, 772, 861 N.E.2d 1083, 1090 308 Ill. Dec. 518 (1st Dist. 2006) (Prosecutors have absolute immunity for obtaining, reviewing and evaluating evidence that is required to prepare for the initiation of the criminal process.). ASA Judge and ASA Varga's involvement in the Collazo murder investigation is limited to interviewing Fulton and Shaw, and taking their statements, which, again, were part of their prosecutorial duties. (SoF ¶¶10-84). ASA Judge and ASA Varga are therefore entitled to absolute immunity for all state law claims as well.

### D. Defendants Judge, Varga, and Shepherd Have Sovereign Immunity.

Plaintiffs' state law claims are also barred by the doctrine of sovereign immunity. The Eleventh Amendment bars an action in federal court against a state, its agencies, or its officials in their official capacity. *Gossmeyer v. McDonald*, 128 F.3d 481, 487 (7th Cir. 1997). Under Illinois law, the Court of Claims has exclusive jurisdiction for claims against the State. 705 ILCS 505/8, *White*, 861 N.E.2d at 779. This includes claims nominally brought against a State employee that are, in actuality, claims brought against the State. *Currie v. Lao*, 148 Ill. 2d 151, 158, 170 Ill. Dec. 297, 300, 592 N.E.2d 977, 980 (1992). Determination of whether an action is in fact a suit against the State turns upon an analysis of the issues involved and the relief sought. *Id.* Assistant States

Attorneys are state officials for purposes of sovereign immunity. *Melongo v. Podlasek*, No. 13 C 4924, 2015 U.S. Dist. LEXIS 199011, at *13 (N.D. Ill. June 9, 2015).

A suit is only nominally against a State employee, and sovereign immunity applies, when: there are no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts, the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment, and the complained of actions involve matters normally within that employee's normal and official functions of the State. *Healy v. Vaupel*, 133 Ill. 2d 295, 309, 140 Ill. Dec. 368, 375, 549 N.E.2d 1240, 1247 (1990). Acts taken with malice do not automatically divest the Illinois Court of Claims of exclusive jurisdiction, and exclusive jurisdiction remains with the Court of Claims if the malicious acts were done in furtherance of the State's purposes. *Welch v. Ill. Supreme Court*, 322 Ill. App. 3d 345, 354, 256 Ill. Dec. 350, 358, 751 N.E.2d 1187, 1195 (2001) (Allegations that the defendants acted with malice did not defeat sovereign immunity, as they were made within the scope of the defendants' employment with the State.).

The relevant question for purposes of sovereign immunity is whether the acts of ASA Judge, ASA Varga, and Defendant Shepherd arose out of a breach of duty that was imposed on them by virtue of their state employment, or whether they are charged with a breach of duty independent of their state employment. *Welch v. Ill. Supreme Court*, 322 Ill. App. 3d 345, 352-53, 256 Ill. Dec. 350, 357, 751 N.E.2d 1187, 1194 (2001), *Watkins v. Office of the State Appellate Def.*, 2012 IL App (1st) 111756, ¶ 39, 364 Ill. Dec. 109, 122, 976 N.E.2d 387, 400

An Assistant State's Attorney's duties include investigating facts, evaluating evidence, and determining whether an offense has been committed. *Ware v. Carey*, 75 Ill. App. 3d 906, 913-14, 31 Ill. Dec. 488, 492, 394 N.E.2d 690, 694 (1979). The acts of ASA Judge and Varga

14

arose out of duties imposed on them by virtue of their employment as prosecutors, and they did not owe a separate duty to Fulton or Mitchell. *See White*, 861 N.E.2d at 780 (Sovereign immunity applied to ASAs, as their duties stemmed from their status as agents of the State, and they owed no general duty to the plaintiff.). Similarly, Defendant Shepherd's actions of investigating Lake Meadows arose from his role as an investigator for the State's Attorney's Office. Accordingly, ASA Varga, ASA Judge, and Defendant Shepherd are protected by sovereign immunity from the state law claims, and summary judgment is proper.

### E. Defendants Judge, Varga, and Shepherd Have Absolute Immunity for their Testimony in the Criminal Court Proceedings.

To the extent that any of Plaintiffs' claims are based on the alleged falsity of the testimony in the criminal court proceedings given by Judge, Varga, and/or Shepherd, these claims must be dismissed. False testimony at trial does not give rise to a viable constitutional claim because witnesses are entitled to absolute immunity from liability based on their testimony. *Briscoe v. Lahue*, 460 U.S. 325, 326, 103 S. Ct. 1108, 1111 (1983). As a result of this well settled statement of law, none of Plaintiff's claims against the County Defendants that are based on how they testified in the criminal proceedings, or what they said there, can survive summary judgment.

This is especially important with regard to Defendant Shepherd, because his only role in this case was to investigate the absence or presence of video cameras at John Fulton's apartment building, and then testify about what he found. (SoF ¶¶85-94, 99). As more fully explained below, there is no evidence that Shepherd fabricated or falsified anything about the absence of cameras, or anything else, either during his investigation or during his testimony. (SoF ¶¶85-100). In fact, there is a significant amount of evidence that Shepherd told the truth about the absence of cameras at the back door of Fulton's apartment building. (SoF ¶¶85-98). Regardless, based on the authority above, he is absolutely immune for his criminal trial testimony, so no claim based on it can

survive.  Plaintiffs chose not to depose Defendant Shepherd in this lawsuit, so no other evidence exists to substantiate any claims against him.  (SoF ¶¶85-100).

Based on all the above, any claims against Judge and Varga based on their testimony in the criminal proceedings must fail because they are absolutely immune from liability arising from that testimony.  All the claims against Shepherd must fail because the evidence shows that the only things he did were: (1) investigate the back of the Fulton's apartment building, and (2) testify at his observations at Plaintiffs' trial.

## II.    DEFENDANTS JUDGE, VARGA, AND SHEPHERD ARE ENTITLED TO SUMMARY JUDGMENT ON ADDITIONAL GROUNDS.

In addition to the various immunities discussed above, ASA Judge, ASA Varga, and Defendant Shepherd are entitled to summary judgment on all the claims against them for the additional reasons set forth below.

### A.  ASA Judge is Entitled to Summary Judgment on the Count I Claim of False Confession Because He Did Not Coerce Fulton's Inculpatory Statement.

In Count I, Plaintiffs allege a §1983 claim for a false confession in violation of their Fifth and Fourteenth Amendments.[3] [Dkt #1, ¶135-144]. Specifically, Fulton alleges that ASA Judge forced him to make false statements against his will. [Dkt #1, ¶136]. A Fifth Amendment claim alleging a constitutionally invalid confession is actionable when an individual makes a self-incriminating statement, and that statement is used as evidence against him in a criminal proceeding. *Taylor v. City of Chi.*, 80 F. Supp. 3d 817, 823-824 (N.D. Ill. 2015). A false confession Fourteenth Amendment claim occurs when coercion is used to achieve a confession by certain interrogation techniques, that are so offensive to a civilized system of justice that they must be

---

[3] Mitchell's "False Confession" claim is against Jake Rubinstein, who, as mentioned above, is no longer a defendant in this case.  This argument is therefore directed to Fulton's "False Confession" claim against ASA Judge.

condemned. *Jackson v. City of Peoria,* No. 4:16-cv-01054-SLD-JEH, 2017 U.S. Dist. LEXIS 48705, at *13 (C.D. Ill. Mar. 31, 2017). "There is a difference between fabricated evidence, which is necessarily untrue, and evidence obtained through coercion, which may be true." *Brown v. City of Chicago,* 2022 U.S. Dist. LEXIS 178840, 2022 WL 4602714, at *63 (N.D. Ill. 2022).

Interrogation tactics that "shock the conscience" provide the basis for a due process claim under § 1983. *Jackson*, 2017 U.S. Dist. LEXIS 48705, *13-14. Such that the conduct is "offensive to human dignity." *Rochin*, 342 U.S. at 174. The Supreme Court held that forcing a suspect to ingest a solution that would pump his stomach for evidence violated the Constitution and was conduct which "shocked the conscience." *Rochin*, 342 U.S. at 172.

ASA Judge never interviewed Mitchell or Shaw, so Count I must be limited to his interaction with Fulton in the early morning of March 19, 2003. (SoF ¶¶41-42, 44). It is undisputed that ASA Judge interviewed Fulton, with CPD detectives present, and Fulton told ASA Judge of his involvement in the Collazo murder. (SoF ¶¶ 22-27). After ASA Judge asked the detectives to leave the room, Fulton recanted his confession to ASA Judge because he believed ASA Judge to be neutral and respectful figure. (SoF ¶¶ 28-33). ASA Judge listened to Fulton's entire recantation, shared it with detectives, and suggested that they investigate Fulton's alibi. (SoF ¶¶ 28-34). ASA Judge then shared Fulton's statements with his colleagues and testified in various criminal proceedings about Fulton's inculpatory statement, about his recantation, and about his alibi. (SoF ¶¶36-37, 43-44). Fulton has admitted that Judge did not pressure him to make a statement, and he has admitted that he never told ASA Judge that the police physically abused him. (SoF ¶¶ 28-29, 39).

There is no evidence that ASA Judge's conduct shocked the conscience. There is no evidence that he did anything to coerce Fulton, and there is no evidence that he was present for, or

had any knowledge of, any alleged physical or mental abuse suffered by Fulton. (SoF ¶¶ 28-29, 39). ASA Judge did not force Fulton to make false statements and, accordingly, summary judgment should be granted on Count I.  (SoF ¶¶ 28-29, 39).

**B.    Judge is Entitled to Summary Judgement on Count II, Plaintiffs' Fabrication of False Witness Statements Claims.**

Count II of the Mitchell Complaint contains allegations of fabricating false witness statements by the Police Officer Defendants and Prosecutor Defendants as to the statements of Griffin, Fulton, and Shaw. [Mitchell Dkt. #1, ¶146-148]. ASA Judge never interviewed Griffin or Shaw. (SoF ¶¶ 25-26, 41).  Shaw's statement was taken by ASA Varga, and Griffin's statement was taken by ASA Rubinstein (no longer a defendant). (SoF ¶25-26, 41, 54-71). Therefore, the arguments in this section of the motion are limited to Judge's receipt of the inculpatory statement from Fulton.

Count II alleges a §1983 claim based upon a deprivation of a fair trial and due process in violation of the fourteenth amendment. [Dkt. #1, ¶145-150]. Section 1983 creates a cause of action for damages based on personal liability; a plaintiff must show the defendant's personal responsibility or participation in a constitutional violation. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Public employees are responsible for their own misdeeds, and not for anyone else's. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009)

Count II of Mitchell's complaint contains allegations of wrongdoing and fabrications by ASA Judge, including fabricating Fulton's statement which he knew to be false, by using physical violence and psychological abuse. [Mitchell Dkt. #1, ¶146-147]. An evidence-fabrication claim has four elements: (1) the defendant knowingly fabricated evidence against the plaintiff, (2) the evidence was used at his criminal trial, (3) the evidence was material, and (4) the plaintiff was damaged as a result. *Brown v. City of Chicago*, 2022 U.S. Dist. LEXIS 178840, 2022 WL 4602714,

at \*6 (N.D. Ill. 2022*)*; Federal Civil Jury Instructions of the Seventh Circuit § 7.14. "Knowledge and intent must often be proven by circumstantial evidence." *Stinson v. Gauger*, 868 F.3d 516, 527 (7th Cir. 2017). The plaintiff "must offer sufficient evidence from which a reasonable jury could find that the Individual Defendants knew the evidence they were eliciting was false." *Brown v. City of Chicago*, 2022 U.S. Dist. LEXIS 178840, 2022 WL 4602714, at \*63 (N.D. Ill. 2022).

As explained throughout the Defendants' Statement of facts, and throughout this motion, there is no evidence that ASA Judge physically abused or coerced Fulton. (SoF ¶¶ 28-29, 39). Fulton himself has confirmed this. (SoF ¶¶ 28-29, 39). Fulton has also confirmed that he did in fact give ASA Judge an inculpatory statement. (SoF ¶¶ 27). Fulton also confirmed that he gave ASA Judge a recantation and an alibi, which ASA Judge passed along to the detectives, to other ASAs, and then testified about on multiple occasions. (SoF ¶¶27-44). In other words, ASA Judge didn't fabricate anything at all. Because Fulton himself has confirmed that ASA Judge didn't fabricate his statement, or anything else, Mitchell's claim that ASA Judge fabricated Fulton's statement must fail.

### C. Varga is Entitled to Summary Judgment on Count II, Plaintiffs' Fabrication of False Witness Statements Claim.

Count II of the Fulton Complaint contains allegations of fabricating false witness statements by the Police Officer Defendants and Prosecutor Defendants as to the statements of Griffin, Mitchell, and Shaw. [Fulton Dkt. #1, ¶146-148]. ASA Varga never interviewed Mitchell or Griffin. (SoF ¶81). Mitchell's statement was taken by ASA Nick D'Angelo (not a defendant) and Griffin's statement was taken by ASA Rubinstein (no longer a defendant). (SoF ¶¶ 25-26, 55). Therefore, the arguments in this section of the motion are limited to Varga's receipt of the handwritten statement from Shaw.

As stated immediately above, Count II alleges a §1983 claim based upon a deprivation of a fair trial and due process in violation of the fourteenth amendment. [Dkt. #1, ¶145-150]. Section 1983 creates a cause of action for damages based on personal liability; a plaintiff must show the defendant's personal responsibility or participation in a constitutional violation. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Public employees are responsible for their own misdeeds, and not for anyone else's. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009)

Fulton's Count II contains allegations of wrongdoing and fabrications by ASA Varga, including fabricating Shaw's statement to implicate plaintiffs, which he knew to be false, by using physical violence and psychological abuse. [Fulton Dkt. #1, ¶146-147]. An evidence-fabrication claim has four elements: (1) the defendant knowingly fabricated evidence against the plaintiff, (2) the evidence was used at his criminal trial, (3) the evidence was material, and (4) the plaintiff was damaged as a result. *Brown v. City of Chicago,* 2022 U.S. Dist. LEXIS 178840, 2022 WL 4602714, at *6 (N.D. Ill. 2022); Federal Civil Jury Instructions of the Seventh Circuit § 7.14. "Knowledge and intent must often be proven by circumstantial evidence." *Stinson v. Gauger*, 868 F.3d 516, 527 (7th Cir. 2017). The plaintiff "must offer sufficient evidence from which a reasonable jury could find that the Individual Defendants knew the evidence they were eliciting was false." *Brown v. City of Chicago*, 2022 U.S. Dist. LEXIS 178840, 2022 WL 4602714, at *63 (N.D. Ill. 2022).

ASA Varga vehemently denies all the allegations of wrongdoing made against him in this count and lawsuit and emphasizes that he is not named in any of the other allegations of fabrication. Specifically, ASA Varga was not present for, was not involved in, nor had any knowledge of physical and mental coercion suffered by Shaw, and there is no evidence to support an argument to the contrary. (SoF ¶¶ 62, 76-78). Shaw has admitted he gave an inculpatory statement to Varga, and that he initialed and signed that statement. (SoF ¶¶ 70-78). The statement was also taken in

the presence of Shaw's uncle. (SoF ¶¶ 60-78). Summary judgment should be granted to Varga on Count II of Fulton's complaint.

### D. ASA Varga is Entitled to Summary Judgment on Count II Because He Did Not Fabricate Shaw's Handwritten Statement.

Count II alleges that ASA Varga fabricated Shaw's handwritten statement to implicate Plaintiffs. [Dkt. #1, ¶146]. The Seventh Circuit defines fabricated testimony as "testimony that is made up; it is invariably false." *Fields*, 740 F.3d at 1110. ASA Varga did not fabricate Shaw's statement because a fabricated statement is one that is entirely made up and Shaw admits to giving ASA Varga a statement. (SoF ¶¶ 70-78).

During his October 21, 2021, deposition, Shaw admitted that that on March 21, 2003, while giving his handwritten statement to ASA Varga, he shared specific details about how Collazo robbed Fulton, how he witnessed the robbery, and that he was involved in the Collazo murder. (SoF ¶¶ 71-78). Shaw also admitted to reviewing his finished statement and that he added his initials where he wanted ASA Varga to make changes within the statement. (SoF ¶¶ 71-78). Therefore, because Shaw admits to giving a handwritten statement, his statement was not fabricated. Accordingly, summary judgment should be granted on Count II.

### E. ASA Varga is Entitled to Summary Judgment on Count II Because There is No Evidence that he Physically or Psychologically Coerced Shaw

Count II alleges that ASA Varga used physical violence and psychological abuse to obtain a false witness statement from Shaw. [Dkt. #1, ¶147]. The Seventh Circuit distinguishes coercion from and fabrication as, "testimony that a witness is forced by improper means to give." *Fields*, 740 F.3d at 1110. A "person arguing his confession was involuntary must show that the police engaged in coercive practices." *Dassey v. Dittmann*, 877 F.3d 297, 303 (7th Cir. 2017). Physically and mentally abusive interrogation tactics constitute coercion. *Dassey*, 877 F.3d at 303, 304.

"There is a difference between fabricated evidence, which is necessarily untrue, and evidence obtained through coercion, which may be true." *Brown v. City of Chicago*, 2022 U.S. Dist. LEXIS 178840, 2022 WL 4602714, at *63 (N.D. Ill. 2022).

"Criticism of police methods does not by itself establish a constitutional violation. On this record, there is simply no evidence of coercion or manipulation." *Hart v. Mannina*, 798 F.3d 578, 588 (7th Cir. 2015). There is no evidence that ASA Varga participated in, had any knowledge of, or was present when Shaw claims that he was physically or psychologically abused. (SoF ¶¶ 62, 76-78). Shaw confirmed in his October 21, 2021, deposition that he reviewed stating in his handwritten statement that ASA Varga treated him fine. (SoF ¶¶ 62, 76-78).

Finally, in juvenile cases, the law is particularly concerned with whether a friendly adult is present for or consents to the interrogation. *Dassey*, 877 F.3d at 305. Both instances in which Shaw made admissions in front of ASA Varga, there was an adult present for Shaw's best interest, including either a Chicago Police youth officer or Shaw's uncle. (SoF ¶¶ 58, 71). Specifically, Shaw's uncle was present when Shaw gave his handwritten statement. (SoF ¶71). Therefore, Shaw was not physically or mentally coerced by ASA Varga and summary judgment should be granted on Count II.

### F.   ASA Varga is Entitled to Summary Judgment on Count II Because Shaw's Statement was Suppressed.

The most significant argument in favor of summary judgment as to Varga on any claims related to Antonio Shaw's statement is that Shaw's statement was not used against either of the plaintiffs in their criminal trial.  It is well settled that, "The Due Process Clause of the Fourteenth Amendment forbids the use of an involuntary statement against a criminal defendant." *Janusiak v. Cooper*, 937 F.3d 880, 888 (7th Cir. 2019). The "essence of a due-process evidence-fabrication claim is that the accused was convicted and imprisoned based on knowingly falsified

evidence, violating his right to a fair trial and thus depriving him of liberty without due process." *Patrick*, 974 F.3d at 835 (7th Cir. 2020).

Count II alleges that ASA Varga deprived Plaintiffs of a constitutional right to a fair trial and due process by fabricating Shaw's handwritten statement. [Fulton Dkt. #1, ¶¶ 146-147]. The Seventh Circuit has held that fabrication of evidence implicates due process rights only if the fabricated evidence is used to deprive the plaintiff of liberty. *Whitlock v. Brueggemann*, 682 F.3d 567, 590 (7th Cir. 2012). The Seventh Circuit has further held that evidence fabrication claims require showing that the fabricated evidence was used against Plaintiff at trial. *Patrick v. City of Chicago,* 974 F.3d 824, 834-835 (7th Cir. 2020) (*Brown v. City of Chicago*, 2022 U.S. Dist. LEXIS 178840, 2022 WL 4602714, at *63 (N.D. Ill. 2022)).

In the underlying criminal proceedings, Shaw successfully moved to have his handwritten statement suppressed, and his criminal case was dismissed. (SoF ¶¶83-84). The statement was not used against either Fulton or Mitchell at their criminal trials. (SoF ¶¶83-84). Whether the statement was involuntary, which Varga disputes, is irrelevant, because the statement was never used at the criminal trials of Fulton or Mitchell, and therefore, did not violate Plaintiffs' Due Process rights. Accordingly, summary judgment should be granted to Varga on Count II.

### G. Defendant Shepherd is Entitled to Summary Judgment on Count III's Claim of Deprivation of Liberty without Probable Cause.

Count III alleges a §1983 claim for deprivation of liberty without probable cause in violation of Fourth and Fourteenth Amendments. [Dkt #1, ¶151-158]. The complaint alleges that Defendant Shepherd used false evidence to accuse Plaintiffs of criminal activity, to cause the perpetuation of judicial proceedings against Plaintiffs without probable cause, and to deprive them of their liberty. [Dkt #1, ¶152]. The Plaintiffs must prove each of the following: (1) the defendant knowingly fabricated false evidence; (2) that evidence was used to deprive Plaintiff of his liberty;

and (3) the fabricated evidence proximately caused Plaintiff to be damaged. *Patrick*, 974 F.3d at 835. The "essence of a due-process evidence-fabrication claim is that the accused was convicted and imprisoned based on knowingly falsified evidence, violating his right to a fair trial and thus depriving him of liberty without due process." *Patrick*, 974 F.3d at 835 (7th Cir. 2020).

Defendant Shepherd did not fabricate evidence. As an investigator for the State's Attorney's Office, Defendant Shepherd's only involvement was during Plaintiffs' trials, to investigate the Lake Meadows Complex for security cameras. (SoF ¶¶85-94). At Lake Meadows, Defendant Shepherd did not see any surveillance cameras placed at the back area of the building, and he testified as such. (SoF ¶¶ 85-94).

Defendant Shepherd's findings were confirmed by Fulton's criminal defense attorney, Elliott Zinger, when he investigated the same back area for cameras and found none. (SoF ¶97). Furthermore, when shown the photographs taken in 2005 of the rear hallway and back door areas of the Lake Meadows Complex, Fulton testified that he did not see any surveillance cameras in the pictures. (SoF ¶98). Fulton also testified that he was only aware of the presence of one camera at Lake Meadows, which was placed at the front of the building. (SoF ¶98). Finally, Michael Sanfratello testified that in 2002 he installed the security system at Lake Meadows, which included a camera system at the front of the building and none in the back. (SoF ¶¶95-96). Accordingly, Defendant Shepherd did not fabricate evidence and there is no evidence supporting any claim to the contrary.

Furthermore, as argued above, the allegedly fabricated evidence Plaintiffs seek to attribute to Defendant Shepherd was given by him during his testimony at the criminal trial. As argued above, false testimony at trial does not give rise to a viable constitutional claim because witnesses

24

are entitled to absolute immunity from liability based on their testimony. *Briscoe v. Lahue*, 460 U.S. 325, 326, 103 S. Ct. 1108, 1111 (1983).

> **H.** **Defendant Shepherd is Entitled to Summary Judgment on Count III's Claim of Deprivation of Liberty Because His Investigation Was Not the Proximate Cause of Plaintiffs' Injuries.**

Count III alleges a §1983 claim for deprivation of liberty without probable cause in violation of Fourth and Fourteenth Amendments. (Dkt #1, ¶151-158).

Proximate cause encompasses both cause in fact and legal cause. *Blood v. VH-1 Music First*, 668 F.3d 543, 546 (7th Cir. 2012). To show cause in fact, the plaintiff must establish that the defendant's "conduct was a material element and a substantial factor in bringing about the injury." *Lee v. Chi. Transit Auth.*, 152 Ill. 2d 432, 455, 178 Ill. Dec. 699, 708, 605 N.E.2d 493, 502 (1992). Alternatively, legal cause is a question of foreseeability and whether the injury is the type that a reasonable person would see as a likely result of their conduct. *Id.* at 503, 456. Proximate cause may be found as a matter of law when the facts are not only undisputed but are also such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them. *Blood*, 668 F.3d at 546.

Any consequences from Defendant Shepherd's investigation were not foreseeable because facts surrounding the entire case were not shared with him. Instead, he was only given instructions to investigate the location of every surveillance camera at Lake Meadows. (SoF ¶¶85-94). Defendant Shepherd noted security cameras located in the front area of the building and none in the back. (SoF ¶¶90-92). As any reasonable person without more facts, Defendant Shepherd could not have predicted how the location of any cameras would affect the investigation. Therefore, because of the lack of foreseeability, there is no proximate cause and Defendant Shepherd is entitled to summary judgment on Count III.

## I.   Defendant Shepherd is Entitled to Summary Judgment on the Count IV Claim of Due Process, Wrongful Conviction, and Illegal Confinement.

Count IV alleges a §1983 claim for due process, wrongful conviction, illegal confinement. (Dkt #1, ¶159-168). Plaintiffs allege that Defendant Shepherd deprived them of the right to a fair trial, to not be wrongfully convicted, and of the right to be free of involuntary confinement by fabricating evidence. [Dkt #1, ¶160, 162]. Defendant Shepherd's investigation at Lake Meadows did not deprive Plaintiffs of due process, cause them to be wrongfully convicted, or subject them to involuntary confinement.

Under 42 U.S.C. Section 1983, an individual may bring a claim against a person acting under the color of state law for a violation of their constitutional right. *Colbert v. City of Chicago*, 851 F.3d 649, 656 (7th Cir. 2017). The "essence of a due-process evidence-fabrication claim is that the accused was convicted and imprisoned based on knowingly falsified evidence, violating his right to a fair trial and thus depriving him of liberty without due process." *Patrick*, 974 F.3d at 835 (7th Cir. 2020). Due process rights may be violated when improper actions taken by government employees result in a person's conviction or pre-trial detention. *Linder v. McPherson*, No. 14-cv-2714, 2015 U.S. Dist. LEXIS 10537, at *20 (N.D. Ill. Jan. 29, 2015).

As previously discussed, Defendant Shepherd's only involvement occurred during Plaintiffs' trials to investigate Lake Meadows for security cameras. (SoF ¶¶85-94). Fulton's criminal defense attorney confirmed Defendant Shepherd's findings when he investigated the same area for cameras and found none. (SoF ¶97). Furthermore, when shown the photographs taken in 2005 of the rear hallway and back door areas of the Lake Meadows Complex, Fulton testified that he did not see any surveillance cameras and that during his stay at Lake Meadows he was only aware of one camera placed at the front of the building. (SoF ¶ 98). Finally, Michael Sanfratello testified that in 2002, he installed the security system at Lake Meadows, which included a camera

system at the front of the building and none in the back. (SoF ¶¶95-96). Accordingly, Defendant Shepherd did not falsify evidence, engage in misconduct, and there is no evidence that he did. Therefore, Defendant Shepherd's actions were proper, and he is entitled to summary judgment on Count IV.

### J. ASA Judge and Defendant Shepherd are Entitled to Summary Judgment on Count VI's Claim of Failure to Intervene.

Count VI alleges a §1983 claim for failure to intervene. [Dkt #1, ¶173-178]. Public employees are responsible for their own misdeeds and not for the misdeeds of others. *Burks*, 555 F.3d at 596. Therefore, a defendant cannot be held liable under §1983 for being aware of a wrong by someone else and not doing something to fix it, as this is a direct way to protect a public employee from someone else's misconduct. *Id.*

An exception to this rule exists for government officials who are present and fail to intervene to prevent other officials from infringing the constitutional rights of citizens. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). To prevail, a Plaintiff must establish: (1) an underlying constitutional violation; (2) that the defendant knew that the violation was committed, and (3) that defendant had a realistic opportunity to prevent it. *Gill v. City of Milwaukee,* 850 F.3d 335, 342 (7th Cir. 2017); *Brown v. City of Chicago,* 2022 U.S. Dist. LEXIS 178840, 2022 WL 4602714, at *85-86 (N.D. Ill. 2022); *See Beaman v. Souk,* 7 F.Supp.3d 805, 829 (C.D. Ill. 2014) (Defendants cannot face liability for failure to intervene where there was no indication that defendants were aware of a violation and able to intervene.), *Powell v. City of Berwyn*, 68 F.Supp.3d 929, 942 (N.D. Ill. 2014) (Summary judgment in favor of police officer who did not arrive at the scene until after the alleged constitutional injuries occurred).

Count VI alleges that ASA Judge failed to intervene to prevent the violation of Plaintiffs' constitutional rights. [Dkt. #1, ¶175]. As argued above, ASA Judge's interactions with the

Detectives in this case arise out of his prosecutorial duties to review evidence, and so he has absolute immunity. Also as argued above, even if ASA Judge does not enjoy absolute immunity, he is entitled to qualified immunity here because, in 2003 during this investigation, there was no clearly established constitutional obligation for a prosecutor to intervene in the alleged constitutional violations of a police officer. *Serrano*, 315 F.Supp.3d at 1038. (Prosecutor entitled to qualified immunity as there was no clearly established duty to intervene in 1993).

Furthermore, summary judgment is proper because there is no evidence that ASA Judge failed to intervene in any wrongdoing. (SoF ¶17, 28-29, 39). ASA Judge's only involvement in the case was interviewing Fulton, listening to his inculpatory statement, recantation, and alibi, and sharing it with the police, and later in court. (SoF ¶¶ 27-44). He was not aware of any alleged rights violations that were taking place, Fulton did not express any concerns to him, and he never told ASA Judge that anyone physically abused him. (SoF ¶¶ 17, 28-29, 39). As far as ASA Judge knew, there was nothing for him to intervene to prevent. ASA Judge is entitled to summary judgment on Count VI.

Similarly, summary judgment is also proper for Defendant Shepherd because there is no evidence that he ever interacted with any police officer, or any other defendant, in this case, let alone that he failed to intervene to prevent any wrongdoing. Defendant Shepherd's only involvement in the case was investigating Lake Meadows during the Plaintiffs' trials. (SoF ¶¶85-94). It is, or should be, undisputed that he didn't interact with the police, ASA Judge, ASA Varga, Fulton, Mitchell, or Shaw. (SoF ¶¶ 85-94). Shepherd was given an assignment, he completed it, he testified about it at the trials, and his involvement ended. (SoF ¶¶ 85-94). Accordingly, Defendant Shepherd's is entitled to summary judgment on Count VI.

**K.    Defendant Shepherd is Entitled to Summary Judgment on Plaintiffs' Conspiracy Claims Contained in Counts VII and XI.**

Count VII alleges a §1983 claim for conspiracy between the Police Officer Defendants and the Defendant Shepherd to violate Plaintiffs' constitutional rights. [Dkt. #1, ¶179-184]. Count XI alleges a state law claim for civil conspiracy between the Police Officer Defendants and Defendant Shepherd. [Dkt. #70, ¶124-127].

To prove a conspiracy under §1983, Plaintiff must show that the individual Defendants reached an agreement to deprive him of his constitutional rights and that overt acts actually deprived him of those rights. *Daugherty v. Harrington*, 906 F.3d 606, 612 (7th Cir. 2018). Plaintiff must prove both a conspiracy and an actual deprivation of rights. *Dix v. Edelman Financial Services, LLC,* 978 F.3d 507, 518 (7th Cir. 2020) (No conspiracy under §1983 where Plaintiff failed to show a constitutional violation). Similarly, under Illinois law, "a plaintiff must allege an agreement and a tortious act committed in furtherance of that agreement." *McClure v. Owens Corning Fiberglas Corp.,* 188 Ill. 2d 102, 133, 241 Ill. Dec. 787, 803, 720 N.E.2d 242, 258 (1999). Although a conspiracy may be established by circumstantial evidence, the Plaintiff cannot rely upon vague allegations and speculation to show a conspiracy under §1983. *Cooney v Casady*, 735 F.3d 514, 519 (7th Cir. 2013). Likewise, under Illinois law, "[i]f a civil conspiracy is shown by circumstantial evidence, however, that evidence must be clear and convincing." *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 134, 241 Ill. Dec. 787, 803, 720 N.E.2d 242, 258 (1999).

As mentioned above, there is absolutely no evidence, direct or circumstantial, that Defendant Shepherd ever met, or otherwise interacted with, any of the Police Officer Defendants or Prosecutor Defendants. There is certainly no evidence that he entered into any agreement, tacit or otherwise, to deprive Plaintiffs of their rights or to commit a tortious act. There is no non-

speculative basis to find that Defendant Shepherd agreed to conspire with any defendant to deprive Plaintiffs of their constitutional rights or commit a tort. *See generally Cooney*, 735 F.3d at 519 (Summary judgment for defendants proper on §1983 claim alleging that two attorneys conspired with court transcriber to alter transcript where there was no evidence that the attorneys spoke with transcriber or even knew that she was transcribing the proceedings.). Because of this total absence of evidence to support either conspiracy claim against Shepherd, summary judgment should be granted on Counts XI and VII.

Furthermore, and in the alternative, to the extent that this Court grants summary judgment in favor of the Police Officer Defendants on their own motion and finds that any of the officers' alleged conduct does not rise to the level of a constitutional violation or tort under Illinois law, summary judgment should be granted in favor of Defendant Shepherd with respect to the conspiracy claim arising out of this same conduct. *Starks v. City of Waukegan*, 123 F.Supp.3d 1036, 1059 (N.D. Ill. 2015) ("Because Starks no longer has a triable federal due process claim, his federal conspiracy claim necessarily fails."), *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 59, 368 Ill. Dec. 407, 426, 984 N.E.2d 132, 151 ("[C]onspiracy is not an independent tort: the conspiracy claim fails if the independent cause of action underlying the conspiracy allegation fails.").

**L.      Defendant Shepherd is Entitled to Summary Judgment on Plaintiffs' Conspiracy Claims Because He Did Not Deprive Plaintiffs of Their Rights.**

The Seventh Circuit held that, "conspiracy is not an independent basis of liability in § 1983 actions." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008); *Lewis v. Washington*, 183 F. App'x 553, 554 (7th Cir. 2006) ("Section 1983 does not punish conspiracy[.]" Additionally, "because [the plaintiff]'s claims all fail to show the denial of a civil right, her civil conspiracy claim (based

on the same underlying conduct) was also correctly dismissed."). *Archer v. Chisholm*, 870 F.3d 603, 620 (7th Cir. 2017).

Here, with regard to Shepherd, Plaintiffs have failed to show a deprivation of any constitutional rights. Defendant Shepherd's only involvement in the case was reporting the non-existence of back door cameras at Lake Meadows, which was confirmed by Fulton's criminal defense attorney. (SoF ¶¶ 85-94, 97). Furthermore, when shown the photographs taken in 2005 of the rear hallway and back door areas of the Lake Meadows Complex, Fulton testified that he did not see any surveillance cameras and that he was only aware of one camera placed at the front of the building. (SoF ¶98). Finally, Michael Sanfratello testified that in 2002, he installed the security system at Lake Meadows, which included a camera system at the front of the building and none in the back. (SoF ¶¶ 95-96). "Conspiracy in this context is merely a legal mechanism for imposing liability on defendants who did not participate directly in the violation of civil rights." *Lewis v. Washington*, 183 F. App'x 553, 554 (7th Cir. 2006). Accordingly, Defendant Shepherd is entitled to summary judgment on the conspiracy claims against him.

### M. Defendant Shepherd is Entitled to Summary Judgment on the State Law Malicious Prosecution Claim in Count IX.

Count IX alleges a state law claim for malicious prosecution against Defendant Shepherd. [Dkt #1, ¶196-201]. Plaintiffs allege that Defendant Shepherd accused Plaintiffs of criminal activity and subjected Plaintiffs to improper judicial proceedings. [Dkt #1, ¶197, 198]. The evidence, recited repeatedly here, shows he did no such thing. In order to establish a malicious prosecution claim under Illinois law, the plaintiff must establish five elements: (1) commencement or continuation of an original proceeding [by the defendant]; (2) termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause; (4) malice; and (5) damages." *Colbert v. City of Chicago*, 851 F.3d 649, 654-55 (7th Cir. 2017). The absence of any

one of these elements bars a plaintiff from pursuing the claim. *Colbert*, 851 F.3d at 655, (quoting *Swick v. Liautaud*, 169 Ill. 2d 504, 512, 215 Ill. Dec. 98, 102, 662 N.E.2d 1238, 1242 (1996)).

Defendant Shepherd's only involvement in the case was investigating Lake Meadows for security cameras. (SoF ¶¶85-94). Defendant Shepherd investigated Lake Meadows after the criminal proceedings against Plaintiffs had already started, so Defendant Shepherd did not commence criminal proceedings against Plaintiffs. (SoF ¶¶85-94). There is no evidence that he, as alleged in the complaints, "exerted influence to initiate, and to continue and perpetuate judicial proceedings against Plaintiff." [Dkt, 1, ¶ 197]. Nor is there any evidence that he caused Plaintiffs, "to be subjected improperly to judicial proceedings for which there was no probable cause." [Dkt. 1, ¶ 198]. Defendant made observations and testified about what he saw (for which he is absolutely immune). His observations were confirmed by Plaintiff's criminal lawyer, Plaintiff himself, and by the individual who installed cameras at the building in question.

Plaintiffs must also show malice to support their claims of malicious prosecution. *Scott v. Bender*, 948 F. Supp. 2d 859, 871 (N.D. Ill. 2013). To "maintain an action for malicious prosecution, it must appear that there was not probable cause for the prosecution, and also that the defendants were actuated by malice in instituting the prosecution." *Scott v. Bender*, 948 F. Supp. 2d 859, 873 (N.D. Ill. 2013). For all the oft repeated reasons stated above, there is no evidence of malice on behalf of Shepherd here. Accordingly, Defendant Shepherd is entitled to summary judgment on Count IX.

**N.    Defendants Varga, Judge, and Shepherd are Entitled to Summary Judgment on Plaintiffs' Intentional Infliction of Emotional Distress Claim Contained in Count X.**

Count X alleges a state law claim for intentional infliction of emotional distress. [Dkt #1, ¶202-204]. To prove the claim, Plaintiffs must show (1) that the conduct was extreme and outrageous; (2) that the actor intended that his conduct inflict severe emotional distress or knew that there was a high probability that his conduct would inflict such distress; and (3) that the conduct in fact caused severe emotional distress. *Bailey v. City of Chicago,* 779 F.3d 689, 696 (7th Cir. 2010). It is axiomatic that the plaintiff must show that the defendant actually engaged in extreme and outrageous conduct before he can recover for intentional infliction of emotional distress. *Id.* (Summary judgment granted because the record was devoid of evidence that defendants engaged in extreme and outrageous conduct).

Plaintiffs must show that the defendants' conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Schweihs v. Chase Home Fin., LLC,* 2016 IL 120041, ¶ 51, 412 Ill. Dec. 882, 895, 77 N.E.3d 50, 63. "Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are insufficient. *Id.* ¶ 51. The "law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Id.* ¶ 51.

Plaintiffs' intentional infliction claims against Defendants Varga, Judge, and Shepherd allege that Defendants engaged in the physical torture and psychological coercion of Plaintiffs and fabricated and suppressed evidence. [See Dkt. #1, ¶14, 46, 72, 86]. As discussed above, there is no evidence that Defendants Varga, Judge, and Shepherd engaged in coercion, fabrication, and suppression of evidence, or that they were present during these events to be able to stop them from occurring, or even had knowledge of their occurrence. (SoF ¶¶ 28-29, 39, 60, 62, 76-77, 85-94).

On March 19, 20019, ASA Judge was performing an essential function of his job when he interviewed Fulton to understand his side of the story. When Fulton recanted his story, ASA Judge shared the recantation with the detectives, ASA Rubinstein, and ASA Nazarian. (SoF ¶¶34-36). In his Verified Petition for Relief, Fulton stated that he believed ASA Judge to be a neutral figure, which is why he recanted his statement to him in the first place. (SoF ¶29). Accordingly, Defendant Judge's behavior was not extreme and outrageous, and he is entitled to summary judgment on Count X.

On March 21, 2003, Defendant Varga was doing his job when he interviewed Shaw to learn more information about the case. Both instances in which Shaw made admissions in front of ASA Varga, there was an adult present, including either a Chicago Police youth officer or Shaw's uncle. (SoF ¶¶58, 71). Shaw confirmed in his October 21, 2021, deposition that ASA Varga treated him "fine." (SoF ¶77). There is no evidence that ASA Varga participated in any coercion or fabrication. Accordingly, Defendant Varga's behavior was not extreme and outrageous, and he is entitled to summary judgment on Count X.

As an investigator for the State's Attorney's Office, Defendant Shepherd's only involvement in the case was investigating Lake Meadows for security cameras. (SoF ¶¶85-100). At Lake Meadows, Defendant Shepherd did not see any cameras located at the back of the building. (SoF ¶¶90-92). Fulton's own defense attorney and Fulton confirmed Defendant Shepherd's findings himself. (SoF ¶¶ 97-98). Accordingly, Defendant Shepherd's behavior was not extreme and outrageous, and he is entitled to summary judgment on Count X.

## O. Count XIII Should be Dismissed Against Cook County, because there is no Evidence of Any Torts Committed by any Cook County Agent.

Plaintiffs' final claim is against Cook County for statutory indemnification. [Dkt. 1, Count XIII]. Because, for the reasons stated above, none of the County Defendants are liable to Plaintiffs

on any of their claims, Defendant Cook County is not liable for statutory indemnification, and this claim, like all the others here, should be dismissed.

## **CONCLUSION**

Based on all the above arguments, summary judgment should be granted in favor of Andrew Varga, McRay Judge, Eugene Shepherd, and Cook County.

Respectfully Submitted,

/s/ *Brian P. Gainer*
One of the attorneys for the
Cook County Defendants

Brian P. Gainer (gainerb@jbltd.com)
Aleeza Mian (miana@jbltd.com)
JOHNSON & BELL, LTD.
33 W. Monroe, Suite 2700
Chicago, Illinois 60603
Tel: (312) 372-0770
Fax: (312) 372-9818

<u>**CERTIFICATE OF SERVICE**</u>

I, Brian P. Gainer, hereby certify that on **June 9, 2023,** I caused to be served the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

<u>/s/ *Brian P. Gainer*</u>