**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN FULTON, | ) | |
| | ) | |
| Plaintiff, | ) | 20-cv-3118 |
| | ) | |
| v. | ) | Judge Lefkow |
| | ) | |
| ROBERT BARTIK, et al., | ) | Jury Trial Demanded |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| ANTHONY MITCHELL, | ) | |
| | ) | 20-cv-3119 |
| Plaintiff, | ) | |
| | ) | Judge Lefkow |
| v. | ) | |
| | ) | Jury Trial Demanded |
| ROBERT BARTIK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**INDIVIDUAL CITY DEFENDANTS' REPLY MEMORANDUM IN**
**FURTHER SUPPORT OF THEIR PARTIAL MOTION FOR SUMMARY JUDGMENT**

Defendants Robert Bartik, John Zalatoris, James Breen, Edward Winstead, Joseph Struck, Robert Girardi, Leonard Rolston, Stephen Franko, Michael Kennedy, Matthew Schmitz, Brian Skora, Joseph Aguirre, and Nona Cervenka as Special Representative for Richard Cervenka ("Individual City Defendants"), by and through their undersigned counsel, hereby submit their reply memorandum of law in further support of their partial motion for summary judgment, and state as follows:

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 3

*I.    Plaintiffs Concede Count Iv Fails Against City Defendants And That Certain Individual City Defendants Are Entitled To Summary Judgment.* .................................. 4

*Ii.   Plaintiffs' Submissions Violate The Local Rules.* ................................................. 4

*Iii.  Plaintiffs Fail To Respond Defendants' Argument That Franko Lacked Personal Involvement Counts I, Ii, Iii And Ix.* ........................................................................... 8

*Iv.   Plaintiffs Failed To Allege That Individual City Defendants Withheld Any Exculpatory Evidence.* ............................................................................................... 10

*V.    Plaintiffs' Due Process Fabrication Claims (Count Iv) Fail.* ............................ 12

*Vi.   No Reasonable Jury Could Find That Individual City Defendants Lacked Probable Cause To Detain Plaintiffs Requiring Dismissal Of Count Iii.* ..................................... 21

*Vii.  Plaintiffs Cannot Establish That Their Cases Were Dismissed In A Manner Indicative Of Innocence.* ........................................................................................... 26

*Viii. Plaintiffs Have Oferred No Evidence Of A Conspiracy.* ................................... 30

*Ix.   Plaintiffs' Failure To Intervene Claims Against Defendants Bartik, Winstead, And Franko Require Dismissal* ......................................................................................... 34

CONCLUSION ................................................................................................................ 35

## **TABLE OF AUTHORITIES**

### **Cases**

*Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012)................................................................9

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)........................................................4

*Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009)........................................................................35

*Basta v. Am. Hotel Register Co.*, 872 F.Supp.2d 694, 700 (N.D. Ill. Jan. 11, 2012)......................5

*Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015)........................................................31

*Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016).....................4

*Brown v. City of Chicago*, 633 F. Supp. 3d 1122, 1169 (N.D. Ill. Sep. 30, 2022) ............27, 28, 29

*Buttron v. Sheehan*, No. 00 C 4451, 2003 WL 21801222, at *3 (N.D. Ill. Aug. 4, 2003) .........6, 7

*Carvajal v. Dominguez*, 542 F.3d 561, 568 (7th Cir. 2008) ......................................................12

*Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643-644 (7th Cir. 2008) ...................................5

*Crawley v. City of Rockford*, No. 11 C 50308, 2014 WL 901448, at *6 (N.D. Ill. Mar. 7, 2014) 34

*Denton v. Allstate Ins. Co.*, 152 Ill.App.3d 578, 105 Ill. Dec. 471, 504 N.E.2d 756, 760 (1987)...9

*Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) ....................................................7

*Fields v. Wharrie*, 740 F.3d 1107 (7th Cir. 2014) ..............................................................18, 20

*Fulton v. Bartik*, 547 F. Supp. 3d 799 (N.D. Ill. 2021)............................................................30

*Grayson v. City of Aurora*, No. 13 C 1705, 2016 WL 199058, at *14 (N.D. Ill. Jan. 17, 2016)...34

*Graziano v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 936 (N.D. Ill. 2005).....................................7

*Harris v. New York*, 401 U.S. 222, 225 (1971)........................................................................19

*Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014)...............................33

*Ienco v. Angarone*, 429 F. 3d 680, 683 (7th Cir. 2005)............................................................12

Johnson v. Myers, 53 F.4th 1063, 1068 (7th Cir. 2022) ............................................................21

*Laborers' Int'l Union of N. Am. V. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) ......................11

*Logan v. Caterpillar, Inc.*, 246 F.3d 912, 922 (7th Cir. 2001) ....................................................9

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ............................................................6

*Malec v. Sanford*, 191 F.R.D. 581, 584 (2000)........................................................................8

*Matsushita Elec. Indus. Co. v. Zenith Radio Co.*, 475 U.S. 574, 586 (1986) ...............................3

*McGuire v. United Parcel Serv.*, 152 F.3d 673, 675 (7th Cir.1998)..............................................7

*McHugh v. Illinois Department of Transportation*, 17 C 8658, 2021 WL 4318092, at * (N.D. Ill. Sept. 23, 2021)........................................................................................................9

*Montes v. Disantis*, No. 04 C 4447, 2005 WL 1126556, at *14 (N.D. Ill. May 10, 2005)............27

*Mwangangi v. Nielsen*, 48 F.4th 816, 834-35 (7th Cir. 2022) ....................................................35

*Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014)................................10

*Nichols v. Michigan City Plant Planning Dept.*, 755 F.3d 594, 600 (7th Cir. 2014) ....................11

*Palmer v. Marion Cnty.*, 327 F.3d 588, 597-98 (7th Cir. 2003)....................................................11

*Patrick v. City of Chicago*, 2018 WL 3438942, at *8 (N.D. Ill. July 17, 2018)............................20

*Patrick v. City of Chicago*, 974 F.3d 824 (7th Cir. 2020)............................................15, 18, 29

*Petty v. City of Chicago*, 754 F.3d 416, 425 (7th Cir. 2014) ....................................................13

*Roger Whitmore's Auto. Servs., Inc. v. Lake Cnty, Ill.*, 424 F.3d 659, 664 n.2 (7th Cir. 2005) ......5

*Rosado v. Gonzalez*, 832 F.3d 714, 718 (7th Cir. 2016)............................................................34

*Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 924 (7th Cir. 2007) ...........................................10, 11

*Sang Ken Kim v. City of Chicago*, 386 Ill. App. 3d 648, 654 (Ill. 2006)................................21, 22

*Saunders v. City of Chicago*, No. 12-CV-09158, 2014 WL 3535723, at *4 (N.D. Ill. July 11, 2014) ........................................................................................................................20

*Saunders-El v. Rohde*, 778 F.3d 556, 562 (7th Cir. 2015)...........................................................10

*Serrano v. Guevara/Montanez v. Guevara*, Nos. 17 CV 2869 and 17 CV 4560, 2020 WL 3000284, at *12 (N.D. Ill. June 4, 2020) .....................................................................................29

*Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017) ............................................4

*Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029 (7th Cir. 2006) ......................................11

*Spalding v. City of Chicago*, 186 F. Supp. 3d 884, 914 (N.D. Ill. 2016)....................................31

*Swick v. Liataud*, 169 Ill. 2d 504, 512, 662 N.E.2d 1238, 1242 (1996) .....................................21

*Thompson v. Clark*, 142 S. Ct. 1332, 1337-38, 1341, n.2 (2022)................................................21

*Thurman v. Village of Hazel Crest*, 570 F. Supp. 2d 1019 (N.D. Ill. 2008)...............................33

*Tubergen v. St. Vincent Hospital & Health Care Center, Inc.*, 517 F.3d 470, 473 (7th Cir. 2008) ..........................................................................................................................................33

*U.S. v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002) ...................................................................12

*U.S. v. Warren*, 454 F.3d 752, 760 (7th Cir. 2006).....................................................................12

*Washington v. Summerville*, 127 F.3d 552, 557 (7th Cir. 1997).................................................26

*Williams v. Seniff*, 342 F.3d 774, (7th Cir. 2003) .......................................................................31

*Witte v. Wis. Dep't of Corr.*, 434 F.3d 1031, 1038 (7th Cir. 2006)............................................10

## Other Authorities

*Colyer v. City of Chicago*, 12 C 04855, 2014 WL 8796112, at *4 (N.D. Ill. 2014).....................21

Federal Civil Jury Instructions of the Seventh Circuit § 7.14 (2017).......................................16, 18

## INTRODUCTION

Plaintiffs' 77-page response with 142 additional facts is a throw-everything-at-the-wall-and-see-what-sticks approach, but it fails to rebut Defendants' arguments for summary judgment.

Putting aside the factually unsupported arguments made by Plaintiffs, the Court should conclude that probable cause in this case is readily established. It is undisputed that Plaintiffs had a strong motive to kill Collazo in that he robbed them weeks before and repeatedly threatened them before his death. (Individual City Defendants' Statement of Undisputed Facts ("DSOF"), Dkt. No. 203, at ¶¶ 20, 36-38, 48-51, 74, 124, 125, 127, 131, 134, 147). Plaintiffs own present-day accounts confirm this as does the present-day account of Johnnitta Griffin. (*Id*.) The strong motive evidence in this case is buttressed by the undisputed facts that Collazo told Fulton he knew where Fulton lived, recited Fulton's address to him, and told Fulton he was going to kill him. (*Id*. at ¶¶ 124-125). Collazo also called Fulton numerous times over the couple of weeks following the botched gun deal and Fulton received a text message from someone saying, "I'm going to kill you." (*Id*.) Unsurprisingly, Fulton testified at his deposition that he was concerned for his physical safety after his conversations with Collazo. (*Id*. at ¶ 124). Fulton also testified that he was upset with Griffin because he was robbed and because of the death threats he received from Collazo. (*Id*. at ¶ 125). Fulton testified that he wholeheartedly believed that Griffin set him up. (*Id*. at ¶ 125). Collazo turned up dead less than a month after these events transpired.

Although Plaintiffs assert that Griffin's handwritten statement and her grand jury testimony were coerced by Defendants, it is undisputed that Griffin told ASA Rubinstein: Fulton demanded $300 back from her; if Griffin didn't give Fulton the money, "her boy, meaning Chris, was going to get it, meaning get hurt"; and that she spoke with Fulton on March 9, 2003 and provided Collazo's whereabouts to Fulton that evening. (DSOF, at ¶¶ 36-38). Fulton also relayed to ASA

Rubinstein that he told Griffin that she had to get him his money back that Collazo stole from him. (*Id*. at ¶ 116). Griffin also testified at Plaintiffs' criminal trials that Fulton had told her on the call that either Chris or she "would get it too" which she took to mean that "he was going to beat [Chris] up or get his money back and also that he would do harm to Griffin or her family too." (Pl. Ex. 18, Griffin Trial Testimony, at pp. R-32:7-R-33:8). Further, it is undisputed that when Griffin met with ASA Navarro, Griffin never told her that any detective yelled at her, threw pictures at her, told her what to say, or threatened her with charges. (DSOF, at ¶ 44). In the end, Plaintiffs do not even dispute that Collazo robbed them when they attempted to buy a gun from him, a gun sale that Griffin brokered.

Additionally, Plaintiffs concede that they provided much of the minute factual details that were in their inculpatory statements to three different prosecutors, and that Plaintiff Mitchell provided a videotaped statement about how and why Plaintiffs murdered Collazo. These statements matched other evidence learned in the investigation, including Antonio Shaw's fingerprint in Plaintiff Fulton's trunk, an otherwise unexplained gas container located in the garage of Plaintiff Fulton's grandfather, the duct tape found in Plaintiff Fulton's apartment, and the motive to murder Collazo as retribution. In short, Individual City Defendants had no objective basis to conclude that the statements police obtained in this case were false, there is no evidence that any evidence was withheld in violation of *Brady*, and there was undisputed probable cause to prosecute.

After conceding summary judgment is proper with respect to five Individual City Defendants, Plaintiffs attempt to move to trial on their false confession claims against Defendants Zalatoris, Breen, Struck, Girardi, and Franko; their fabrication claims against Defendants Bartik, Zalatoris, Breen, Winstead, Struck, Girardi, and Franko; their deprivation of liberty and malicious

prosecution claims against all remaining Individual City Defendants; their failure to intervene and conspiracy claims against all remaining Individual City Defendants; as well as their state law claims for intentional infliction of emotional distress against all remaining Individual City Defendants. However, Plaintiffs' arguments in opposition to summary judgment require one to ignore the actual evidence in this case and rely upon multiple layers of illogical and otherwise unwarranted inferences.

First, Plaintiffs fail to put forth any reliable evidence that demonstrates that Defendant Franko should remain in this case. Plaintiffs have also abandoned any *Brady* claim against Individual City Defendants by failing to rebut Individual City Defendants' arguments regarding their *Brady* claims. Further, based on the actual evidence in the record, Plaintiffs still have not established that the statements they allege were fabricated were knowingly false, or that they were used against Plaintiffs to deprive them of their liberty in any way, particularly where Plaintiffs themselves admit they made up many specific details of their own confessions. Moreover, Individual City Defendants had probable cause to arrest and detain Plaintiffs. Absent their confessions, Plaintiffs' convictions would stand based on the totality of other evidence gathered against them. As further set forth below, Plaintiffs' cherry-picking of the record and creative opining on evidence in this case is insufficient to overcome summary judgment. Accordingly, Individual City Defendants' partial motion for summary judgment should be granted.

**ARGUMENT**

When opposing a motion for summary judgment, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Co.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual

3

disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Furthermore, conclusory statements that are also not grounded in specific facts are not enough to support summary judgment. *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017) (citing *Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016)).

## I. PLAINTIFFS CONCEDE COUNT IV FAILS AGAINST CITY DEFENDANTS AND THAT CERTAIN INDIVIDUAL CITY DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT.

In their Response, Plaintiffs state in a footnote, "Plaintiffs do not oppose the dismissal of Defendants Cervenka, Kennedy, Schmitz, Skora, and Aguirre from this case. Plaintiffs do not oppose the grant of summary judgment to Defendants Bartik, Rolston, and Winstead on Count I. Plaintiffs also do not oppose the grant of summary judgment to Defendant Rolston Count II. Plaintiffs do not oppose the grant of summary judgment to all Defendants other than Defendant Shepherd [a County Defendant] on Count IV." (Pl. Resp. to Def. Mot. For Summary Judgment ("Pl. Resp."), Dkt. No. 230, at 2, n. 1).[1] Accordingly, Defendants Cervenka, Kennedy, Schmitz, Skora, and Aguirre are entitled to summary judgment on all counts of Plaintiffs' complaints, judgment in their favor and against Plaintiffs should be entered, and each should be dismissed from both cases. Further, Defendants Bartik, Rolston, and Winstead are entitled to summary judgment on Count I (Coerced/False Confession) and Defendant Rolston is entitled to summary judgment on Count II (Fabrication of Witness Statements) of Plaintiffs' respective complaints. In addition, summary judgment should be granted in favor of all Individual City Defendants on Count IV (Due Process, Wrongful Conviction, & Illegal Confinement) of Plaintiffs' complaints.

## II. PLAINTIFFS' SUBMISSIONS VIOLATE THE LOCAL RULES.

---

[1] Hereinafter, Individual City Defendants are referring to docket numbers in *John Fulton v. Bartik, et al.*, 20-cv-3118.

A substantial portion of Plaintiffs' Response to Individual City Defendants' Statement of Uncontested Material Facts and Plaintiffs' Statement of Additional Material Facts violate Local Rule 56.1, as Plaintiffs either present or respond to statements of fact with egregiously argumentative and conclusory statements about their version of events. Consequently, this Court should disregard those improper submissions.

Under Local Rule 56.1, a party opposing a motion for summary judgment may submit a response to the movant's statement of undisputed facts and a separate statement of additional material facts. L.R. 56.1(b). However, it is improper for responses to be argumentative, evasive, and to deny the veracity of a particular fact while also presenting additional facts. *See Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643-644 (7th Cir. 2008). The nonmovant's response to the movant's statement of facts and statement of additional facts must represent only material facts and are not the proper province of argumentative or conclusory allegations. *Basta v. Am. Hotel Register Co.*, 872 F. Supp. 2d 694, 700 (N.D. Ill. 2012). Essentially, those types of arguments belong in the supporting memorandum of law in opposition to summary judgment. *Roger Whitmore's Auto. Servs., Inc. v. Lake Cnty, Ill.*, 424 F.3d 659, 664 n.2 (7th Cir. 2005).

Plaintiffs' 56.1 response and statement of additional facts are replete with argumentative and immaterial assertions, baseless objections, and blatant mischaracterization of the evidence in the record. For example, in response to Individual City Defendants Undisputed Fact No. 25 regarding Johnnitta Griffin's interview with Detective Winstead, Plaintiffs respond, "Dispute that Griffin was evasive when she *truthfully* told investigators that she last spoke to Mr. Fulton on March 8." (Dkt. No. 224, ¶ 25) (emphasis added). Plaintiffs' counsel are in no position to conclude that Griffin was being "truthful" during her conversation with Detective Winstead, and for Plaintiff to add truthfulness as an issue to Individual City Defendants' statement of fact is mere argument.

Likewise, in response to Individual City Defendants' Undisputed Fact No. 39 about what Griffin told ASA Rubenstein, Plaintiffs respond, in part, "Undisputed that Griffin repeated to Rubinstein the *false* story that Zalatoris and Breen *had fed to her and coerced her into adopting*." (Dkt. No. 224, ¶ 39) (emphasis added). It is not actually disputed what Griffin told ASA Rubenstein, and Plaintiffs' response is clearly argumentative and not an assertion of a fact, but merely a recitation of Plaintiffs' theory of the case. "Conclusory statements of fact should be afforded no weight at the summary judgment stage." *Buttron v. Sheehan*, No. 00 C 4451, 2003 WL 21801222, at *3 (N.D. Ill. Aug. 4, 2003); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (summary judgment is not a place "to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit").

Plaintiffs regularly argue their theory throughout their Response to Individual City Defendants' Rule 56.1 statement in violation of the local rule. (*See, e.g.,* Dkt. No. 224, ¶¶ 39, 51, 114-115, 117-119, 130). Particularly egregious examples include Plaintiff's response to Individual City Defendants' Undisputed Fact No. 200, where Plaintiffs assert, in part, "The statement was false and the production of coercion." (Dkt. No. 224, ¶ 200). In addition to this being naked argument, it is completely unsupported by any citation to the record. It is one thing for Plaintiffs to cite a statement made by a witness; it is another to respond with their own conclusion that based on that witness's statement, a specific piece of evidence must be "false" or the product of "coercion." Similarly, Plaintiffs' response to Individual City Defendants' Undisputed Fact No. 136 argues, without citation, "Undisputed that Mr. Mitchell agreed *to falsely confess* after being *coerced and coached by Defendants*." (Dkt. No. 224, ¶ 136) (emphasis added). This response is the antithesis of a "fact." Similarly, to the extent that a statement of fact contains a legal conclusion

or otherwise unsupported statement, including a fact that relies upon inadmissible hearsay, such a fact should be disregarded. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997).

Plaintiffs repeatedly added extraneous facts, either in response to "undisputed" facts or stating that they were "answering further" with disputed, argumentative facts, in their responses to Individual City Defendants' Uncontested Material Facts, which under the Local Rules is completely inappropriate. (*See* Dkt. No. 224, ¶¶ 7,13, 19, 21, 28-30, 33, 37, 43, 50, 55-56, 62, 70, 85-88, 91-93, 95, 97-98, 105-106, 111, 122, 128, 130, 132-133, 137, 146-147, 153-154, 156-160, 174, 176, 178, 185-186, 190-191, 193-194, 197-199, 204, 207-208, 211-212). Individual City Defendants highlight several examples of Plaintiffs' improper denials and partial denials in this reply memorandum but due to the pervasiveness of Plaintiffs' 56.1 violations, additional examples are provided herewith as an appendix. (*See* Objections to Plaintiffs' Responses to Individual City Defendants' Statement of Undisputed Facts and Corrections to Individual City Defendants' Statement of Undisputed Facts, attached hereto as Appendix A). The Court must disregard Plaintiffs' responses and deem admitted the facts to which these inappropriate responses are directed. To the extent that a response to a statement of material fact provides only extraneous or argumentative information, any such response will not constitute a proper denial of the fact, and the fact is admitted. *See Graziano v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 936 (N.D. Ill. 2005). Plaintiffs' inclusion of further information in their responses following an assertion that the statement is undisputed is inappropriate and should be disregarded. Instead, Plaintiffs must "submit such facts that [they wish] the Court to consider in a separate document." *Buttron*, 2003 WL 21801222 at *5 (citing *McGuire v. United Parcel Serv.*, 152 F.3d 673, 675 (7th Cir.1998)).

Plaintiffs' Statement of Additional Material Facts also violates the Local Rules in that they purport to set forth undisputed "facts" but instead assert inadmissible arguments unsupported by

the citations provided. (*See* Dkt. No. 227, ¶¶ 15, 22, 27-28, 40-41, 44, 53, 56-57, 60, 63, 67, 73, 95-97, 99, 104, 111, 115, 116, 119, 131-132, 133, 139-142). Ultimately, Plaintiffs, not Individual City Defendants, violated the Local Rules as Plaintiffs include argumentative and speculative assertions that either mischaracterize or misstate the record. "A Rule 56.1(b)(3)(A) response is not the place for purely argumentative denials." *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). Thus, Plaintiffs' improper responses and additional "facts" should be disregarded by the Court.

### III.   PLAINTIFFS FAIL TO RESPOND TO INDIVIDUAL CITY DEFENDANTS' ARGUMENT THAT FRANKO LACKED PERSONAL INVOLVEMENT COUNTS I, II, III IX, and X.[2]

Defendants demonstrated in their motion that Franko had no personal involvement in any of the alleged claims. (Indiv. City Def. Motion. For Partial Summary Judgment ("Def. Mot."), Dkt. No. 202, at p. 17-18). Plaintiffs argue in their response only that Franko is implicated in the failure to intervene and conspiracy claims (Counts VI, VII, and XI). (Pl. Resp. at p. 30, 33-36). Plaintiffs provide no argument that Franko had personal involvement in Count I (Coerced/False Confession), Count II (Fabrication of Witness Statements), Count III (Deprivation of Liberty), Count IX (Malicious Prosecution), or Count X (Intentional Infliction of Emotional Distress).

Plaintiffs' only discussion of specific wrongdoing by Defendant Franko is within their sections discussing the failure to intervene and conspiracy claims (Pl. Resp at p. 30, 33-34) where they argue that he "*permitted* the detectives to coerce Shaw and feed him their fabricated account of Collazo's murder." (Pl. Resp. at p. 33) (emphasis added). Plaintiffs do not mention Franko's name in their sections on fabrication of evidence, withholding of exculpatory evidence, deprivation

---

[2] Plaintiffs agreed to dismiss Franko from Count IV. (Pl. Resp. at 2, n.1).

of liberty, or malicious prosecution sections of their brief, even though they name other Individual City Defendants they claim are responsible for the alleged misconduct. (*See* Pl. Resp., at p. 7-30).

Moreover, Plaintiffs do not allege that Franko himself coerced or fabricated the statement himself, barring liability for the non-derivative claims of Count II, III, IX, and X. *McHugh v. Illinois Department of Transportation*, 17 C 8658, 2021 WL 4318092, at *8 (N.D. Ill. Sept. 23, 2021) ("Plaintiff 'may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.'") (quoting *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012)).The only evidence is that Franko was merely in the room when Shaw confessed to ASA Varga. This fact is not enough to establish that Defendant Franko *knew* that the confession Shaw gave to ASA Varga was false.

Further, it is undisputed that Shaw's statement was suppressed and not used against Plaintiffs at their criminal trial, thus as discussed in Defendants' motion (Def. Motion, at p. 17-18) and in Section VI below, that bars liability for a due process fabrication claim (Count III). Plaintiffs also say nothing to respond to the argument that Franko was not involved in the procurement of their confessions (Def. Mot. at p. 17-18), and importantly, do not dispute that Defendant Franko was not present when either Plaintiff was questioned or confessed, barring any liability for Count I. Plaintiffs also failed to explain how Franko had a role in initiating charges against them, which means the deprivation of liberty and malicious prosecution claims fail against him. *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 922 (7th Cir. 2001) ("Illinois law requires that, in order to commence or continue a criminal proceeding, the defendant must have initiated the criminal proceeding or 'his participation in it must have been of so active and positive a character as to amount to advice and cooperation.'" (quoting *Denton v. Allstate Ins. Co.*, 152 Ill. App. 3d 578, 105 Ill. Dec. 471, 504 N.E.2d 756, 760 (Ill. 1987)).

Plaintiffs fail to respond to Individual City Defendants' arguments that Franko should be dismissed from Counts I, II, III, IX, and X. Accordingly, Plaintiffs have waived any opposition and Franko must be dismissed from those claims. *See Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment."); *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 924 (7th Cir. 2007) ("[A] party forfeits any argument it fails to raise in a brief opposing summary judgment."); *Witte v. Wis. Dep't of Corr.*, 434 F.3d 1031, 1038 (7th Cir. 2006) ("By failing to raise [an argument] in his brief opposing summary judgment, [the plaintiff] lost the opportunity to urge it in both the district court and this court."), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013).

## IV. PLAINTIFFS FAILED TO ALLEGE THAT INDIVIDUAL CITY DEFENDANTS WITHHELD ANY EXCULPATORY EVIDENCE.

At the outset, in Count IV, Plaintiffs' respective complaints allege that Individual City Defendants withheld exculpatory evidence in violation of their due process rights. (Dkt. No. 1, ¶ 89, 161). In their motion, Individual City Defendants argued that no exculpatory evidence – such as the existence of a backdoor camera, key fob, a license plate number, or the circumstances surrounding how any witness's statement was obtained – was withheld. (Def. Mot. at p. 18-27). Plaintiffs did not address any of these arguments in their response. As a result, Plaintiffs waived any *Brady* claim against Individual City Defendants by failing to rebut Individual City Defendants' argument regarding the absence of any exculpatory evidence that was withheld from Plaintiffs or their criminal defense attorneys. Further, any alleged withholding of a co-defendant's confession cannot form the basis of a *Brady* claim. *See Saunders-El v. Rohde*, 778 F.3d 556, 562 (7th Cir. 2015) (rejecting plaintiff's argument that a Brady claim can be premised upon an officer's alleged dishonesty in failing to disclose their alleged wrongdoing in fabricating evidence because "case

law makes clear that Brady does not require the creation of exculpatory evidence, nor does it compel police officers to accurately disclose the circumstances of their investigations to the prosecution."); *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029 (7th Cir. 2006) (rejecting plaintiff's argument seeking to have Brady "serve as the basis of a cause of action against [police] officers for failing to disclose [the circumstances surrounding a coerced confession] to [a] prosecutor[.]") (internal citations and quotation marks omitted). As such, Plaintiffs should not be permitted to proceed on any *Brady* claims against Individual City Defendants. *See G & S Holdings LLC*, 697 F.3d at 538; *Nichols v. Michigan City Plant Planning Dept.*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment.") (citing *Laborers' Int'l Union of N. Am. V. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999)); *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 924 (7th Cir. 2007) ("[A] party forfeits any argument it fails to raise in a brief opposing summary judgment."); *Palmer v. Marion Cnty.*, 327 F.3d 588, 597-98 (7th Cir. 2003) (claims not addressed in a summary judgment response are deemed abandoned and therefore waived).

Plaintiffs also halfheartedly attempt to accuse Individual City Defendants of suppressing telephone records. Specifically, Plaintiffs argue that Fulton's and Griffin's phone records "are exculpatory because they constitute objective evidence contradicting the notion that Mr. Fulton learned that Collazo would be taking the Foster bus the evening of March 9, or that Griffin provided directions to Plaintiffs while they drove to the North side to intercept Collazo." (Pl. Resp. at p. 22). Plaintiffs' attempt to maintain a *Brady* claim based on these phone records is meritless.

First, there is uncontroverted evidence that Plaintiffs' criminal defense counsel received Fulton's, Collazo's, Caldero's and Griffin's telephone records before Plaintiffs' respective criminal trials. (Dkt. No. 203, ¶ 173). Thus, these records cannot be used as evidence to maintain

a *Brady* claim. *See Carvajal v. Dominguez*, 542 F.3d 561, 568 (7th Cir. 2008) (holding that evidence is suppressed when the prosecution fails to disclose the evidence in time to for the defendant to make use of it) (citing *Ienco v. Angarone*, 429 F. 3d 680, 683 (7th Cir. 2005)); *see also U.S. v. Warren*, 454 F.3d 752, 760 (7th Cir. 2006) ("no *Brady* violation where government disclosed information during trial but defendant had sufficient time to make use of it.") (citing *U.S. v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002)).

Second, there is no evidence that any Individual City Defendant deliberately or recklessly concealed the phone records. *See Moran v. Calumet City*, 54 F.4th 483, 492-93 (7th Cir. 2022) (holding that liability will only attach if the office conceals the evidence and assuming without deciding that reckless conduct may suffice to establish suppression).[3] Griffin's and Fulton's telephone records were disclosed prior to Plaintiffs' criminal trial, and thus Plaintiffs fail to satisfy the elements necessary to prove a *Brady* claim.

## V.    PLAINTIFFS' DUE PROCESS FABRICATION CLAIMS (COUNT IV) FAIL.

Plaintiffs assert that five pieces of evidence were fabricated by certain detectives in the Collazo murder investigation: (1) Johnnitta Griffin's statement; (2) Fulton's confession; (3) Mitchell's confession; (4) Antonio Shaw's suppressed statement; and (5) Yolanda Henderson's statement. However, Plaintiffs fail to adequately rebut Individual City Defendants' argument that detectives did not knowingly falsify Griffin's statement. Further, Plaintiffs' reasoning for why their fabrication claims based on the statements of Fulton, Mitchell, and Shaw should proceed to trial are nonsensical and fail to fulfill all the elements necessary to prove fabrication. Lastly,

---

[3] Individual City Defendants do not concede that reckless conduct would be sufficient to establish this element, but even if it did, Plaintiffs did not allege reckless conduct but rather pled only that Individual City Defendants deliberately withheld exculpatory evidence.  (*See* Compl. Dkt. No. 1, ¶ 161).

Plaintiffs failed to plead in their respective complaints that any detective fabricated Henderson's statement. Thus, and as further explained below, Plaintiffs' fabrication claims should be dismissed.

### A. Johnnitta Griffin's Statement.

Plaintiffs claim that the statement attributed to Griffin "did not come from Griffin, so Defendants cannot claim they did not know her statement was false[.]" (Pl. Resp. at p. 8). Specifically, Plaintiffs claim that "the evidence supports that Defendants fed a false story to a 17-year-old girl while holding her incommunicado until they could convince her to regurgitate that false narrative. It is the concocting of the story (and getting the witness to repeat it) that supports a due process claim for fabrication." (*Id*. at p. 9). Plaintiffs' fabrication claims based on Griffin's statement fail as Plaintiffs have no evidence that Defendants Zalatoris and Breen knew the statement Griffin provided was false. *Petty v. City of Chicago*, 754 F.3d 416, 425 (7th Cir. 2014) (fabrication claim requires proof that the officers knew that an allegedly fabricated statement was false).

Plaintiffs primarily rely on Griffin's 2022 deposition testimony to support their argument that her March 14, 2003 statement was fabricated by Defendants Zalatoris and Breen. However, much of the details contained in Griffin's statement are actually acknowledged by Plaintiffs as true. (Dkt. No. 224, ¶¶ 20, 25, 34-37, 65). Thus, Griffin's current lack of recollection does not render her previous statements fabricated, particularly where Griffin's trial testimony and Plaintiffs' own accounts demonstrate that many of the details in her original statement to Detectives Zalatoris and Breen were true. (Dkt. No. 224, ¶ 65).

At Plaintiffs' criminal trials, Griffin testified consistently with her March 14, 2003 statement. The only discrepancy between what she said at trial and her statement was that she said she never told the detectives that she had a conversation with Fulton on March 9 regarding how

Collazo would look and what bus he would be taking the evening of the murder. (Dkt. No. 203, ¶ 197). However, Griffin did testify at Plaintiffs' criminal trials: (1) about the February 2003 gun deal involving Fulton, Collazo, and Marinelli; (2) that she got a call from Fulton's supposed brother "Dwight" about Fulton being robbed of $250; (3) she received a call from "Riff" who told her Collazo was calling him and cursing at him after the gun deal; (4) "Riff" told Griffin to tell Collazo to stop; (5) "Riff" told her that if Collazo kept calling him, they would have to "get after" Collazo; and (6) she spoke with Fulton on March 7th and he told her he wanted his $300 back or "her boy" would get hurt or that she would get it too (Dkt. No. 203, ¶¶ 191-196; *see also* Appendix A, ¶¶ 191-196), which she told the jury she interpreted as doing harm to her or her family. (Pl. Ex. 18, Griffin Trial Testimony, at pp. R-32:7-R-33:8). These are all details contained in her original statement to detectives. (*See* Dkt. No. 203, ¶¶ 36-38). Even though Griffin backed away from her statement that she provided Fulton with Collazo's whereabouts on March 9th, she *confirmed* her March 7th and March 8th conversations with Fulton through her trial and deposition testimony. Further, Griffin testified at the criminal trial that she told Fulton the approximate area where Marisol Caldero lived, and that she spoke to Fulton a day or two before Collazo's murder. (Dkt. No. 203, ¶ 194; Dkt. No. 203-19, at p. 34). Important to note, Griffin did not renounce this specific trial testimony outlined above at her deposition. Thus, Defendants Zalatoris and Breen could not have fabricated Griffin's statement where she testified in court and at her deposition that aforementioned facts contained in her statement are true. (DSOF, Dkt. No. 203, at ¶¶ 191-197).

Furthermore, Griffin testified at Plaintiffs' criminal trials that some of the information she provided Assistant State's Attorney Sandra Navarro about Fulton attempting to hold her accountable for Collazo's robbery of Fulton was true:

> Q. All right. At that time when you spoke to Assistant State's Attorney Sandy Navarro in front of the grand jury where you have sworn an oath to tell the truth,

you told Assistant State's Attorney Navarro that during that conversation, John asked you again about the money. You told him you didn't have it, and then he said that if you don't have it, I'm going to come after you or Chris. It's either you or Chris. Correct?

A. Yes.

Q. You told Sandy Navarro that; right?

A. Yes.

Q. And you told her that because it was true; correct?

A. Yes.

(Dkt. No. 223-19, Pl. Ex. 19 at SAO004641-004642).

Considering that Griffin's narrative about Fulton being robbed by Collazo is undisputedly true, (See, *e.g.*, Dkt. No. 224, ¶ 65; Pl. Resp. at p. 21), this Court should grant Individual City Defendants summary judgment as to Plaintiffs' fabrication claim based on Griffin's statement.

### B. Fulton's and Mitchell's Confessions.

Plaintiffs argue that because "there is extensive record evidence that Defendants knowingly fed a false story to Plaintiffs," Individual City Defendants are liable for fabricating the confessions of both Fulton and Mitchell. (Pl. Resp. at p. 10). Plaintiffs vaguely refer to Defendants, but present evidence only that Detectives Zalatoris and Breen and ASA Rubinstein were present/participated in the interview that led to Fulton's confession, and Detectives Zalatoris and Breen and ASA D'Angelo were present/participated in the interview that led to Mitchell's confession. Plaintiffs' claims of fabrication should be dismissed as to all others.

In addition, to establish a constitutional violation based on fabrication, Plaintiffs must show not only that the defendants created evidence they knew to be false, but also that the evidence was used against them *at trial*. *Patrick v. City of Chicago*, 974 F.3d 824, 835 (7th Cir. 2020) (holding that the plaintiff has the burden to prove that "the fabricated evidence was used against him at his *criminal trial* and was material.") (emphasis added); *see also* Federal Civil Jury Instructions of the

Seventh Circuit § 7.14 (2017). Here, Plaintiffs have conceded that Fulton and Mitchell made up many of the details contained in each of their confessions.

In support of their fabrication claim regarding Fulton's confession, Plaintiffs allege that "[i]n order to go home, the detectives told him that his story had to match the story that Griffin told." (Pl. Resp. at p. 10). Oddly enough, there are clear inconsistencies between Griffin's statement and Fulton's statement that demonstrate that detectives never "fed" Fulton a story to match Griffin's statement. Indeed, Plaintiffs concede that Fulton invented facts on his own volition that are contained in his confession. (Pl. Resp. at p. 12). Similarly, in support of a fabrication claim regarding Mitchell's statement, Plaintiffs assert that detectives "told Mr. Mitchell that he could go home if he gave a statement repeating the facts that they showed him in the written statement" and "coached Mr. Mitchell about which facts to include in his confession." (Pl. Resp. at p. 11). However, Mitchell admitted at his deposition that he made up many of the facts contained in his confession. (Dkt. No. 203, ¶ 149).

Plaintiffs oddly argue that because Individual City Defendants knew that "the basics" of Plaintiffs' confessions were false, they should have known that the details Plaintiffs included in their confessions by their own volition must have been false too. (Pl. Resp. at p. 13). Inherent in this argument, however, is Plaintiffs' acknowledgement that they indeed provided law enforcement with the many details in their separate confessions. That acknowledgement is inconsistent with the allegation that detectives fed Plaintiffs a story that they were forced to regurgitate before a prosecutor. Mitchell's calm and cool nature captured during his videotaped confession, coupled with his ability to recite from memory an alleged "false narrative" for 30 minutes straight without so much as a stutter, rebuts Plaintiffs' contention that the detectives

concocted a fictional murder story knowing that Plaintiffs were going to fill in any additional gaps. (DSOF, Dkt. No. 203, ¶¶ 145-146, 149).

Notwithstanding Plaintiffs' argument, other evidence in the record corroborates Fulton's and Mitchell's confessions. Both Plaintiffs confessed that a gas can was used to ignite Collazo's body on fire (DSOF, Dkt. No. 203, ¶¶ 80, 87, 119, 132, 153), and detectives recovered from Fulton's grandfather's garage a gas can that did not belong to his grandfather. (DSOF, Dkt. No. 203, ¶ 154). Plaintiffs confessed that Shaw helped them place Collazo in Fulton's trunk on the night of the murder, (DSOF, Dkt. No. 203, ¶¶ 80, 86, 119, 132), and that Shaw's fingerprints were found on the spare tire cover in the trunk of Fulton's car. (DSOF, Dkt. No. 203, ¶ 70).

Plaintiffs also argue that "Defendant Bartik fabricated a confession from Mr. Fulton out of thin air." (Pl. Resp. at p. 10). Yet, there are details in Fulton's statement to Bartik that match the evidence in the record, most importantly being that Fulton told Bartik that he spoke with Griffin on March 8th about Collazo, and Griffin's phone records detail nine telephone conversations she exchanged with Fulton on March 8, 2003. (*See* Dkt. No. 203-36, Def. Ex. 35; Dkt. No. 203, ¶ 174).

Additionally, Plaintiffs argue, "Theoretically Defendants Struck and Girardi believed the story to be true but were telling Fulton to lie in order to get him to inculpate himself." (Pl. Resp. at p. 17). This is rank speculation with no support in the record. Fulton never said Defendants Struck and Girardi told him to "stick to the story" as Plaintiffs assert in their response. Taking a look at the citations provided, Fulton refers to unknown detectives when making these claims. (*See* Dkt. No. 227, at ¶ 64). The law requires the personal involvement of the accused officer to prove that the officer caused a constitutional violation of the plaintiff's rights. *See Colbert*, 851 F.3d at 658. Here, Plaintiffs cite no credible evidence that proves that Defendants Struck and Girardi fabricated their confessions.

Moreover, Plaintiffs have failed to prove how the confession of Fulton was used against Mitchell or how the confession of Mitchell was used against Fulton at their trial. *See Fields*, 740 F.3d at 1114; *Patrick*, 974 F.3d at 834.

### C.  Antonio Shaw's Confession.

Plaintiffs insist on relying on Shaw's confession as support for their fabrication claims, despite the fact that Shaw's suppressed statement was in no way used against either of them at their criminal trials. Plaintiffs argue that "Defendants fabricated Plaintiffs' and Shaw's confessions, which constituted damning evidence of guilt, though false. The interlocking nature of the (false) confessions made it appear that Plaintiffs' confessions were legitimate, when they were entirely the product of Defendants' coercion and manipulation." (Pl. Resp. at p. 15). Plaintiffs only name Zalatoris and Breen as fabricating the statement of Shaw, so this claim as to the other City Defendants should be dismissed. (Pl. Resp. at 6).[4]

However, Plaintiffs have not shown how Shaw's statement made their trials unfair. It is undisputed that neither of the juries hearing Fulton's or Mitchell's cases saw, heard, or learned about Shaw's confession to Collazo's murder. Thus, Shaw's suppressed statement cannot be used as evidence of fabrication. *See Patrick*, 974 F.3d at 835 (holding that the plaintiff has the burden to prove that "the fabricated evidence was used against him at his *criminal trial* and was material.") (emphasis added); *see also* Federal Civil Jury Instructions of the Seventh Circuit § 7.14 (2017). Plaintiffs rely on a number of outdated cases prior to the Seventh Circuit's decision in *Patrick* to support their argument that the fabricated evidence must only be used in *some way* to harm Plaintiffs. However, the Seventh Circuit makes clear in *Patrick* that the fabricated evidence must be used against Plaintiffs at their criminal trials and that evidence must have been material to the

---

[4] As explained above, Plaintiffs accuse Franko of failing to intervene and conspiring in this act, but not of actually fabricating the confession.

factfinder's finding of guilt. It is impossible for evidence to be material evidence that led to the guilty verdicts if it was never presented at trial.

Plaintiffs also assert that Shaw is an exculpatory witness whom they were prevented from calling at trial due to Defendants' alleged misconduct in procuring his inculpatory statement. Not only is this assertion that Shaw functions as an exculpatory witness for either Fulton or Mitchell not supported by any evidence of the record as Shaw has never been an alibi witness for either Plaintiff, but it also is unsupported by Seventh Circuit law. Plaintiffs fail to point to a single source or authority to suggest that Shaw's statement that was suppressed by order of the criminal court could have been used to impeach Shaw if he had been called as a witness by Plaintiffs at their criminal trial. It is rank speculation for the parties to guess, without evidence, the reason why Plaintiffs' criminal defense attorneys did not call Shaw at trial. Perhaps it was because Shaw's testimony was adverse to Plaintiffs; perhaps it was because Shaw was not credible; perhaps it was because he would be an additional witness who could support the State's motive theory; or perhaps he just could not be located. Ultimately, Plaintiffs' theory that Shaw's account was somehow withheld by Individual City Defendants is unsupported by evidence and would require multiple layers of unsupported speculation.

Plaintiff relies on *Harris v. New York*, 401 U.S. 222, 225 (1971), in an attempt to support their argument that Shaw could have been impeached with his suppressed statement. This highly speculative argument relies upon multiple layers of assumptions and inferences that are unmoored from the evidence and starts with the supposition that Shaw would have been called at their criminal trials. According to Plaintiffs' story, Shaw would have nothing to add to the trial because they say he was not with them on the date of Collazo's murder. Even if Shaw was called at trial, Plaintiffs concede that Shaw could have been impeached with his suppressed statement only if "*he*

had been prosecuted and taken the stand in his *own* defense." (Pl. Resp. at p. 17) (emphasis added). As Shaw was no longer being prosecuted at the time of Plaintiffs' criminal trials, and therefore would not have been taking the stand in his *own* defense, Shaw was not at risk of impeachment by way of his suppressed statement. Plaintiffs are essentially speculating that they should have been allowed to call Shaw to commit perjury. Such an argument is laughable and should be readily disregarded. Furthermore, not one of the other cases Plaintiffs cite support their argument that a suppressed statement by a prior co-defendant can support a § 1983 fabrication claim. *See Fields v. Wharrie*, 740 F.3d 1107 (7th Cir. 2014); *Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1998); *Patrick v. City of Chicago*, 2018 WL 3438942, at *8 (N.D. Ill. July 17, 2018); *Saunders v. City of Chicago*, No. 12-CV-09158, 2014 WL 3535723, at *4 (N.D. Ill. July 11, 2014).

It is undisputed that Shaw's statement was not admitted against Plaintiffs at trial. The Seventh Circuit's ruling in *Patrick* is clear: to sustain a due process fabrication claim, the false evidence must be used at trial against Plaintiffs and it must be material to their conviction. Plaintiffs cite many cases prior to *Patrick* including the lower court's opinion in *Patrick*, none of which control. *Patrick* held the district court was wrong in failing to instruct the jury that the allegedly false evidence must have been introduced at trial and must have been material to sustain a fabrication claim. *Patrick*, 974 F.3d at 835. Thus, here, Plaintiffs' right to a fair trial was not denied because of Shaw's confession, as it was never used against them at trial and thus could not have been material to their conviction.

### D. Yolanda Henderson's Statement.

Lastly, Plaintiffs assert that "Defendant Winstead fabricated a false report that Henderson said Fulton did not come inside with her when she arrived home the night of the murder, and may not have come home at all that night." (Pl. Resp. at p. 18). In their complaints, Plaintiffs failed to

20

allege that Detective Winstead fabricated Henderson's statement to him. (*See* Compl., Dkt. No. 1). Thus, Plaintiffs cannot use their response to Individual City Defendants' summary judgment motion to assert this fabrication theory for the first time. *Colyer v. City of Chicago*, 12 C 04855, 2014 WL 8796112, at *4 (N.D. Ill. 2014) (Chang, J.) (a plaintiff "cannot raise for the first time in response to a motion for summary judgment-after the close of discovery" a "whole new theory of liability."). Thus, Plaintiffs cannot sustain a fabrication claim based on Henderson's statement.

## VI. NO REASONABLE JURY COULD FIND THAT INDIVIDUAL CITY DEFENDANTS LACKED PROBABLE CAUSE TO DETAIN PLAINTIFFS REQUIRING DISMISSAL OF COUNT III AND COUNT IX.

The evidence in the record shows that Individual City Defendants had sufficient probable cause to arrest and detain Fulton and Mitchell, which defeats Plaintiffs' Fourth Amendment deprivation of liberty (Count III) and state-law malicious prosecution (Count IX) claims. To prove their Fourth Amendment deprivation of liberty claim, Plaintiffs must demonstrate that (1) the criminal proceedings were instituted without any probable cause, (2) the prosecution resulted in a seizure of Plaintiffs; and (3) the proceedings terminated in Plaintiffs' favor. *Thompson v. Clark*, 142 S. Ct. 1332, 1337-38, 1341, n.2 (2022). Similarly, to prove their state-law malicious prosecution claim, they must show Defendants lacked probable cause. *Swick v. Liataud*, 169 Ill. 2d 504, 512, 662 N.E.2d 1238, 1242 (1996) (plaintiff must, among other elements, "allege facts showing … the absence of probable cause for [plaintiff's criminal] proceeding[.]") (internal quotations omitted). In other words, a finding of probable cause defeats both claims. "[P]robable cause is defined as a state of facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged." *Sang Ken Kim v. City of Chicago*, 386 Ill. App. 3d 648, 654 (Ill. 2006) (citation omitted); *Johnson v. Myers*, 53 F.4th 1063, 1068 (7th Cir. 2022) (Probable cause "exists if the totality of the facts and circumstances [...] would warrant a reasonable, prudent person in believing that the arrestee

had committed [...] a crime. The inquiry is purely objective, and the officer's subjective state of mind and beliefs are irrelevant.").

Plaintiffs claim that Individual City Defendants lacked probable cause. Specifically, Plaintiffs argue that the facts establishing probable cause are either "outright false" or when taken in totality, "cannot provide the Defendants with probable cause to believe that Plaintiff committed a crime." (Pl. Resp. at p. 20). However, "[i]t is the state of mind of the person commencing the prosecution that is at issue—not the actual facts of the case or the guilt or innocence of the accused." *Sang Ken Kim*, 386 Ill. App. 3d at 654. When a police officer honestly believes that "the accused is probably guilty of the offense, a mistake or error that is not grossly negligent will not affect the question of probable cause." *Id*. at 654-55. A police officer "is not required to verify the correctness of each item of information obtained; it is sufficient to act with reasonable prudence and caution." *Id*. at 655.

Individual City Defendants set forth in their motion that there was probable cause as a matter of law to initiate charges against Plaintiffs. Plaintiffs fault Defendants for relying on their confessions, which they allege were fabricated. However, as established above Defendants did not manufacture the statements, according to Plaintiffs' own testimony, and Defendants had no reason to believe they were false. Regardless, there was ample probable cause even without Plaintiffs' confessions.

At the time charges were initiated, the State had the following probable cause information even without taking into account the confessions: (1) Sid Taylor's description of the suspects as two Black males with one wearing a red jacket and one wearing a black jacket, a fact corroborated by Fulton who claimed he owned a red hoodie and a black hoodie;[5] (2) Marinelli's statement about

---

[5] Defendant Schmitz reported that Taylor described the two individuals as wearing a red coat and a black coat, whereas Defendant Rolston reported that Taylor told him the two individuals he saw were wearing a

the February 2003 gun deal; (3) Griffin's statement regarding the aftermath of the gun deal and her conversations with Collazo and Fulton leading up to Collazo's murder; (4) Plaintiffs' lack of an alibi for the hours between 11:59 p.m. and 3:00 a.m.; (5) the gas can located in Fulton's grandfather's garage when Collazo's body was found to be doused with gasoline; (6) Shaw's fingerprint on the spare tire cover in Fulton's trunk; (7) the duct tape found in Fulton's apartment when Collazo's hands, feet, and mouth were found bound with duct tape; and (8) Plaintiffs' motive to harm Collazo stemming from Collazo's threats after the gun deal. This evidence was more than sufficient probable cause to initiate charges against Plaintiffs. Simply put, the information at Individual City Defendants' disposal added up to a reasonable belief that Fulton and Mitchell committed the crime at issue. *Velez v. City of Chicago*, No. 18 C 8144, 2023 WL 6388231, *14-15 (N.D. Ill. Sept. 30, 2023) (granting summary judgment on deprivation of liberty and state law malicious prosecution claims based on a finding of probable cause even where plaintiff's statement and other evidence remained disputed).

Plaintiffs agree that it is undisputed that there was "a rift between Plaintiffs and Collazo." (Pl. Resp. at p. 21). That is an understatement. Collazo repeatedly threatened to harm Fulton in the weeks following the February 2003 gun deal. (DSOF, Dkt. No. 203, at ¶ 124). Further, Collazo was threatening Fulton because of he only ended up robbing Fulton of $14, rather than the $300 he thought Fulton had for the purchase of the gun. (DSOF, ¶¶ 20, 36-38, 124). It was thus reasonable to believe those threats were real.

Plaintiffs assert incorrectly that Individual City Defendants relied purely on motive to establish probable cause to prosecute Plaintiffs. (Pl. Resp. at p. 21). Motive to attack someone is

---

red jacket and a black jacket. (DSOF, Dkt. No. 203, at ¶¶ 11, 13). Whether Taylor described a jacket or coat is irrelevant; ultimately, Taylor reported seeing two individuals with one wearing a red top garment and the other wearing a black top garment.

clear when that person has made multiple threats of violence and there was an undisputed basis for those threats, and is certainly strong support for probable cause. However, there is ample evidence to support probable cause in conjunction with the compelling motive evidence present in this case.

Plaintiffs attempt to take advantage of an error in Individual City Defendants' brief in hopes of ignoring all of the phone record evidence in this case. Plaintiffs are correct that Defendants mistakenly put March 9 instead of March 8 regarding the date which the calls between Fulton and Griffin occurred; however, Plaintiffs concede that there were multiple phone calls between Fulton and Griffin on March 8. (Pl. Resp. at p. 21). The nine telephone calls between Griffin and Fulton on March 8, 2003, the night before Collazo's gruesome killing, is clear evidence that corroborated the State's strong and honest suspicion that Plaintiffs murdered Collazo after they obtained his likely whereabouts from Griffin. Plaintiffs cannot point to any evidence in the record that explains why Fulton and Griffin shared nine phone calls the night before Collazo was murdered. Fulton confessed to Bartik that he spoke with Griffin on March 8, 2003, and Griffin told Detective Winstead that the last time she spoke with Fulton was on March 8, 2003. (Dkt. No. 203, ¶¶ 25, 79). These two facts are not merely coincidental; they constitute evidence that build on the other evidence discussed above and establish probable cause. Further, neither Fulton nor Griffin have provided any explanation for these multiple phone calls. Instead, Plaintiffs choose to ignore this damning evidence and focus on the fact that because Griffin and Fulton told the detectives March 9 rather than March 8 for their telephone conversations in their respective statements, Fulton's confession must be false. This illogical leap should not be given any consideration.

Further, Plaintiffs would like to discount the significance of the duct tape found in Fulton's home as well as the gas can found in his grandfather's garage. However, these facts are problematic

24

for Plaintiffs' assertion that detectives did not have probable cause to arrest Fulton. Plaintiffs assert, "Defendants fail to explain how the fact that Mr. Fulton's relative owned a gas can makes it more likely that Plaintiffs committed murder." (Pl. Resp. at p. 27). However, Plaintiffs ignore the uncontroverted evidence that Fulton's grandfather told detectives that he did not own the gas can. (Dkt. No. 203, ¶ 154). Plaintiffs simply cannot rebut this fact.

Moreover, Plaintiffs assert that "[t]he fact that Mr. Mitchell filled in some gaps by stating, for example, the directions they drove to get to the site where the victim was burned (a location fed and shown to him by the police) is hardly inculpatory." (Pl. Resp. at p. 22). However, Mitchell testified that he "invented" those directions because those directions are "how you get" from those two locations. (Dkt. No. 203, ¶¶ 149-150). Mitchell never testified that he made up those directions at the direction of any detective. Unfortunately for Plaintiffs, Mitchell's admission is inculpatory. Plaintiff also argues that the absence of blood in Fulton's car negated probable cause. However, at his deposition, Fulton could not confirm if his car was washed or not on March 10, 2003. (Dkt. No. 203-33, 141:3-10).

Lastly, Plaintiffs stand on Fulton's supposed alibi to suggest that Individual City Defendants did not have probable cause to detain and prosecute Plaintiffs. However, as Plaintiffs must concede, Fulton's "alibi" is only through 11:59 pm on March 9, 2003. (Pl. Resp. at p. 5). There is no evidence in the record that accounts for Fulton's whereabouts from 11:59 pm on March 9th through 3:00 a.m. on March 10th, when Collazo's body was found. Important to note, Fulton's "alibi" does not account for Mitchell's whereabouts on either March 9th or March 10th. Plaintiffs also fail to put forth any kind of an alibi for Mitchell in their response brief.

In this case, there were a myriad of facts that supported a "fair probability" that Plaintiffs murdered Collazo. These facts constitute sufficient evidence to establish probable cause.

Therefore, Plaintiffs' deprivation of liberty claims fail because Individual City Defendant had probable caused to arrest and detain Plaintiffs.

## VII. PLAINTIFFS CANNOT ESTABLISH THAT THEIR CASES WERE DISMISSED IN A MANNER INDICATIVE OF INNOCENCE DEFEATING THEIR MALICIOUS PROSECUTION CLAIMS (COUNT IX).

As argued in Individual City Defendants' opening brief, Plaintiffs cannot sustain their burden on at least one, if not more, elements of their state-law malicious prosecution claim (Def. Mot., Dkt. No. 202, at p. 35-38). As stated above and in their opening summary judgment brief, the evidence in the record demonstrates that Individual City Defendants had probable cause to pursue criminal charges against Plaintiffs for the murder of Christopher Collazo, which is, as Plaintiffs recognize, an absolute bar to Plaintiffs' malicious prosecution claims regarding these charges.

But they also fail to prove favorable termination, another element of state-law malicious prosecution. (Def. Mot., Dkt. No. 202, at p. 36-38). Addressing that element, Plaintiffs argue that their criminal cases concluded in a manner indicative of their innocence when prosecutors elected not to retry them for Collazo's murder and dismissed the charges *nolle prosequi*. (Pl. Resp. at p. 27). However, Plaintiffs recognize when a case is resolved via *nolle prosequi*, that type of resolution in and of itself is not "inherently sufficient" to satisfy the favorable termination element, and a *nolle* suffices "*unless* there are reasons to suspect it was unrelated to innocence." *Id*. (Plaintiffs' own emphasis on "unless"). Plaintiffs also acknowledge in their Response that it is Plaintiffs' burden to establish favorable termination, and not Defendants to defeat it. (Dkt. No. 228-1, p. 27 (citing *Swick v. Liautaud*, 169 Ill.2d 504, 513 (Ill. 1996)).

A *nolle prosequi* does not indicate innocence when it results only from "the impossibility or impracticability of having the accused tried." *Washington v. Summerville*, 127 F.3d 552, 557 (7th Cir. 1997) (citing *Swick v. Liautaud*, 169 Ill.2d 504, 513 (Ill. 1996)); *see also Montes v.*

*Disantis*, No. 04 C 4447, 2005 WL 1126556, at *14 (N.D. Ill. May 10, 2005) ("favorable termination" is met when there is nothing to indicate the charges were abandoned due to "…(impossibility or) impracticability (of bringing the accused to trial)"). The present case is a perfect example of a case not being pursued by the State due to the impossibility and impracticability of bringing the accused to trial.

The State's *nolle prosequi* decision at the May 2019 dismissal hearing (*see* Dkt. No. 203 at ¶¶ 208-209[6] (citing Dkt. No. 203-80, Def. Ex. 76)) noted the determining factors against retrying the case – the age of the case (over 16 years at that point in time from the Collazo murder); and the status of the witnesses, some of whom were unable to be located and others "we are having difficulty with" – which led the State to conclude that they were "unable to meet their burden of proof." (*Id*. at p. 2 of document, also FULTON-MITCHELL 001231). Plaintiffs home in on the State's mention of "difficulty" with some of the witnesses as somehow proof of their claims of fabrication or coercion, but this is unsupported by anything in the record other than Plaintiffs' own speculation and theory. What is apparent from the record is that both age and witness absence presented a situation where the prosecution dropped the charges due to <u>impracticability</u> and <u>not</u> due to Plaintiffs' innocence.

"In determining whether a plaintiff can establish this element of the claim, it is imperative to examine why prosecutors dropped the charges." *Brown v. City of Chicago*, 633 F. Supp. 3d 1122, 1169 (N.D. Ill. Sep. 30, 2022). In *Brown*, the Court had the benefit of depositions from Cook County State's Attorney's Office ("CCSAO") officials who made numerous private and public statements regarding "concerns about whether it was in the interest of justice to pursue the case"

---

[6] Individual City Defendants' opening summary judgment brief contains citations to paragraphs 222 and 223 of the SOF in support of this argument. Those are incorrect – the correct citations are noted above as paragraphs 208 and 209.

related to "significant evidentiary issues" and "deep concerns about the fairness of Mr. Brown's conviction" in its assessment of whether the case was abandoned for reasons not indicative of innocence. *Id*. The Court determined that these statements "tend to show that the prosecutor who directed the issuance of the *nolle prosequi* was concerned with more than issues of resource management and impracticability alone." *Id*. at 1169. In contrast, the record here is devoid of any such "concerns" about Plaintiffs' case, except for the State's assertion that the age of the case and the impossibility of finding witnesses or putting other witnesses on the stand made the case impractical to retry.

This is made even more clear by evidence in the record in this case that the State has not wavered in its position that Plaintiffs have never presented proof of their "actual innocence" – not at their post-conviction petition hearing, not at their petition for certificates of innocence ("COI") and, most recently, not at the appeal of the denial of Plaintiffs' COI requests. (Def. Mot., Dkt. No. 202, at p. 37). The State has been firm in their position that any decision they have made to discontinue pursuing charges against Plaintiffs "was <u>in no way a concession to [Fulton's] innocence</u> and that the appellate court correctly found that "Mitchell was <u>indeed proved guilty beyond a reasonable doubt</u>." (Dkt. No. 203, at ¶ 211[7]) (emphasis added).

Moreover, on appeal of the court's denial of the COI petitions, the State argued "...rather than being "overwhelming" [as described by petitioners' brief], petitioners' evidence of innocence was <u>nonexistent</u>." (State's Appellate Brief re: COI, attached hereto as Def. Ex. 83, at p. 49)(emphasis added). The State reaffirmed at oral argument that Plaintiffs "...presented <u>no evidence of innocence in this case</u>...nowhere in this proceeding do they argue that we came forth with affirmative evidence that establishes the petitioners' innocence on this case." (Appellate Oral

---

[7] Individual City Defendants' opening summary judgment brief cites incorrectly to paragraph 225 and 226 of the SOF for these references to the record. It should be paragraph 211, as noted above.

Argument Transcript re: COI, attached hereto as Def. Ex. 84, at p. 34-35; Digital file of Appellate

Oral Argument re: COI, attached hereto as Def. Ex. 85, at 26:33-27:23) (emphasis added). As

argued further by the State in the recent appellate COI hearing:

> And the policy underlying the [certificate of innocence] statute, right, the policy underlying [the] statute is clear. We want truly innocent persons only and only truly innocent persons to receive certificates of innocence. I think it's been described in the case law as a golden ticket. It's an IOU from the State. You walk into the Court of Claims and you get compensation.
>
> * * *
>
> So not everybody should get a golden ticket. Golden ticket is reserved for cases where indeed a petitioner is able to prove his innocence of all the offenses charged in the indictment by a preponderance of the evidence. And that wasn't done here. In fact, it really wasn't even attempted. The entire focus throughout the proceedings has been by the petitioners to look backwards and criticize the State's case at trial.

(Def. Ex. 84, at pp. 45-46; Def. Ex. 85, at 36:30-37:54) (emphasis added).

Unlike the cases relied upon by Plaintiffs, there is clear evidence in the record that neither

the State nor the courts who evaluated Plaintiffs' case in both the post-conviction and COI

proceedings (including the most recent appeal regarding the denial of COI) were convinced in any

way of Plaintiffs' innocence and maintained consistently that Plaintiffs could not carry their burden

to prove by a preponderance of evidence that they were innocent of the murder of Christopher

Collazo. If the State was inclined to dismiss the charges against Plaintiffs for reasons indicative of

innocence, then why would the State still be vigorously opposing Plaintiffs' request for COIs?

Plaintiffs' counsel are surely familiar with situations where the CCSAO chose not to take a position

as to an individual's request for COI. *See, e.g., Patrick v. City of Chicago*, 974 F.3d 824, 830 (7th

Cir. 2020); *Brown v. City of Chicago*, 633 F. Supp. 3d 1122, 1146-1147 (N.D. Ill. Sep. 30, 2022);

*Serrano v. Guevara/Montanez v. Guevara*, Nos. 17 CV 2869 and 17 CV 4560, 2020 WL 3000284,

at *12 (N.D. Ill. June 4, 2020). This is not one of those cases.

This Court's prior ruling on Defendants' motion to dismiss the malicious prosecution claims flagged this issue. (*See* Dkt. No. 106, July 1, 2021 Opinion and Order, also contained at *Fulton v. Bartik*, 547 F. Supp. 3d 799 (N.D. Ill. 2021)). This Court noted that the state court's finding that Plaintiffs failed to meet their burden to show "actual innocence" for purposes of obtaining COIs was "a finding that <u>does preclude</u> a fact finder in this proceeding from finding that plaintiffs' criminal proceedings were terminated in a manner that was indicative of their innocence." *Fulton v. Bartik*, 547 F. Supp. 3d 799, 821-822 (N.D. Ill. 2021) (emphasis added).

Individual City Defendants recognize that the Illinois Appellate Court recently reversed and remanded the ruling denying Plaintiffs' requests for COI. (*See* Dkt. No. 223-84, Pl. Ex. 84). This remanded case is still pending, as Judge Martin, the original judge making the denial, was reassigned to the Appellate Court in 2021, and it is unclear who will be rendering the opinion or when that will transpire. As this Court has indicated, a revised finding by the lower court which again holds that Plaintiffs failed to meet their burden of presenting evidence of actual innocence will <u>preclude</u> any fact finder from finding that Plaintiff's charges were dismissed in a manner indicative of innocence, and which would doom their malicious prosecution claims here.

Accordingly, for the reasons stated above, summary judgment should be granted on Count IX of Plaintiffs' complaints.

## VIII.   PLAINTIFFS HAVE OFERRED NO EVIDENCE OF A CONSPIRACY.

In their Response, Plaintiffs argue that "Defendants Zalatoris, Breen, Struck, Girardi, Winstead, Rolston, Franko, and Bartik conspired with each other, and others, to violate Plaintiffs' state and federal rights" and they rely on alleged "circumstantial evidence" in the record to support this assertion. (Pl. Resp. at p. 30-31). There is no evidence in the record, whether direct or circumstantial, that Individual City Defendants reached an agreement to violate Plaintiffs' rights.

To prevail on a conspiracy claim, Plaintiff must prove Defendants Zalatoris, Breen, Struck, Girardi, Winstead, Rolston, Franko, and Bartik: (1) reached an agreement to deprive Plaintiffs of their constitutional rights; and (2) committed overt acts in furtherance of actually depriving Plaintiffs of those rights. *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015) (citations omitted).

First, Plaintiffs have not offered any evidence to show that Individual City Defendants had an express or implied agreement to deprive Plaintiffs of their constitutional rights. Plaintiffs argue that because Defendants Zalatoris, Breen, Struck, Girardi, Winstead and Rolston all worked at Area 1 together, they must have conspired to violate Plaintiffs' constitutional rights. (Pl. Resp. at p. 32). By that same logic, everyone who worked at Area 1, including the civilian workers and janitorial staff, would have been in on this alleged conspiracy. A working relationship is not enough to prove that Individual City Defendants agreed to commit misconduct. *See, e.g., Spalding v. City of Chicago*, 186 F. Supp. 3d 884, 914 (N.D. Ill. 2016) (finding that evidence that the police officer plaintiffs worked for a specific defendant's third watch team did not demonstrate any evidence of an agreement); *see also Williams v. Seniff*, 342 F.3d 774 (7th Cir. 2003) (holding that the fact that certain defendants "remained in contact" does not, "standing alone," evidence a conspiracy). Plaintiffs also assert that these Defendants "communicated with each other about case developments." (Pl. Resp. at p. 32). However, Plaintiffs point to no evidence to support this contention. *See* PSOF ¶¶ 19-20, 28, 37, 63-64, 67. These citations by Plaintiffs describe, in an argumentative fashion, the various steps different detectives took in the Collazo murder investigation. These facts do not establish that Individual City Defendants communicated with each other about case developments, and certainly not in a conspiratorial fashion.

Plaintiffs rely on the following facts to support their argument that Individual City Defendants conspired to fabricated Griffin's statement: previously Griffin had "truthfully denied" any knowledge of Collazo's murder to Detective Rolston; then Detective Rolston "tricked Griffin into getting into the squad car"; Detectives Zalatoris, Breen, and Rolston "kidnapped" Griffin; that Zalatoris and Breen "terrorized and coerced Griffin all night long with threats of prosecution"; and Detectives Zalatoris and Breen fed Griffin a "false narrative of Plaintiffs' involvement that would later be disproved by objective evidence." (Pl. Resp. at p. 32). These "facts" are not evidence in the record, but rather are flimsy, self-serving, and unsubstantiated opinions asserted by Plaintiffs. More importantly, the assertion that all Individual City Defendants conspired to violate Plaintiffs' constitutional rights through Johnnitta Griffin is belied by the record. Only Detectives Zalatoris and Breen were present when Griffin made a statement implicating Fulton. There is simply no evidence that Defendants Struck, Girardi, Winstead, Bartik, or Franko had any involvement in Griffin's statement or were even aware Detectives Zalatoris and Breen were going to obtain a statement from Griffin.

Plaintiffs also argue that the evidence in the record shows that Bartik was involved in some alleged conspiracy with the other detectives because "[a]fter discussing the case with Defendant Breen just before trial, Bartik approached the prosecutor, ASA Nazarian, and falsely claimed to have obtained a confession from Fulton years earlier." (Pl. Resp. at p. 33). Once again, Plaintiffs are making a significant leap based off of bare facts. Plaintiffs believe there should be a "permissible inference" that Bartik "acted in concert with his co-conspirators" because Fulton states he never made an inculpatory statement to Bartik and because Bartik had a conversation with Breen about the case over two years later. (Pl. Resp. at p. 33). However, this is not a logical inference to make. "Inferences that are supported only by speculation or conjecture will not defeat

a summary judgment motion." *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (quoting *Tubergen v. St. Vincent Hospital & Health Care Center, Inc.*, 517 F.3d 470, 473 (7th Cir. 2008)).

A case instructive on this issue is *Thurman v. Village of Hazel Crest*, 570 F. Supp. 2d 1019 (N.D. Ill. 2008). In *Thurman*, the plaintiff argued at summary judgment that police officer defendants conspired to falsely arrest hm and use excessive force against him. *Id*. at 1029. The plaintiff also asserted that it can be "inferred" that the officers executed this plan because of their relationships as partners. *Id*. The court found that this inference is not enough to demonstrate an overt act by the police officer defendants to promote a conspiracy. *Id*. So to here, there is simply no evidence in the record of any overt acts by Bartik and any other officer defendant to promote a conspiracy.

Plaintiffs also state that "Bartik later sent Nazarian a fabricated report that told the same demonstrably false story of Collazo's murder that had been fed to Plaintiffs, Griffin, and Shaw." (Pl. Resp. at p. 33). They can't have it both ways. Plaintiffs cannot argue on the one hand that the "number of inconsistencies" among Fulton's, Mitchell's, Shaw's, and Griffin's statements demonstrates that their statements were false and fed to them by detectives, while also arguing that detectives clearly conspired to coerce and create their statements because the statements contain "the same demonstrably false story" and are "coincidentally interlocking statements." (*Id*. at p. 33-34). Plaintiff is twisting the facts in different ways to fit their narrative depending on which claim they are asserting should survive summary judgment. The reality is that Plaintiffs' conspiracy claims cannot pass muster. The inconsistencies between the various statements only demonstrate that the detectives didn't sit in a room together and cook up the same false story to feed to every person they interviewed in the Collazo murder investigation. Otherwise, the statements of

Plaintiffs, Shaw, and Griffin would be identical. The deviations in each individual statement show that the detectives took down the story actually given to them by each person, even if there were differences that could call these statements into question. If the detectives wanted to create an open-and-shut case, they would have created matching stories. That is not what happened here. A reasonable jury would therefore not infer that Individual City Defendants conspired to fabricate any of these statements.

Unfortunately for Plaintiffs, "the record does not reflect any mark of an agreement amongst the Defendants to commit" any constitutional violations against Plaintiffs." *Grayson v. City of Aurora*, No. 13 C 1705, 2016 WL 199058, at *14 (N.D. Ill. Jan. 17, 2016). Because Plaintiffs fail to point to any evidence of a conspiracy, Plaintiffs' conspiracy claims should not move forward.

## IX. PLAINTIFFS' FAILURE TO INTERVENE CLAIMS AGAINST DEFENDANTS BARTIK, WINSTEAD, AND FRANKO REQUIRE DISMISSAL

In order to sustain a failure to intervene claim, Plaintiffs must prove that an underlying constitutional violation exists; otherwise, a court should grant summary judgment. *Crawley v. City of Rockford*, No. 11 C 50308, 2014 WL 901448, at *6 (N.D. Ill. Mar. 7, 2014); *see, e.g., Rosado v. Gonzalez*, 832 F.3d 714, 718 (7th Cir. 2016) ("In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation"). As discussed above, Plaintiffs have not proven that Defendants Bartik, Winstead, and Franko committed a constitutional violation against them. As such, Plaintiffs' failure to intervene claims against Defendants Bartik, Winstead, and Franko should be dismissed.

Plaintiffs falsely assert that "Defendants do not argue that they lacked an opportunity to intervene in the violations of Plaintiffs' constitutional rights, meaning the argument is forfeited." (Pl. Resp. at p. 35). This is simply not true. Putting aside the fact that Individual City Defendants did argue in their motion that Defendants Bartik, Winstead and Franko had no opportunity to

intervene in the alleged violations that occurred in the interview rooms (*see* Dkt. No. 202, at p. 51), Defendants Bartik, Winstead, and Franko cannot fail to intervene to alleged violations they were not privy to or had no participation in. Neither Defendant Bartik nor Defendant Winstead was present for any of the alleged violations that occurred during the interviews of Plaintiffs, Shaw, or Griffin. Similarly, although Franko was present for Shaw's interview, the circumstances surrounding Shaw's interrogation or his suppressed confession cannot serve as the basis for any of Plaintiffs' claimed constitutional violations, as discussed above. Franko was not present for any of the remaining interviews with Plaintiffs, Griffin, or Henderson. Furthermore, Plaintiffs' failure to intervene claims fail as a matter of law. *See Mwangangi v. Nielsen*, 48 F.4th 816, 834-35 (7th Cir. 2022) (J. Easterbrook, concurring) (noting that "failure to intervene" sounds more like vicariously liability, and "the Supreme Court held many times that Section 1983 supports only direct, and not vicarious, liability.") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009)). Thus, Plaintiffs' failure to intervene claims cannot survive against Defendants Bartik, Winstead, and Franko.

## **CONCLUSION**

For the foregoing reasons, Defendants Robert Bartik, John Zalatoris, James Breen, Edward Winstead, Joseph Struck, Michael Kennedy, Matthew Schmitz, Brian Skora, Joseph Aguirre, Leonard Rolston, and Robert Girardi respectfully request that this Honorable Court grant their partial motion for summary judgment, grant the specific relief requested earlier in this memorandum, and grant any additional relief that this Court deems appropriate.

Dated: December 22, 2023                    Respectfully submitted,

                                            */s/ Natalie Y. Adeeyo*
                                            Special Assistant Corporation Counsel
                                            Shneur Nathan, Avi Kamionski,

Natalie Adeeyo & Breana Brill
Nathan & Kamionski LLP
33 West Monroe, Suite 1830
Chicago, IL 60603
(312) 957-6639

*Attorneys for Individual City Defendants*

## CERTIFICATE OF SERVICE

I, Natalie Adeeyo, hereby certify that I have caused true and correct copies of the above and foregoing motion to be served on all counsel of record via the Court's CM/ECF system, which sent electronic notification of the filing on the same day to all counsel of record.

*/s/ Natalie Y. Adeeyo*

Shneur Nathan, Avi Kamionski,
Natalie Adeeyo & Breana Brill
Special Assistants Corporation Counsel
Nathan & Kamionski LLP
33 West Monroe, Suite 1830
Chicago, IL 60603
(312) 957-6639
*Attorneys for Individual City Defendants*