**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN FULTON, | ) | |
| | ) | |
| Plaintiff, | ) | 20-cv-3118 |
| | ) | |
| v. | ) | Honorable Judge Lefkow |
| | ) | |
| ROBERT BARTIK, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| ANTHONY MITCHELL, | ) | |
| | ) | 20-cv-3119 |
| Plaintiff, | ) | |
| | ) | Honorable Judge Lefkow |
| v. | ) | |
| | ) | |
| ROBERT BARTIK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**COUNTY DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

Brian P. Gainer (gainerb@jbltd.com)
Aleeza Mian (miana@jbltd.com)
JOHNSON & BELL, LTD.
33 W. Monroe, Suite 2700
Chicago, Illinois 60603
Tel: (312) 372-0770
Fax: (312) 372-9818

## **Table of Contents**

I.  MANY OF THE "FACTS" CITED TO BY PLAINTIFF FIND NO SUPPORT IN THE RECORD AND ARE THEREFOR IMPROPER AND SHOULD BE DISREGARDED.1

II.  THE COUNTY DEFENDANTS ARE ENTITLED TO VARIOUS IMMUNITIES. ........ 3

    A.  ASA Judge and ASA Varga Have Absolute Prosecutorial Immunity. ...................... 3

    B.  The County Defendants, Particularly Shepherd, Have Absolute Testimonial Immunity. ................................................................................. 6

    C.  The County Defendants Have Qualified and Sovereign Immunity............................ 7

III.  THE COUNTY DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON ADDITIONAL GROUNDS. ................................................................................ 8

    A.  The Record Establishes that ASA Judge Did Not Coerce Fulton's Inculpatory Statement.................................................................................... 8

    B.  ASA Judge and Varga Did Not Fabricate Fulton and Shaw's Confessions.................................................................................................. 10

    C.  ASA Judge is Entitled to Summary Judgment on Plaintiffs' Failure to Intervene Claim. ............................................................................................ 12

    D.  ASA Judge is Not Liable for Derivative Claims, Including Conspiracy..................................................................................................... 14

    E.  Shepherd is Entitled to Summary Judgment As To All Claims Against Him. .......................................................................................................... 16

    F.  The County Defendants Are Entitled To Summary Judgment On Plaintiffs' Intentional Infliction Of Emotional Distress Claim. ................................ 17

    G.  Cook County is Entitled to Summary Judgment. ...................................................... 18

CONCLUSION ...............................................................................................18

## Cases

*Andrews v. Burge*, 660 F.Supp.2d 868, 878 (N.D. Ill. 2009) ........................................ 3, 6

*Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) ................................. 17

*Avery v. City of Milwaukee,* 847 F.3d 433, 443 (7th Cir. 2017) ..................................... 12

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41 (1957)). ................................................................................................................................... 14

*Briscoe v. LaHue,* 460 U.S. 325, 327 (1983) ................................................................... 12

*Brown v. City of Chicago,* 633 F. Supp. 3d 1122, 1156 – 57 (N.D. Ill. 2022) ............................ 11

*Buckley v. County of DuPage*, 1996 U.S. Dist. LEXIS 5855, *6-7 ................................. 7

*Buckley v. Fitzsimmons*, 20 F.3d 789 (7th Cir. 1994) ..................................................... 11

*Cf. Harris v. City of Chicago*, 330 F.R.D. 508, 516 (N.D. Ill. 2018) ............................. 6

*Coleman*, 925 F.3d at 351 ................................................................................................ 15

*Curtis v. Bembenek*, 48 F.3d 281, 283 (7th Cir. 1995) .................................................... 6

*Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018) .................................................. 16

*Fischer v. Avanade, Inc.,* 519 F.3d 393, 401 (7th Cir. 2008) ......................................... 17

*Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017) ....................................... 16

*Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) ................................................. 15

*Harris v. City of Chicago*, 330 F.R.D. 508, 512, 516 (N.D. Ill. 2018) ......................... 5

*Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986) ....................... 3

*Hunt v. Jaglowski*, 926 F.2d 689, 691-693 (7th Cir. 1991) ............................................ 5

*Lewis v. Mills*, 677 F.3d 324, 330 (7th Cir. 2012) ......................................................... 3

*Mack v. City of Chicago,* 2023 U.S. Dist. LEXIS 127985 at *37 – 40 (N.D. Ill. Jul. 25, 2023).. 12

*McCullough v. Hanley*, No. 17 C 50116, 2018 U.S. Dist. LEXIS 121456, at *11-14 (N.D. Ill. July 20, 2018).................................................................................................................. 14

*Patrick v. City of Chicago*, 213 F.Supp.3d 1033, 1055 (N.D. Ill. 2016) ....................... 13

*Patrick v. City of Chicago,* 974 F.3d 824, 835 (7th Cir. 2020).................................... 10

iii

*Patrick,* 974 F.3d at 835 ............................................................................................ 11

*Petty*, 754 F.3d at 424 ............................................................................................... 16

*Powell v. City of Berwyn*, 68 F.Supp.3d 929, 942 (N.D. Ill. 2014) ......................... 13, 14

*Serrano v. Guevara,* 315 F.Supp.3d 1026, 1038 (N.D. Ill. 2018) ................................. 7

*Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) .................................................. 15

*Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003) ..................................................... 3

*Tillman v. Burge*, 813 F.Supp.2d 946, 974 (N.D. Ill. 2011) ......................................... 9

*Trade Fin. Ptnrs, LLC v. AAR Corp.,* 573 F.3d 401, 410 (7th Cir. 2009) .............. 10, 16

*United States v. Sturdivant,* 796 F.3d 690, 698 (7th Cir. 2015).................................... 9

*Watkins v. Office of the State Appellate Def.*, 2012 IL App (1st) 111756, ¶ 39 ............ 8

*Welch v. Ill. Supreme Court*, 322 Ill. App. 3d 345, 352-53 (2001) ............................... 8

*Whitlock*, 682 F.3d at 582 ......................................................................................... 11

Defendants McRay Judge, Andrew Varga, Eugene Shepherd, and Cook County (hereinafter collectively referred to as the "County Defendants") by and through their attorneys, Johnson & Bell, Ltd., pursuant to the Federal Rules of Civil Procedure and Local Rules of the United States District Court for the Northern District of Illinois, respectfully submit their Reply Memorandum in Support of their Motion for Summary Judgment[1]. [Dkt. 197 – 199].

## I.    MANY OF THE "FACTS" CITED TO BY PLAINTIFF FIND NO SUPPORT IN THE RECORD AND ARE THEREFOR IMPROPER AND SHOULD BE DISREGARDED[2].

A significant portion of Plaintiffs' response is devoted to what Plaintiffs' counsel has described as the "troubling trend" of moving parties abusing local rule 56.1 by describing disputed facts as undisputed. (Dkt. 230, pp. 2-3). Immediately after that section of the response, Plaintiffs have recited a "summary of facts" that, in the County Defendants' view is far more troubling. (Dkt. 230, pp. 4-7). There, and in Plaintiffs' Statement of Additional Facts (Dkt. 227) Plaintiffs have labeled things "facts" that aren't facts at all, but are instead conclusions drawn by Plaintiffs' counsel that, in many cases, find no support in the record. This is in direct violation of the rules of civil procedure and the local rules, and these "facts" should be ignored by the Court on summary judgment.

For example, on page 5 of the response, Plaintiffs have stated, as a fact, that "Defendant Judge watched Defendants Zalatoris and Breen roughly pull Mr. Fulton our of the room and bring him to another room, where these detectives assaulted him." (Dkt. 230, p. 5). In support of this "fact" Plaintiffs have cited PSOF ¶¶ 55 and 58. *Id*. Those cited paragraphs cite to various portions or the record, none of which establish that Defendant Judge watched, or saw, or witnessed, or

---

[1] In footnote 1 of Plaintiffs' response, they have dismissed their failure to intervene (Count VI), § 1983 conspiracy (Count VII), and state law conspiracy (Count XI) claims against Defendant Shepherd.  (Dkt. 228, p. 2, fn 1).

[2] County Defendants' Response to Plaintiffs' Statement of Facts is combined with the City Defendants' Response to same at Dkt. 246.

otherwise was aware of, any "rough pull" or other assault of Plaintiff, by anyone, ever. That inference cannot even be drawn by reading the portions of the record cited by Plaintiffs. In fact, in testimony from Fulton that Plaintiffs did not cite, Fulton admitted that any allegedly "rough treatment" that he received took place without the state's attorney, Judge, in the room. (Plaintiffs' Exhibit 24, pp. 219:4-220:24). It is, at best, an unsupported conclusion drawn by Plaintiffs counsel, and is certainly not a fact that can be relied upon to support the denial of summary judgment. This is significant, because this premise, that Judge was aware of rough or physical treatment of Fulton by the detectives, is cited by Plaintiffs often in their response as a reason why summary judgment should be denied. (Dkt. 230, pp. 38, 40-42, 57, 62, 66, 67). Every instance in which these "facts" are cited and used by Plaintiffs to challenge summary judgment should be disregarded.

On page 6 of the response, Plaintiffs commit a similar violation. Plaintiffs have stated, as a fact, that Defendant Varga, among others, was present when Defendants "fed Shaw facts that he eventually agreed to regurgitate . . ." (Dkt. 230, p. 6). It also appears that this statement indicates that Varga himself "fed" Shaw facts. *Id.* In support of this "fact" Plaintiffs have cited a number of paragraphs in both of their statements of facts. *Id.* Those paragraphs point to various portions of the record, none of which establish that Defendant Varga was present when anyone "fed" any facts to Shaw, or that he did so himself. Plaintiffs' attempts to purposely confuse the record on these points, or to misrepresent it, are improper, and this is once again significant here, because these "facts" are cited often when Plaintiffs argue for the denial of summary judgment to Varga. (Dkt. 230, pp. 38, 42, 44, 48, 51, 54, 59-60). Every instance in which these "facts" are cited and used by Plaintiffs to challenge summary judgment should be disregarded.

Passing off opinions, or conclusions, as facts, or claiming that facts exist when they don't, are egregious violations of the rules on summary judgment. For the reasons stated here and stated

by County Defendants in response to Plaintiffs' statement of additional facts, any "facts" that are not properly supported by the record, of which there are many, should be disregarded by the Court.

## II. THE COUNTY DEFENDANTS ARE ENTITLED TO VARIOUS IMMUNITIES.

### A. ASA Judge and ASA Varga Have Absolute Prosecutorial Immunity.

ASA Judge and Varga are entitled to absolute prosecutorial immunity on all claims because they were acting as prosecutors at all times. *Fields v. Wharrie,* 672 F.3d 505, 510 (7th Cir. 2012). Prosecutors are entitled to absolute immunity when they perform functions, such as determining whether charges should be brought and initiating a prosecution, or other actions that are "intimately associated with the judicial phase of the criminal process." *Lewis v. Mills*, 677 F.3d 324, 330 (7th Cir. 2012) (quoting *Buckley*, 509 U.S. at 270). Meeting with a suspect and taking a statement are part of these prosecutorial duties. (*see Andrews v. Burge*, 660 F.Supp.2d 868, 878 (N.D. Ill. 2009) ("It is within the proper role of an advocate for the State to take a court reported statement, as well as to see and hear the defendant give the statement, rather than simply take the word of the police that the defendant has confessed.")). Where immunity applies, it shields prosecutors "even if they act 'maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence.'" *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003) (quoting *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986)).

In their response, Plaintiffs' argument is that ASA Varga and ASA Judge acted as investigators rather than prosecutors in this case. (Dkt. #230, pp. 37-38). In support of this argument, Plaintiffs point to the fact that Fulton had made no confession to anyone, before talking to Judge. (Dkt. 230, p. 37, PSOF ¶ 52). This is yet another blurring of the record however, because, as it relates to Judge, whether or not Fulton made an inculpatory statement prior to Judge's arrival is not the issue. The issue is, whether Judge believed that Fulton had made an inculpatory statement

before they met. It is not, and cannot be disputed, that this is what Judge believed. (Def. SOF ¶¶ 19 – 20). There is no evidence that, when Judge began taking Fulton's statement, he was aware of any claim that no previous inculpatory statement had been given. In response to the County Defendants' statements of fact on this issue, Plaintiffs have not addressed whether the detectives requested Judge's presence because they had a suspect (Fulton) who admitted to the murder. (Dkt. 226, ¶ 19-20). This failure amounts to a concession of this point. Plaintiffs have admitted that the detectives requested Judge, and have denied that Fulton made a previous statement, but have drawn a conclusion, namely that the detectives didn't tell Judge about an inculpatory statement, that Fulton would have no way of knowing. *Id*. This sort of obfuscation is not proper on summary judgment.

Similarly, Plaintiffs' claim that ASA Judge deliberately failed to act after hearing Fulton's recantation is not supported by the record, and once again, Plaintiffs have ignored portions of crucial statements of fact that contradict their point. (Dkt. 230, p. 38; Dkt 226, ¶¶ 36-37, 43). While it is disputed that ASA Judge shared Fulton's recantation with the detectives and suggested that they investigate Fulton's alibi, it is truly undisputed that ASA Judge also shared the recantation with ASA Nazarian and Rubinstein, which lead to the preservation of Fulton's recantation in ASA Rubinstein's memorandum. *Id.* It is further undisputed that ASA Judge also, later, testified about Fulton's statement, recantation, and alibi in court. (Dkt. 226 ¶¶ 33-38, 43-44). Plaintiffs have attempted to muddy the record again by ignoring ASA Rubenstein's testimony about what Judge told him about his interview of Fulton, namely that Fulton retracted his inculpatory statement to Judge. (Plaintiffs' Exhibit 64, p. 72, 1-20; 74, 14-21). They have also ignored the memorandum itself, which clearly indicates the recantation occurred. (Def. Ex. M, p. SAO 2404). They also

attempt to muddy the record by failing to note that they have not disputed that Fulton's recantation was contained in ASA Rubenstein's memorandum. (Dkt. 226, ¶ 37).

It is clear from the record that all of ASA Judge's interactions with Fulton were part of his job as a prosecutor when he arrived at Area 1 to learn about the investigation, interviewed Fulton, and shared Fulton's initial confession and later recantation with fellow ASAs and the police. Because of these undisputed facts, absolute immunity exists. *See Harris v. City of Chicago*, 330 F.R.D. 508, 512, 516 (N.D. Ill. 2018) (Felony Review ASA entitled to absolute immunity where it was undisputed that police officer told ASA that plaintiff had confessed, even though plaintiff claimed that he did not confess.), *Hunt v. Jaglowski*, 926 F.2d 689, 691-693 (7th Cir. 1991).

Similarly, ASA Varga's interactions with Shaw relate solely to performing his job duties as a felony review assistant state's attorney. Plaintiffs, in support of their argument that ASA Varga acted as an investigator rather than a prosecutor, confusingly argue that Varga should have investigated further before securing a statement from Shaw. (Response p. 38). This circular logic makes no sense, and nothing in this section of the response supports the argument that Varga is not entitled to immunity. Also, because Plaintiffs cannot argue that Varga did not document Shaw's alibi (he did), they instead take issue with the size and quality of Varga's handwriting. (Response, p. 38, Dkt. 227, ¶ 104). No citation has been provided to support the claim that Varga's handwriting is a relevant factor here.

Nevertheless, ASA Varga's interactions with Shaw at issue were part of his job as a prosecutor, including verifying the confession, evaluating the evidence and taking his statement. It is undisputed that ASA Varga interviewed Shaw with a youth officer present, after Shaw had already been arrested and interrogated by detectives, and that his statement was taken in the presence of his uncle. (Def. SoF ¶¶45-58, 71). Under these undisputed facts, absolute immunity

exists. *See Andrews v. Burge*, 660 F.Supp.2d 868, 878 (N.D. Ill. 2009) ("It is within the proper role of an advocate for the State to take a court reported statement, as well as to see and hear the defendant give the statement, rather than simply take the word of the police that the defendant has confessed."); see also *Cf. Harris v. City of Chicago*, 330 F.R.D. 508, 516 (N.D. Ill. 2018) (finding an ASA entitled to prosecutorial immunity when taking statements from a suspect after being told by police he had confessed).

ASA Judge and ASA Varga's interactions with Fulton and Shaw in this case relate solely to their job duties as felony review assistant state's attorneys. Therefore, their involvement in the Collazo murder investigation is limited to their roles as prosecutors, and they are entitled to absolute immunity.

## B. The County Defendants, Particularly Shepherd, Have Absolute Testimonial Immunity.

Plaintiffs claim that the County Defendants are not entitled to absolute testimonial immunity, but do not cite any cases that support this premise. With respect to Plaintiffs' claims against the County Defendants that relate to their testimony at Plaintiffs' trials, the Seventh Circuit has repeatedly ruled that a governmental witness who testifies in any court action is entitled to absolute immunity from § 1983 liability. *Curtis v. Bembenek*, 48 F.3d 281, 283 (7th Cir. 1995).

This is particularly applicable to Defendant Shepherd, whose only role in this case was to investigate the absence or presence of video cameras at John Fulton's apartment building, and then to testify about what he found. (Def. SoF ¶¶85-94, 99). Plaintiffs attempt to keep Shepherd in the case by repeatedly reciting that he "intentionally crafted a false narrative prior to getting on the witness stand," but there is no evidence that anything done by Shepherd was used against Plaintiffs, other that his trial testimony about security cameras. (Dkt. 230, p. 45, 68, 69). Shepherd did not write any reports, did not talk to any detectives, and did not participate in the investigation in any

other way. Plaintiffs have conceded that "Shepherd is correct that he is absolutely immune for his testimony on the witness stand." (Response, p. 68). That concession must lead to the conclusion that Shepherd should be dismissed from this case, because his only act was to testify.

As argued in the motion, there is no evidence in the record that Shepherd fabricated evidence about the absence of cameras, or anything else, either during his investigation or during his testimony. (SoF ¶¶85-100). In fact, there is a significant amount of evidence that Shepherd told the truth about the absence of cameras at the back door of Fulton's apartment building. (SoF ¶¶85-98).

Based on the above, any claims against the County Defendants based on their testimony in the criminal proceedings must fail because they are absolutely immune from liability arising from that testimony. Because of this immunity, Shepherd should be completely dismissed from this case, as his only involvement was his criminal trial testimony.

## C. The County Defendants Have Qualified and Sovereign Immunity.

None of Plaintiffs' arguments in the response truly address the County Defendants' claims of qualified and sovereign immunity.

For qualified immunity purposes, it was not clearly established, in 2003, that the County Defendants had an obligation to intervene to prevent any of the constitutional violations allegedly being committed by the other parties to this suit. *See Serrano v. Guevara,* 315 F.Supp.3d 1026, 1038 (N.D. Ill. 2018) (Prosecutor entitled to qualified immunity because there was no clearly established duty to intervene in 1993). An investigator may be entitled to qualified immunity if his discretionary actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Buckley v. County of DuPage*, 1996 U.S. Dist. LEXIS 5855, *6-7.

Despite Plaintiffs' arguments to the contrary, for sovereign immunity purposes, as argued in Defendants' motion, the law establishes that the relevant question for purposes of sovereign immunity is whether the acts of ASA Judge, ASA Varga, and Defendant Shepherd arose out of a breach of duty that was imposed on them by virtue of their state employment, or whether they are charged with a breach of duty independent of their state employment. *Welch v. Ill. Supreme Court*, 322 Ill. App. 3d 345, 352-53, 256 Ill. Dec. 350, 357, 751 N.E.2d 1187, 1194 (2001), *Watkins v. Office of the State Appellate Def.*, 2012 IL App (1st) 111756, ¶ 39, 364 Ill. Dec. 109, 122, 976 N.E.2d 387, 400. Defendants have established that no separate duty was owed by them to either of the Plaintiffs here, so they are entitled to sovereign immunity.

## III.   THE COUNTY DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON ADDITIONAL GROUNDS.

### A.  The Record Establishes that ASA Judge Did Not Coerce Fulton's Inculpatory Statement.

ASA Judge is entitled to summary judgment on Plaintiffs' coercion claims. Plaintiffs allege that ASA Judge coerced Fulton's confession because Fulton was 18 years old, still in high school, he was arrested at 5:30 a.m., continuously interrogated, coached, and threatened by detectives, for nearly 24 hours, without food and sleep. (Dkt, 230, p. 64). Plaintiffs also claim that the Police Officer Defendants falsely promised Fulton that he would be able to go home after he gave a fabricated confession, lied about having incriminating evidence against him, and threatened his family unless he confessed. (Dkt 230, p. 64).

None of the conduct about which Plaintiffs complain involves ASA Judge. Rather than point to specific conduct by ASA Judge, Plaintiffs claim that ASA Judge allegedly knew of the Police Officer Defendants alleged coercive tactics, without citing to any meaningful evidence to support this conclusion. The evidence shows that ASA Judge did not physically or psychologically

coerce Plaintiff into making a false confession, that ASA Judge was not aware of any such tactics, and that ASA Judge was not present when such conduct allegedly occurred. *See Tillman v. Burge*, 813 F.Supp.2d 946, 974 (N.D. Ill. 2011) ("Plaintiff has not alleged that [ASAs] were personally involved in his torture, an allegation necessary to establish their liability under §1983."). Also, to the extent that Fulton's age and level of education are concerned, the Seventh Circuit held in the case of an 18-year-old Plaintiff still in high school, that there was there was nothing about the Plaintiff's "age or education that supported the conclusion that his confessions were coerced." *United States v. Sturdivant,* 796 F.3d 690, 698 (7th Cir. 2015).

ASA Judge did not "add to the coercion to elicit a coerced confession from Fulton." (Response p. 56). It is undisputed that ASA Judge spoke to Fulton with the detectives present, and Fulton confessed. (Dkt. 226, ¶ 23, 27). There is no allegation that this confession was coerced by ASA Judge. It is further undisputed that after the detectives left, Fulton recanted his confession. (Dkt. 226, ¶ 23, 27, 30, 31). It is undisputed that Fulton told Judge he was treated fine by the detectives, that Judge did not physically abuse Fulton. (Dkt. 226, ¶23 – 44).

None of the actual evidence in this case supports the allegation that Judge was part of any alleged coercion. Plaintiffs have devoted pages of their response to the theory that, when detectives met with Judge, before Judge talked to Fulton, detectives "caught Defendant Judge up to speed on their coercive interrogation tactics prior to his arrival." (Dkt 230, p. 56-57). There is absolutely nothing in the record to support this allegation. This isn't even a reasonable inference, as it appears to be solely based on the amount of time that passed between Judge's arrival at Area 1 and his first conversation with Fulton. *Id.* Plaintiff then makes a number of baseless allegations about what Judge knew about Fulton, without any citation to the record for support. *Id.* These claims, that find no support in the record, cannot be relied upon to deprive Judge of summary judgment. On

9

summary judgment, Plaintiffs must present specific evidence, not mere speculation, to properly dispute facts at the motion for summary judgment stage. *Trade Fin. Ptnrs, LLC v. AAR Corp.,* 573 F.3d 401, 410 (7th Cir. 2009).

This claim against Defendant Judge should be dismissed on summary judgment.

**B.      ASA Judge and Varga Did Not Fabricate Fulton and Shaw's Confessions.**

As stated, repeatedly, here, in Defendants' motion, and in Defendants' statement of facts in support of summary judgment, ASA Judge did not fabricate any evidence against Fulton. This is clear, and undisputed, because Fulton admits that he initially told ASA Judge that he committed the murder of Christopher Collazo. (Dkt. 226, ¶ 23, 27, 31). When Fulton recanted, it is undisputed that ASA Judge told other state's attorneys about it, and later testified to it. (Dkt. 226, ¶ 36, 37). It is undisputed that ASA Rubenstein wrote about the recantation in a memorandum documenting Fulton's statement. (Dkt. 37). Nothing but inuendo and conjecture supports the fabrication claim against ASA Judge, and he is entitled to summary judgement.

As to Varga, it is not truly disputed that Shaw gave him a handwritten statement regarding his involvement in the murder. (Dkt. 226, ¶ 71, 74, 77, 78). It is also not disputed, at all, that Shaw's statement was suppressed, his case was dismissed, his statement was not used against Plaintiffs, and he did not testify against them. (Dkt. 226, ¶ 84). Despite Plaintiffs' arguments to the contrary, the fact that Shaw's statements were not used in their criminal trials are fatal to the fabrication claim against Varga.

A due process fabrication claim is an assertion "that the accused was convicted and imprisoned based on knowingly falsified evidence, violating his right to a fair trial and thus depriving him of liberty without due process." *Patrick v. City of Chicago,* 974 F.3d 824, 835 (7th Cir. 2020). To establish his claim, Plaintiffs must prove: (1) the defendant knowingly fabricated

evidence against him, (2) the evidence was used at his criminal trial, (3) the evidence was material, and (4) that he was damaged as a result. *Brown v. City of Chicago,* 633 F. Supp. 3d 1122, 1156 – 57 (N.D. Ill. 2022).

The Seventh Circuit has made it clear that, for a due process fabrication claim to be successful, the allegedly fabricated evidence must be used against a plaintiff at his or her criminal trial. "If an officer . . . fabricates evidence and puts that fabricated evidence in a drawer, making no further use of it, then the officer has not violated due process; the action did not cause an infringement of anyone's liberty interest." *Whitlock*, 682 F.3d at 582 (citing *Buckley v. Fitzsimmons*, 20 F.3d 789, 795 (7th Cir. 1994)).

In *Patrick,* the plaintiff asserted a due process evidence fabrication claim against multiple Chicago police officers. The Seventh Circuit was asked to determine whether a jury instruction for a due process evidence fabrication claim was properly given. *Patrick,* 974 F.3d at 835. The Seventh Circuit found that the instruction given to the jury at trial, which did not explain that the plaintiff had the burden to prove that the fabricated evidence was used against him at his criminal trial was "incomplete." *Id*. In doing so, the Court pointed to the current Seventh Circuit Pattern Jury Instruction on due process fabrication claims, which specifically calls for a jury considering an evidence fabrication claim to be instructed that, for Plaintiff to succeed on such a claim, he or she must prove that "Defendant knowingly fabricated evidence that was introduced against Plaintiff at his criminal trial." *Id*. (quoting Federal Civil Jury Instruction of the Seventh Circuit § 7.14 (2017).

The Court in *Brown* relied on *Patrick* to make a similar finding, namely that successful evidence fabrication claims require a showing that the allegedly fabricated evidence was used at trial. 633 F. Supp. 3d at 1156, n.35, and 1160. In *Brown,* the plaintiff asserted a Fourteenth

Amendment Due Process fabrication claim and alleged that multiple pieces of evidence were fabricated by the police, and used at trial to convict the plaintiff, including a purported confession that, was used against him in his criminal trials. *Id.* at 1157 – 1159. Plaintiff also claimed that police reports documenting witness statements were fabricated. *Id.*

The district court, in granting summary judgment, held that the allegedly fabricated police reports could not be the basis for a due process fabrication claim because they were not introduced against the plaintiff at his criminal trials. *Id.* at 1159 – 1160. In the Court's view, testimony consistent with the contents of the allegedly fabricated reports made "no difference" to the due process fabrication claim because "false testimony at trial does not give rise to a viable constitutional claim because witnesses are entitled to absolute immunity." *Id* (citing *Briscoe v. LaHue,* 460 U.S. 325, 327 (1983)). This was true even though the officers who drafted the allegedly fabricated reports testified to a version of events consistent with the reports. *Id.* at 1159 (citing *Avery v. City of Milwaukee,* 847 F.3d 433, 443 (7th Cir. 2017)). Since *Brown,* another court in the Northern District of Illinois, when examining an evidence fabrication claim, has considered allegations of fabricated police reports that were not used at trial, and has arrived at the same conclusion. *Mack v. City of Chicago,* 2023 U.S. Dist. LEXIS 127985 at *37 – 40 (N.D. Ill. Jul. 25, 2023).

In light of this clearly established law, Varga is entitled to summary judgment because, as Plaintiffs have admitted, Shaw's statement was suppressed, and not used at all.

**C.    ASA Judge is Entitled to Summary Judgment on Plaintiffs' Failure to Intervene Claim.**

ASA Judge is entitled to summary judgment on Plaintiffs' failure to intervene claim. Plaintiffs are correct that a § 1983 failure to intervene claim requires that plaintiffs allege that the defendants knew that a constitutional violation was committed and had a realistic opportunity to

prevent it. However, a defendant cannot face liability for failure to intervene where there was no indication that defendant was aware of a violation in order to be able to intervene. *Powell v. City of Berwyn*, 68 F.Supp.3d 929, 942 (N.D. Ill. 2014) (Summary judgment in favor of police officer who did not arrive at the scene until after the alleged constitutional injuries occurred).

As to the first prong, ASA Judge was not made aware by anyone of any constitutional violation. It is undisputed that on March 19, 2003, ASA Judge arrived at Area One and spoke to the detectives, who caught him up to speed on the case. (Response p. 61). However, as stated above, it is pure speculation that the detectives or Fulton shared any instances of misconduct with ASA Judge. ASA Judge asked Fulton privately if he had any complaints and Fulton told him he had none and that the police treated him fine. (Def. SoF ¶ 28).

Even if ASA Judge learned from the detectives that Fulton had been in custody for 24 hours, ASA Judge could not have asked for Fulton's release as suggested by Plaintiffs because there is no evidence that ASA Judge had such authority, and indeed he did not. *See Patrick v. City of Chicago*, 213 F.Supp.3d 1033, 1055 (N.D. Ill. 2016) (Summary judgment granted on failure to intervene claim as ASA did not have authority to direct the police officers).

Plaintiffs also argue that a jury could find that ASA Judge had a realistic opportunity to prevent the alleged constitutional violations because he acted as an investigator in this case. Plaintiffs incorrectly rely on *McCullough* to argue that where a prosecutor acts as an investigator, and had knowledge of the constitutional violation, he would have had a realistic opportunity to prevent an officer from violating plaintiff's rights. In *McCullough,* the prosecutor was elected as the State's Attorney of DeKalb County and "became personally involved" in the investigation of the plaintiff when he stated that he wanted to oversee the case and secure the prosecution of plaintiff and coordinated the investigation with the other police officer defendants over several months

13

without probable cause. *McCullough v. Hanley*, No. 17 C 50116, 2018 U.S. Dist. LEXIS 121456, at *11-14 (N.D. Ill. July 20, 2018). Here, ASA Judge's only involvement spanned over just a few hours when he reviewed the materials and interviewed Fulton. As such, *McCullough* does not apply, and ASA Judge had no realistic opportunity to intervene.

Plaintiffs' argument that ASA Judge could have prevented constitutional violations against Mitchell is similarly not proper, as the premise of a failure to intervene claim is that the defendant is in a reasonable position to stop the constitutional violation as it is happening. *Powell v. City of Berwyn*, 68 F.Supp.3d 929, 942 (N.D. Ill. 2014) (Summary judgment in favor of police officer who was not present when the alleged constitutional violations occurred.). ASA Judge did not interview Mitchell, was not present when Mitchell was interviewed, never had any encounter with him, and did not approve charges against him. (Def. SoF ¶¶ 43-44).

To the extent that Defendant Shepherd is involved in Plaintiffs' failure to intervene claim, Plaintiffs do not rebut the County Defendants' arguments pertaining to Shepherd in their Response, and as such, he is also entitled to summary judgment on this count. (Response p. 61-63).

### D. ASA Judge is Not Liable for Derivative Claims, Including Conspiracy

In their Response, Plaintiffs allege that the County Defendants made no argument seeking summary judgment on Plaintiffs' conspiracy claims against ASA Judge and therefore, the issue is forfeited. This is wrong. The County Defendants could not have addressed any alleged conspiracy claims made against ASA Judge because Plaintiffs failed to name ASA Judge in their a §1983 conspiracy and state law conspiracy counts. [Dkt. #1, ¶¶ 179-184, 205-210]. A complaint should include a "fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "[A] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for

summary judgment." *Trade Fin. Ptnrs, LLC v. AAR Corp.,* 573 F.3d 401, 412 (7th Cir. 2009). As indicated by Defendants in their summary judgment motion, and as incorrectly referenced by Plaintiffs in the response, the conspiracy claims, as pled by Plaintiff, do not include Defendant Judge.

While it is true that this Court recognized Plaintiffs' conspiracy claim against Judge at the pleadings stage, it is also true that the Court acknowledged the vagaries of that claim and indicated that Plaintiffs' "imprecise drafting" was not fatal at the pleadings stage. (Dkt. 106, p. 24-25). This case has moved well beyond the pleadings stage, and nothing has changed with regard to Plaintiffs' vague, imprecise claim. There is nothing supporting a conspiracy claim against Judge, no act in furtherance, and no constitutional violation.

Regardless, Plaintiffs' conspiracy and failure to intervene and other claims are derivative of their due process claims against ASA Judge. If those claims fail, the conspiracy counts fail as well. *See Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) (conspiracy); *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) (failure to intervene). If this Court enters summary judgment on the claims in Count I, then the derivative claims of conspiracy (Count II and Count VIII), failure to intervene (Count III), and intentional infliction of emotional distress (Count VII) must also fail because no underlying constitutional violation has been established. *Id*., at 1064 ("In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation[.]"); *Smith*, 550 F.3d at 617 ("conspiracy is not an independent basis of liability in § 1983 actions"); *See also Coleman*, 925 F.3d at 351 ("Coleman's conspiracy, failure to intervene, and municipal liability claims each depend on proof of an underlying constitutional violation. Because Coleman has failed to present evidence supporting an underlying violation, defendants are entitled to summary judgment on Coleman's derivative claims as well.") *citing*

*Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018) (conspiracy); *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017) (failure to intervene); *Petty*, 754 F.3d at 424 (municipal liability)

### E. Shepherd is Entitled to Summary Judgment As To All Claims Against Him.

Defendant Shepherd is entitled to summary judgment on all counts against him. It is undisputed that Defendant Shepherd was an investigator with the State's Attorney's Office who testified at Plaintiffs' criminal trials. (Response p. 67-68). It is further undisputed that in the early in the morning on the day of his testimony, Shepherd visited Fulton's apartment building at the request of an assistant state's attorney to investigate whether the front and rear doors of the apartment building had security cameras. (Response p. 68). Defendant Shepherd had no knowledge of any facts surrounding the investigation, and only did what he was instructed to do, which was to locate all of the cameras placed at Fulton's building. (SoF ¶95). At Fulton's building, Shepherd found security cameras in the front, and none in the back. (SoF ¶ 97).

The individual who installed the security system at Fulton's building also testified that he sent the building a proposal to install rear door cameras, which the building complex rejected, and therefore, he was not able to install any security cameras at the back of the building. (SoF ¶¶ 101-102). Fulton's criminal defense attorney also investigated Fulton's building for security cameras and found none in the back. (SoF ¶ 103). Finally, in March of 2003, Fulton admitted that he was not aware of any cameras placed at the back of the building. (SoF ¶ 105).

Shepherd's presence in this lawsuit is based entirely on speculation. Plaintiffs must present specific evidence, not mere speculation, to properly dispute facts at the motion for summary judgment stage. *Trade Fin. Ptnrs, LLC v. AAR Corp.,* 573 F.3d 401, 410 (7th Cir. 2009). Here, Plaintiffs speculate, without any supporting evidence, that Shepherd saw a camera at the back door, fabricated evidence to the contrary, shared his fabricated evidence with the prosecutors before he testified, so that the prosecutors knew he would testify about the absence of a backdoor camera,

which led him to be called to the witness stand, to testify about his fabricated evidence. (Response p. 68-69).

Merely stating that there are questions of facts which must be resolved by the jury, without any supporting evidence to dispute Defendants' motion for summary judgment is not enough. (Response p. 68-69). Favor towards the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture. *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008); *See Fischer v. Avanade, Inc.,* 519 F.3d 393, 401 (7th Cir. 2008). As such, Plaintiffs' arguments rely on mere speculation and imagination, and Defendant Sheperd is entitled to summary judgment on all claims.

### F. The County Defendants Are Entitled To Summary Judgment On Plaintiffs' Intentional Infliction Of Emotional Distress Claim.

The County Defendants are entitled to summary judgment on Count X for Plaintiffs' intentional infliction of emotional distress claim. In their Response, Plaintiffs argue that the County Defendants' actions were "extreme and outrageous," and a jury should decide due to factual disputes. (Response p. 66-67). However, there is no factual dispute stemming from opposing evidence because, as stated above, there is no evidence that ASA Judge and Varga fabricated evidence or concealed exculpatory evidence which would rise to the level of extreme and outrageous conduct. (Def. SoF ¶¶ 28-29, 39, 60, 62, 76-77, 85-94). Instead, Plaintiffs do nothing more than recite the extreme and outrageous element of the tort and point to the ASAs.

As previously stated, ASA Judge and ASA Varga were performing an essential function of their jobs when they interviewed Fulton and Shaw. The ASAs documented and shared both admissions and recantations made during the interviews. (Def. SoF ¶¶34-36). In his Verified Petition for Relief, Fulton stated that he believed ASA Judge to be a neutral figure, which is why he recanted his statement to him in the first place. (Def. SoF ¶29). Shaw confirmed in his October

17

21, 2021, deposition that ASA Varga treated him "fine." (Def. SoF ¶77). Accordingly, a jury will not find ASA Judge and ASA Varga's behavior to be extreme and outrageous, and they are entitled to summary judgment on Count X.

Furthermore, to the extent that Defendant Shepherd is involved Plaintiffs' IIED claim, Plaintiffs only argument is that a reasonable jury could find his alleged conduct to be extreme and outrageous. (Response p. 69). Plaintiffs provide no discussion of the applicable law, no factual analysis, and no evidence to support their argument.

### G. Cook County is Entitled to Summary Judgment.

Plaintiffs argue that Cook County is not entitled to summary judgment on indemnification because there are genuine disputes of material fact as to Plaintiffs' claims against the County Defendants that should go to a jury. (Response p. 70). However, for the reasons stated above, Plaintiffs' claims against the County Defendants should be dismissed. If they are dismissed, Plaintiffs' claim against Cook County cannot survive.

### CONCLUSION

Based on all the above arguments, summary judgment should be granted in favor of Andrew Varga, McRay Judge, Eugene Shepherd, and Cook County.

Respectfully Submitted,

/s/ *Brian P. Gainer*
One of the attorneys for the
Cook County Defendants

Brian P. Gainer (gainerb@jbltd.com)
Aleeza Mian (miana@jbltd.com)
JOHNSON & BELL, LTD.
33 W. Monroe, Suite 2700
Chicago, Illinois 60603
Tel: (312) 372-0770
Fax: (312) 372-9818