**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN FULTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20 C 3118 |
| | ) | |
| ROBERT BARTIK, et al., | ) | Judge Joan H. Lefkow |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| ANTHONY MITCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 20 C 3119 |
| v. | ) | |
| | ) | Judge Joan H. Lefkow |
| ROBERT BARTIK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

Rulings on Plaintiffs' Motions *in Limine* are as follows:[1]

- No. 1: Granted.
- No. 2: Granted.
- No. 3: Granted in part and reserved in part.
- No. 4: Granted.
- No. 5: Granted.
- No. 6: Granted in part and denied in part.
- No. 7: Granted.
- No. 8: Granted in part and denied in part.
- No. 9: Granted in part and reserved in part.
- No. 10: Granted in part and denied in part.
- No. 11: Granted in part and denied in part
- No. 12: Denied.
- No. 13: Ruling reserved.
- No. 14: Ruling reserved.
- No. 15: Granted.
- No. 16: Granted.

---

[1] The court has consolidated *Fulton* v. *Bartik et al.*, No. 20-cv-3118, and *Mitchell* v. *Bartik*, No. 20-cv-3119. For consistency, the court refers to docket entries and record citations in *Fulton*.

1

## STATEMENT

In related actions, Plaintiffs John Fulton and Anthony Mitchell filed complaints against Robert Bartik, John Zalatoris, James Breen, Edward Winstead, Joseph Struck, Robert Girardi, and Stephen Franko (collectively, "Individual Defendants"), alleging constitutional violations under 42 U.S.C. § 1983 and related state law claims. The core allegation is that they were deprived of their constitutional rights and wrongfully imprisoned because Chicago police officers fabricated witness testimony and coerced false confessions, leading to plaintiffs' eventual convictions for the murder of Christopher Collazo. Trial is set to begin on February 10, 2025.[2]

The following constitutional claims proceed to trial: false confession under the Fifth and Fourteenth Amendments (Count I); fabrication of false witness statements under the Fourteenth Amendment (Count II); deprivation of liberty without probable cause under the Fourth and Fourteenth Amendments (Count III); failure to intervene (Count VI); and conspiracy (Count VII). Related state-law claims also proceed to trial: malicious prosecution (Count IX); intentional infliction of emotional distress (Count X); civil conspiracy (XI); *respondeat superior* against the City of Chicago (Count XII); and indemnification against the City of Chicago (XIII).

Before the court are plaintiffs' motions *in limine* nos. 1–16. The rulings in this order are without prejudice and are subject to change should the evidence introduced at trial differ from that which is anticipated in these motions. *See Hawthorne Partners* v. *AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400–01 (N.D. Ill. 1993).

## LEGAL STANDARD

A ruling on a motion *in limine* is a preliminary decision on the admissibility of certain evidence. *See United States* v. *Connelly*, 874 F.2d 412, 416 (7th Cir. 1989). It "performs a gatekeeping function and permits the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadm[i]ssible for any purpose." *Jonasson* v. *Lutheran Child & Fam. Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). Where an evidentiary submission "cannot be evaluated accurately or sufficiently" before trial, ruling on its admissibility is deferred until during trial when the impact of the evidence can be better assessed. *Id.* The rulings in this order are without prejudice and are subject to change should the evidence introduced at trial be different from that anticipated in these motions. *See Perry* v. *City of Chicago*, 733 F.3d 248, 252 (7th Cir. 2013) ("Trial courts issue rulings on motions *in limine* to guide the parties on what evidence it will admit later in trial. As a trial progresses, the presiding judge remains free to alter earlier rulings.").

---

[2] The court assumes familiarity with the relevant background facts, which are described fully in the court's summary judgment opinion. (Dkt. 256 at 2–12.)

<u>**ANALYSIS**</u>

**No. 1: To Bar Defendants from Arguing that Plaintiffs' Criminal Defense Counsel were Ineffective (Dkt. 312)**

Plaintiffs move to bar Individual Defendants from arguing that their defense counsel were ineffective at their criminal trial. The motion is granted.

Individual Defendants state that they should be able to argue that plaintiffs' convictions resulted from ineffective assistance of their criminal defense counsel because plaintiffs themselves used this argument while seeking post-conviction relief. The court grants the motion to the extent that Individual Defendants seek to suggest that plaintiffs' criminal defense counsel were in fact ineffective because no court has made such a ruling to date. Individual Defendants mischaracterize ineffective assistance of counsel as the "very basis for which Plaintiffs obtained post-conviction relief." (Dkt. 340 at 2.) In vacating the plaintiffs' convictions, the circuit court only suggested that ineffective assistance of counsel could have been one reason why the jury did not hear possibly exculpatory evidence during the criminal trial. (*See* Dkt. 340-2 at 2:17-30) ("[W]hether you want to title this lack of disclosure as a Brady violation *or* ineffective assistance of counsel, the end result is the same as far as the petitioners are concerned.") (emphasis added).

Plaintiffs contend that their wrongful convictions were caused by Individual Defendants' intentional torts, including: the fabrication of false confessions and inculpatory statements and the suppression of evidence – not the ineffective assistance of their counsel at trial. Individual Defendants respond that plaintiffs cannot argue that their convictions resulted from false confessions or fabricated evidence under the doctrine of judicial estoppel. *See New Hampshire* v. The doctrine "prevents litigants from manipulating the judicial system by prevailing in different cases or phases of a case by adopting inconsistent positions[]" *Spaine* v. *Community Contacts, Inc.*, 756 F.3d 542, 547 (7th Cir. 2014), but it only applies where a party's "later position [is] clearly inconsistent with the earlier position." *Levinson* v. *United States*, 969 F.2d 260, 264 (7th Cir. 1992).

Here, plaintiffs repeatedly argued in their post-conviction proceedings that their convictions should be vacated on the alternative basis that their criminal defense counsel were ineffective. (*See, e.g.*, Dkt. 340-1 at 20-21; Dkt. 340-3 at 9:9-12; 12:21-23; 15: 7-9; 17:7-10.) Now, they are not arguing that their criminal defense counsel were ineffective – they are rather arguing that the conduct of their counsel is not relevant to the defendants' liability for the intentional torts plaintiffs claim. Particularly, they argue that ineffective assistance of counsel "cannot be a superseding cause of Plaintiffs' injury that might shield Defendants from liability." (Dkt. 312 at 3.)

Nevertheless, if plaintiffs open the door to the state court's basis for their post-conviction relief or contradict their prior positions regarding the effectiveness of their counsel, then the court may permit defendants to introduce evidence of plaintiffs' arguments during that phase of the litigation.

**No. 2: To Bar Reference to the Erroneous Denial of Plaintiffs' Certificates of Innocence (Dkt. 313)**

Plaintiffs move to bar references to the Circuit Court of Cook County's "erroneous" denial of plaintiffs' certificates of innocence. The motion is granted. Plaintiffs are still awaiting a decision on remand from the circuit court. As such, any reference to the circuit court's initial denial could confuse and mislead the jury into thinking that was the final word. Thus, the court grants plaintiffs' motion and bars Individual Defendants from referencing the circuit court's initial denial of plaintiffs' petitions.

**No. 3: To Bar the Videotape of Mitchell's Confession (Dkt. 314)**

Plaintiffs move to bar the Mitchell's thirty-minute videotaped confession. in which Mitchell is shown confessing in some detail that he, Fulton, and Shaw murdered Collazo. The motion is granted, and ruling is reserved in part. The transcript of the confession may be read into evidence by a reader.

Defendants contend that the recording is part of the events of the 36 hours Mitchell was held and it would tend to rebut Mitchell's claim of coercion. Plaintiffs seek to exclude this videotaped confession because Individual Defendants failed to record the rest of his 36-hour long interrogation. They contend that by only introducing the recorded confession without the necessary context of the methods Individual Defendants allegedly used to elicit his confession would unduly prejudice the jury. In support, they cite *Fox* v. *Hayes*, 600 F.3d 819, 840 (7th Cir. 2010), in which the Seventh Circuit upheld a trial court's exclusion of a videotaped confession that similarly reflected only a portion of the plaintiff's lengthy interrogation, noting that it was the defendants' choice not to record the entire episode.

In *Fox*, the district court rejected the defense's argument that the recorded statement "would rebut Plaintiffs' contention that Kevin Fox was emotionally, mentally and physically impaired at the time he made [an earlier] first statement." 2008 WL 4411574, at *6. The Seventh Circuit held this was not an abuse of discretion. *Fox*, 600 F.3d at 840. Likewise, here, the prejudicial impact of the video substantially outweighs its probative value. The exclusion of this evidence may render any discussion of the absence of videotaping irrelevant. Ruling is reserved on this point.

**No. 4: To Bar Reference to Plaintiffs, Shaw, or Griffin Being Affiliated with a Street Gang (Dkt. 315)**

Plaintiffs move to bar references to their own alleged gang membership as well as that of Shaw and Griffin. They further move to bar any suggestion that Griffin dated gang members or participated in gang activity. This motion is granted.

It is well-established that evidence related to gang affiliation can be highly prejudicial and lacking in probative value. *See*, *e.g.*, *United States* v. *Irvin*, 87 F.3d 860, 864-67 (7th Cir. 1996) (citing a substantial "danger of unfair prejudice" in that "[g]angs generally arouse negative connotations and often invoke images of criminal activity and deviant behavior" and therefore

that there is "always the possibility that a jury will attach a propensity for committing crimes to [witnesses] who are affiliated with gangs or that a jury's negative feelings toward gangs will influence its verdict"); *United States* v. *Richmond*, 222 F.3d 414, 417 (7th Cir. 2000) ("Evidence of gang involvement must be considered carefully to avoid undue prejudice."). Squarely for these reasons, evidence of gang affiliations or engagement can constitute inadmissible evidence of prior bad acts in violation of Fed. R. Evid. 404(b). *See, e.g.*, *Ramirez* v. *City of Chicago*, No. 05 C3 17, 2009 WL 3852378, at *1 (N.D. Ill. Nov. 17, 2009) (highlighting danger of jury treating gang membership as propensity evidence).

Because the gang involvement of plaintiffs or Shaw is disputed and because the police determined that Collazo's murder was not gang-related, references to their gang involvement is inadmissible. Any probative value Individual Defendants claim is substantially outweighed by the prejudicial effect of introducing this evidence. The court also excludes any suggestions that Griffin was involved in gangs. She may have dated gang members in the past or may have discussed gangs with Fulton, but this evidence is irrelevant unless it is connected to actual gang activity.

**No. 5: To Bar the State Court's Rulings on Plaintiffs' Motions to Suppress Their Confessions (Dkt. 316)**

Plaintiffs move to bar the Cook County Circuit Court's order denying their motions to suppress their confessions during the criminal prosecution as well as the appellate court's affirmance of those denials. This motion is granted.

The subject of those rulings, namely the voluntariness of plaintiffs' inculpatory statements, will be a central issue in front of the jury in this trial. As plaintiffs point out, another court in this circuit recently barred admission of state court decisions on motions to suppress plaintiffs' confessions. In *Hurt* v. *Vantlin*, No. 314-cv-00092-JMS-MPB, 2019 WL 6828153, at *3 (S.D. Ind. Dec. 13, 2019), the court found that in the "rare[]" case where "the determinations made by the state court judge so closely related to the very issues the jury must decide in the civil rights case," the admission of the state court decision could improperly confuse and mislead the jury. In granting a motion *in limine* to bar evidence that a state court decision on a motion to suppress, it noted:

> "the admission of the fact that [a plaintiff's] confession was suppressed by the state court judge may very well lead jurors to conclude that because a judge found the confession to be inappropriate for use at the criminal trial, the jury should also conclude that the confession was coerced."

> *Id*.

The same reasoning applies to the denial of a motion to suppress, as it may lead the jury to conclude that the confession was voluntary based on a proceeding addressing whether it was admissible at the criminal trial. Further, Individual Defendants have not cited any case of this nature in which this evidence was admitted.

**No. 6: To Bar Evidence of Criminal Convictions and Prior Bad Acts of Non-Party Witnesses (Dkt. 317)**

Plaintiffs move to bar any evidence or argument regarding the criminal histories or alleged bad acts committed by Griffin and Shaw. The motion is granted in part and denied in part.

Fed. R. Evid. 404(b) prohibits admitting "evidence of any crime, wrong, or act … to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, such evidence can be admissible for another reason other than to demonstrate an individual's propensity to engage in bad acts. Fed. R. Evid. 404(b)(2).

*Griffin*

With respect to Griffin, plaintiffs first seek to exclude any "mention, testimony, or evidence that Griffin ever received, bought, or attempted to buy drugs" given its prejudicial effects. *United States* v. *Boyd*, 833 F. Supp. 1277, 1359 (N.D.Ill.1993) ("As a general rule, a witness' past drug use is not probative of veracity and, thus, is not a proper subject for cross examination"). Individual Defendants respond that they seek to introduce evidence of Griffin's drug use not for an impermissible propensity purpose but because her drug use is probative of Individual Defendants' probable cause analysis with respect to Fulton and Mitchell.

Individual Defendants want to introduce evidence that on the night of Collazo's murder, Griffin informed Fulton that Collazo was on his way to meet her at the residence of Marisol Caldero to sell her marijuana. They argue this is relevant, as it helped establish probable cause. Further, plaintiffs' police practices expert report indicates that Individual Defendants failed to investigate whether the murder was drug-related; accordingly, the fact that Collazo had planned to deliver marijuana to Griffin is relevant. Although the court recognizes the potential prejudicial impact of admitting evidence that a witness has used illegal drugs to a jury, the court will allow this evidence under Fed. R. Evid. 403. Nevertheless, the court will not admit any references to Griffin's prior use or purchase of marijuana, apart from the night of Collazo's murder.

Second, plaintiffs additionally want to bar evidence of Griffin's arrest for misdemeanor theft as a minor. Defendants fail to articulate how the arrest history of this witness is relevant to their probable cause analysis or any other issue in this case.

*Shaw*

Plaintiffs first move to exclude evidence of Shaw's prior convictions and current incarceration. Shaw has several misdemeanor criminal convictions that date from 2008 to 2011 for disorderly conduct, resisting or obstructing an officer, and battery, which they argue are probative of Individual Defendants' probable cause analysis. The court will exclude references to these convictions, as they occurred after the events in this case. The probative value of these convictions, if any, is outweighed by their prejudicial effect. They are not admissible for

impeachment purposes under Fed. R. Evid. 609(a)(2) either, as the offenses are not crimes of dishonesty.

Plaintiffs then want to exclude certain of Shaw's drug convictions that are older than ten years old under Fed. R. Evid. 403. However, the court will not opine on these convictions, as plaintiffs have not specified which specific convictions they intend to bar. The court will caution against the use of unrelated past drug convictions, given the "considerable danger that evidence that a witness has used illegal drugs may so prejudice the jury that it will excessively discount the witness' testimony." *United States* v. *Gallardo*, 497 F.3d 727, 733 (7th Cir. 2007) (cleaned up).

Plaintiffs next seek to bar evidence of Shaw's 2018 conviction and current incarceration under Fed. R. Evid. 609. In 2018, Shaw was convicted of felon in possession of a firearm and possession of marijuana, for which he remains incarcerated today. Under Fed. R. Evid. 609(a)(1)(A), felony convictions "must be admitted, subject to Rule 403, in a civil case" for impeachment purposes. The Seventh Circuit has outlined several factors to consider when determining whether the probative value of an conviction outweighs its prejudicial effect: "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the witness's testimony; and (5) the centrality of the credibility issue." *Owens* v. *Ellison*, No. 13-cv-7568, 2017 WL 1151046 at *3 (N.D. Ill. Mar. 28, 2017) (citing to *United States* v. *Montgomery*, 390 F.3d 1013, 1015 (7th Cir. 2004)). Here, Shaw's conviction is recent, and his testimony is central to the case because his alleged involvement in the underlying crimes is quite intertwined with that of Plaintiffs. For these reasons, the court will permit his 2018 conviction only for impeachment purposes under Fed. R. Evid. 609(a)(1)(A).

Next, plaintiffs seek to exclude Shaw's deposition testimony in which he suggested that he intended to use earnings from a drug sale to purchase a gun from Collazo, arguing that "there is no nexus between Plaintiff's claims and Shaw's alleged drug dealing." (Dkt. 317 at 4.) Defendants do not directly oppose this motion, so the court will exclude this testimony.

Finally, plaintiffs move to exclude references to a settlement award Shaw received related to the criminal case filed against him related to the instant offense. Individual Defendants do not dispute this portion of the motion, so this portion is likewise granted.

**No. 7: To Bar References to Plaintiffs' Arrests or Convictions Prior to the Collazo Murder**

Plaintiffs move to bar references to their arrests or convictions prior to the Collazo murder. This motion is granted.

Mitchell had been arrested as a juvenile for trespass to a vehicle, battery, and robbery of a bicycle, and Fulton had been arrested for possession of cannabis. (Dkt. 318-1; Dkt. 318-2.) Mitchell was also arrested in 2021, after which he completed supervision and retains no conviction. In 2022, Mitchell was convicted for a misdemeanor offense, and his supervision was terminated unsuccessfully. His conviction remains on his record. Plaintiffs argue these arrests are irrelevant to Collazo's murder and do not factor in Individual City Defendant's probable cause

analysis. As pointed out in *Barber* v. *City of Chi.*, 725 F.3d 702, 714 (7th Cir. 2013), "[p]resenting a § 1983 plaintiff's criminal history to the jury presents a substantial risk that the jury will render a defense verdict based not on the evidence but on emotions or other improper motives, such as a belief that bad people should not be permitted to recover from honorable police officers."

Defendants argue that the evidence is admissible within the non-propensity purposes allowed by Fed. R. Evid. 404(b): (1) that the arrest history was part of the probable cause determination (suggesting implausibly that prior arrests for minor offenses were part of a probable cause analysis for a murder); (2) that prior arrests and encounters with police officers tend to show that it was "much less likely that their will was overborne by police" during their interrogations in this case (although they do not indicate that a lengthy interrogation occurred for any of the earlier arrests); and, (3) that the past encounters bear on plaintiff's claim of damages. These arguments are thin at best.

In the officers' Arrest and Prosecution Report, there is only one non-specific reference to Fulton's criminal history. (Dkt. 346-4 at 6.) The extent to which this sole reference to Fulton's arrest was probative of the probable cause determination for Collazo's murder is surely minimal, since many residents of the City of Chicago have an arrest in their history. The effect of previous encounters with the police on the plaintiffs in the events at issue, without their testimony or some scientific data, is entirely speculative. See *Brooks* v. *Solis*, No. 15 CV 3429, 2017 WL 2908767, at *2 (N.D. Ill. July 7, 2017) (stating that "prior arrests could *sensitize*, rather than *desensitize*, a person to the trauma of being placed and held in custody.") (emphasis in original).

Evidence of plaintiffs' arrests and convictions, both before and after Collazo's murder, has no connection to their claim for damages in this case; at least, any minimal relevance is likely outweighed by the risk of unfair prejudice. *See Cianfaglione* v. *Rogers*, No. 10 CV 2170, 2012 WL 1982536, at *6 (C.D. Ill. June 4, 2012) (barring past arrest history where the defendants had not sufficiently demonstrated that plaintiff's prior arrest record was substantial enough to be used to weaken her emotional damages claim). For these reasons, the motion is granted.

## No. 8: To Bar All Mentions of Plaintiff Anthony Mitchell's Criminal Convictions and Wrong Acts Evidence (Dkt. 319)

Plaintiffs move to bar any evidence, testimony, or reference to Mitchell's prior arrests and criminal convictions, his demeanor and behavior while he was a teenager, evidence relating to Mitchell's father, and other bad acts including a situation where Mitchell fraudulently took money from John Fulton's bank account. This motion is granted in part and denied in part.

### *References to Mitchell's 2021 Misdemeanor Offense and 2022 Conviction*

Reiterating the concerns articulated in its order on plaintiffs' motion *in limine* no. 7, the court will exclude evidence of his 2021 and 2022 arrest and conviction. They have no connection to their claim for damages in this case, and any minimal relevance is outweighed by the risk of unfair prejudice.

<u>Conflict Between Mitchell and Fulton</u>

Plaintiffs seek to bar evidence of conflict between Mitchell and Fulton. Individual Defendants contend that the fact that Mitchell and Fulton had a falling out prior to their arrests is probative of their theory that they confessed against each other. However, this theory appears to be entirely speculative, as plaintiffs seem to concede relevance. (*See* Dkt. 319 at 3) ("[a]ll the jury need know is that Fulton and Mitchell had a falling out before their arrest.") The evidence may be admitted. Whether there is sufficient evidence to allow argument that their conflict caused them to confess against each other is a question for a later day. The court will not admit references to their more recent conflict post-release while working together at Anna Mae Auto Sales, as the conflict has no bearing on the issues in this lawsuit.

<u>Mitchell's Teenage Years</u>

Plaintiffs next move to bar evidence of Mitchell's behavior as a teenager, the nature of his relationship with his father, and his father's status as a drug user. Individual Defendants seek to introduce each of these pieces of evidence to impugn Mitchell's character but are entirely unrelated to the issues in this lawsuit. Particularly, references to his past drug use over two decades ago are unfairly prejudicial. *See Gallardo*, 497 F.3d at 733 (there is "considerable danger that evidence that a witness has used illegal drugs may so prejudice the jury that it will excessively discount the witness' testimony"). That being said, if plaintiffs introduce evidence of Mitchell's "good character" as a teenager, then defendants are permitted to introduce some of the evidence plaintiffs seek to bar here on cross examination. The court will permit defendants to introduce on cross-examination that Mitchell would skip school and smoke marijuana regularly as a teenager. However, that Mitchell did not have a good relationship with his father certainly has no bearing on his character.

**No. 9: To Bar Mention of Dismissed Defendants, Claims, and Lawsuits**

Plaintiffs move to exclude references to dismissed defendants, claims, and prior lawsuits filed they filed against some of the named defendants in this case. The motion is granted in part, and ruling is reserved in part.

First, they seek to bar references to defendants and claims already dismissed in this case. As defendants do not oppose this portion of the motion, references to dismissed defendants and claims in this case, *Fulton* v. *Bartik*, Case No. 20-cv-3118, will be excluded at trial. If either party seeks to introduce evidence or argument related to dismissed defendants or claims, they must preview the evidence outside the presence of the jury. The court reserves ruling as to such evidence.

Next, defendants move to bar references to two lawsuits plaintiffs and Shaw filed against some of the defendants named in this case for impeachment purposes. (*See Fulton, et al.* v. *Zalatoris, et al.*, 05-cv-01551; *Fulton, et al.* v. *Zalatoris, et al.*, 07-cv-05569.) Individual Defendants particularly intend to question plaintiffs' decision not to name Bartik and Franko as defendants in those lawsuits. Any probative value Individual Defendants hope to evince by

referencing these other suits is outweighed by the likelihood that these lawsuits will confuse and mislead the jury to mistakenly think that those claims had no merit. Those suits were not dismissed on their merits but were stayed pending the outcome of their criminal cases and, upon being convicted, were dismissed. See *Heck* v. *Humphrey*, 512 U.S. 477 (1994). It will be a challenge enough to present a clear and cohesive case for the jury based on the number of defendants and claims at issue – introducing two other lawsuits will unnecessarily complicate matters.

**No. 10: To Bar References to Plaintiffs' Personal Sexual Histories or Interests (Dkt. 321)**

Plaintiffs move to bar all references to their own personal sexual histories or interests. This motion is granted in part and denied in part.

At the outset, the court notes that its ruling only applies to the specific pieces of evidence described in and attached to plaintiffs' motion. Plaintiffs seek to bar three specific references to their past sexual activities and interests, primarily on the basis that moral judgments about sexual matters can improperly bias the jury.

Plaintiffs first move to bar evidence that references the fact that Fulton ordered a pay-per-view pornographic film the night of Collazo's murder. The court agrees that the nature or title of the movie Fulton ordered on the night of Collazo's murder is irrelevant. Individual Defendants are certainly permitted to elicit testimony regarding his rental of a movie that night but disclosing the title of the video would be irrelevant and unfairly prejudicial under Fed. R. Evid. 403.

Next, plaintiffs seek to bar a portion of Mitchell's deposition testimony, during which he testified that he and Fulton "messed with different women together" and that he knew that Fulton was with "other women besides Yolanda." (Dkt. 321-2 at 5.) Individual Defendants have failed to demonstrate the relevance of this portion of the testimony to any issue in the case. The court will exclude this testimony, as it may unfairly prejudice the jury.

Last, plaintiffs move to exclude a portion of Henderson's deposition testimony in which she testified that she did not know whether Fulton was cheating on her with Griffin. (Dkt. 321-2 at 2:15-19; Dkt. 321-3 at 2:17-24.) Henderson testified that she heard Fulton on the phone with a person named woman named "Precious" – which plaintiffs state was Griffin's nickname. (Dkt. 321-2 at 42: 4-24.) While what Henderson overheard on the phone could be used to demonstrate her bias against Fulton, the purpose Individual Defendants purport to use this testimony is unpersuasive. They say that "Ms. Henderson's testimony about conversations between Ms. Griffin and Fulton would … serve to rebut Plaintiffs' anticipated arguments that they could not have killed Collazo because there is insufficient evidence that they knew about his whereabouts." (Dkt. 349 at 4.) The connection between this conversation and the whereabouts of Collazo is not clear. While the court is certainly willing to revisit this testimony at trial, a better explanation of relevance would be necessary.

The court does not categorically bar every and any reference to plaintiffs' alliances with or interest in a person of the opposite sex. *See Abernathy* v. *E. Ill. R.R. Co.*, 940 F.3d 982, 992

(7th Cir. 2019) ("[The Seventh Circuit has] held repeatedly that parties should be granted reasonable latitude in cross-examining witnesses for bias.").

## No. 11: To Bar Recordings of Plaintiffs' Phone Calls While in Custody (Dkt. 322)

Plaintiffs move to bar all recordings of plaintiffs' phone calls during their years of incarceration. This motion is granted in part and denied in part.

Plaintiffs seek to bar "dozens" of phone call recordings, summarily describing all of them as irrelevant to the issues in this case. The court will not categorically bar every phone recording made during the plaintiffs' time in incarceration at this time. Defendants, however, argue that their proposed Exhibit 112, which is included in their proposed trial exhibit list, should be admitted. (*See* Dkt. 284-2 at 10.) Proposed Trial Exhibit No. 112 is a record of a phone conversation between Fulton and an unnamed male individual. During the recording, Fulton tells the man about a physical altercation that took place in his cell, during which Fulton says he beat up on other inmate and "tricked" another to come into his cell so that he "could lock the door and stomp his brains out." (Dkt. 350-2 at 14:50-15:14). During the same call, Fulton says that he arranged for Fulton's brother to give Antonio Shaw $500 upon his release and that he told Shaw to leave Chicago and not come back. (Dkt. 350-2 at 24:45-28:56.)

Both portions of phone calls cited above are not hearsay under Fed. R. Evid. 801(d)(2). However, the court will not admit the first portion of the call related to Fulton's physical altercation. The altercation is not related to any issue in this case, and there is a danger that the jury will conclude that Fulton acted in conformity with the conduct describes on the phone call the night of Collazo's murder. Any probative value is substantially outweighed by the risk of unfair prejudice. Fed. R. Evid. 403. If at trial, the plaintiffs introduce "good character" evidence regarding Fulton, then the court will consider then whether this evidence can be admitted for impeachment purposes alone. If Shaw is called as a witness at trial, the court will admit the portion of the phone call related to Shaw to show his potential bias under Fed. R. Evid. 608(b)(2).

## No. 12: To Bar Hearsay Statement of Plaintiff Fulton's Grandfather Regarding a Gasoline Can Recovered from His Garage (Dkt. 323)

Plaintiffs move to bar a purported out-of-court statement made by Fulton's grandfather, Adolphus Lucas, regarding a gasoline can that Individual Defendants recovered from his garage. The motion is denied.

Defendants seek to introduce a statement that Lucas allegedly made to investigating officers in which he conveyed that a gasoline can found in his garage was not his and that he had never seen it before. (*See* Defs.' Proposed Trial Exhibit 6 at 10C.) Lucas had passed away by the time of the criminal trial in this case, so he was unavailable to testify.

Plaintiffs argue that any such statement made by Lucas is inadmissible, as it violates the rule against hearsay. *See* Fed. R. Evid. 802. Defendants respond that because they do not seek to admit the statement not for truth, but rather for its effect upon the listener. *See United States* v.

*Law*, 990 F.3d 1058, 1062 (7th Cir. 2021) (citation omitted and cleaned up) (a statement made in interviews with law enforcement, offered to "establish the course of the investigation, rather than to prove the truth of the matter asserted, are nonhearsay and therefore admissible."). In *Woods* v. *City of Chicago*, 234 F.3d 979, 986–87 (7th Cir. 2000), the Seventh Circuit upheld the district court's decision to admit an out-of-court statement conveyed to defendants that had been memorialized in the officer's complaint to show its effect on the listener. The court clarified that the statement was admissible "not to show that [the suspect] had actually performed the conduct as reported in those documents, but rather to show that [the officers] had probable cause to arrest [the suspect] based upon the information communicated to them." *Id*. Similarly here, Individual Defendants assert that because of the gasoline can found at the murder scene and the gasoline odor found on Collazo's body, Lucas's statement factored into their probable cause analysis. This is relevant to plaintiffs' malicious prosecution claim.

Accordingly, the court will admit this statement only for its effect on the officers who heard the statement. The court will give the jury a limiting instruction if requested.

## No. 13: To Bar All References to a Non-Functional Gun Possessed by Plaintiff Fulton (Dkt. 324)

Plaintiffs move to bar all references to a non-functional gun that John Fulton acquired prior to the night of Collazo's murder. Ruling on this motion is reserved.

Plaintiffs argue this gun has no relevance to this case because Fulton did not use the gun in any encounter with Collazo, no witness mentioned the gun any statement or police report, and the gun was never recovered after the murder. Based on their accounting of the facts, plaintiffs argue that any reference to the gun could only lead the jury to think that Fulton has a propensity to engage in criminal conduct.

Defendants dispute that the gun played no role in any encounter between plaintiffs and Collazo. Instead, they respond that lacking a working gun is "central" to Fulton's interest in purchasing a gun from Collazo and that even if the gun was non-working, it could still have played a role in Collazo's abduction and murder. The court acknowledges plaintiffs' fears that the jury may view Fulton's gun ownership as propensity evidence. Unless Individual Defendants can show a foundation for a reason a non-working gun could have played a role in the murder, the prejudice outweighs any probative value it might have.

## No. 14: To Bar Reference to Defendants' Commendations or Awards (Dkt. 325)

Plaintiffs seek to bar evidence of Individual Defendants' awards or commendations. Ruling on this motion is reserved until trial.

Defendants agree that good character evidence is generally inadmissible, as any character evidence is not admissible to show action in conformity with such character under Fed. R. Evid. 404(a). *See, e.g.*, *Charles* v. *Cotter*, 867 F. Supp. 648, 659 n.6 (N.D. Ill. 1994) (granting motion *in limine* and explaining that "the court strongly suspects that evidence of defendants' commendations, awards or honors could only serve the improper function of providing evidence

of defendants' character for the purpose of proving action in conformity therewith on the night in question."); *White* v. *Gerardot*, No. 1:05-CV-382 2008 WL 4724000, at *1 (N.D. Ind. Oct. 24, 2008) (granting motion *in limine* to bar evidence of officer's awards as irrelevant). As Individual Defendants point out, evidence of an individual defendant's work history and job duties may be introduced for the narrow purpose of providing relevant background information. *See Brown* v. *City of Chicago, et al.*, No. 19-cv-04082, Dkt. 343 at 10 (N.D. Ill. July 30, 2024) (Jenkins, J.) (allowing evidence of defendants' work history and job duties). This does not extend to awards and commendations.

Defendants respond that they seek to introduce such good character evidence to rehabilitate themselves if plaintiffs attack their character. Ruling is reserved if and until plaintiffs open the door to this evidence. *See Simmons*, 2017 WL 3704844, at *11 (holding that "if plaintiffs offer evidence of prior complaints and disciplinary actions against the officer defendants, those defendants may offer evidence of commendations and awards to rebut the possibility of an inference of bad character.")

## No. 15: To Bar Arguments Appealing to Jurors' Pecuniary Interests as Taxpayers (Dkt. 326)

Plaintiffs move to bar arguments that appeal to the pecuniary interests of the jurors as taxpayers. The motion is granted.

The court agrees such arguments are inadmissible, as the Seventh Circuit has clearly held that such appeals are, "of course," improper. *Moore ex rel. Estate of Grady* v. *Tulja*, 546 F. 3d 423, 429 (7th Cir. 2008). Defendants argue that the Seventh Circuit's holding only applies in the criminal context, but *Moore* was a civil rights case brought under 42 U.S.C. § 1983, and district courts in this circuit have consistently barred such testimony. S*ee, e.g., McCoy* v. *Mennerich*, 584 F. Supp. 3d 635, 641 (S.D. Ill. 2022) (granting similar motion *in limine*, also in a civil rights case); *United States ex rel. Patzer* v. *Sikorsky Aircraft Corp.*, 730 F. Supp. 3d 856, 891 (E.D. Wis. 2024) (citing *Moore,* 546 F. 3d at 429, to bar arguments at trial that address the pecuniary interests of jurors as taxpayers in false claims act action); *Gomez* v. *Schoenbeck*, No. 3:16-CV-291-NJR-GCS, 2019 WL 3887128, at *3 (S.D. Ill. Aug. 19, 2019) (also applying *Moore* to bar such testimony in civil context).

## No. 16: To Bar Any Reference to the Individual Defendants' Financial Inability to Pay a Judgement for Compensatory Damages (Dkt. 327)

Plaintiffs seek to bar any reference to the Individual Defendants' ability to pay for compensatory damages. The motion is granted.

The Individual Defendants are not permitted to discuss their inability to pay the compensatory damages plaintiffs seek, as they have asserted a claim of indemnification against the City of Chicago. Courts generally bar evidence of indemnification "because it may encourage juries to inflate compensatory damages awards." *Jones* v. *City of Chicago*, No. 14-CV-4023, 2017 WL 413613, at *4 (N.D. Ill. Jan. 31, 2017). Here, the court agrees that indemnification "is not probative on any issue in the case-in-chief. *Saunders* v. *City of Chicago*, 320 F.Supp.2d 735, 738 (N.D. Ill. 2004). As for punitive damages, a jury is generally familiar with the compensation of a police detective, such that, there should be no need to present such evidence to the jury. If,

however, the officers raise the issue in their testimony, plaintiffs may introduce evidence of indemnification and inquire into the finances of that defendant if they wish. *See Kemezy* v. *Peters*, 79 F.3d 33, 36 (7th Cir. 1996) (holding that a "defendant who cannot pay a large award of punitive damages can point this out to the jury so that they will not waste their time … by awarding an amount that exceeds his ability to pay"); *see also Gonzalez* v. *Olson*, No. 11 C 8356, 2015 WL 3671641, at *7 (N.D. Ill. June 12, 2015).

Date: January 31, 2025

_____
U.S. District Judge Joan H. Lefkow