## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| JOHN FULTON, | ) | |
| | ) | Case No. 20-cv-3118 |
| *Plaintiff,* | ) | |
| | ) | Hon. Joan H. Lefkow |
| *v.* | ) | District Judge |
| | ) | |
| ROBERT BARTIK, *et al*. | ) | Hon. Maria Valdez |
| | ) | Magistrate Judge |
| *Defendants.* | ) | |

| | | |
|---|---|---|
| ANTHONY MITCHELL, | ) | |
| | ) | Case No. 20-cv-3119 |
| *Plaintiff,* | ) | |
| | ) | Hon. Joan H. Lefkow |
| *v.* | ) | District Judge |
| | ) | |
| ROBERT BARTIK, *et al*. | ) | Hon. Maria Valdez |
| | ) | Magistrate Judge |
| *Defendants.* | ) | |

## PLAINTIFFS' PETITION
## FOR PREVAILING PARTY SECTION 1988 ATTORNEYS' FEES

Jon Loevy
Russell Ainsworth
Julia Rickert
Isaac Green
LOEVY & LOEVY
311 N. Aberdeen Street
Chicago, IL 60607

Andrea Lyon
Lyon & Kerr
53 W. Jackson Blvd
Suite 1650
Chicago, IL 60604

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

I.    THE COURT SHOULD APPROVE PLAINTIFFS' ATTORNEYS' FEES..................1

    A.  The Number of Hours Sought in Plaintiffs' Petition is Reasonable ........................1

        1.  Plaintiffs' Hours Are Particularly Reasonable In Light Of The Number Of
Hours Defendants Spent On The Same Tasks .................................................1

        2.  Defendants' Specific Objections To Plaintiffs' Hours Should Be
Rejected ..........................................................................................................3

    B.  The Hourly Rates Sought Are Reasonable And Should Be Approved ...................7

        1.  Prevailing Market Rates For Top-Tier Legal Services Support The
Reasonableness Of The Rates Sought ...........................................................7

        2.  The Hensley Factors Strongly Support The Reasonableness Of Plaintiffs'
Request ...........................................................................................................8

        3.  Plaintiffs' Counsels' Overall Efficiency Supports The Rates Sought ..........10

        4.  Plaintiffs' Counsels' Qualifications Support The Rates Sought ................. 10

            a.  Jon Loevy (28 years practicing law)..................................................... 10

            b.  Russell Ainsworth (23 years practicing law) ..........................................14

            c.  Julia Rickert (15 years practicing law) ...................................................15

            d.  Sam Heppell (11 years practicing law) ...................................................16

            e.  Alyssa Martinez, Isaac Green, Fatima Ladha (24 years experience)......17

            f.  Andrea Lyon (49 years of experience)....................................................19

            g.  Paralegals and Investigators ...................................................................20

    C.  The Overall Fee Request Is Reasonable For Wrongful Conviction Litigation......20

i

II.      PLAINTIFFS' REQUEST FOR COSTS SHOULD BE APPROVED ........................21

CONCLUSION ..........................................................................................................................23

**Cases**                                                                      **Page(s)**

*Adamik v. Motyka,*
 No. 12 C 3810, 2018 WL 3574751 (N.D. Ill. July 25, 2018)..........................................4, 5, 13

*Bd. of Trs. of the Health & Welfare Dep't of the Constr. & Gen. Laborers' Dist. Council of Chicago & Vicinity v. Allison Enters., Inc.,*
 No. 12 C 4097, 2016 WL 4397972 (N.D. Ill. Aug. 18, 2016) ...................................................4

*Blackwell v. Kalinowski,*
 No. 08 C 7257, 2012 WL 469962 (N.D. Ill. Feb. 13, 2012) ...................................................13

*Brown v. City of Chicago,*
 No. 19 CV 4082, 2025 WL 2785426 (N.D. Ill. Sept. 30, 2025) ........................................8, 10

*Cooper v. Casey,*
 897 F. Supp. 1136 (N.D.Ill. 1995) ..........................................................................................3

*Cooper v. Eagle River Mem'l Hosp., Inc.,*
 270 F.3d 456 (7th Cir. 2001).................................................................................................22

*Craig v. Popmatters Media,* Inc.,
 448 F. Supp. 3d 844 (N.D. Ill. 2020) .......................................................................................6

*Dement v. Abbot Cap. Corp.,*
 1985 WL 1832 (N.D. Ill. June 12, 1985)..................................................................................5

*Divane v. Krull Elec. Co.,*
 319 F. 3d 307 (7th Cir. 2003)..............................................................................................3, 6

*Doe v. MacLeod,*
 No. 18-CV-03191, 2024 WL 1335041 (C.D. Ill. Mar. 28, 2024) ...........................................18

*Dubin v. Bd. of Madison Area Tech. Coll. Dist.,*
 No. 10-CV-035, 2011 WL 13209629 (W.D. Wis. Dec. 19, 2011) .........................................10

*Duran v. Town of Cicero,*
 No. 01 C 6858, 2012 WL 1279903 (N.D. Ill. Apr. 16, 2012) ................................................14

*Entertainment Software Ass'n v. Blagojevich,*
 2006 WL 3694851 (N.D. Ill. Aug. 9, 2006) .............................................................................4

*Exchange Nat. Bank of Chicago v. Rago,*
 No. 89 C 260, 1989 WL 118275 (N.D. Ill. Sept. 22, 1989) ......................................................4

*Farfaras v. Citizens Bank & Tr. of Chicago*,
    433 F.3d 558 (7th Cir. 2006)..................................................................................4

*Farrar v. Hobby*,
    506 U.S. 103 (1992) ..............................................................................................8

*F.C. Bloxom Co. v. Tom Lange Co. Int'l, Inc.*,
    No. 20-3147, 2025 WL 2364983 (C.D. Ill. Aug. 14, 2025) .................................18

*Fields v. City of Chicago*,
    No. 10 C 1168, 2018 WL 253716 (N.D. Ill. 2018)...............................................20

*Fox ex rel. Fox v. Barnes*,
    No. 09 C 5453, 2013 WL 4401802 (N.D. Ill. Aug. 15, 2013) ...........................6, 7

*French v. City of Los Angeles*,
    No. EDCV2000416JGBSPX, 2022 WL 2189649 (C.D. Cal. May 10, 2022) ...16, 20

*Garcia v. Chicago*,
    No. 01 C 8945, 2003 WL 22175620 (N.D.Ill. Sept. 19, 2003) ..........................5, 11

*Gautreaux v. Chicago Housing Auth.*,
    491 F.3d 649 (7th Cir. 2007)..................................................................................5

*Gerling v. Waite*,
    No. 4:17-CV-02702 JAR, 2022 WL 558083 (E.D. Mo. Feb. 24, 2022) ...............20

*Gibson v. City of Chicago*,
    873 F. Supp. 2d 975 (N.D. Ill. 2012).....................................................................5

*Gilliam v. Allen*,
    62 F.4th 829 (4th Cir. 2023)..................................................................................20

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ..............................................................................................1

*Herring Networks, Inc. v. Maddow*,
    No. 3:19-cv-1713-BAS-AHG, 2021 WL 409724 (S.D. Cal. Feb. 5, 2021) .........15

*Hill v. Harrington*,
    2024 WL 4333192 (N.D. Ill. Sept. 28, 2024)......................................................12

*HollyFrontier Cheyenne Ref., LLC v. Renewable Fuels Ass'n*,
    594 U.S. 382 (2021) ............................................................................................21

iv

*I.H. v. California*,
No. 2:19-CV-02343, 2025 WL 1158975 (E.D. Cal. Apr. 21, 2025) ...........................12, 16

*In re Southwest Airlines Voucher Litig.*,
No. 11 C 8176, 2013 WL 5497275 (N.D. Ill. Oct. 3, 2013)....................................................14

*Jimenez v. City of Chicago*,
No. 09 C 8081, 2012 WL 5512266 (N.D. Ill. Nov. 14, 2012) ..................................................9

*Knopp v. Wells Fargo Bank, N.A. for registered holders of Park Place Sec., Inc.*,
No. 16 C 2330, 2017 WL 3141389 (N.D. Ill. July 25, 2017)..................................................22

*Lopez v. City of Chicago*,
No. 01 C 1823, 2007 WL 4162805 (N.D. Ill. Nov. 20, 2007) ...................................................5

*McDonough v. Briatta*,
935 F. Supp. 2d 897, 904 (N.D. Ill. 2013)...............................................................................1

*Medina v. City of Chicago*,
No. 00 C 1, 2001 WL 1104600 (N.D. Ill. Sept. 14, 2001) ........................................................6

*Mings v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*,
No. 1:04-CV-0584, 2005 WL 115510 (S.D. Ind. Jan. 18, 2005)............................................22

*Montanez v. Fico*,
931 F. Supp. 2d 869 (N.D. Ill. 2013) ......................................................................................14

*Montanez v. Simon*,
755 F.3d 547 (7th Cir. 2014).....................................................................................................1

*Morjal v. City of Chicago*,
No. 12 CV 185, 2013 WL 2368062 (N.D. Ill. May 29, 2013)...................................................5

*Mouloki v. Epee*,
No. 14 C 5532, 2017 WL 2791215 (N.D. Ill. June 27, 2017)..................................................14

*National Rifle Ass'n v. Village of Oak Park*,
871 F. Supp. 2d 781 (N.D. Ill. 2012)......................................................................................12

*N.T. v. Galesburg Cmty. Unit Sch. Dist.*,
No. 4:24-CV-04124-JEH, 2025 WL 2375401 (C.D. Ill. Aug. 15, 2025) ...............................20

*O'Sullivan v. City of Chicago*,
484 F. Supp. 2d 829 (N.D. Ill. 2007) ........................................................................................6

*People Who Care v. Rockford Bd. of Educ.*,
    90 F.3d 1307 (7th Cir. 1996)...............................................................................2

*Petersen v. Gibson*,
    2002 WL 31738798, *1 (N.D.Ill. Dec. 4, 2002) .........................................6

*Pisut v. Pasavare, Inc.*,
    03 C 4382, 2005 WL 1138638 (N.D. Ill. Apr. 29, 2005) ...........................2

*Pritzker v. Jones*,
    No. 82 C 607, 1986 WL 15139 (N.D. Ill. Dec. 29, 1986) ...........................2

*Ragland v. Ortiz*,
    No. 08 C 6157, 2012 WL 4060310 (N.D. Ill. Sept. 14, 2012) ..................14

*Restivo v. Hessemann*,
    846 F.3d 547 (2d Cir. 2017)...............................................................................20

*Robinson v. City of Harvey*,
    No. 99 C 3696, 2004 WL 2033714 (N.D. Ill. Aug. 13, 2004) ....................4

*Robinson v. City of Harvey*,
    2008 WL 4534158 (N.D. Ill. Oct. 7, 2008) ...............................................13

*Rodriguez ex rel. Fogel v. City of Chicago*,
    No. 08 C 4710, 2013 WL 5348307 (N.D. Ill. Sept. 24, 2013) ....................3

*Santiago v. Rodriguez*,
    No. 04 C 7677, 2008 WL 11517320 (N.D. Ill. Mar. 28, 2008).............3, 6, 14

*Smith v. City of La Verne*,
    No. CV 23-644-KK-EX, 2024 WL 4331733 (C.D. Cal. Sept. 4, 2024)................18

*Sottoriva v. Claps*,
    617 F.3d 971 (7th Cir. 2010)................................................................................3

*Spina v. Forest Preserve Dist. of Cook County*,
    No. 98 C 1393, 2002 WL 1770010 (N.D.Ill. July 31, 2002).......................9

*Sughayyer v. City of Chicago*,
    No. 09 C 4350, 2012 WL 2359065 (N.D. Ill. June 20, 2012) ..................13

*Tchemkou v. Mukasey*,
    517 F.3d 506 (7th Cir. 2008).............................................................................5

*United States ex rel. Scott v. Humana, Inc.,*
    No. 3:18-CV-00061-GNS-CHL, 2025 WL 2744602 (W.D. Ky. Apr. 30, 2025) ............15, 18

*Watchfire Signs LLC v. Catalyst Outdoor Advert. LLC,*
    No. 21-2128, 2023 WL 4843996 (C.D. Ill. June 21, 2023) .....................................................18

*Valenzuela v. City of Anaheim,*
    No. SACV1700278CJCDFMX, 2023 WL 2249178 (C.D. Cal. Feb. 23, 2023) ...................15

*Victory v. Cnty.,*
    452 F. Supp. 3d 185 (E.D. Pa. 2020) .........................................................................................20

*Warfield v. City of Chicago,*
    733 F. Supp. 2d 950 (N.D. Ill. 2010) ........................................................................................10

*Wells v. City of Chicago,*
    925 F. Supp. 2d 1036 (N.D. Ill. 2013) .............................................................................4, 13, 14

*White v. CW Brown Holdings LLC,*
    No. 4:22-CV-1282 RLW, 2023 WL 4104466 (E.D. Mo. June 21, 2023) ............................20

*Williams v. Apfel,*
    No. IP 98-1396-C, 2000 WL 684259 (S.D. Ind. Apr. 20, 2000) ..........................................21

*World Outreach Conf. Ctr. v. City of Chicago,*
    234 F. Supp. 3d 904 (N.D. Ill. 2017) ..........................................................................................3

*Zelaya v. City of Los Angeles,*
    No. 2:20-CV-08382, 2024 WL 3183882 (C.D. Cal. June 25, 2024) ...............................12, 15

### Introduction

Having won a $120 million jury verdict for their two clients, Plaintiffs' counsel now petition the Court for approval of their statutory attorneys' fees and costs pursuant to 42 U.S.C. § 1988. The number of hours and hourly rates sought are set forth in the parties' Local Rule 54.3 Joint Fee Statement, attached hereto to as Exhibit A. For the reasons discussed below, the Court should award counsel their full lodestar and grant Plaintiffs' Petition.

### I.     The Court Should Approve Plaintiffs' Attorneys' Fees

Under familiar lodestar principles, prevailing parties are entitled to a fee equal to the number of hours expended times at a reasonable hourly rate. *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). Where, as here, the attorneys secured an outstanding result for the clients, the lodestar is presumptively appropriate. *Id.* at 436; *Montanez v. Simon*, 755 F.3d 547, 556 (7th Cir. 2014).

### A.  The Number Of Hours Sought In Plaintiffs' Petition Is Reasonable

This litigation commenced in 2020. During the ensuing five years, up to and including trial, Plaintiffs' attorneys billed **4,286** hours of work on the case, and their support staff spent an additional **730** hours. *See* Exhibit A (Joint Fee Statement); Exhibit B (Plaintiffs' billing records).

### 1.   Plaintiffs' Hours Are Particularly Reasonable In Light Of The Number Of Hours Defendants Spent On The Same Tasks

Were there any doubt that Plaintiffs' totals comprise a reasonable amount of time, there exists a very relevant cross-check, namely, the number of hours the Defendants' attorneys spent litigating the very same issues. *E.g.*, *McDonough v. Briatta*, 935 F. Supp. 2d 897, 904 (N.D. Ill. 2013), on reconsideration, No. 06 C 2732, 2013 WL 12438872 (N.D. Ill. Aug. 9, 2013) (number of hours billed not excessive where defendants billed twice as many hours in case with substantial motion practice, wide-ranging discovery, and complex claims).

In this case, it turns out that Defendants' counsel billed a combined **7,296** hours, and another

**700** hours for paralegals, on the same case. *See* Exhibit A (Joint Fee Statement); Exhibit C (Defendants' billing records). These numbers are drawn from the available bills produced by Defendants during the Local Rule meet and confer process but do not include the additional time spent on the case by the various lawyers in the City's Corporation Counsel's office, who also worked on the case over the years but do not keep their time. In response to Plaintiffs' request to quantify these additional defense attorney hours to whatever extent Defendants could do so, Defendants' counsel responded that it was "impossible to make a fair estimate" because those attorneys "do not keep hours." *See* Exhibit D. Defendants' counsel did acknowledge, however, that: "The best I can offer is that a *significant amount of time and resources* are spent behind the scenes." *Id.* (emphasis added).

In other words, the reasonableness of the roughly 4,300 hours billed by Plaintiffs' counsel is corroborated by the fact that Defendants' counsel billed almost double the hours as Plaintiffs' counsel working on the same things in the same case, particularly when adding in the "significant" undocumented hours of the City's in-house attorneys. *See also Pisut v. Pasavare, Inc.*, 03 C 4382, 2005 WL 1138638, *1 (N.D. Ill. Apr. 29, 2005) ("[I]t is well known that in most cases it takes more time to prepare and try a case on the plaintiff's behalf than it takes to defend"). That ratio is strong evidence of the reasonableness of Plaintiffs' requested hours. *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1314 (7th Cir. 1996) (court erred in reducing plaintiff's hours where opposing counsel billed more hours in same time period); *cf. Pritzker v. Jones,* No. 82 C 607, 1986 WL 15139, at *2 (N.D. Ill. Dec. 29, 1986) (Lefkow, J.) (considering the complexity of case and "the number of hours that [the prevailing] attorneys worked on the case, only about 21% fewer hours than [opposing counsel], the court cannot say that the amount of hours billed was excessive.").

**2. Defendants' Specific Objections To Plaintiffs' Hours Should Be Rejected**

Notwithstanding Plaintiffs' relative efficiency, Defendants have communicated objections to most of the hours Plaintiffs billed. According to the Defendants, Plaintiffs' **5,016.25** total hours (attorneys plus paralegals) should be cut back by more than half -- to **2,385.55** hours -- on account of alleged over-billing on some tasks, excessive staffing on others, and overall purported redundancy and over-billing, and other problems. *See* Exhibit A (Joint Fee Statement).

Defendants' objections are not well-taken. To state the obvious, where they themselves billed roughly two hours for every hour billed by Plaintiffs' counsel over the past five years of litigation, they are on extremely weak ground in trying to pick off this or that entry. *Cooper v. Casey,* 897 F. Supp. 1136, 1139 (N.D.Ill. 1995) ("It is worth noting once again that this dispute was not treated as a one-lawyer suit by defendants either--they took a team approach to the litigation").

The nitpicking exercise proposed by the Defendants should be rejected on other grounds as well. As this Court has observed, determining "reasonable" hours expended in the context of a fee award "'is a highly contextual and fact-specific enterprise,' and as such, the court has 'wide latitude' in awarding attorney's fees." *Rodriguez ex rel. Fogel v. City of Chicago*, No. 08 C 4710, 2013 WL 5348307, at *5 (N.D. Ill. Sept. 24, 2013) (Lefkow, J.) (quoting *Sottoriva v. Claps,* 617 F.3d 971, 975 (7th Cir. 2010)). "Fee petitions are not intended to create mini-trials," *World Outreach Conf. Ctr. v. City of Chicago*, 234 F. Supp. 3d 904, 918 (N.D. Ill. 2017) (Lefkow, J.), *aff'd*, 896 F.3d 779 (7th Cir. 2018), and "the court is not required at this stage to perform a 'line by line' review of the hours billed by Plaintiffs' counsel," *Santiago v. Rodriguez*, No. 04 C 7677, 2008 WL 11517320, at *3 (N.D. Ill. Mar. 28, 2008) (quoting *Divane v. Krull Elec. Co.*, 319 F. 3d 307, 317 (7th Cir. 2003)).

Nor do the specific objections identified by Defendants have merit. Most of Defendants' proposed reductions are based in unsupported assertions that Plaintiffs' entries are "block billed"

3

and "vague." But courts in this district have routinely "decline[d] to make fee reductions simply because entries are block-billed." *Adamik v. Motyka*, No. 12 C 3810, 2018 WL 3574751, at *8 (N.D. Ill. July 25, 2018); *see also Bd. of Trs. of the Health & Welfare Dep't of the Constr. & Gen. Laborers' Dist. Council of Chicago & Vicinity v. Allison Enters., Inc.*, No. 12 C 4097, 2016 WL 4397972, at *6 (N.D. Ill. Aug. 18, 2016) ("Although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice." (quoting *Farfaras v. Citizens Bank & Tr. of Chicago*, 433 F.3d 558, 569 (7th Cir. 2006)).

Defendants also ask to disqualify Plaintiffs' entries that supposedly refer broadly to "calls," "pc" (phone calls), "meetings" and "reviewing." But these entries include a descriptions of the nature of such calls, meetings, or review. Especially when set in context, they clearly provide adequate grounds for this Court to assess reasonableness. *See Wells v. City of Chicago*, 925 F. Supp. 2d 1036, 1046 (N.D. Ill. 2013) ("Some of the descriptions of work provided by plaintiff's attorneys are somewhat cryptic or vague, but not so much that their reasonableness cannot be assessed adequately."); *Exchange Nat. Bank of Chicago v. Rago*, No. 89 C 260, 1989 WL 118275, at *2 (N.D. Ill. Sept. 22, 1989) (Lefkow, J.) ("The declaration of fees submitted is not a model for others to emulate (e.g., 'dance [sic] with Rogers re: subpoenae'; 'shuffling and rejecting'). Nevertheless, the court is able to read the entries and, taking them in context, conclude that . . . the amounts of time expended were reasonable.").

Defendants also quibble with trial-related entries that are supposedly too vague to assess whether the hours were reasonably expended. But this Court is familiar with the nature of jury trials and is well positioned to assess whether the amount of time spent preparing for and putting on a trial is reasonable. *Cf. Robinson v. City of Harvey*, No. 99 C 3696, 2004 WL 2033714, at *3 & n.7 (N.D. Ill. Aug. 13, 2004), *on reconsideration*, No. 99 C 3696, 2004 WL 2392009 (N.D. Ill. Oct. 22, 2004)

(permitting plaintiff to recover for "tersely described trial preparation time" where it was clear that attorney played role in trial). *See also Garcia v. Chicago,* No. 01 C 8945, 2003 WL 22175620, at *5 n.11 (N.D.Ill. Sept. 19, 2003) ("Contrary to the City's arguments, this court finds that L&L sufficiently accounted for the time of each attorney. Although L&L used shorthand for many entries, they are clear enough to describe the tasks completed on the day in question and provide at least as much detail as the Ancel Glink time records").

Defendants further ask this Court to deduct essentially all time spent in meetings, phone calls, or emailing, claiming such work is "duplicative." But, as this Court explained in *Morjal v. City of Chicago,* "merely because two lawyers have billed for the same task does not mean that the hours should be deducted." No. 12 CV 185, 2013 WL 2368062, at *5 (N.D. Ill. May 29, 2013) (Lefkow, J.) (quoting *Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 989 (N.D. Ill. 2012)). This Court continued: "The practice of law often, indeed usually, involves significant periods of consultation among counsel. Talking through a set of authorities or seeking advice on a vexing problem is often significantly more efficient than one attorney's trying to wade through the issue alone." *Id.* (quoting *Tchemkou v. Mukasey*, 517 F.3d 506, 511-12 (7th Cir. 2008)); *see also Lopez v. City of Chicago*, No. 01 C 1823, 2007 WL 4162805, at *5 (N.D. Ill. Nov. 20, 2007) ("There is no hard-and-fast rule as to how many lawyers can be at a meeting or how many lawyers can spend discussing a project." (quoting *Gautreaux v. Chicago Housing Auth.*, 491 F.3d 649, 661 (7th Cir. 2007)); *Dement v. Abbot Cap. Corp.*, 1985 WL 1832, at *4 (N.D. Ill. June 12, 1985) (Lefkow, J.) ("Time spent in consultation is not unnecessary duplication, but rather typically necessary in order to make appropriate litigation decisions."); *Adamik v. Motyka*, No. 12 C 3810, 2018 WL 3574751, at *8 (N.D. Ill. July 25, 2018) ("Collaborating is not the equivalent of duplicating.").[1]

---

[1] Defendants take particular issue with the amount of time Jon Loevy spent communicating with

Defendants also contend that Plaintiffs billed an excessive number of hours for a variety of tasks. This Court has rejected similar excessiveness challenges where "the City has offered no objective standard, no reasonable number of hours to spend on a given activity, with which to compare [plaintiff's counsel's] records." *O'Sullivan v. City of Chicago*, 484 F. Supp. 2d 829, 837 (N.D. Ill. 2007). Here, too, given the lack of any objective standard (and keeping in mind that Plaintiffs billed substantially fewer hours than Defendants did on the same case), this Court should likewise reject Defendants' excessiveness challenge. And, in fact, in many instances, this Court has previously held that the sort of entries at issue are compensable, such as time spent on fee petition briefing, *see Rodriguez*, 2013 WL 5348307, at *6 (N.D. Ill. Sept. 24, 2013) (Lefkow, J.), and time spent on travel, *Craig v. Popmatters Media,* Inc., 448 F. Supp. 3d 844, 848 (N.D. Ill. 2020).

At the end of the day, "the court is not required at this stage to perform a 'line by line' review of the hours billed by Plaintiffs' counsel." *Santiago v. Rodriguez,* No. 04 C 7677, 2008 WL 11517320, at *3 (N.D. Ill. Mar. 28, 2008) (quoting *Divane v. Krull Elec. Co.,* 319 F. 3d 307, 317 (7th Cir. 2003)). The hours Plaintiffs' attorneys worked to prevail on this complex case are well within reasonable bounds. *Petersen v. Gibson,* 2002 WL 31738798, *1 (N.D.Ill. Dec. 4, 2002) (Zagel, J.) ("Could one conclude that some of the lawyers spent too much time on one matter or another? Possibly, but I am not inclined to do so... The bottom line is... I do not find that any of the time spent is unreasonable")*, reversed on other grounds,* 372 F.3d 862 (7th Cir. 2004).

---

colleagues. True, Jon Loevy spent a higher proportion of time conferring with colleagues regarding written work and strategy than other teammates. But that makes perfect sense, as "the advice and consultation of a seasoned trial lawyer can be invaluable in a complicated civil rights case such as this one." *Fox ex rel. Fox v. Barnes*, 2013 WL 4401802, at *4 (N.D. Ill. Aug. 15, 2013) (declining to reduce Jon Loevy's fee award based on allegedly excessive time observing trial and conferring with other attorneys about strategy); *see also Medina v. Chicago*, No. 00 C 1, 2001 WL 1104600, at *6 (N.D. Ill. Sept. 14, 2001) ("The Court does not think that it would be wise to set down a rule that would preclude a younger lawyer from recovering for reasonable time spent conferring with senior attorneys (or senior attorneys from recovering for their time engaging in such conferences).").

**B. The Hourly Rates Sought Are Reasonable And Should Be Approved**

As with the number of hours, the hourly rates at which Plaintiffs' counsel billed their time in this case are also set forth in the Joint Fee Statement, attached as Exhibit A.

In deciding the rates' reasonableness, the Court is writing on a fairly blank slate. No Court has adjudicated a Loevy & Loevy fee petition following a wrongful conviction verdict in about six years. That means this Court is deciding the question without much precedent. *Cf. Fox ex rel. Fox v. Barnes*, No. 09 C 5453, 2013 WL 4401802, at *3 (N.D. Ill. Aug. 15, 2013) (noting in 2013 that that hourly rates set for Loevy attorneys several years earlier were "of limited relevance" as "hourly fees often increase over time, both because of inflation and because of the increasing skill and reputation of the attorney, suggesting that rates higher than those awarded [previously] are appropriate").

Meanwhile, a lot has happened to attorneys' hourly rates in the past six years. Putting it succinctly, they have gone up. Plaintiffs set forth evidence of this trend as follows.

**1. Prevailing Market Rates For Top-Tier Legal Services Support The Reasonableness Of The Rates Sought**

In support of the rates sought herein, Plaintiffs offer the expert Declaration of Paul Veith, a long-time member of the Chicago bar with considerable knowledge and experience of the prevailing hourly rates for top-tier attorneys engaged in complex litigation in this market. *See* Exhibit E (Veith Declaration). According to Veith's Declaration, partners at the top law firms in the United States average $1,350/hour in Chicago. At the higher end, top litigators start at $1,860/hour and go as high as $2,725 to $3,000/hour. *Id.* paras. 8-10. At this highest end, associates bill between $1,035 and $1,665/hour. Given his experience and expertise, Veith attests that clients in Chicago presently pay junior associates (1 to 3 years experience) at the top-tier law firms $700 to $1000/hour; mid-level associates (4-8 years) $900 to $1.500/hour; senior associates (8+ years) $1,000 to $1,700/hour; and partners (all levels) $1,200 to $2,600/hour. *Id.* paras. 11-13. *See People Who Care v. Rockford Bd.*

*of Ed.,* 90 F.3d 1307, 1313 (7th Cir. 1996) (after Plaintiff establishes the relevant "rates similarly experienced attorneys in the community charge paying clients for similar work," the burden shifts back to the Defendant to show a "good reason why a lower rate is essential").

Based on the foregoing, Vieth specifically opined that the rates sought here by the Loevy attorneys are "extremely reasonable in comparison to the billing rates charges by lawyers at top tier Chicago litigation firms working on complex matters." *Id.* para. 15.

### 2. The *Hensley* Factors Strongly Support the Requests' Reasonableness

The Supreme Court instructs courts to consider factors such as:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is contingent or fixed; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases.

*Hensley,* 461 U.S. 429-30 & n.3.

Of all of these, by far "the most critical factor" in determining reasonableness "is the degree of success obtained." *Farrar v. Hobby,* 506 U.S. 103, 114 (1992) (quoting *Hensley,* 461 U.S. at 436). That factor strongly tips in Plaintiffs' favor here. There can be no dispute that Plaintiffs' counsel achieved an extraordinary victory for their clients. The $60 million awarded to each of them for the 16 years they were wrongfully imprisoned speaks for itself. Though this was not the highest verdict ever on a per-year basis,[2] the result was outstanding by any measure. This factor thus strongly supports the requested relief. *Montanez,* 755 F.3d at 556 (7th Cir. 2014) ("A plaintiff who achieves 'excellent results' should receive the entire lodestar.") (quoting *Hensley*, 461 U.S. at 432).

---

[2] Recently, for example, Judge Jenkins affirmed a jury verdict of $50 million for a ten-year wrongful incarceration, rejecting the City's post-trial request to remit it. *Brown v. City of Chicago*, No. 19 CV 4082, 2025 WL 2785426 (N.D. Ill. Sept. 30, 2025).

So do the other factors. Plaintiffs' counsel has been litigating this case for more than five years (not even including time spent helping Mr. Fulton and Mr. Mitchell win their exonerations). The "time and labor required" was extremely substantial, creating real opportunity costs in terms of "the preclusion of [other] employment by the attorney." *Hensley*, 461 U.S. at 430 n.3. Not to mention massive risk. The contingency "nature ... of the professional relationship" meant a very real danger of no payment whatsoever to counsel for years of work and multiple millions of dollars in billable hours. *Id.* But having won, and won big, these factors tip in favor of higher rates. *Id. See also Spina v. Forest Preserve Dist. of Cook County,* No. 98 C 1393, 2002 WL 1770010, *3-*4 (N.D.Ill. July 31, 2002) (approving elevated fee because "McFadden accepted the case on a contingency basis, and is entitled to be rewarded for assuming the risk of nonpayment").

The Court should also factor in that this was a case that could not be resolved by settlement during the five-plus years it was pending. Having declined to offer an amount that could have made the case go away, Defendants can hardly complain that it was expensive to litigate to the bitter end.[3]

Finally, Plaintiffs' counsel also hope the Court will agree that they demonstrated the highest level of skill, professionalism, and legal performance over the course of the litigation, culminating in the lengthy trial over which this Court presided. This factor, too, cuts in favor of approving the Petition. *See, e.g.*, *Jimenez v. City of Chicago*, No. 09 C 8081, 2012 WL 5512266, at *2 (N.D. Ill. Nov. 14, 2012) ("Loevy and his firm consistently produce written work that rivals that of any law firm in Chicago--not just those specializing in this particular field.").

---

[3] During the settlement conference with the Court before trial, the parties sparred about which side was being unreasonable, but time has vindicated Plaintiffs' position: by all accounts, Plaintiffs were willing to take considerably less than the $120MM they were eventually awarded. It also should be noted that Plaintiffs were able to settle against the County prior to trial for $7.5 million each.

### 3. Plaintiffs' Counsels' Overall Efficiency Supports The Rates Sought

Another factor bolstering the reasonableness of Plaintiffs' requested hourly rates is the fact that Plaintiffs' counsel achieved their result *while expending half as many hours as Defendants' counsel.* Both sides had to spend time on the same tasks: discovery, summary judgment, trial, etc. Yet Plaintiffs' counsel were able to do so in half the time spent by the defense attorneys. That efficiency further corroborates the skill and effectiveness of Plaintiffs' counsel. *Dubin v. Bd. of Madison Area Tech. Coll. Dist.*, No. 10-CV-035, 2011 WL 13209629, at *9 (W.D. Wis. Dec. 19, 2011) (noting that a high level of efficiency supports relatively high fees); *Warfield v. City of Chicago*, 733 F. Supp. 2d 950, 957 (N.D. Ill. 2010) (counsel's efficiency factors into the analysis).

### 4. Plaintiffs' Counsels' Qualifications Support The Requested Rates

The Supreme Court's *Hensley* factors include the "experience, reputation, and ability of the attorneys." As for most every profession, highly accomplished lawyers command higher hourly rates than those with lesser credentials. In this case, Plaintiffs' counsel respectfully submit their qualifications justify hourly rates at the top of their profession. The various attorneys' credentials are discussed as follows.

#### a. Jon Loevy (28 years practicing law)

Jon Loevy is one of the most successful trial lawyers in the United States. He has 27 total jury verdicts of a million dollars or more, nearly all in cases involving extremely challenging fact patterns. He has won jury verdicts of $20 million or more at twelve (12) separate trials. Loevy's largest jury verdicts are for $100 million in state court and $238 million in federal court. *See* Exhibit I (Loevy Aff.).[4]

---

[4] Loevy's jury verdicts greater than one million dollars, in addition to this one, include: *Brown v. City of Chicago* in September 2024 ($50 million jury verdict in wrongful conviction case); *Amor v. Naperville* in July 2024 ($22.5 million jury verdict in wrongful conviction case); *Gray v. City of*

Loevy graduated from Columbia Law School in 1993, where he served as a Senior Editor of the Law Review. At Columbia, he was a Kent Scholar (approximately top 1% of the class), as well as the recipient of the Young B. Smith Prize given to the student with the top examination in torts, and the Paul R. Hayes Prize given to the student with the top exam in civil procedure. *Id.*

After graduating from law school, Loevy clerked for Judge Milton I. Shadur of the Northern District of Illinois for a year, later spending a year and a half at Sidley & Austin before leaving to start his own firm. *Id.*

Loevy started the firm out of his basement apartment. It has since grown to more than 60 lawyers with offices across the country The firm focuses on a wide variety of civil rights issues, including wrongful convictions, police shootings, excessive force, prisoner rights, First Amendment, freedom of information, electronic privacy, government fraud and whistleblower protection, environmental justice, other constitutional claims, and complex consumer class actions.

---

*Chicago* in 2023 ($27 million jury verdict in wrongful conviction case); *Rogers v. BNSF Railroad* in 2022 ($228 million jury verdict, largest ever Biometric privacy verdict); *Seats v. City of Dolton* in 2022 ($33 million jury verdict in police chase case); *Anderson v. City of Chicago* in 2021 ($7 million verdict in wrongful confession case); *Rivera v. City of Chicago* in 2018 ($17 million jury verdict in wrongful conviction case); *Kuri v. Chicago* in 2018 ($4.1 million jury verdict in false arrest case for 3 years in jail); *Cook County v. USI* in 2018 ($9 million verdict against insurance broker); *Burgess v. City of Baltimore* in 2017 ($15 million jury verdict in wrongful conviction case, largest of its kind in Baltimore history); *Fields v. Chicago* in 2016 ($22 million jury verdict in wrongful conviction case); *Cook County v. AIG Insurance* in 2016 ($100 million jury verdict, one of the largest in Cook County history); *Jimenez v. Chicago* in 2012 ($25 million jury verdict for 14 years of wrongful imprisonment); *Newman v. Squire* in 2010 ($6 million for wrongful death); *Borsellino v. Putnam* in 2009 ($11 million for fraud by the former president of the NYSE); *Johnson v. Guevara* in 2009 ($21 million for 11 years of wrongful imprisonment); *White v. Lee's Summit* in 2008 ($16 million jury verdict in wrongful conviction case); *Duran v. Chicago* in 2008 ($4.2 million for interference with child custody); *Coffie v. Chicago* in 2007 ($4 million for police brutality); *Ware v. Chicago* in 2007 ($5 million for fatal police shooting); *Dominguez v. Waukegan* in 2006 ($9 million for 4 years of wrongful imprisonment); *Manning v. United States* in 2005 ($6.6 million against FBI agents for wrongful conviction); *Garcia v. Chicago* in 2003 ($1 million for excessive force); *Russell v. Chicago* in 2003 ($1.5 million for fatal police shooting); *Waits v. Chicago* in 2002 ($1.5 million for police brutality); and *Regalado v. Chicago* in 1999 ($28 million jury verdict for excessive force).

It is likely the largest private civil rights firm without paying clients in the country. *Id.*[5]

Earlier this year, Loevy was awarded the Abner J. Mikva "Legal Legend" award by the American Constitution Society in Chicago. In 2024, Loevy was named one of "America's Top 200 Lawyers" by Forbes magazine. He was previously named one of the Law Bulletin's prestigious "40 under 40" attorneys to watch in Chicago, as well as one of Chicago Lawyer's "Next Generation Rising Stars of the Trial Bar." In 2011, Loevy was awarded a Career Achievement award from the Chicago Law Bulletin, putting him in the select group of what was then 11 attorneys in the history of the State of Illinois with at least five (5) jury verdicts in Illinois courts in excess of $5 million (and Loevy now has 21 such verdicts). *Id.*

By this Petition, Loevy seeks $1,500/hour. This rate is justified for several reasons.

For starters, the rate is hardly unprecedented for a Section 1983 case. *See National Rifle Ass'n v. Village of Oak Park,* 871 F. Supp. 2d 781, 788 (N.D. Ill. 2012) (section 1983 case in which court 13 years ago approved hourly rate of $1,020, equal to $1,443 in today's dollars,[6] for partner with national renown, who had approximately 30 years of legal experience); *Zelaya v. City of Los Angeles,* No. 2:20-CV-08382, 2024 WL 3183882, at *3 (C.D. Cal. June 25, 2024) (approving rate of $1,300 for managing partner with over 30 years of experience in civil rights law); *I.H. v. California*, No. 2:19-CV-02343, 2025 WL 1158975, at *6 (E.D. Cal. Apr. 21, 2025) (same).

---

[5] In addition, Loevy and some of the lawyers at the firm founded the Exoneration Project, devoted to exonerating men and women wrongly convicted for crimes they did not commit. Since its founding, the Exoneration Project has won the freedom of more than 200 innocent individuals. The project is a clinic at the University of Chicago Law School, where Loevy is a Lecturer in Law.

[6] See CPI Inflation Calculator, BUREAU OF LAB. STAT., https://data.bls.gov/cgi-bin/cpicalc.pl (last accessed Nov. 3, 2025). This Court has described inflation as "relevant in deciding the appropriate rate increase [from previous cases], also taking into account market rates, and an attorney's experience." *Hill v. Harrington*, 2024 WL 4333192, at *4 n.8 (N.D. Ill. Sept. 28, 2024).

Moreover, Loevy's track record stacks up favorably with any trial lawyer in the country. His dozen jury verdicts of at least $20 million may be among the most in American history. His record of success justifies the top hourly rate. *See, e.g., Wells v. City of Chicago*, 925 F. Supp. 2d 1036, 1041 (N.D. Ill. 2013) ("Loevy [is] an attorney whose experience, skill, and record of success in representing plaintiffs in police misconduct cases place him at the apex of attorneys who practice in that field."); *Sughayyer v. City of Chicago*, No. 09 C 4350, 2012 WL 2359065, at *9 (N.D. Ill. June 20, 2012) (Jon Loevy's performance "ranks among the finest displays of courtroom work by a plaintiffs' lead trial counsel." (quoting *Blackwell v. Kalinowski*, No. 08 C 7257, 2012 WL 469962, at *3 (N.D. Ill. Feb. 13, 2012)).

Lawyers at the top of the profession command rates of at least $1,500/hour, and often considerably higher. The Veith Declaration attests that top end litigators now earn as much as $2,725 to $3,000/hour. See Exhibit E. Loevy's affidavit also attests that his firm is in the process of hiring lawyers from another law firm in connection with a commercial dispute. Those partners are charging Loevy's firm the rates of $2,560, $1,900, $1,620, $1,755, and $2,145 for their services for complex litigation. *See* Exhibit I (Loevy Aff. ¶ 56). These are prevailing rates in this market. *Robinson v. City of Harvey,* 2008 WL 4534158, *7 (N.D. Ill. Oct. 7, 2008) ("The court is not unmindful of Jon Loevy's success in this case and his now established reputation as a singularly formidable trial lawyer in civil rights cases. The court has no doubt that were he employed by a large commercial firm, Mr. Loevy's billing rate would be" higher than he was requesting).

At the end of the day, someone has to have the billing rate at the top of the field. Plaintiffs note that courts in this District routinely treats Loevy's rates as the ceiling for civil rights cases, so the rates should be at the very top of the scale. *E.g.*, *Adamik v. Motyka*, No. 12 C 3810, 2018 WL 3574751, at *3 (N.D. Ill. July 25, 2018) (reducing attorney's rate to "the low end of Loevy's rate

range" because attorney "ha[d] not attained the same level of recognition for civil rights work as

Loevy"); *Duran v. Town of Cicero*, No. 01 C 6858, 2012 WL 1279903, at *20 & n.14 (N.D. Ill.

Apr. 16, 2012) (refusing to award civil rights lawyer hourly rate greater than Jon Loevy's, stating

that Loevy "clearly qualifies for an hourly rate as high as any other attorney handling § 1983 cases,

and probably higher than most"); *Montanez v. Fico*, 931 F. Supp. 2d 869, 877 (N.D. Ill. 2013)

(reducing rate because attorney did not have same reputation or level of recognition within the legal

community as Loevy); *Blackwell*, 2012 WL 469962, at *4 (same); *Duran v. Town of Cicero*, No. 01

C 6858, 2012 WL 1279903, at *20-21 (N.D. Ill. Apr. 16, 2012) (same); *Wells v. City of Chicago*,

925 F. Supp. 2d 1036, 1041 (N.D. Ill. 2013) (same); *Ragland v. Ortiz*, No. 08 C 6157, 2012 WL

4060310, at *3, *5 (N.D. Ill. Sept. 14, 2012) (same); *Mouloki v. Epee*, No. 14 C 5532, 2017 WL

2791215, at *3-4 & n.4 (N.D. Ill. June 27, 2017) (same); *Santiago v. Rodriguez*, No. 04 C 7677,

2008 WL 11517320, at *3 (N.D. Ill. Mar. 28, 2008) (same).[7]

### b. Russell Ainsworth (23 years practicing law)

Russell Ainsworth, a partner at Loevy & Loevy, graduated *magna cum laude* from the

University of Wisconsin Law School, after which he clerked for Judge Paul Lundsten of the

Wisconsin Court of Appeals, joining Loevy shortly therefater. See Exhibit J (Ainsworth Affidavit).

While he was second chair to Mr. Loevy's lead at the Fulton-Mitchell trial, Mr. Ainsworth

has served as lead trial counsel in over twenty civil rights jury trials, securing over $100,000,000 in

jury awards. Most recently, he served as lead counsel in McCann v. Fuller, 19-cv-01032

(W.D.Mich.), resulting in an award of $14.5 million for Plaintiff, who had spent only 20 months

---

[7] In fact, allowing Loevy & Loevy attorneys' rates to stagnate over time has had the effect of hamstringing the entire Chicago civil rights bar, and perhaps even the plaintiffs' bar writ large. *See, e.g.*, *In re Southwest Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 5497275, at *10 (N.D. Ill. Oct. 3, 2013) (reducing another firm's rate in consumer case based on Loevy's hourly rate in recent civil rights case).

14

incarcerated after being forced to falsely plead to perjury. Mr. Ainsworth's many other trial and appellate victories are detailed in Exhibit J. He has been named a "Super Lawyer" in the civil rights category by the Chicago Law Bulletin for most of the past ten years. *Id.*

The rate sought for Ainsworth ($1,141/hour) is reasonable for an attorney practicing law at his level for nearly a quarter century. The Veith Declaration supports that conclusion, as do comparable awards. *See Valenzuela v. City of Anaheim,* No. SACV1700278CJCDFMX, 2023 WL 2249178, at *3-4 (C.D. Cal. Feb. 23, 2023) (approving rate of $1,075 for attorney with 16 years of experience in private practice and 2 years of experience in appellate civil rights law); *Herring Networks, Inc. v. Maddow,* No. 3:19-cv-1713-BAS-AHG, 2021 WL 409724 at *5, *7 (S.D. Cal. Feb. 5, 2021) (approving rates of $1,050-$1,150 for partners with over 30 years of experience in "not complex" defamation case that had "high degree of publicity"); *United States ex rel. Scott v. Humana, Inc.,* No. 3:18-CV-00061-GNS-CHL, 2025 WL 2744602, at *13-19 (W.D. Ky. Apr. 30, 2025), report and recommendation adopted, No. 3:18-CV-00061-GNS-CHL, 2025 WL 2603057 (W.D. Ky. Sept. 9, 2025) (approving rates of $1,030 to $1,160 for partners); *Zelaya v. City of Los Angeles,* No. 2:20-CV-08382, 2024 WL 3183882, at *3 (C.D. Cal. June 25, 2024) (approving rate of $1,300 for partner with over 30 years of experience in civil rights law).

### c. Julia Rickert (15 years practicing law)

Julia Rickert is a partner at Loevy & Loevy. She graduated with honors from Northwestern University School of Law in 2010 and then spent a year as a fellow with the MacArthur Justice Center. Following her fellowship, she served as a Seventh Circuit staff attorney, as a law clerk to the Hon. David F. Hamilton of the Seventh Circuit, and as a law clerk to the Hon. John Z. Lee, then of the Northern District of Illinois. *See* Exhibit K (Rickert Affidavit).

Since joining Loevy & Loevy in 2017, Julia has worked on a broad range of cases and has

15

gained tremendous experience at the trial and appellate level. She has acted as lead counsel in numerous successful trials, most recently last July in *Hunter v. Ritz,* No. 21-cv-00271 (S.D. Ill.), a prison medical case in which the jury awarded the plaintiff $5 million in damages. *Id.*

Ms. Rickert seeks $948/hour. Per the Veith's Declaration, and the case law, this is reasonable. *Zelaya,* 2024 WL 3183882, at *3 (approving rate of $920 for attorney with 15 years of experience in civil rights law).

### d. Sam Heppell (11 years practicing law)

Mr. Heppell graduated *cum laude* from Harvard Law School in May 2014 where he received several academic distinctions, including the Sears Prize (awarded to four students with the highest first-year grades) and six Dean's Scholar prizes (awarded for outstanding course work). Following law school, from September 2014 to August 2015 he served as a law clerk to Justice Michael J. Moldaver of the Supreme Court of Canada. *See* Exhibit L (Heppell Affidavit).

Mr. Heppell joined Loevy & Loevy in 2015, where his practice focused on wrongful convictions, police brutality, and prison conditions. In that role Mr. Heppell handled all aspects of litigation, including client counseling, pre-suit investigation, case strategy, drafting pleadings, fact and expert discovery and depositions, oral argument, dispositive motions, settlement negotiations, trial preparation, trial, and appeals. *Id.*

Mr. Heppell's hourly rate is $777. This rate is commensurate with rates charged by attorneys of like experience and skill practicing in this area. *French v. City of Los Angeles,* No. EDCV2000416JGBSPX, 2022 WL 2189649, at *19 (C.D. Cal. May 10, 2022) (approving hourly rate of $760 per hour for attorney with nine years of experience); *I.H. v. California,* No. 2:19-CV-02343-DAD-AC, 2025 WL 1158975, at *6 (E.D. Cal. Apr. 21, 2025) (approving $700 hourly rate for attorney with 12 years of legal experience); *F.C. Bloxom Co. v. Tom Lange Co. Int'l,*

16

*Inc.,* No. 20-3147, 2025 WL 2364983, at *5 (C.D. Ill. Aug. 14, 2025) (PACA case approving

$535-595 hourly rate for attorney with 9 years' experience; $470-541 for 6 years; $360-410 for 3

years; $450 for 2 years; then reducing by 20% to account for lower rates of Springfield, IL market)

### e. Alyssa Martinez, Isaac Green, Fatima Ladha (2-4 years experience)

Several highly qualified junior attorneys contributed significantly to the litigation of this

case, including Alyssa Martinez, Isaac Green and Fatima Ladha.

Ms. Martinez graduated from Stanford Law School with Highest Pro Bono Distinction and a

masters degree in international policy. Ms. Martinez then served at the Social Justice Legal

Foundation in a prestigious litigation fellowship where she led litigation of class action toxic tort

cases against immigration detention centers in and litigated police misconduct cases in Louisiana

and California. *See* Exhibit M (Martinez Affidavit).

Ms. Martinez has been litigating at Loevy for almost three years, during which time she has

been trial counsel in close to ten trials or evidentiary hearings, has taken more than 100 depositions,

and has filed appellate briefs in the United States Supreme Court and in courts of appeal. *Id.*

Mr. Green graduated from Harvard Law School, magna cum laude, near the very top of his

class, and was a semi-finalist in the prestigious Ames Moot Court competition, where his team won

best brief. After graduating, he clerked for two federal judges (in New York and Boston), then

joined Loevy & Loevy. *See* Exhibit N (Green Affidavit).

While Mr. Green has been practicing law for less than four years, he has argued and briefed

appeals before the Massachusetts Appeals Court, and the First and Seventh Circuit Federal Courts

of Appeals, and has argued dispositive motions in several federal courts around the country

including in complex class action litigation and in several trials and evidentiary hearings before

federal courts. *Id.* Most recently, Mr. Green was a key member of the Loevy team that recently

secured a preliminary injunction in this District against abuses by federal agents against peaceful protestors in *Chicago Headline Club v. Noem,* including presenting crucial witness testimony at the preliminary injunction evidentiary hearing.

Fatima Ladha graduated from the University of California, Berkeley School of Law, where she was the Editor-in-Chief of the California Law Review, Berkeley's flagship law journal. She also participated in the esteemed Roger J. Traynor California Appellate Moot Court Competition and was awarded the Leadership Award. Immediately after law school, Fatima clerked for the Chief Judge of the Northern District of California. See Exhibit O (Ladha Affidavit).

There should be no serious dispute that the credentials and accomplishments of these young lawyers place them at the very top of the salary scale. As such, the rates they seek ($473/hour, $581/hour and $473/hour, respectively) are reasonable. *See Zelaya,* 2024 WL 3183882, at *3 (approving rate of $450 for second-year civil rights attorney); *Doe v. MacLeod,* No. 18-CV-03191, 2024 WL 1335041, at *7-8 (C.D. Ill. Mar. 28, 2024) (approving $388-$416 rate for associates with 2-3 years of experience, noting that rates would have been 20% higher in Chicago, which would bring rates to $465-499); *F.C. Bloxom Co. v. Tom Lange Co. Int'l, Inc.,* No. 20-3147, 2025 WL 2364983, at *5 (C.D. Ill. Aug. 14, 2025) (PACA case approving $450 rate for attorney with 2 years' experience; then reducing by 20% to account for lower rates of Springfield market as compared with Chicago); *Smith v. City of La Verne,* No. CV 23-644-KK-EX, 2024 WL 4331733, at *3 (C.D. Cal. Sept. 4, 2024) (approving hourly rate of $650 for attorney with six years of experience); *United States ex rel. Scott v. Humana, Inc.,* No. 3:18-CV-00061-GNS-CHL, 2025 WL 2744602, at *13-19 (W.D. Ky. Apr. 30, 2025), report and recommendation adopted, No. 3:18-CV-00061-GNS-CHL, 2025 WL 2603057 (W.D. Ky. Sept. 9, 2025) (approving rates of $760 to $920 for associates in False Claims Act case); *Watchfire Signs LLC v. Catalyst Outdoor Advert. LLC,* No. 21-2128, 2023

WL 4843996, at *6 (C.D. Ill. June 21, 2023) (approving $500 hourly rate for attorney with 5 years' experience in contract case); *Entertainment Software Ass'n v. Blagojevich,* 2006 WL 3694851, at *2-5 (N.D. Ill. Aug. 9, 2006) (approving hourly rate of $275-$340 for attorneys with 4-6 years' experience, which is $450-$556 after adjusting for inflation[8]).

### f. Andrea Lyon (49 years of experience)

Andrea Lyon is a renowned lawyer, author, speaker, professor and former law school dean. Dubbed "The Angel of Death Row" by the Chicago Tribune, she was the first woman to serve as lead attorney in a death penalty case, and she holds an unparalleled 19 wins in 19 capital cases. *See* Exhibit P (Lyon Affidavit).

Ms. Lyon's legal work began in the Cook County Public Defender's Office where she rose to become Chief of the Homicide Task Force. Managing a 22-lawyer unit, she tried over 130 homicide cases and defended more than 30 potential capital cases at the trial level, including taking 19 capital cases through penalty phase. In 1990, Andrea founded and directed the Illinois Capital Resource Center representing all of the death row inmates in Illinois. *Id.*

In January of 2015, Ms. Lyon was awarded Operation Push's Rev. Dr. Martin Luther King, Jr. and President Lyndon B. Johnson Dream-Makers Award. A winner of the prestigious National Legal Aid and Defender Association's Reginald Heber Smith Award for best advocate for the poor in the country, she is a nationally recognized expert in the field of death penalty defense and a frequent Continuing Legal Education (CLE) teacher throughout the country. She has been designated as learned counsel in the federal defense system. *Id.*

Ms. Lyon's publications include over fifty law review articles, over ten practice manuals

---

[8] *See* CPI Inflation Calculator, Bureau of Lab. Stat., https://data.bls.gov/cgi-bin/cpicalc.pl (last accessed Nov. 17, 2025).

and books focused on her career and social justice in America, including *Fixing Legal Injustice in America: The Case For a Defender General of the United States* (Rowman & Littlefield 2022); *The Feminine Sixth: Women in Criminal Defense* (NACDL Press 2018); *The Death Penalty: What's Keeping it Alive* (Rowman & Littlefield, 2015); and *Angel of Death Row: My Life as a Death Penalty Defense Lawyer* (Kaplan, 2010). *Id.*

One of the more respected senior members of the bar in the Northern District, Ms. Lyon has been practicing law for half a century. Her requested rate of $1,141 is a bargain for her services.

### g. Paralegals and Investigators

Loevy & Loevy's paralegals billed their time at $175/hour, which is reasonable. *See Gerling v. Waite,* No. 4:17-CV-02702 JAR, 2022 WL 558083, at *3 (E.D. Mo. Feb. 24, 2022) (approving $250 rate for paralegals); *White v. CW Brown Holdings LLC,* No. 4:22-CV-1282 RLW, 2023 WL 4104466, at *2 (E.D. Mo. June 21, 2023) ($250 rate in ADA action); *Victory v. Cnty.,* 452 F. Supp. 3d 185, 201 (E.D. Pa. 2020) (approving $200 paralegal rate); *N.T. v. Galesburg Cmty. Unit Sch. Dist.,* No. 4:24-CV-04124-JEH, 2025 WL 2375401, at *6 (C.D. Ill. Aug. 15, 2025) (awarding paralegal hourly rate of $220); *French v. City of Los Angeles,* No. EDCV2000416, 2022 WL 2189649, at *19 (C.D. Cal. May 10, 2022) (approving rate of $200 per hour for paralegals).

### C. The Overall Fee Request Is Reasonable For Wrongful Conviction Litigation

The total requested fee award (roughly $4.4 million) is relatively low for a protracted wrongful conviction case of this nature. Courts have routinely granted fee petitions that were higher. *See, e.g., Fields v. City of Chicago,* No. 10 C 1168, 2018 WL 253716, at *2 (N.D. Ill. 2018) (approving $5,571,500 fee award, seven years ago, following $22MM jury verdict in wrongful conviction case); *Gilliam v. Allen,* 62 F.4th 829, 838, 850 (4th Cir. 2023) (affirming $6 million fee award in a wrongful conviction case verdict); *Restivo v. Hessemann,* 846 F.3d 547, 568, 592 (2d Cir. 2017) (affirming a $4,997,914.55 fee award in a wrongful conviction case seven years ago).

### III.     Plaintiffs' Request For Costs Should Be Approved

Plaintiffs request reimbursement of $38,877.29 in costs that are taxable pursuant to 28 U.S.C. 1920. Attached as Exhibit F is an itemized spreadsheet listing and describing each such cost. Additionally, Plaintiffs requests reimbursement of $217,343.49 in non-taxable costs pursuant to 42 U.S.C 1988. Attached as Exhibit G is an itemized spreadsheet listing and describing each cost. Plaintiffs also attach as Exhibit H a combined file containing supporting invoices for their costs.

Plaintiffs' request to reimburse costs is reasonable and should be approved.

In the Amended Joint Fee Statement, Defendants objected to Plaintiffs' request for reimbursement of out-of-pocket costs as untimely. This Court should reject that objection. Local Rule 54.1(a) permits courts to extend the time for filing the bill of costs, which the Court has done in this case. ECF No. 545 (granting Joint motion setting deadline for Plaintiffs to submit their Petition). Plaintiffs filed their bill of costs within the deadline this Court set. ECF No. 546 (Joint Fee Statement due November 3, 2025, and supporting petition due today, November 17, 2025).

Moreover, Local Rule 54.3 provides for deadlines "[u]nless the court's order includes a different schedule for such filing," *see* LR 54.3(b), which clearly means the Court is free to set any deadline it chooses to impose. There is nothing jurisdictional about the deadlines, and no bar against extending them and excusing any prior untimeliness, even after they have expired. *HollyFrontier Cheyenne Ref., LLC v. Renewable Fuels Ass'n*, 594 U.S. 382, 391 (2021) ("[F]or almost all rules prescribing a deadline, a district court may 'extend the time' even 'after the time has expired.' (quoting FRCP 6(b)); *Williams v. Apfel*, No. IP 98-1396-C, 2000 WL 684259, at *4 (S.D. Ind. Apr. 20, 2000) (noting that Local Rule 54.1 permits courts to extend deadline to submit bill of cost).

Nor can Defendants legitimately stand on this objection, given their own problems with deadlines. Specifically, the Defendants had moved to set a schedule extending the exchange of

Local 54.3 materials, including any objections to Plaintiffs' time so the parties could determine what was in dispute. R. 544. Per the Court's order granting that motion, Defendants' materials were due on October 20, 2025, having previously been extended from September 29. R. 544. After Plaintiffs timely served their materials, Defendants blew the deadline for objections. They simply ignored it. Instead, Defendants served their objections on November 3, 2025, 14 days after they had come due. *Compare* ECF No. 544, 545 (objections due October 20, 2025) *with* Exhibit H (emails from counsel, sending materials and objections on November 3, 2025, two weeks after they were due).

Does Defendants' failure to meet the Court-ordered deadline mean Defendants have waived their objections? Plaintiffs would not even be making that argument given the lack of prejudice and the Court's ability to excuse the tardiness. But if Defendants are going to insist on strict compliance with deadlines, that would have to be a two-way street, and all of Defendants' objections to attorneys' fees deemed waived. *Cf. Cooper v. Eagle River Mem'l Hosp., Inc.*, 270 F.3d 456, 464 (7th Cir. 2001). The better outcome, however, is to excuse both sides' delay in complying with deadlines prior to the filing of this Petition (especially given that both sides were motivated by trying to resolve the issues of costs and fees through settlement) and decide the issues on the merits. *Knopp v. Wells Fargo Bank, N.A. for registered holders of Park Place Sec., Inc.*, No. 16 C 2330, 2017 WL 3141389, at *3 (N.D. Ill. July 25, 2017) ("[I]nstead of resolving the issue on a procedural technicality, the Court finds it appropriate to extend the time for filing[.]"); *Mings v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, No. 1:04-CV-0584, 2005 WL 115510, at *4 (S.D. Ind. Jan. 18, 2005) ("While it could deny [Plaintiffs'] motions for failing to adhere to the Court-ordered deadlines, the Court prefers to resolve these matters on their merits.").

## Conclusion

For the foregoing reasons, Plaintiffs' Petition for Attorneys' Fees and costs should be granted.

DATED: November 17, 2025               Respectfully submitted,

                                        */s/ Jonathan Loevy*
                                        Arthur Loevy
                                        Jon Loevy
                                        Russell Ainsworth
                                        Julia Rickert
                                        Isaac Green
                                        LOEVY & LOEVY
                                        311 N. Aberdeen Street
                                        Chicago, IL 60607
                                        T: 312-243-5900

                                        Andrea Lyon
                                        Lyon & Kerr
                                        53 W. Jackson Blvd
                                        Suite 1650
                                        Chicago, IL 60604