**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN FULTON, | ) | |
| | ) | Case No. 20-cv-3118 |
| *Plaintiff,* | ) | |
| | ) | Hon. Joan H. Lefkow |
| *v.* | ) | District Judge |
| | ) | |
| ROBERT BARTIK, *et al.* | ) | Hon. Maria Valdez |
| | ) | Magistrate Judge |
| *Defendants.* | ) | |

| | | |
|---|---|---|
| ANTHONY MITCHELL, | ) | |
| | ) | Case No. 20-cv-3119 |
| *Plaintiff,* | ) | |
| | ) | Hon. Joan H. Lefkow |
| *v.* | ) | District Judge |
| | ) | |
| ROBERT BARTIK, *et al.* | ) | Hon. Maria Valdez |
| | ) | Magistrate Judge |
| *Defendants.* | ) | |

## CITY DEFENDANTS' RESPONSE TO PLAINTIFFS' PETITION FOR PREVAILING PARTY SECTION 1988 ATTORNEYS' FEES

Now Comes Defendants Robert Bartik, John Zalatoris, James Breen, ("Individual City Defendants") and the City of Chicago (collectively "Defendants"), by and through their undersigned counsel for their Response to Plaintiffs' Petition for Prevailing Party Section 1988 Attorneys' Fees, and state as follows:

## TABLE OF CONTENTS

OVERVIEW ............................................................................................................... 1

STANDARD OF REVIEW ......................................................................................... 1

ARGUMENT ............................................................................................................. 3

    I.    Petitioner's Requested Hourly Rates Are Unreasonably High And Are Inconsistent With The Prevailing Rates of the Relevant Community. ................................................................... 3

        A.    Jon Loevy's Hourly Claimed Rate of $1,500.00 and Russell Ainsworth and Andrea Lyon's Claimed Hourly Rate of $1,141.00 are Unsupported and Unreasonable. ............... 8

            i.    Jon Loevy ............................................................................................ 9

            ii.    Russel Ainsworth .............................................................................. 10

            iii.   Andrea Lyon ...................................................................................... 10

            iv.  Reasonable Rates For Loevy, Ainsworth, and Lyon ............................. 12

        B.    Isaac Green and Alyssa Martinez's Hourly Rate of $581.00 and Fatima Ladha's Hourly Rate of $473.00 ................................................................................................... 14

        C.    Sam Heppell's Hourly Rate of $777.00 and Julia Rickert's Hourly Rate of $948.00 15

        D.    Paralegal Hourly Rate ................................................................................ 17

    II.   The Number of Hours Claimed by Petitioner is Unreasonable. ....................................... 18

        A.    Time Expended by Defense Counsel is not a Proxy for Assessing Petitioner's Fees 18

        B.    Excessive or Unnecessary Billed Hours .................................................. 20

            i.    Post-Judgment Time Spent on Post Trial Motions and Fee Petition ..................... 20

            ii.    Communications with Client and Co-Counsel .................................... 22

            iii.   Non-City work ................................................................................... 24

            iv.  Time Spent Reviewing Documents ..................................................... 25

            v.    Non-Compensable Hours for Press Conferences and Awaiting Verdicts ............. 26

        C.    Vague or Insufficient Documentation ..................................................... 27

        D.    Duplicative Hours or Overstaffing ......................................................... 29

        E.    Billed Hours for Administrative Tasks ................................................... 30

        F.    Jon Loevy's Block Billing ..................................................................... 31

    III.  Petitioner's Request for Costs Should Be Denied As Untimely and Unsupported. ........ 33

    IV.  Total Adjusted Award ..................................................................................... 34

CONCLUSION .......................................................................................................... 36

## <u>TABLE OF AUTHORITIES</u>

### Supreme Courts

*Farrar v. Hobby*, 506 U.S. 103, 114 (1992) ............................................................... 7

*Gisbrecht v. Barnhart*, 535 U.S. 789, 802 (2002)....................................................... 2

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...................................... 1, 2, 3, 7, 18, 20, 32

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010) ...................................... 1, 2

### Appellate Courts

*Bench Billboard Co. v. City of Toledo*, 499 F. App'x 538, 549 (6th Cir. 2012)............................ 36

*Cooper v. Casey*, 97 F.3d 914, 920 (7th Cir. 1996)....................................................... 4

*DL v. District of Columbia*, 924 F.3d 585, 595 (D.C. Cir. 2019)................................... 17

*Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009) ........................... 2, 7

*Farfaras v. Citizens Bank and Trust of Chi.*, 433 F.3d 558, 569 (7th Cir. 2006) ........................ 32

*Harper v. City of Chicago Heights*, 223 F.3d 593, 604 (7th Cir. 2000)................................... 10, 27

*Henry v. Webermeier*, 738 F.2d 188, 194 (7th Cir. 1984) .............................................. 26

*Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1160 (7th Cir. 1989)..................................... 29

*Johnson v. GDF, Inc.*, 668 F.3d 927, 933 (7th Cir. 2012) ...................................... 4, 9

*Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014).................................... 3, 8, 12, 27

*Perez-Sosa v. Garland*, 22 F.4th 312, 331 (1st Cir. 2022) ............................................. 36

*Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011).............................. 3, 4

*Robinson v. City of Harvey*, 489 F.3d 864, 871 (7th Cir. 2007)........................................ 30

*Schlacher v. Law Offices of Phillip J. Rotche & Assoc., P.C.*, 574 F.3d 852, 857 (7th Cir. 2009) ....................................................................................... 30

*Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 708 (7th Cir. 2001).......... 2, 13, 20

*Spegon v. Catholic Bishop of Chicago*, 175 F.3d 550 (7th Cir. 1999) .............................. 2, 30, 31

*Tchemkou v. Mukasey*, 517 F.3d 506, 511 (7th Cir. 2008)............................................ 23

*Ustrak v. Fairman*, 851 F.2d at 988 (7th Cir.1988)................................................... 21

### District Courts

*Adamik v. Motyka*, No. 12 C 3810, 2018 WL 3574751, at *4 (N.D. Ill. July 25, 2018) .......... 4, 13

*Bellamy v. City of Chicago*, 2017 WL 3675729, at *10 (N.D. Ill. Aug. 25, 2017) ............... 22, 23

*Blackwell v. Kalinowsk*, No. 09-cv-7257, 2012 WL 469962 at *9 (N.D. Ill. Feb. 13, 2012)....... 18

*Bretford Mfg., Inc. v. Smith Sys. Mfg. Co.*, 421 F. Supp. 2d 1117, 1119 (N.D. Ill. 2006) ............. 32

*Chi. Bd. Options Exch., Inc. v. Int'l Secs. Exch., LLC*, No. 07 C 623, 2014 WL 125937, at *8 (N.D. Ill. Jan. 14, 2004) .................................................................................... 34

*Chic. Messenger Service v. Nextel Commc'ns, Inc.*, No. 01 C 8820, 2005 WL 643270, at *3 (N.D. Ill. Mar. 16, 2005) .................................................................................... 30

*Crispin R., Jr. v Bd. of Educ. Of the City of Chi., Dist. 299*, 2010 WL 3701328, at *6 (N.D. Ill. Sept. 10, 2010) ...................................................................................... 28, 32

*Delgado v. Village of* Rosemont, No. 03 C 7050, 2006 WL 314 7695 (N.D. Ill. Oct. 31, 2006) . 32

*Doe v. MaCleod*, No. 18-CV-03191, 2024 WL 1335041, at *5 (C.D. Ill. Mar. 28, 2024)............ 17

*Dubin v. Bd. of Madison Area Tech. Coll. Dist.*, No. 10-CV-035, 2011 WL 13209629, at *9
(W.D. Wis. Dec. 19, 2011) ................................................................................................. 8

*Duran v Town of Cicero*, 2012 WL 1279903, at *15 (N.D. Ill. Apr. 16, 2012) ......................... 32

*Edwards v. Rogowski*, No. 06 C 3110, 2009 WL 742871, at *4 (N.D. Ill. Mar. 18, 2009).......... 12

*Elusta v. City of Chicago*, 760 F. Supp. 2d 792, 800 (N.D. Ill. 2010)........................................ 29

*Entertainment Software Ass'n v. Blagojevich*, No. 05 C 4265, 2006 WL 3694851, at *8 (N.D. Ill.
Aug. 9, 2006) ................................................................................................................... 30

*Epps v. City and County of Denver*, No. 1:20-cv-01878- RBJ, ECF 445 (D. Colo. Dec. 30, 2022)
............................................................................................................................................ 15

*Farooq v. Portfolio Recovery, LLC*, No. 15 C 6106, 2016 WL 2909650, at *3 (N.D. Ill. May 19,
2016) ............................................................................................................................ 30, 31

*Fields v. City of Chicago*, No. 10 C 1168, 2018 WL 253716, at *2 (N.D. Ill. Jan. 1, 2018)  4, 7, 9,
10, 14, 15, 18, 23

*First Midwest Bank*, 2018 WL 4126570, at *23 (N.D. Ill. Aug. 29, 2018) ........................... 13, 34

*Fox ex rel. Fox v. Barnes*, 2013 WL 4401802, at *3-4 (N.D. Ill. Aug. 15, 2013)....................... 13

*Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 986 (N.D. Ill. 2012).................................. 28, 32

*Gilfand v. Planey*, No. 07 C 2566, 2012 WL 5845530, at *10 (N.D. Ill. Nov. 19, 2012)............ 26

*Gracia v. Sigmatron Int'l, Inc.*, No. 11 C 7604, 2016 WL 6892861, at *7 (N.D. Ill. Nov. 23,
2016) ................................................................................................................................. 34

*Grayer v. Cerda*, 2014 WL 6713480, at *8 (N.D. Ill. Oct. 6, 2014) ..................................... 25, 30

*Harkins v. Riverboat Servs., Inc.*, 286 F. Supp. 2d 976, 980 (N.D. Ill. 2003) ............................. 34

*Hirsch v. Will County*, 2023 WL 6809609 (N.D. Ill. Oct. 15, 2023)............................................ 9

*In re Subpoenas Issued to Danze, Inc.*, No. 05 C 4538, 2006 WL 211942, at *3 (N.D. Ill. Jan. 18,
2006) ................................................................................................................................. 32

*Ingram ex rel. Ingram v. Jones*, 46 F. Supp. 2d 795, 799 (N.D. Ill. 1999)................................... 23

*Jimenez v. City of Chicago*, No. 09 C 8081, 2012 WL 5512266, at *3 (N.D. Ill. Nov. 14, 2012)11,
14

*Joe Hand Promotions, Inc. v. Zani*, No. 11 C 4319, 2014 WL 958716 at *3 (N.D. Ill. Mar. 11,
2014) ................................................................................................................................. 32

*Johansen v. Wexford Health Sources*, No. 15-cv-2376, 2021 WL 1103349 (N.D. Ill. Mar. 23,
2021) ................................................................................................................................. 13

*Malone v. ASAP Trans Corp.*, No. 22 C 3572, 2025 WL 655552, at *4 (N.D. Ill. Jan. 2, 2025)... 9

*Martin v. City of Chicago*, No. 15-cv-04576, 2017 WL 4122738, at *5 (N.D. Ill. Sept. 18, 2017) 4

*McDonough v. Briatta*, 935 F. Supp. 2d 897, 905 (N.D. Ill. 2013), *on reconsideration*, No. 06 C
2732, 2013 WL 12438872 (N.D. Ill. Aug. 9, 2013) ...................................................... 19, 20

*McKinney v. Chicago Transit Authority*, 2023 WL 5153753 (N.D. Ill. August 10, 2023) ............ 9

*Montanez v. Chicago Police Officers Fico (Star No. 6284), Simon (Star No. 16497)*, 931 F. Supp.
2d 869, 876 (N.D. Ill. 2013)............................................................................................... 12

*National Rifle Ass'n v. Village of Oak Park,* 871 F. Supp. 2d 781, 788 (N.D. Ill. 2012).............. 12

*Nelson v. Lis*, No. 09-cv-883, 2017 WL 1151055, at *4 (N.D. Ill. Mar. 28, 2017)...................... 13

*Obrycka v. City of Chicago*, No. 07 C 2372, 2013 WL 1749803, at *3 (N.D. Ill. Apr. 23, 2013). 4, 11, 13

*Ozinga v. United States Dept. of Health and Human Services*, No. 13 C 3292, 2018 WL 2320933, at *9 (N.D. Ill. May 22, 2018) ................................................................... 22

*Pisut v. Pasavare, Inc.*, 03 C 4382, 2005 WL 1138638, *1 (N.D. Ill. Apr. 29, 2005) ................. 19

*Pouncy v. City of Chicago*, No. 15-cv-1840, 2017 WL 8205488, at *10, (N.D. Ill. Dec. 11, 2017) ................................................................................................................................ 31

*Springer v. Ethicon, Inc.*, No. 17 c 3930, 2018 WL 1453553, at *8 (N.D. Ill. Mar. 23, 2018)..... 34

*Taylor v. Law Offices of Vincent PeterCignarale, LLC*, No. 11-cv-4853, 2011 WL 6102020, at *2 (N.D. Ill. Dec. 5, 2011) .................................................................................................... 25

*Torres v. Los Angeles Sheriff's Department et al.,* Case No. 2:22-cv-07450-MWF-MAR (C.D. Cal.)................................................................................................................................. 16

*United States v. United States Steel Corp.*, No. 2:18-CV-127 JD, 2024 WL 1191716, at *11 (N.D. Ind. Mar. 19, 2024) ................................................................................................... 17

*Warfield v. City of Chicago*, 733 F. Supp. 2d 950, 957 (N.D. Ill. 2010)................................. 8, 26

*Wells v. City of Chicago*, 925 F. Supp. 2d 1040 (N.D. Ill. 2013) .................................................. 4

*Williams v. City of Chicago*, 2022 WL 971604 (N.D. Ill. March 31, 2022)........................... 9, 16

*Zelaya v. City of Los Angeles*, No. CV 20-8382-ODW-MAAx, 2024 WL 3183882, at *3-4 (C.D. Cal. June 25, 2024) ............................................................................................................ 16

**Statutes**

42 U.S.C. § 1988(b) ...................................................................................................................... 2

**Rules**

L.R. 54.(b)................................................................................................................................... 21

L.R. 54.1(a).................................................................................................................................. 33

L.R. 54.3(c).................................................................................................................................. 21

## OVERVIEW

Plaintiffs' counsel, Loevy & Loevy ("Petitioner"), asks this Court to award them double the hourly rates established in similar cases and approve a fee award untethered to the governing legal standards or the prevailing Chicago market for § 1983 litigation. Their petition relies on their own affidavits, a non-local matrix that is not recognized in this district, rates from other legal markets, and generalized assertions of excellence, rather than the required proof of market rates and contemporaneously recorded, reasonably expended hours. Under *Hensley* and its progeny, Petitioner bears the burden to establish both a reasonable hourly rate and a reasonable number of hours. They have not done so. The record instead reflects grossly inflated rates—due to Petitioner's failure to present evidence of actual billing rates or comparable awards for similarly situated Chicago civil-rights practitioners—and pervasive billing defects, including vague entries, block billing, excessive intra-counsel communications, overstaffing, duplicative review, billing for administrative and non-compensable tasks, and post-judgment time not properly before the Court. Recent Chicago decisions confirm that the requested partner and associate rates far exceed those typically awarded in civil-rights cases, including fee awards adjudicate as to these same counsel.

Applying the lodestar correctly, the Court should apply hourly rates consistent with Seventh Circuit guidance and this District's contemporary awards and exclude or discount hours that are excessive, vague, duplicative, non-legal, or otherwise unrecoverable at this stage. Petitioner's request for costs is also untimely and insufficiently supported. With these adjustments, the maximum reasonable fee does not exceed $925,625.00. The Court should therefore substantially reduce the requested award in accordance with the following.

## STANDARD OF REVIEW

"The general rule in our legal system is that each party must pay its own attorney's fees and expenses." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010). However, 42 U.S.C.

§ 1988(b) provides that "[i]n any action or proceeding to enforce a provision of section…1983 of this title…the court, *in its discretion*, may allow the prevailing party…*a reasonable attorney's fee* as part of the costs…" 42 U.S.C. § 1988(b) (emphasis added).

The predominant method of calculating reasonable attorneys' fees pursuant to Section 1988(b) is the lodestar method. *See Perdue*, 559 U.S. at 551; *Gisbrecht v. Barnhart*, 535 U.S. 789, 802 (2002). "The most useful starting point for [the court to determine] the amount of a reasonable fee…is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Gisbrecht*, 535 U.S. at 802. The petitioner must demonstrate to that her hourly rates as well as her time billed are reasonable. *Hensley*, 461 U.S. at 437. Once the lodestar figure is determined, the court considers the factors set out in *Hensley* and adjusts the fee award accordingly. *Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009). These factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n.3. The Court must exclude any hours not "'reasonably expended' on the litigation," and may, after considering various factors, increase or reduce the "modified lodestar amount." *Spegon*, 175 F.3d at 550 (quoting *Hensley*, 461 U.S. at 434-35). "In determining the reasonable number of hours, [a] court should exclude hours that are 'excessive, redundant or otherwise unnecessary.'" *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 708 (7th Cir. 2001) (quoting *Hensley*, 461 U.S. at 434).

**ARGUMENT**

I. **Petitioner's Requested Hourly Rates Are Unreasonably High And Are Inconsistent With The Prevailing Rates of the Relevant Community.**

Defendants challenge the hourly rates charged by all eight attorneys and the hourly rates of the paralegals. Petitioner represented Plaintiffs on a contingency fee basis and therefore there is no evidence of each attorney's "actual billing rate" in this case.[1] Thus, their rates should be determined by evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases. Petitioner claimed rates are excessive and should be reduced. The recoverable hourly rate for the remaining attorneys should be as follows:

| Lawyer | Requested Rate | Adjusted Rate |
|---|---|---|
| Jon Loevy | $1,500.00 | **$750** |
| Russell Ainsworth | $1,141.00 | **$500** |
| Andrea Lyon | $1,141.00 | **$300** |
| Julia Rickert | $948.00 | **$325** |
| Sam Heppell | $777.00 | **$250** |
| Isaac Green | $581.00 | **$200** |
| Alyssa Martinez | $581.00 | **$200** |
| Fatima Ladha | $473.00 | **$200** |
| **Paralegal** | | |
| Bethan Gee | $175.00 | **$100** |
| Alyssa Nekritz | $175.00 | **$100** |
| Lauren Lebata | $175.00 | **$100** |
| Brynn Schaal | $175.00 | **$100** |
| Olivia Toppel | $175.00 | **$100** |

"A reasonable hourly rate is based on the local market rate for the attorney's services." *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014) (citing *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011)). This determination is based on "'the prevailing market rate for

---

[1] One of the factors the Court should consider in assessing the appropriate fee award is whether there was a contingency fee. *Hensley*, 461 U.S. at 430 n.3. Petitioner's affidavits are silent on this—despite their burden to demonstrate the reasonableness of their requested fees.

*lawyers engaged in the type of litigation in which the fee is being sought.*'" *Fields v. City of Chicago*, No. 10 C 1168, 2018 WL 253716, at *2 (N.D. Ill. Jan. 1, 2018) (quoting *Cooper v. Casey*, 97 F.3d 914, 920 (7th Cir. 1996) (emphasis in original)). "The best evidence of the market rate is the amount the attorney actually bills for similar work, but if that rate can't be determined, then the district court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases." *Id*. (citing *Johnson v. GDF, Inc.*, 668 F.3d 927, 933 (7th Cir. 2012)). "The party seeking a fee award bears the burden of establishing the market rate for the work; if the lawyer fails to carry that burden, the district court can independently determine the appropriate rate." *Id*. Petitioner failed to meet this burden with respect to the requested rates of their attorneys.

Additionally, the rates chosen by Petitioner are pulled from the Laffey Matrix, which does not suffice as evidence to support any of Petitioner's claimed market rates. The Seventh Circuit has not formally adopted the Laffey Matrix, and other circuits have "expressed some skepticism about applying the Laffey Matrix outside of Washington, D.C." *Pickett*, 664 F.3d at 649–50. Multiple district courts in the Seventh Circuit have refused to use the Laffey Matrix as an indication of a Chicago attorney's market rate. *See Fields*, 2018 WL 253716, at *3; *Wells*, 925 F. Supp. 2d at 1040; *Martin v. City of Chicago*, No. 15-cv-04576, 2017 WL 4122738, at *5 (N.D. Ill. Sept. 18, 2017); *see also Obrycka v. City of Chicago*, No. 07 C 2372, 2013 WL 1749803, at *3 (N.D. Ill. Apr. 23, 2013).

The choice to award current rates or historical rates plus interest is within the Court's discretion. *Adamik v. Motyka*, No. 12 C 3810, 2018 WL 3574751, at *4 (N.D. Ill. July 25, 2018) *citing Pickett*, 813 F.3d at 647 ("To account for the delay, a district court has the discretion to choose one of two methods to calculate the fee award. It may calculate the fee award for services

rendered in prior years using the attorney's current hourly billing rate. Or it may also calculate the fee award using the hourly rate the lawyer charged at the time the lawyer performed the services for the client (the 'historical rate') and add interest to that amount."). Here the Court should not entertain Plaintiff's request for interest if awarding the current rates as opposed to the historical rates.

In support of their petition Petitioner provided the declaration of Paul E. Veith, a former partner at Sidley Austin LLP, who formerly practiced complex commercial litigation (specifically led the firm's software and trade secrets practice) and now practices independently as an arbitrator and mediator. Ex. E ¶¶ 2–3. Veith's billing competed with "firms in the upper half of the AmLaw 100."[2] *Id.* ¶ 4. Veith's "general familiarity with Loevy & Loevy" is insufficient to establish that the firm commands rates comparable with one the largest and highest grossing firms in the world or the applicable market rate for civil rights attorneys in Chicago. Furthermore, Veith offers no basis for his opinion that "any firm (or individual lawyer) who has achieved reputation as a top-tier practitioner in a field can reasonably claim that its (or his or her) time is as valuable as the standard rates charged by lawyers practicing in the top tier of the AmLaw 100." Loevy & Loevy is not Sidley Austin LLP. The former has approximately 70 attorneys practicing in a niche area while the latter has nearly 2000 attorneys practicing in virtually every complex commercial market. The rates are driven by the market in which the attorney practices. Litigators for private billion-dollar corporations are paid at a rate that is commiserate with other firms of that size with the same multinational clientele offering multinational expertise (like intellectual property in which Veith practiced) and resources. The overhead costs of the multi-national, 2000 attorney firm, with dozens of offices in expensive locations all over the world in high-security high-rises are

---

[2] Sidley Austin is ranked 6th on the Am law 200 having Gross Revenue of $3,439,646,000.00 in 2024. *See, e.g.*, https://www.law.com/compass/firm/LF00001065/Sidley/overview.

much larger than a firm like Loevy & Loevy that has approximately 70 attorneys. Those firms also must adhere to strict guidelines from their clients that curb the allowable billing. For example, commonly engagements disallow billing for certain tasks, and have other cost control, such as forbidding block billing, requiring billing in 6-minute increments, and utilizing the most junior attorneys or non-attorney staff capable of a task, limiting the work of the more expensive partners to only those tasks that require their expertise and skill. Those engagements also require timely, contemporaneous billing. The firms cannot, like Loevy & Loevy does, recreate years of billing after the fact. Loevy & Loevy have not adhered to the strict billing practices like those multinational corporations require. When working at those rates, too, there is no contingency fee for the firm on top of those rates. Veith does not aver that partners at the top firms in the world collect $1,500 for hourly work *plus* a 40% contingency fee, as Loevy & Loevy is seeking here.

As Veith notes, "Loevy & Loevy typically represents clients who are plaintiffs in civil actions who cannot afford to do so." Ex. E ¶ 8. Operating costs and revenues—and finances as a whole—vary drastically and the price an attorney can charge is dictated by those who can and will pay it, not by self-serving proclamations about the value of any attorney's time. Moreover, Loevy & Loevy—as their billing records suggest—are also compensated on a contingency basis, a much different incentive basis than a massive corporate law firm.

Petitioner offers no evidence of the hourly rates Loevy & Loevy actually charges for comparable matters—indeed, for any matters at all—and instead anchor their request to the rates of the world's largest law firms. That apples-to-oranges comparison is not a reliable proxy for prevailing rates in the relevant market for boutique civil-rights litigation. Indeed, Petitioner failed to submit evidence of their actual billing rates charged in any practice area; this omission further underscores the absence of competent proof to support the requested rates. The determination of

reasonable hourly rate is based on "'the prevailing market rate for *lawyers engaged in the type of litigation in which the fee is being sought*.'" *Fields*, 2018 WL 253716, at *2. They have provided no "evidence of rates charged by similarly experienced attorneys in the community [or] evidence of rates set for the attorney in similar cases." *Id*. Instead, they have provided only the "personal knowledge" and "independent research" of Veith, who "reviewed a document provided by Loevy & Loevy describing the hourly rates applicable to the work for which it seeks a fee award in this matter" and determined it was reasonable Ex. E ¶¶ 13–15. Therefore, Loevy & Loevy have failed in their burden of demonstrating to the Court that their claimed hourly rates are reasonable. *Hensley*, 461 U.S. at 437.

Loevy & Loevy ask the Court to consider the *Hensley* factors in determining the reasonableness of the requested rates, but those factors are considered only after the lodestar figure is determined to adjust the fee award accordingly. *Estate of Enoch*, 570 F.3d at 823 (recognizing that the lodestar figure may be adjusted based on a number of factors). *Hensley* dealt with downward departures from the Lodestar based on limited success of claims pursued in the litigation. *Hensley,* 461 U.S. at 436; *see also Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (finding where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.") The amount of the judgment Plaintiffs and their attorneys obtained has no bearing on the reasonableness of the rates their attorneys may recover under § 1988. It makes no sense to increase the hourly rate based on the amount of the award, when Loevy & Loevy already profit from success by receiving a contingency fee on top of the § 1988 award, which (on information and belief) is 40% of the award.

Petitioner also argues, with no legal support, that their rates are reasonable because of the parties' respective positions during settlement. Petitioner also argues that the Court should find their rates reasonable because "they demonstrated the highest level of skill, professionalism, and legal performance over the course of the litigation." Dkt. 548 at 17. Petitioner also contends that their "overall efficiency supports the rates sought" *Id.* (citing *Dubin v. Bd. of Madison Area Tech. Coll. Dist.*, No. 10-CV-035, 2011 WL 13209629, at *9 (W.D. Wis. Dec. 19, 2011) (reducing *Plaintiff's* hours spent on summary judgment and rejecting argument that greater efficiency supports a higher award); *Warfield v. City of Chicago*, 733 F. Supp. 2d 950, 957 (N.D. Ill. 2010) (denying lodestar enhancement based on plaintiff's assertion it was more efficient). These arguments merit no consideration because the reasonableness of their rates is not based on the parties' respective pretrial valuation of the matter or their performance at trial or their efficiency in the litigation, but "is based on the local market rate for the attorney's services." *Montanez v. Simon*, 755 F.3d at 553 (7th Cir. 2014). As set forth below, the Court should determine that Petitioner has not met its burden in establishing that the requested rates are reasonable based on the prevailing market rates and Seventh Circuit guidance.

## A. Jon Loevy's Hourly Claimed Rate of $1,500.00 and Russell Ainsworth and Andrea Lyon's Claimed Hourly Rate of $1,141.00 are Unsupported and Unreasonable.

The hourly rates sought by Petitioner are grossly inflated and are essentially double what courts have previously awarded. In short, Petitioner failed to meet their burden to show that Jon Loevy's requested hourly rate of $1,500.00 or Russell Ainsworth or Andrea Lyon's requested hourly rates of $1,141.00 are the prevailing market rate for lawyers engaged §1983 litigation for similarly experienced attorneys in the Chicago legal market. In fact, Petitioner has not produced any evidence of a market rate or the amount these attorneys actually bill for similar work. Since Petitioner failed to meet their burden with respect to the requested rates of their attorneys, the

district court can independently determine the appropriate rate. *Fields*, 2018 WL 253716, at *3 ("The Court finds that [Jon] Loevy's current market rate for litigation of this type is $550. He has not provided persuasive evidence supporting the much higher $750 rate that he requests."). The Court should award no more than $750 for Jon Loevy, $500 for Ainsworth, and $300 for Lyon.

     **i.**    **Jon Loevy**

Loevy is undeniably an experienced civil rights lawyer, yet tellingly he does not disclose the rate awarded in any of his cases. In one such case tried in 2023, *Gray v. City of Chicago*, he requested a rate of $750.00—a rate $200 more than his adjudicated rate in *Fields*—but he inexplicably seeks to double even that very generous rate. He does not explain how his claimed rate doubled in just two years or how that is reasonable. "The best evidence of an attorney's market rate is his or her actual billing rate for similar work," with the rates of other counsel of similar ability for similar work being "the next best evidence." *Malone v. ASAP Trans Corp.*, No. 22 C 3572, 2025 WL 655552, at *4 (N.D. Ill. Jan. 2, 2025) (citing *Johnson v. GDF, Inc.*, 668 F.3d 927, 933 (7th Cir. 2012)). However, Loevy also does not disclose whether he has any cases where he charges an hourly rate—the best evidence of a reasonable rate. Accordingly, Loevy's claimed hourly rate of $1500 lacks any legitimate evidentiary basis as he compares himself to counsel who do entirely different work. The Court should reduce the rate, at a minimum, to the $750 hourly rate Loevy himself sought in *Gray*.

In *Hirsch v. Will County*, 2023 WL 6809609 (N.D. Ill. Oct. 15, 2023), the Court found that attorneys in civil rights cases frequently are awarded fees between $475 and $585 per hour. See also *McKinney v. Chicago Transit Authority*, 2023 WL 5153753 (N.D. Ill. August 10, 2023) (awarding fees between $550 and $650 per hour; *Williams v. City of Chicago*, 2022 WL 971604 (N.D. Ill. March 31, 2022), (awarding fees of $425 per hour). Importantly, courts have awarded Loevy far less. *Fields v. City of Chicago*, No. 10 C 1168, 2018 WL 253716, at *3 (N.D. Ill.

2018) (awarding Jon Loevy, with other attorneys of 25 years of experience, an hourly rate of $550). Utilizing the inflation calculator cited in Loevy & Loevy's Petition, Dkt. 548 at 20 n. 6, the 2023 *Gray* figure becomes $796.88 when adjusted for inflation—a far cry from $1500—but the 2018 award in *Fields* of $550 when adjusted for inflation becomes $708.87. However, even the $750 hourly rate Loevy claimed in *Gray* represents a 36% increase from his hourly rate that Judge Kennelly adjudicated in *Fields*. Accordingly, a rate of no more than $750 is reasonable for Jon Loevy.

### ii. Russel Ainsworth

Ainsworth's proposed hourly rate, along with each other attorney, is supported with his own self-serving affidavit. "[A]n attorney's self-serving affidavit alone cannot establish the market rate for that attorney's services…" *Harper v. City of Chicago Heights*, 223 F.3d 593, 604 (7th Cir. 2000). According to his affidavit, Ainsworth has been practicing federal civil rights law for 23 years. Exhibit J ¶ 6. He cites his success in other wrongful conviction cases and other apparent §1983 litigation but does not state what rate he received for his work in any of those cases. *Id*. ¶¶ 8–22, 24. He also cites some success in appellate and criminal work. *Id*. ¶¶ 23, 25. The lone reference to a billing rate is his claim that "my billing rate is $1,141/hour. I believe this rate to be commensurate with civil rights attorneys with my experience and skill." *Id*. ¶ 27. Therefore, Mr. Ainsworth has not provided the amount he actually bills for similar work, nor evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases. Therefore, in accordance with *Fields*, an appropriate rate for Ainsworth is no more than $500.

### iii. Andrea Lyon

Andrea Lyon has claimed the same rate as Ainsworth $1,141.00. According to her declaration, she received her undergraduate degree from Rutgers University and her law degree

from Antioch School of Law. Ex. P ¶ 4. She details her experience as a criminal defense lawyer but does not mention any other relevant civil rights litigation experience. *See Jimenez v. City of Chicago*, No. 09 C 8081, 2012 WL 5512266, at *3 (N.D. Ill. Nov. 14, 2012) (finding that an attorney's "work in non-civil rights litigation translates to something less than the equivalent amount of civil rights litigation experience…"). Petitioner's requested hourly rate for Andrea Lyon is not appropriate in this case. Although Lyon has extensive legal experience, Petitioner point to only one civil rights matter that she helped litigate—this one—and are otherwise silent as to any relevant experience Lyon has in civil rights or police misconduct matters. Civil rights law is not listed as a practice area on her firm's website.[3] All the practice areas listed are related to criminal defense, not lawsuits. According to PACER, Lyon worked on two other civil rights cases in this district, the 2003 suit, *Hobley v. Burge*, No. 03-cv-03678, and a currently pending 2024 suit, *Gillespie v. Boudreau*, No. 24-cv-08019. Lyon's experience level was reflected in the fact that she did not question a single witness at trial or participate in arguments.

Lyon's legal experience is otherwise apparently limited to criminal matters. Thus, she is not entitled to rates reserved for seasoned civil rights litigators. *Jimenez*, 2012 WL 5512266, at *3. Filing appearances in two other civil rights lawsuits over a span of 21 years is far too little experience for her requested rate. Based on similar hourly rates granted in other cases, Lyon's overall qualifications, and her work on this matter, an hourly rate of no more than $300 is appropriate. *See*, *e.g.*, *Obrycka v. City of Chicago*, 2013 WL 1749803, at *3 (courts in this district have approved hourly rates ranging from $285 to $310 for trial attorneys with significant litigation experience but limited civil rights experience).

---

[3] https://www.lyonkerr.com/practice-areas/ (last visited December 18, 2025).

### iv. Reasonable Rates For Loevy, Ainsworth, and Lyon

Not all § 1983 cases are equal and those from different markets—including the Central and Eastern District of California cases which Petitioner cites—are not helpful in determining a reasonable market rate here. *Montanez v. Simon*, 755 F.3d 547, 554 (7th Cir. 2014) (holding that the district court was free to disregard fee agreements involving different markets). Petitioner also misleadingly cites *National Rifle Ass'n v. Village of Oak Park,* 871 F. Supp. 2d 781, 788 (N.D. Ill. 2012) (awarding rate of $1,020 to former U.S. Solicitor General Paul Clement for arguing on behalf of the NRA at the Supreme Court). The rates for a former Solicitor General conducting oral argument at the Supreme Court are not commiserate. The *Oak Park* court awarded Stephen P. Halbrook, the NRA's lead counsel at the District Court and Seventh Circuit a rate of $450 per hour. *Id.* at 788.

Petitioner failed to cite the rates received in any other cases in which Mr. Ainsworth or Ms. Lyon have been awarded a similar rate of $1,141, or Jon Loevy $1500 respectively, or any rate close to those amounts in any prior civil rights matter. *See Edwards v. Rogowski*, No. 06 C 3110, 2009 WL 742871, at *4 (N.D. Ill. Mar. 18, 2009) (giving little weight to attorneys' self-serving affidavits that failed to demonstrate reasonableness of rates requested). Which leaves Petitioner's conclusory statements that do not support their claimed rates. *See Montanez v. Chicago Police Officers Fico (Star No. 6284), Simon (Star No. 16497)*, 931 F. Supp. 2d 869, 876 (N.D. Ill. 2013) (declining to adopt attorney's position that such a statement suffices as concrete evidence of that attorney's hourly rate). Petitioner also failed to submit any affidavits from experienced attorneys describing the rates that they charge for *comparable* work. Mr. Ainsworth's affidavit does not serve Ms. Lyon either. "[C]onclusory affidavits from attorneys merely opining on the reasonableness of another attorney's fee – unlike affidavits describing what comparable attorneys charge for similar services—have little probative value." *Montanez*, 755 F.3d at 553. Petitioner failed to establish the

market rate "by submitting affidavits from similarly experienced attorneys attesting to the rates they charge paying clients for similar work or by submitting evidence of fee awards that the applicant has received in similar cases." *Small v. Richard Wolf Medical Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001).

In *Johansen v. Wexford Health Sources*, No. 15-cv-2376, 2021 WL 1103349 (N.D. Ill. Mar. 23, 2021), the lead attorney requested a rate of $600 per hour. *Id.* at *4. The attorney with more than thirty years of litigation experience and had appeared in over 200 cases—"all but one was classified as involving 'civil rights' claims." In another case, an attorney with 29 years of experience, but only some background in civil rights litigation, was awarded $310 per hour when he requested $350 per hour. *Obrycka v. City of Chi.*, No. 07-cv-2372, 2013 WL 1749803, at *3 (N.D. Ill. Apr. 23, 2013). Where an attorney had 39 years of relevant civil rights experience, a higher rate of $465 per hour was deemed appropriate. *Nelson v. Lis*, No. 09-cv-883, 2017 WL 1151055, at *4 (N.D. Ill. Mar. 28, 2017). In that same case, the court awarded $375 per hour to an attorney with "significant experience in other areas of law," but was not as developed in the area of civil rights litigation. *Id.*

Jon Loevy should be receiving no more than $750, while Ainsworth should receive no more than $500, and Lyon should receive no more than $300. *See Adamik v. Motyka*, No. 12 C 3810, 2018 WL 3574751, at *4 (N.D. Ill. July 25, 2018) (awarding attorney with seven years of experience litigating civil rights cases $310 per hour); *First Midwest Bank*, 2018 WL 4126570, at *23 (N.D. Ill. Aug. 29, 2018) (attorney practicing since 2012 received $275 per hour). In *Adamik v. Motyka*, the Court found the 2018 market rate for civil rights work by a highly regarded trial lawyer like Loevy was $495 per hour to $505 per hour. (citing adjudication of Loevy's fee rate in *Fox ex rel. Fox v. Barnes*, 2013 WL 4401802, at *3-4 (N.D. Ill. Aug. 15, 2013) and *Jimenez v.*

*City of Chicago*, 2012 WL 5512266, at *2 (N.D. Ill. Nov. 14, 2012).) Petitioner is correct that Ainsworth deserves a lower rate than Loevy, as Ainsworth played a significantly lesser role at trial than Loevy and is not the named partner at the firm. As explained nothing above $500 is appropriate for Ainsworth. And given Lyon's lack of civil rights or civil law experience and her minimal role in trial proceedings, Lyon is not at the level of Ainsworth, making $300 a proper measure of her skill in the area of civil rights.

### B. Isaac Green and Alyssa Martinez's Hourly Rate of $581.00 and Fatima Ladha's Hourly Rate of $473.00

Isaac Green, Alyssa Martinez, and Fatima Ladha should be receiving no more than $200. *Fields*, 2018 WL 253716, at *4 (awarding $200 per hour to similarly inexperienced attorneys at the Loevy & Loevy firm). Alyssa Martinez graduated law school in 2021, was admitted to the bar of the State of California in January 2022, and has practiced civil rights litigation since that time, a total of three years. Exhibit M ¶¶ 1, 6, 8, 13. Martinez cites four cases in which she served as trial counsel, including this case, but does not state the rate she received in any of those cases. The first appearance that Martinez filed as an attorney in the Northern District of Illinois was in this case on October 3, 2023. Dkt. 221. She contends with no supporting evidence "I am seeking an hourly rate of $581 per hour for the work performed in this case." *Id*. ¶ 14.

Fatima Ladha graduated from University of California, Berkeley School of Law in 2023. Exhibit O ¶ 5. She claims to have worked on "several wrongful conviction cases," but does not cite any specific case or rates charged. According to PACER, the first appearance she filed in the Northern District of Illinois was December 10, 2024 (*Melock v. City of Waukegan*, 24 CV 12679), and then the next day she filed an appearance in these two cases, Dkt. 274. By July 2025, she had left Loevy & Loevy. She contends her requested hourly rate of $473 is equivalent to the hourly rates for civil rights attorneys with similar qualifications and experience, while citing a December

14

2022 case, *Epps v. City and County of Denver*, No. 1:20-cv-01878- RBJ, ECF 445 (D. Colo. Dec. 30, 2022), in which a Denver-based Loevy & Loevy mid-level associate, who was a 2019 law school graduate, was awarded fees based on an hourly rate of $375. *Id*. ¶ 2. Ladha does not practice in Denver, has not yet achieved the experience of a mid-level associate, and her contention that "Chicago is a larger legal market than Denver" is inconsequential. *Id*. Notably, in *Epps*, the Court awarded a rate of $375 to only one of the associates on the team and reduced the 2019 graduate's rate to $300. *Epps,* ECF 445 at 19 ("I also note…that $375 an hour is high for associates who were assigned to this case shortly after beginning to practice law).

Isaac Green graduated from Harvard Law School in 2022 and seeks an hourly rate of $581. Exhibit N ¶ 5. He clerked for two judges following graduation, so it is not entirely clear how many years of experience he has with civil rights litigation, but it is no more than two. Green filed his first appearance in any case in the Northern District of Illinois on February 10, 2025—in this litigation. Dk. 415. Green cites the *Epps* case also and claims his contemporaries bill at a rate of $1200 or more. *Id*. ¶¶ 11–12. For comparison, the Defense associates are charging $210–$230 per hour. It is Petitioner's burden to establish the hourly rate and Green failed to do so.

All of these junior attorneys should receive a rate of no more than $200 per hour. The fact that Breana Brill who has practiced since 2021 is billing $210 is evidence of the actual prevailing market rate.

### C. Sam Heppell's Hourly Rate of $777.00 and Julia Rickert's Hourly Rate of $948.00

Sam Heppell claims a rate of $777, but he should be receiving no more than $250. *Fields*, 2018 WL 253716, at *4 (adjudicating Heppell's hourly rate at $225). Heppell graduated in 2014 and was admitted to the bar of the State of Illinois in November 2015. Exhibit L ¶¶ 1, 5. He worked on this case between 7/25/2019 – 10/5/2023. Heppell practiced civil rights litigation between September 2015 and October 2023, a total of 8 years. Heppell claims "My hourly rate is $777.

This rate is commensurate with rates charged by attorneys of like experience and skill practicing in this area." *Id*. ¶ 9. Yet he cites no evidence of that rate; a rate which is contrary to rates awarded to similarly experienced attorneys. *See Williams v. City of Chicago*, No. 17 C 5186, 2022 WL 971604, at *5 (N.D. Ill. Mar. 31, 2022) (Finding rate of $250 per hour is reasonable for attorney with 8 years of experience).

Julia Rickert seeks an hourly rate of $948 should be receiving no more than $325. Exhibit K ¶ 3. Rickert graduated in 2010, and has 9 years' experience in civil rights litigation, including one year with the MacArthur Justice Center and 8 years with Loevy & Loevy. *Id*. ¶¶ 4–6. Rickert cites a number of successful cases she worked on but does not detail billing rates in any of those cases. Instead, she cites a case from the central district of California—which is not the relevant market—in which the Court found a $700 hourly rate reasonable for attorneys with twelve and fourteen years of experience. *See, Zelaya v. City of Los Angeles*, No. CV 20-8382-ODW-MAAx, 2024 WL 3183882, at *3-4 (C.D. Cal. June 25, 2024). She cites a second central district case in which a 2009 graduate and colleague of hers received an hourly rate of $750 in connection with a successful motion to compel. *See, Torres v. Los Angeles Sheriff's Department et al.,* Case No. 2:22-cv-07450-MWF-MAR (C.D. Cal.) (ECF 146). Fees connected with a motion to compel are different than those awarded to a prevailing party as they are punitive in nature. She similarly cites to *Calloway v. Chicago Police Dep't*, 2019-CH-14190, Order on Plaintiff's Motion to Reconsider and Plaintiff's Second Motion for Sanctions (Sept. 13, 2022) which was a FOIA case. Like Heppell, she cites no evidence rates awarded to similarly experienced attorneys in this market. See *Williams v. City of Chicago,* No. 17 C 5186, 2022 WL 971604, at *5 (N.D. Ill. Mar. 31, 2022) (Finding rate of $250 per hour is reasonable for attorney with 8 years of experience).

Rickert also claims that $948 is the rate recommended by the FitzPatrick Matrix, published by the U.S. Attorney's Office for the District of Columbia. Exhibit K ¶ 11. Upon review of the matrix that figure corresponds with 14 years' experience in 2024. The corresponding figure in the Laffey Matrix is $878. Notably, the FitzPatrick Matrix was developed to provide "a reliable assessment of fees charged for complex federal litigation in the District [of Columbia]." *DL v. District of Columbia*, 924 F.3d 585, 595 (D.C. Cir. 2019). For this reason, one Illinois Court has found the Fitzpatrick Matrix was not particularly dispositive as to the prevailing market rate for attorneys in the Central District of Illinois "because the underlying dataset of the Fitzpatrick Matrix is based on the hourly rates charged by lawyers litigating in the United States District Court for the District of Columbia." *Doe v. MaCleod*, No. 18-CV-03191, 2024 WL 1335041, at *5 (C.D. Ill. Mar. 28, 2024). The Court there made "its own determination" of a reasonable rate, noting "a survey of recent fee awards in this district reflects a much lower range of hourly rates than those requested by Plaintiff," and applied a 20% reduction to result in the effective hourly rate. *Id.* at *7. Kirkland Partners received anywhere from $466 up to $578 per hour. *Id.* The only other Seventh Circuit case that even mentions the Fitzpatrick Matrix, "approve[d] of the [Petitioner'] use of the 'Fitzpatrick Matrix' to ground their hourly rate calculation." *United States v. United States Steel Corp.*, No. 2:18-CV-127 JD, 2024 WL 1191716, at *11 (N.D. Ind. Mar. 19, 2024). The Court there, without much analysis, simply concluded "[t]he hourly rates proposed by the [Petitioner'] are well within the hourly rate equivalent of other awards this Court has approved." *Id.*

### D. Paralegal Hourly Rate

Petitioner has not established that $175.00 per hour is the prevailing market rate for Paralegals Bethan Gee, Lauren Lebata, Alyssa Nekritz, Brynn Schaal, and Olivia Toppel. This rate is 75% higher than the rate charge by the Defendant's paralegals in this matter ($100). Thus, a similar rate is required for Plaintiff's paralegals. *See*, *e.g.*, *Blackwell v. Kalinowsk*, No. 09-cv-

7257, 2012 WL 469962 at *9 (N.D. Ill. Feb. 13, 2012) (approving $100 per hour as an appropriate rate for a paralegal, down from plaintiff's request for $125 per hour, where plaintiff failed to submit "sufficient information (such as [the paralegal's] years of paralegal experience) in order to justify this rate."); *Fields v. City of Chi.*, No. 10-cv-1168, 2018 WL 253716, at *4–5 (N.D. Ill. Jan. 1, 2018) (approving hourly rates of $125 and $150 for paralegals). Following *Blackwell*, the Court should awards Plaintiff a $100 per hour fee for Paralegal work on this case because while their time is compensable, Plaintiff have not provided sufficient documentation supporting a higher rate.

## II.    The Number of Hours Claimed by Petitioner is Unreasonable.

Multiple independent grounds exist to reduce the hours sought by Petitioner. Even where a plaintiff has obtained "excellent results" to warrant a "fully compensatory fee," this does not mean the plaintiff should be awarded fees for all hours expended, as Petitioner seeks in its petition, but only for hours "reasonably expended." *Hensley*, 461 U.S. at 435 (emphasis added). The Court should reduce the number of recoverable hours for times entries that are (1) excessive or unnecessary; (2) vague or insufficiently documented; (3) duplicative or overstaffed; (4) administrative; (5) unreasonably block billed.

Defendants note that the manner in which Loevy & Loevy kept its time records in this case resulted in many entries being objectionable on multiple grounds. For example, overly vague entries are often also excessive and/or duplicative. Defendants have sought a settlement conference as to fees but petitioners declined.

### A.  Time Expended by Defense Counsel is not a Proxy for Assessing Petitioner's Fees

Petitioner contends its time is reasonable because Defendants billed nearly twice the time. Petitioner points to the 7,296 hours billed by attorney's, hours, and another 700 hours for paralegals**,** representing the seven individual Defendants Robert Bartik, John Zalatoris, James Breen, Edward Winstead, Joseph Struck, Stephen Franko, and Robert Girardi ("Individual City

Defendants"), and the City of Chicago as a comparator for the reasonableness of the hours they claim. They ask the Court to consider "the additional time spent on the case by the various lawyers in the City's Corporation Counsel's office, who also worked on the case over the years but do not keep their time." Dkt. 548 at 10. The City's Corporation Counsel's office did not have an appearance in this case; they are a client, a representative of the City, not the counsel in this case. Additionally, Defendants Winstead, Struck, Franco, and Girardi prevailed on their claims—who represent more than 50% of the defendants at trial—so the hours expended toward defending these prevailing defendants should not be counted when considering the number of hours reasonably needed to present the case. *See*, *e.g.*, *McDonough*, 935 F. Supp. 2d at 904 (excluding hours attributable to prevailing defendants from comparison of hours parties expended preparing for the case and ultimately awarding less than half of the fees sought). It is impossible to accurately quantify the amount of hours incurred pursing these "non-prevailing" defendants primarily because of Petitioner's vague billing practices.

Plaintiff's overly simplistic logic mistakenly assumes that either side is doing the same work. They are not. Petitioner contends "in most cases it takes more time to prepare and try a case on the Plaintiff's behalf than it takes to defend." *Id*. at *1 (citing *Pisut v. Pasavare, Inc.*, 03 C 4382, 2005 WL 1138638, *1 (N.D. Ill. Apr. 29, 2005)). Contrary to *Pisut*—which involved a single plaintiff suing her employer for discrimination and a petition that sought fees at $250 per hour—defense counsel in civil rights cases typically spend more time, not less, than counsel for plaintiffs. Importantly, Loevy & Loevy, as well as Andrea Lyon, were involved extensively in the prior criminal proceedings underlying this matter. *See*, *e.g.*, Dkt. 584 at 20 n.5. Those years of work in the criminal case are not compensable but provided Plaintiffs' counsel with a full factual context from which to proceed in this civil case. Defense counsel did not benefit from that background

because they were not part of the post-conviction proceedings, where these issues were litigated for years.

Petitioner cites the inapposite *McDonough v. Briatta*, 935 F. Supp. 2d 897, 905 (N.D. Ill. 2013), *on reconsideration*, No. 06 C 2732, 2013 WL 12438872 (N.D. Ill. Aug. 9, 2013). The Court analyzed the number of hours expended by the defendants' counsel by excluding the defense hours attributable to prevailing defendants. In that case, attorneys for the only Defendant who remained in the case after summary judgment billed *half as many* hours as Plaintiff's counsel. Thus, the court in *McDonough* ultimately awarded plaintiff *less than half* of the attorney's fees requested. Of the $449,083 in attorney's fees plaintiff requested, the court awarded the plaintiff only $205,348.75. *Id.* at 905. Accordingly, the Court should reject Petitioner's invitation to treat defense hours as a proxy for the reasonableness of Petitioner's time and, consistent with *McDonough* and the distinct posture of this case, considering the time incurred on non-comparable work, hours attributable to prevailing defendants, and advantages derived from Petitioner's prior, non-compensable work in the criminal matters.

### B. Excessive or Unnecessary Billed Hours

Petitioner's itemized billing statements are rife with excessive or unnecessary fees. "In determining the reasonable number of hours, [a] court should exclude hours that are 'excessive, redundant or otherwise unnecessary.'" *Small*, 264 F.3d at 708 (quoting *Hensley*, 461 U.S. at 434). Hours should be deducted from Petitioner's fees claim for work that was excessive and/or unnecessary.

#### i. Post-Judgment Time Spent on Post Trial Motions and Fee Petition

Petitioner should not be awarded the requested billing for post-judgment fees. Plaintiff included in his requested fees approximately $400,000 in post-judgment fees for the work done related to post-trial motions. The prejudgment hours totaled $4,055,400.00. Defendants object to

the inclusion of any post-judgment attorneys' fees because there is no ruling as to those motions. That is, Petitioner cannot establish that they are the prevailing party on the post-judgment motions. Local Rule 54.3 does not contemplate post-judgment fees to be considered at this time. *See, e.g.*, L.R. 54.(b) ("[The fee] motion shall be filed in accordance with the provisions of this rule and shall be filed and served no later than 91 days after the entry of the judgment."); L.R. 54.3(c) ("The filing of a fee motion shall not stop the running of the time for appeal of any judgment on which the motion is founded. . . . The time requirements of Fed.R.Civ.P. 59 are not changed by this rule.").

Out of all hours submitted by Petitioner, **341.75** of those hours were spent preparing the responses to post-judgment motions and time preparing their fee petition materials. For comparison, Defendants billed approximately 170 hours—less than half—on drafting heir post-trial motions. Based on this entry and many other entries listed in the hours submitted, two things are apparent: (1) Attorneys did not keep contemporaneous hours but rather constructed them after the fact, and (2) due to this, attorneys spent an excessive amount of time drafting and tallying their hours after the trial. Defendants should not be responsible for paying fees for unresolved motions and Petitioner's counsel inability to keep contemporaneous records of their hours. See, *e.g.*, Exhibit B at 17 (Ainsworth - 3.5 hours reviewing 15 pages of timesheets); 20 (Green - 6.75 hours preparing 2 pages of timesheets); 34–35 (Ladha – 35.5 post-judgment hours and 275.25 hours with little or no descriptions); 39 (Loevy - 532 hours billed in just 9 entries, 123.5 hours on post-trial motions in 11 entries); 41–45 (Lyon - 292.00 with little or no descriptions). This amount of time is excessive, improperly documented, and a case of "the tail wagging the dog, with a vengeance." *Ustrak*, 851 F.2d at 988. Because Petitioner cannot establish they are the prevailing party in the post-judgment motions or this petition, the Court should not award any fees for that work at this

point. If the Court is inclined to include those hours, they should be reduced by no less than 50% as follows:

| Name | Amount of Post-Judgment Hours Claimed | Recommended Reduction of Hours (if not excluded) |
|---|---|---|
| Russell Ainsworth | 41 | 20.5 |
| Isaac Green | 56.25 | 28.125 |
| Fatima Ladha | 35.5 | 17.25 |
| Jon Loevy | 151.5 | 75.75 |
| Andrea Lyon | 7 | 3.5 |
| Alyssa Nekritz | 9.5 | 4.75 |
| Julia Rickert | 38 | 19 |
| Brynn Schaal | 3 | 1.5 |

*The hours (again if awarded at all) should be reduced due to 170.375. The rulings on these motions may reveal that some or all of the time should be further reduced. Defendants reserve the right to supplement these arguments upon ruling.

(All post-judgment entries identified in Defendants' Objections to Hours, attached as Exhibit A, at 2, 33, 40, 50, 109, 126, 128)

## ii. Communications with Client and Co-Counsel[4]

Attorneys requested excessive time allocated to communicating with their client or team. (Appx. A, pp. 4-5; Appx. B, pp. 5-6). The time spent on these communications was not reasonable. *See Ozinga v. United States Dept. of Health and Human Services*, No. 13 C 3292, 2018 WL 2320933, at *9 (N.D. Ill. May 22, 2018) (reducing unspecified client communications by 25 percent); *Bellamy*, 2017 WL 3675729, at *10 (reducing time entries where more than one attorney was present for a client meeting by half).

Although, "[t]he practice of law often, indeed usually, involves significant periods of consultation amount counsel," the billing for these communications is clearly excessive. *Tchemkou*

---

[4] This and the following sections address only the requested fees up to judgment, and do not include any post-judgment hours.

*v. Mukasey*, 517 F.3d 506, 511 (7th Cir. 2008). The four attorneys who billed excessively on client or co-counsel communications are Russell Ainsworth, Sam Heppell, Alyssa Martinez, and Julie Rickert. Ainsworth spent 362.5 of his claimed hours writing emails, on calls or in meetings. Of those, 119 hours were spent in internal meetings alone. Petitioner's practice of billing in quarter hour increments compounds this problem as even short phones calls or emails become artificially inflated. Even billing in six-minute increments for multiple team members to review email communications is excessive: "[B]illing in increments of 0.10 of an hour, or six minutes, for exchanging and reviewing emails is bound to be excessive, especially where three or four attorneys (two of whom were senior partners) were a part of most email chains." *Bellamy*, 2017 WL 3675729, at *7 (citing *Smith*, 2015 WL 5675376, at *8). Over a span of three years, this practice results in ballooning billing totals, and is not appropriate here.

Courts have specifically cut back hours for excessive internal communications. *See Fields*, 2018 WL 253716, at *9 (reducing total fees requested by five percent in part due to "the number of entries relating to conferencing or e-mailing among counsel at the firm"); *Bellamy*, 2017 WL 3675729, at *7 (reducing by two-thirds for intra-office emailing between co-counsel); *Smith*, 2015 WL 5675376, at * 8 (reducing attorneys' total requested time by 5 percent for excessive communication between co-counsel); *see also Ingram ex rel. Ingram v. Jones*, 46 F. Supp. 2d 795, 799 (N.D. Ill. 1999) (deducting time for undetailed entry of intra-office conferencing). A reduction for excessive conferencing would likewise be warranted here.

These following hours are excessive, and so the following hours should be deducted from Petitioner's total hours billed as follows:

| Name | Total Hours of Excessive Communication Entries | Recommended Reduction Hours |
|---|---|---|
| Russell Ainsworth | 181.25 | 181.25 |
| Alyssa Martinez | 45.75 | 22.875 |
| Julia Rickert | 190 | 190 |

(All excessive communication entries identified in Exhibit A at 2, 25, 60)

### iii. Non-City work

Any and all work done pursing Cook County as a defendant is inherently unnecessary in pursuing the City. Ainsworth specifically bills at least 23.5 hours as work relating to communicating with ASA Counsel; service on the County; on the "prosecutor sj response," responses to "ASA motions," "prosecutor facts," "prosecutor immunity argument's; etc. (Dkt. 548–2 at 3, 11). There is likely much more work attributable to county specific work; however it is not obvious due to the vagueness of billing records provided. The same is true of Alyssa Martinez's records which describe no less than 124.75 of work that she specifically attributes to work on the County portion of this case. While the evidence at trial was that the County prosecutors were intimately involved in the investigation and interrogations of plaintiffs, these entries are specifically attributed to County specific work. Accordingly, the Cour should exclude those fees entirely or at the very least reduce them by one half to account for hours expended for prosecution of the claims against the County. All such work should be reduced accordingly and as follows:

| Name | Total Hours Attributable to Non-City Work | Recommended Reduction of Hours |
|---|---|---|
| Russell Ainsworth | 23.25 | 23.25 |
| Alyssa Martinez | 124.75 | 124.75 |

(All Non-City Work entries identified in Exhibit A at 2, 25)

### iv.     Time Spent Reviewing Documents

No doubt that diligence requires attorneys to conduct factual and legal research; however, hours of experienced attorney time to review basic documents is excessive. Particularly egregious for example, Ainsworth billed an excessive amount of time to review emails, attorney appearances, and minute entries. In total he billed 172.75 hours of excessive time reviewing documents. Further compounding the problem, Ainsworth—like all of Petioner's attorneys—bills in 0.25 increments to review each email, appearance, or minute order, no matter the time it takes to view each item. Courts have repeatedly reduced the billed time of attorneys using one-tenth of an hour to review single emails, minute orders, and appearances. *Smith*, 2015 WL 5675376, at *9 (reducing by 50 percent fees for review of minute orders in six minute increments); *Taylor v. Law Offices of Vincent PeterCignarale, LLC*, No. 11-cv-4853, 2011 WL 6102020, at *2 (N.D. Ill. Dec. 5, 2011) (reducing by two-thirds fees billed in 0.1-hour increments requested for email review) *Grayer*, 2014 WL 6713480, at *17, 21 (reducing by two-thirds each entry for email review). Ainsworth's time billed reviewing should be reduced by 172.75 hours because this work was not reasonable. The same is true for Julia Rickert who also spent 190 hours reviewing documents and Alyssa Martinez who spent 45.75 hours. None of Rickert's hours are compensable and Martinez's should be reduced by 50% given their respective experience.

Accordingly, Defendants submit that Petitioner's total hours billed should be reduced for excessive review as follows:

| Name | Total Hours of Excessive Review | Recommended Reduction Hours |
|---|---|---|
| Russell Ainsworth | 172.75 | 172.75 |
| Alyssa Martinez | 45.75 | 22.875 |
| Julia Rickert | 190 | 190 |

(All excessive review entries identified in Exhibit A at 2, 25, 60)

### v. Non-Compensable Hours for Press Conferences and Awaiting Verdicts

Petitioner billed no less than 19.5 hours related to publicity. For example, Sam Heppel billed 1.25 of travel time for traveling to a press conference and an additional 5.5 hours planning for and attending that press conference (6.75 hours). 548-2 at 23; *see also* 548-2 at 37, 39 (Jon Loevy 9.25 on press conference); 41( Andrea Lyon 3.25 hours on press conference), 57 (Julia Rickert 5.75 hours on press conference). This time was not necessary. *See Henry v. Webermeier*, 738 F.2d 188, 194 (7th Cir. 1984) ("If, though reasonable in terms of the amount of time consumed, the travel is unnecessarily luxurious, the court should not reimburse the plaintiffs for the entire out-of-pocket expenses of travel). Petitioner's submitted time includes entries for preparing for and attending press conferences. As a result, these hours should be removed from the overall total as well.

This kind of time keeping illustrates that Petitioner did not approach its billing entries from the standpoint of a commercially viable rate—instead, it is pushing the Court to expand their compensable fees with non-compensable work. Travel time for an unnecessary task is also not compensable. *See Henry v. Webermeier*, 738 F.2d 188, 194 (7th Cir. 1984) ("If, though reasonable in terms of the amount of time consumed, the travel is unnecessarily luxurious, the court should not reimburse the plaintiffs for the entire out-of-pocket expenses of travel). This litigation occurs within the court-of-law, not the court of public opinion. This work did not further the suit before this Court. All of these hours are non-compensable as they are not necessary to the litigation.

Additionally, billing for time when counsel was awaiting the verdict was unreasonable. *See Gilfand v. Planey*, No. 07 C 2566, 2012 WL 5845530, at *10 (N.D. Ill. Nov. 19, 2012) (reducing attorney's requested hours for time spent waiting for the jury); *see also Warfield v. City of Chicago*, 733 F. Supp. 2d 950, 959-60 (N.D. Ill. 2010) (deducting time spent "waiting for the verdict…as

26

these hours were not "reasonably expended."). Counsel could easily conduct other work during this time. Russell Ainsworth, Isaac Green, Julia Rickert, and Fatima Ladha all billed for time awaiting verdict. *See* Dkt 548-2 at 17, 20, 34, 72. That time is non-compensable.

| Name | Amount of Non-Compensable Work | Recommended Reduction Hours |
|------|-------------------------------|----------------------------|
| Sam Heppell | 6.75 | 6.75 |
| Russell Ainsworth | 15.5 | 15.5 |
| Jon Loevy | 9.25 | 9.25 |
| Julia Rickert | 14 | 14 |
| Isaac Green | 8.25 | 8.25 |
| Fatima Ladha | 8.5 | 8.5 |
| Andrea Lyon | 3.25 | 3.25 |

(All Non-Compensable Work entries identified in Exhibit A at 2, 33, 40, 50, 60, 86, 126)

## C. Vague or Insufficient Documentation

A substantial reduction in the number of hours for which Petitioner seeks compensation is warranted based on the inadequate documentation of their fee request. petitioner failed to provide a complete description of some of the tasks billed. Based upon the brief descriptions given, it is difficult to determine what work was actually completed and whether the time billed was an appropriate length of time.

"[W]hen a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage." *Harper v. City of Chicago Heights*, 223 F3d 593, 605 (7th Cir 2000). "The district court has broad discretion to strike vague or unjustified billing entries" *Montanez*, 755 F.3d at 555-56. The relevant inquiry is "whether the time entries are 'sufficiently detailed to permit the Court to determine whether the hours expended were reasonable and necessary to the conduct of the litigation.'" *Gibson v. City of*

27

*Chicago*, 873 F. Supp. 2d 975, 986 (N.D. Ill. 2012) (quoting *Crispin R., Jr. v Bd. of Educ. Of the City of Chi., Dist. 299*, 2010 WL 3701328, at *6 (N.D. Ill. Sept. 10, 2010)).

While all of petitioner's billers submitted vague and insufficiently described work, particularly egregious was Andrea Lyon who billed 113.5 hours on nondescript "meetings," "calls," "work on," "hearing," and "check ins." So too were Jon Loevy's various entries totaling over 701 hours describing non-descript "check in," "pc," "address," "conf," "discuss," "review," "meet," "call," "email," "commun," "assist," "edits," "look up," "zoom," "prep," "deal," etc. These are woefully inadequate descriptions that would be rejected by an actual fee-paying client. Also vague were 18 hours from Green spent meeting, researching, or reviewing non-descript documents. The same is true of Ladha who spent 30 on non-descript tasks like "reviewing" or "finalizing" all of these entries should be stricken.

The Court should strike or reduce vague or insufficiently documented hours submitted from the total hours submitted because each of these entries lacks sufficient detail to aid the Court in determining whether these hours were reasonably expended, the Court should deduct such hours from Petitioner's fee reward. Accordingly, Defendants submit that the following hours should be deducted from Petitioner's total hours billed due to vague and unsubstantiated entries:

| Name | Amount of vague and unsubstantiated entries | Recommended Reduction Hours |
|---|---|---|
| Russell Ainsworth | 37.2 | 37.2 |
| Bethan Gee | 15.5 | 15.5 |
| Isaac Green | 18 | 18 |
| Sam Heppell | 135 | 135 |
| Fatima Ladha | 30 | 30 |
| Lauren Lebata | 17.75 | 17.75 |
| Jon Loevy | 199.5 | 199.5 |
| Andrea Lyon | 113.5 | 113.5 |

| Alyssa Martinez | 39.5 | 39.5 |
| Alyssa Nekritz | 67 | 67 |
| Brynn Schaal | 225.5 | 225.5 |

(All entries with vague or insufficient description are identified in Exhibit A at 2, 25, 33, 40, 45, 50, 60, 86, 109, 126, 128, 130, 132

### D. Duplicative Hours or Overstaffing

The number of hours for which Petitioner seeks compensation should also be reduced to account for gross overstaffing and duplicative work performed by multiple counsel on the same task. "The tendency of law firms to overstaff a case should cause the trial court to scrutinize a fees petition carefully for duplicative time." *Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1160 (7th Cir. 1989). An overall reduction in hours is appropriate to account for the duplication of efforts that stemmed from three attorneys working on the same projects and reviewing each other's work, as well as time spent by three different attorneys reviewing the same filings by Defendants.

Petitioner's fee petition reveals multiple lawyers who worked on the same activity and attended the same hearings, and thus, billed for the same work. Two or three attorneys billed time for nearly all the major activities in this case. The Court should reduce counsels' fees because the use of fewer attorneys on the matters would have sufficed. Examples of this excessive billing practice include:

Therefore, Petitioner's fee request should be reduced for duplication of effort, including multiple attorneys reviewing and editing briefs. Petitioner seeks compensation for the time of multiple counsel attended these hearings and depositions. It was not necessary to have two partner-rate billing attorneys doing the same work. A reasonable fee award should compensate one senior level attorney who attended these hearings and depositions. *See Elusta v. City of Chicago*, 760 F. Supp. 2d 792, 800 (N.D. Ill. 2010) ("A deposition is not as complex and significant as a trial, and one lawyer should be able to handle a deposition."); *Chic. Messenger Service v. Nextel Commc'ns,*

*Inc.*, No. 01 C 8820, 2005 WL 643270, at *3 (N.D. Ill. Mar. 16, 2005) (two attorneys billing for appearance at status hearings and depositions was unreasonable); *see also Entertainment Software Ass'n v. Blagojevich*, No. 05 C 4265, 2006 WL 3694851, at *8 (N.D. Ill. Aug. 9, 2006) (two or three lawyers attending depositions was excessive).

Because of Petitioner's overstaffing, a reasonable reduction of the following hours should be made in the total number of hours that are marked as duplicative. *Grayer v. Cerda*, 2014 WL 6713480, at *8 (N.D. Ill. Oct. 6, 2014) (deducting all of attorneys' hours for duplicate appearances at depositions and status hearings); *Schlacher v. Law Offices of Phillip J. Rotche & Assoc., P.C.*, 574 F.3d 852, 857 (7th Cir. 2009) (reducing requested hours by half for same work performed by multiple attorneys); *see also Robinson v. City of Harvey*, 489 F.3d 864, 871 (7th Cir. 2007) (reducing time billed by 12% due to "unreasonably duplicative work by [plaintiff's] attorneys.").

Accordingly, Defendants submit that Petitioner's total hours billed should be reduced for duplicative entries as follows:

| Name | Amount of Duplicative Entries | Recommended Reduction Hours |
|---|---|---|
| Fatima Ladha | 83.75 | 83.75 |
| Alyssa Martinez | 10.625 | 10.625 |

(All duplicative entries identified in Exhibit A at 25, 40)

### E. Billed Hours for Administrative Tasks

Petitioner has included in its fee request time for administrative tasks. Tasks that are clerical in nature, they should not be compensated. "A fee petitioner is expected to exercise 'billing judgment' by winnowing down the time actually expended to the time reasonably expended." *Farooq v. Portfolio Recovery, LLC*, No. 15 C 6106, 2016 WL 2909650, at *3 (N.D. Ill. May 19, 2016) (citing *Spegon*, 175 F.3d at 552). To the extent that the petitioner does not exercise billing judgment, the Court may exclude time unreasonably spent. *Id.* at 553. "[T]he court should disallow

not only hours expended by counsel on tasks that would normally not be billed to a paying client, but also those hours expended by counsel on tasks that are easily delegable to non-professional assistance." *Sepgon*, 175 F.3d at 553. "Tasks that fall under the latter category may include administrative tasks like updating case lists and calendar entries among other things." *Farooq*, 2016 WL 2909650, at *3 (citing *Spegon*, 175 F.3d at 553).

These tasks can be performed by someone without legal experience. As such, this type of secretarial work should not be compensated. *See Pouncy v. City of Chicago*, No. 15-cv-1840, 2017 WL 8205488, at *10, (N.D. Ill. Dec. 11, 2017) ("Parties cannot recover attorneys' fees or paralegals' fees for tasks that can be delegated to a non-professional.") (citing *Spegon*, 175 F.3d at 553). Additionally, a significant amount time was expended on "simple administrative tasks that easily could have been performed by a full-time secretary." *Spegon*, 175 F.3d at 553. Such tasks as written requests for medical records, preparing and mailing documents, making copies, and electronic filing can be performed by a non-legal professional. As a result, total time dedicated to clerical tasks should not be compensated.

Accordingly, Defendants submit that Petitioner's total hours billed should be reduced for clerical and non-litigation entries as follows:

| Name | Amount of Administraive Entries | Recommended Reduction Hours |
|---|---|---|
| Fatima Ladha | 12.75 | 12.75 |
| Jon Loevy | 17.25 | 17.25 |
| Alyssa Martinez | 8.5 | 8.5 |

(All duplicative entries identified in Exhibit A at 25, 40, 50)

### F. Jon Loevy's Block Billing

Furthermore, petitioner's timesheets submitted utilize the practice of "block billing," whereby counsel include multiple tasks in a block of time without identifying and segregating the

time devoted to each task described. Although block billing is not automatic grounds for exclusion from a fee request, the block-billed hours make it inherently difficult to distinguish how much time was spent on each task listed and whether that time was reasonable. *See Farfaras v. Citizens Bank and Trust of Chi.*, 433 F.3d 558, 569 (7th Cir. 2006); *see also Joe Hand Promotions, Inc. v. Zani*, No. 11 C 4319, 2014 WL 958716 at *3 (N.D. Ill. Mar. 11, 2014).

The Supreme Court stated in *Hensley* that the prevailing party "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id*. at 433. Time records that are submitted in a form not reasonably capable of evaluation do not satisfy the burden of submitting detailed records justifying the hours claimed. *Bretford Mfg., Inc. v. Smith Sys. Mfg. Co.*, 421 F. Supp. 2d 1117, 1119 (N.D. Ill. 2006).

The practice of block billing in particular makes it much more difficult to determine how much time was spent on a particular activity. *See Gibson*, 873 F. Supp. 2d at 986 (reduced time in block billed entries by half); *Crispin R., Jr.*, 2012 WL 3701328, at *6; *In re Subpoenas Issued to Danze, Inc.*, No. 05 C 4538, 2006 WL 211942, at *3 (N.D. Ill. Jan. 18, 2006) (reduced time billed for block-billed entries by 50 percent); *see also Duran v Town of Cicero*, 2012 WL 1279903, at *15 (N.D. Ill. Apr. 16, 2012) (overall reduction of 30 percent due to block-billed and vague entries).

Courts generally look unfavorably upon the practice of "block billing" because it leads to billing inflation, and it makes it far more difficult to analyze the reasonableness of a fee request., *See Duran*, 2012 WL 1279903, at *14-15; *see also Delgado v. Village of* Rosemont, No. 03 C 7050, 2006 WL 314 7695 (N.D. Ill. Oct. 31, 2006). Given the widespread use of this practice by

attorneys in so large a fee request, a 50% reduction of the total amount of block-billed hours by Jon Loevy is warranted.[5]

The most egregious block biller is Mr. Loevy, who between January 20, 2025 and March 6, 2025, billed an astounding 532 hours billed in just 9 entries (and an additional 123.5 hours on post-trial motions in 11 entries, which are addressed separately). In other words, he was billing in day and week-long increments. During this 46-day period, Mr. Loevy seeks compensation for an average of 11.56 hours per day, every day including weekends. Defendants do not doubt that Mr. Loevy worked long days, this kind of block billing for a sustained period of nearly seven weeks cannot be considered to constitute contemporaneous billing and is not entitled to a presumption of reasonableness. Accordingly, these hours should be reduced by no less than 25% representing a reduction of 133 hours and up to 50% representing a reduction of 266.

## III.    Petitioner's Request for Costs Should Be Denied As Untimely and Unsupported.

Petitioner claim $38,877.29 in taxable costs that fall under 28 U.S.C. § 1920 and reimbursement of $217,343.49 in non-taxable costs pursuant to 42 U.S.C 1988. Any request by Petitioner for those costs is untimely under Local Rule 54.1. The rule provides that "Within 30 days of the entry of a judgment allowing costs, the prevailing party shall file a bill of costs with the clerk and serve a copy of the bill on each adverse party. If the bill of costs is not filed within 30 days, costs other than those of the clerk, taxable pursuant to 28 U.S.C. §1920, shall be deemed waived. The court may, on motion filed within the time provided for the filing of the bill of costs, extend the time for filing the bill." L.R. 54.1(a). This case reached final judgment on March 10, 2025. Accordingly, Petitioner had to file their bill of costs by April 9, 2025. However, they failed to do so and to this day, they never filed a motion to extend the time or proper bill of costs.

---

[5] While other attorneys also billed in blocks, Defendants do not take issue with those entries as they were classified with other objections categories.

Therefore, Petitioner waived their claim to taxable expenses. Furthermore, because petitioner never submitted evidence of the specific expenses incurred or billed in connection with the litigation, and the total amount of such expenses they are also not entitled to related nontaxable expenses.

None of the costs (whether taxable or not) are recoverable also because Petitioner still failed to substantiate their costs with any documentation during the meet and confer process as required by LR 54.3(d)(5)(c). Without a receipt or invoice for the charges, or any description of the documents copied and mailed, Petitioner cannot be compensated for these costs. *First Midwest Bank*, 2018 WL4126570, at *20-21 ("requested costs should not be awarded when they cannot be reasonably obtained by reference to the submitted, supporting documentation") (citing *Harkins v. Riverboat Servs., Inc.*, 286 F. Supp. 2d 976, 980 (N.D. Ill. 2003); *Springer v. Ethicon, Inc.*, No. 17 c 3930, 2018 WL 1453553, at *8 (N.D. Ill. Mar. 23, 2018) (denying costs to a party that "ma[de] no attempt to match the invoices to any particular set of documents or otherwise break down the expenses"); *Gracia v. Sigmatron Int'l, Inc.*, No. 11 C 7604, 2016 WL 6892861, at *7 (N.D. Ill. Nov. 23, 2016) (denying copying costs to a party whose "invoices do not say, even generally, what was copied or who the copies were provided to"); *Chi. Bd. Options Exch., Inc. v. Int'l Secs. Exch., LLC*, No. 07 C 623, 2014 WL 125937, at *8 (N.D. Ill. Jan. 14, 2004) (denying copying costs to party that did not "explain what the content and purpose of the copied documents were"). As such, Petitioner are entitled to no costs.

## IV.    Total Adjusted Award

Based on the foregoing objections, Petitioner's petition for an award of attorneys' fees should be adjusted as follows. The Total Reduction in Hours accounts for overlapping objections,

meaning an entry that is inappropriate for two reasons, for example, is only reduced from the total once:

| Name | Requested rate | Adjusted Rate | Requested Hours | Recommended Reduction | Adjusted Hours | Total Adjusted Fees |
|---|---|---|---|---|---|---|
| Russell Ainsworth | $1,141.00 | **$500** | 970.75 | 470.95 | **499.8** | $249,900.00 |
| Bethan Gee | $175.00 | **$100** | 25.5 | 15.5 | **10** | $1,000.00 |
| Isaac Green | $581.00 | **$200** | 311.5 | 82.5 | **229** | $45,800.00 |
| Sam Heppell | $777.00 | **$250** | 297 | 141.75 | **155.25** | $38,812.50 |
| Fatima Ladha | $473.00 | **$200** | 346.75 | 170.5 | **176.25** | $35,250.00 |
| Lauren Lebata | $175.00 | **$100** | 33 | 17.75 | **15.25** | $1,525.00 |
| Jon Loevy | $1,500.00 | **$750** | 778 | 510.5 | **267.5** | $200,625.00 |
| Andrea Lyon | $1,141.00 | **$300** | 292 | 123.75 | **168.25** | $50,475.00 |
| Alyssa Martinez | $473.00 | **$200** | 184.25 | 201.625 | **0** | $0.00 |
| Alyssa Nekritz | $175.00 | **$100** | 275.5 | 76.5 | **199** | $19,900.00 |
| Julia Rickert | $948.00 | **$325** | 1106 | 239.5 | **866.5** | $281,612.50 |
| Brynn Schaal | $175.00 | **$100** | 235.75 | 228.5 | **7.25** | $725.00 |
| Olivia Toppel | $175.00 | **$100** | 13 | 13 | **0** | $0.00 |
| | | | | | **TOTAL FEES** | $925,625.00 |

The maximum lodestar amount that Petitioner's counsel should be awarded should not exceed $925,625.00. Furthermore, due to Petitioner's practice of billing in .25 increments, the Court should apply a reduction to the lodestar amount of 7.5%. Courts have found that billing in increments larger than .1 can result in excessive billing due to the rounding up of time. Courts therefore may apply a discount to the lodestar if counsel fails to bill in six-minute increments. *See,*

*e.g.*, *Perez-Sosa v. Garland*, 22 F.4th 312, 331 (1st Cir. 2022) (upholding an across-the-board 25% cut to the fee award because plaintiff's counsel billed in 15-minute increments); *Bench Billboard Co. v. City of Toledo*, 499 F. App'x 538, 549 (6th Cir. 2012) (upholding 7.5% cut to plaintiff's counsel's hours because they billed in 15-minute increments)). After considering an appropriate reduction for this billing practice, Petitioner should receive a fee award of $856,203.13 reflecting a reduction of $69,421.88 (.075 * $925,625.00).

## CONCLUSION

WHEREFORE, Defendants respectfully request that this Court significantly reduce Petitioner's claimed attorneys' fees to reflect reasonable hourly rates and reasonable hours spent on this litigation to a fee award of $856,203.13.

Dated: December 22, 2025 Respectfully submitted,

*/s/ Shneur Nathan*
Special Assistant Corporation Counsel
Shneur Nathan, Avi Kamionski,
Natalie Adeeyo, Breana Brill, & John Cerney
Nathan & Kamionski LLP
206 S. Jefferson Street
Chicago, IL 60661
nadeeyo@nklawllp.com

*/s/ James P. Fieweger*
Special Assistant Corporation Counsel
James P. Fieweger
Michael Best & Friedrich LLP
444 W Lake St Ste 3200,
Chicago, IL 60606
jpfieweger@michaelbest.com

*Attorneys for Individual City Defendants*

*Attorney for City of Chicago*